IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

**FILED**

APR 1 9 2006

U.S. BANKRUPTCY COURT
MONTGOMERY, ALABAMA

RECEIVED

2006 APR 20 A 9:08

IN RE:                              )

                                    )        CHAPTER 13
EDWARD CHILDS,                      )

                                    )        CASE NO.: 00-06028-WRS
    Debtor.                         )
                                    )

_____

CURTIS C. REDING, in his            )
capacity as Chapter 13              )
Standing Trustee, and SUSAN S.      )
DePAOLA, Trustee,                   )        ADVERSARY PROCEEDING NO.
                                    )
        Plaintiff,                  )        03-01071
                                    )
vs.                                 )
                                    )        2:06mc3295·WHA
MORRIS BART, P.L.C.; MORRIS         )
BART; GALLAGHER, LEWIS, DOWNEY      )
& KIM a/k/a THE GALLAGHER           )
FIRM; and MICHAEL T.                )
GALLAGHER, jointly and              )
severally,                          )
                                    )
        Defendants.                 )
                                    )
MICHAEL T. GALLAGHER and            )
GALLAGHER, LEWIS, DOWNEY & KIM      )
a/k/a THE GALLAGHER FIRM,           )
                                    )
        Third Party                 )
        Plaintiffs,                 )
                                    )
vs.                                 )
                                    )
THE LAW OFFICES OF BEN C.           )
MARTIN, LLP and BEN C. MARTIN,      )
                                    )
        Third Party                 )        **RECEIPT #:** _6000689_
        Defendants.                 )
                                    )
MICHAEL T. GALLAGHER and            )
GALLAGHER, LEWIS, DOWNEY & KIM      )
a/k/a THE GALLAGHER FIRM,           )

2689.13

```
                                    )
            COUNTERCLAIMANTS        )
            and THIRD PARTY         )
            PLAINTIFFS,             )
                                    )
vs.                                 )
                                    )
CURTIS C. REDING, in his            )
capacity as Chapter 13              )
Standing Trustee,                   )
                                    )
            COUNTERCLAIM            )
            DEFENDANT and THIRD     )
            PARTY DEFENDANT.        )
                                    )
                                    )
```

TO:   The United States District Court for
      The Middle District of Alabama, Northern Division


GALLAGHER'S MOTION FOR MANDATORY AND PERMISSIVE WITHDRAWAL OF
REFERENCE AND TRANSFER OF ADVERSARY PROCEEDING TO DISTRICT COURT

## TABLE OF CONTENTS

GALLAGHER'S MOTION FOR MANDATORY AND PERMISSIVE WITHDRAWAL
OF REFERENCE AND TRANSFER OF ADVERSARY PROCEEDING TO
DISTRICT COURT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.    FACTUAL AND PROCEDURAL BACKGROUND OF ADVERSARY
      PROCEEDING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   THE BANKRUPTCY COURT'S DENIAL OF SUMMARY JUDGMENT
      IS INCONSISTENT WITH CONTROLLING CASELAW AND THE
      EXPRESS LANGUAGE OF THE BANKRUPTCY CODE . . . . . . . . . . . . 17

      A.    CONTROLLING FEDERAL CASELAW REQUIRED THE
            ENTRY OF SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . . . 17

      B.    11 U.S.C. § 542 MANDATES DISMISSAL OF THE
            ESTATES' CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

      C.    11 U.S.C. § 554(C) REQUIRES THE DISMISSAL OF
            THE CURTIS ESTATE'S CLAIM. . . . . . . . . . . . . . . . . . . . . . 20

      D.    11 U.S.C. § 327 IMPOSES NO DUTY ON GALLAGHER
            TO ACCEPT EMPLOYMENT BY ANY ESTATE OR TO ACT
            AS GENERAL BANKRUPTCY COUNSEL. . . . . . . . . . . . . . . . . 21

      E.    CONTROLLING CASELAW CONCERNING DISMISSED
            CASES REQUIRES DISMISSAL OF FIVE CASES. . . . . . . . . 22

      F.    CONTROLLING CASELAW CONCERNING 100% CHAPTER
            13 CASES REQUIRES DISMISSAL OF FIVE CASES. . . . . . 23

III.  WITHDRAWAL OF THE REFERENCE IS MANDATORY BECAUSE
      GALLAGHER POSSESSES THE ABSOLUTE RIGHT TO A JURY
      TRIAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

IV.   CAUSE ALSO EXISTS FOR THE DISCRETIONARY
      WITHDRAWAL OF THE REFERENCE . . . . . . . . . . . . . . . . . . . . . . . . 29

      A.    THIS ADVERSARY PROCEEDING IS NOT A CORE
            PROCEEDING, AND THE BANKRUPTCY COURT CAN
            ONLY ENTER A REPORT AND RECOMMENDATION . . . . . . . . 30

      B.    THE BANKRUPTCY COURT HAS ANNOUNCED THAT IT
            HAS NO SUBJECT MATTER JURISDICTION OVER 28
            OF THE 33 ESTATE CLAIMS OR OVER THE CLAIMS

BETWEEN BART AND GALLAGHER; HOWEVER, THE
DISTRICT COURT DOES HAVE SUBJECT MATTER
JURISDICTION OVER THE CLAIMS DUE TO COMPLETE
DIVERSITY OF CITIZENSHIP UNDER 28 U.S.C.
§ 1332. ....................................... 30

    C.   THE BANKRUPTCY COURT HAS FAILED TO ADDRESS
       GALLAGHER'S LEGAL AND FACTUAL DEFENSES. ........ 31

V.   TIMELINESS OF MOTION TO WITHDRAW REFERENCE .......... 32

CERTIFICATE OF SERVICE ....................................... 34

Comes Now, Michael T. Gallagher and the law firm of Gallagher, Lewis, Downey & Kim n/k/a The Gallagher Firm (collectively "Gallagher"), by and through their undersigned counsel of record, and pursuant to 28 U.S.C. § 157(d) and (e) and Fed. R. Bank. P. 5011(a) file their Motion for Mandatory and Permissive Withdrawal of Reference and Transfer Adversary Proceeding to District Court.    In support of said Motion, Gallagher asserts: (1) his absolute right to a jury trial; and, (2) the failure of the bankruptcy court to address Gallagher's factual and legal defenses and to grant summary judgment for at least 25 of the 33 claims for which the Estates admittedly submitted no evidence.    Citations are to docket entries and to the Appendix being filed simultaneously herewith.  Appendix #1 contains Gallagher's original brief and Appendix #2 contains Gallagher's reply brief, together totaling some 100 pages in which the factual and legal defenses that have yet to be addressed are fully developed.

## I.    FACTUAL AND PROCEDURAL BACKGROUND OF ADVERSARY PROCEEDING

Plaintiffs, Curtis C. Reding, as Chapter 13 Standing Trustee for the Middle District of Alabama, and Susan DePaola, as Chapter 7 Trustee for the Estate of Shellwanda Babers, have been granted standing in one bankruptcy case to represent 60 different Chapter 7 and Chapter 13 Estates in the Middle

District (collectively referred to hereafter as the "Estates"), and on behalf of these Estates to pursue claims for compensatory and punitive damages against Morris Bart and Morris Bart, A.P.L.C. (collectively "Bart"). Bart joined Gallagher on a claim of indemnity, after which 33 of these 60 Estates also asserted claims directly against Gallagher.

This Adversary Proceeding arose out of a mass tort settlement approved by the final order of a Mississippi Chancery Court in which a Special Master used a Compensation Matrix to disburse a Qualified Settlement Fund to persons who had ingested Fen-Phen. Bart, a citizen of the State of Louisiana, advertised in Alabama and was retained by the 33 people alleged to be "at issue" with respect to Gallagher. Pursuant to a written Co-Counsel Agreement, Bart referred 31 of these 33 people to Gallagher mostly for inclusion in the "Fen-Phen" group settlements and some for "Lotronex." Neither Bart, nor Gallagher, was retained by any of the 33 Estates, the alleged owners of the claims.

Each of Bart's clients affirmatively misrepresented or failed to disclose to Gallagher that their claims may be owned by bankruptcy Estates, rather than by the individuals who had hired Bart. Gallagher was unaware of any person who was in bankruptcy when they fraudulently obtained settlement funds from the Special Master. Bart, on the other hand, has recently

admitted that he assisted some of these persons in converting Estate funds and he has agreed to disgorge fees and pay sanctions.

The Estates seek to benefit from this fraudulent misconduct of their representatives by claiming that they fraudulently induced Gallagher to assume the express duties of trustees and debtors to get court approvals for retention of special counsel and approvals for personal injury settlements. The bankruptcy court has previously said these duties do not apply to a special counsel in Gallagher's position.

> It is <u>pretty</u> <u>clear</u> in a seven and eleven it is <u>the</u> <u>trustee</u> or the debtor-in-possession that <u>has</u> <u>to</u> <u>make</u> <u>the</u> <u>application</u>.
>
> .   .   .
>
> Depending on what district you are in, you can probably make the argument that an application for employment [in a Chapter 13 case] is not strictly speaking required by the code. (Emphasis supplied.)
>
> App. 4, Judge Sawyer, July 15, 2005 Hearing at p. 26.

Gallagher is a trial counsel who negotiated a group settlement for several thousand people. He is not a bankruptcy lawyer hired by a debtor or a trustee. Under similar circumstances, the bankruptcy court has correctly stated that the debtor's bankruptcy counsel, who helped compile the false bankruptcy Schedules, should notify and assist special counsel like Gallagher where debtor fraud has been discovered:

2689.13                                3

"[debtor's counsel] was negligent for failing to notify [special counsel-Gallagher].    It is <u>not possible to fault</u> [special counsel-Gallagher] for his part in the debtor's defalcation as it does not appear that he knew about the bankruptcy proceeding."    (Emphasis supplied.)

App. 3, <u>In re Smock</u>, Judge Sawyer, Memorandum Decision, Case No. 01-5533-WRS at p. 6.

Under the Co-Counsel Agreement Bart was responsible for all contact with his clients, and therefore, when Bart joined Gallagher under a claim of indemnity (Docket Entry 22), Gallagher was forced to file compulsory counterclaims against Bart for his breach of contract and promissory fraud.  (Docket Entry 38).  When the 33 Estates asserted that Gallagher had been fraudulently induced to become bankruptcy counsel for the 33 Estates (Docket Entry 8), Gallagher was forced to assert compulsory counterclaims against the Estates for compensatory and punitive damages for the admitted fraud and breach of any fraudulently induced attorney-client relationship.  (Docket Entry 188).  Based upon diversity jurisdiction and pursuant to Bankruptcy Rules 7013(h) and 7020, Gallagher joined the individuals who the Estates claim lied to their bankruptcy counsel, to the bankruptcy court and to their creditors (as well as to Gallagher) about their claims and who converted Estate funds.  (Docket Entry 188).  The bankruptcy court entered a report and recommendation (erroneously denominated an order) and

recommended that these claims against the wrongdoers be dismissed and that the claims against Gallagher, the victim of the fraud, should remain for trial. (Docket Entries 254 and 255). Gallagher has not yet had a de novo hearing on this report and recommendation, which seems to contradict the basic duty of a trustee to investigate and pursue assets.

The Estates seek compensatory and punitive damages for alleged willful misconduct, for which monetary claims Gallagher has an absolute right to a jury trial. Gallagher timely demanded a trial by jury of all issues and claims in this Adversary Proceeding; and, Gallagher has not consented to the bankruptcy court (an Article I court) trying a jury trial. At great expense, Gallagher analyzed each of the 33 Estate claims against him and on June 27, 2005, Gallagher moved for summary judgment. Gallagher demonstrated that he had no knowledge of any bankruptcy case before the Special Master paid out any settlement funds. Gallagher also demonstrated that within the 33 Estates there were 100% plans, there were formal and informal abandonments, there were dismissed cases, there were personal exemptions to be claimed and there were court approved settlements. Gallagher briefed, on a case-by-case basis, the undisputed factual and legal defenses that require the dismissal of each of the 33 Estates' claims. App 1, Gallagher's Brief in Support of Motion for Summary Judgment, (Docket Entry 242).

These defenses have yet to be addressed by the Estates' counsel or by the bankruptcy court.

At a status conference on July 15, 2005, counsel for the Estates admitted that, in responding to Gallagher's summary judgment motion, he <u>must</u> address each Estate claim separately.

> [I]f they [Bart] want to challenge or, you know, they want to find out how this ought to work in each scenario, they ought to file a motion for summary judgment, <u>do it the right</u> way, <u>the way Mr. Anderson has done it</u>, and say here is this debtor who is in this category and here is this debtor who is in this category; and we get to come back in and tell you as a factual matter, putting it on the record, what I have just told you as opposed to me making that presentation.
>
> App. 4, Transcript of July 15, 2005 Hearing at p. 33.

Not only did counsel for the Estates fail to address several absolute legal defenses to these claims, but counsel failed to submit <u>any</u> evidence with probative value in support of the claims of the 33 Estates (that Gallagher knowingly participated in the conversion of Estate funds). (Docket Entry 271). Gallagher filed his Reply Brief in which he pointed out the lack of any evidence or law to support the Estates' claims. App. 2, Gallagher's Reply Brief. (Docket Entry 301). The oral argument was conducted on March 30, 2006, but, the motion was summarily denied by the bankruptcy court.

> THE COURT:  ...the other point that Mr. Anderson made that, like I said, maybe was in the reply

brief and I maybe just haven't gotten around to
reading it yet...

> App. 5, Judge Sawyer, Transcript
> of March 30, 2006 Hearing, p. 10.

At oral argument the Estates acknowledged the "test"
under 11 U.S.C. § 542 was:  "<u>Did [Gallagher] know they were in
bankruptcy and did he know before money got distributed</u>."  App.
5, March 30, 2006 Transcript at 38.  The undisputed answer to
that question is "No."  In opposition to summary judgment, the
Estates could only claim that Bart (who has now admitted
complicity in some of these fraudulent schemes) provided notice
to Gallagher in two ways: written and verbal communications.

> Gallagher got notice about these peoples'
> bankruptcies in at least two, somewhat different
> ways.  [Gallagher] got direct notice in terms of
> written communications, and we are going to look
> at some of those in a moment, but Gallagher also
> got telephone calls from people at the Bart law
> firm telling him that here is a debtor, you know,
> here is another debtor and they checked "yes," I
> am currently in bankruptcy.

> App. 5, March 30, 2006 Transcript
> at 14.

An analysis of the written communications and the testimony of
the Bart employees reveals that the written and verbal
communications were after the conversions had occurred and do
not satisfy the admitted "test" of prior knowledge.  There is no
evidence that Gallagher had knowledge that any of these 33
individuals were in bankruptcy when they allegedly converted
estate funds.

A review of the record before this court reveals that the Estates only put forth alleged evidence with respect to 8 of 33 Estates.

1.    Shellwanda Babers.    App. 5, March 30, 2006 Transcript at 21.  Checked "Yes" and crossed it out and checked "No."  No knowledge.

2.    Edwards Childs.  See id. at 21.  The net amount of the settlement was paid by the Special Master directly to the Chapter 13 Trustee on June 28, 2002.  No legal claim.

3.    Rosie Davison.  See id. at 26-27.  In a letter to the defendants the Chapter 13 Trustee stated that it had no interest in the settlement because her bankruptcy case was dismissed.  The Trustees admit that they have no claim against Gallagher for Davison's Estate because her case was dismissed before she signed her Release and Distribution Sheet.  See id. at 27.  No legal claim.

4.    Patricia Ford.  See id. at 21.  Checked "Yes" and crossed it out and checked "No."  No knowledge.

5.    Gloria Fort.    See id. at 19.    100% Plan. Discharge approved by Trustee with knowledge of debtor's Fen-Phen claim.  No legal claim.

6.    Charstain Hicks.    See id. at 25.    Hicks' bankruptcy case was dismissed on her motion and the Trustee with knowledge that Hicks had participated in the Fen-Phen settlement

and received settlement proceeds failed to object to the dismissal. No legal claim.

7. Angela Jarrett. <u>See</u> <u>id</u>. at 21. Case was dismissed. No legal claim.

8. Sandra Joiner. <u>See</u> <u>id</u>. at 17-18. Settlement funds were paid to Trustee causing her 100% Plan to pay out immediately and for which she received a discharge. No legal claim.

The alleged "evidence" supporting Gallagher's alleged knowledge presented by the Estates was actually not evidence at all but speculation and assumption. Material portions of the Estates' examination of witnesses are set forth below:

> Q ...Did your law firm do anything in response to Ms. Miles' bankruptcy attorney saying specifically you had to file a petition with the court and a motion to approve the settlement?

> A I would assume what we did is called up Gallagher or Ben Martin or Tim Goss and let them know about this situation and await instructions.

> App. 6, Bart depo. at pp. 97-98.

> A I would assume my office, every time it got a call, would pass that on to the other members of our team, who was Gallagher's office, Tim Goss or Ben Martin. And I would also expect that they would either take care of it or would give us specific instructions on what we should do to get this matter resolved.

> App. 6, Bart depo. at p. 168.

> Q ...If y'all were always checking with Gallagher, how come none of these notes we have been reading, two of which you were personally

involved in, say word one about Gallagher?    How come?  Why is that?

A    You will have to ask Lisa.

Q    No, sir.  I am asking you because you were involved in two of the entries on the previous page.  How come you didn't tell Lisa to call Gallagher?

A    Well, my answer is that I don't know that she didn't call Gallagher....because it's not on this sheet doesn't mean she had many conversations with Gallagher.

Q    I agree with you, but I can't ask you that.  What I asked you was why didn't you tell her to call Gallagher?  That is the question. Why didn't you do that, because you say Gallagher was where everything needed to be routed per the team concept.  Why didn't you do that?

A    I am not sure I didn't do that.  I may very well have told her to call Gallagher.  She might have told me:  I am going to call Gallagher and let him know.

We probably talked to Gallagher's office several times a day when this was going on, so there - the logical assumption is she did talk to Gallagher's office.

Q    Look at the bottom entry on this page. (Reading):  Met with Buddy.  Buddy is you, right?

A    Yes.

Q    (Reading):  He said return his call but don't worry.  Cothren will handle.

Did I read that right?

A    Yes.

Q    How come it doesn't say:  Don't worry. Gallagher will handle?  Because that's the way you have told us it was handled routinely.

A    I can't speak for what Lisa did and did not put down. You are going to have to ask her that.

Q    All right.  Turn over to the next page, the second entry is 9/19.  (Reading):  Met with Buddy.

That's you?

A    Right.

Q    (Reading):  He said to send letter to McCulley telling him Goss will handle it.

Here you are telling Lisa to have Goss handle it.  I still don't see Gallagher mentioned.  Why is that?

A    Well, because you don't want to see it. That's why.  I mean, it's very obvious.  It supports exactly what I keep telling you over and over again.

Q    Well, then, if its so darned obvious, why don't you show me right here where the word Gallagher is in that entry, sir?

A    Because, as I told you, we would call Gallagher's office.  He worked as a team with Tim Goss and Ben Martin.  Obviously, some conversation took place where Gallagher's office referred us to Tim Goss, and now Lisa is dealing with Tim Goss, and that's what that reflects.

Q    Now, this entry doesn't say a word about Gallagher, does it?

A    No.

Q    It says (Reading):  Met with Buddy.  He – Buddy.  You.  (Reading):  said to send letter to McCulley telling him Goss will handle it.

Did I read that right?

A    Yeah.

Q    We have been through June 14, June 19,
August 17 and September 19, four entries in which
you were involved, and <u>there isn't one word about
you ever saying the first thing to Lisa Cazaubon
about Gallagher, is there</u>?

A    <u>Not that we have seen</u> in the activity
log.

> App. 6, Bart depo. at pp. 181-185.
> (Emphasis supplied.)

Q    Well, let's get it nailed down.  <u>Did
you ever have a conversation with Michael
Gallagher, or anybody at his law firm, in
response to the telephone call your law firm got</u>
from David Cottingham, recorded in y'all's own
documents, where he told y'all you had to file
certain motions in bankruptcy court?  Did you
personally talk to anybody at Gallagher?

A    <u>No</u>, I don't recall doing that.

> App. 6, Bart depo. at pp. 203-204.

A    No, I don't have any explanation, other
than with <u>the letters I would assume that those
were forwarded to Gallagher's office</u>.

Q    <u>But you have seen no documentation of
that</u>?

A    <u>I have seen none today</u>.

Q    Well, and we have seen none in the
documents produced in discovery by your law firm.
Do you have any explanation, knowing that
additional information?  That change your answer
in any way?

A    That would not change my answer.

> App. 6, Bart depo. at pp. 275-276.
> (Emphasis supplied.)

The Estates rely completely upon Bart's incompetent

testimony to claim that Gallagher had actual knowledge of 8 of

the 33 bankruptcy cases in time to stop settlement funds from
being disbursed by Cothren, the Special Master in Mississippi.
Irrespective of the absolute legal defenses, to the contrary,
the personal knowledge of Bart's staff was that these forms were
not sent by Bart's staff back to Gallagher, but rather were sent
to Cothren, the Special Master, who was disbursing the
settlement funds from Mississippi.

> Once a Bart firm client checked "yes" indicating
> that he or she was in bankruptcy, Cazaubon [a
> Bart employee] would tell those clients that she
> could not "give them their money at this time,
> and that per the instructions of the Special
> Master" she "had to forward the disbursement
> sheet, as well as the check, back to him."
> (Cazaubon depo. at 88, 247-48, 419; Crory depo.
> at 25-27, 28-29; Davies depo. 40-42, 54, 60-61).
> The distribution sheets and settlement checks for
> clients who checked "yes" indicating that they
> were in bankruptcy were then forwarded to the
> Fen-Phen Special Master Butch Cothren.(App. 7,
> Crory depo. at 29-32, 38-39). (Emphasis
> supplied)

> Trustee's Brief in Opposition to
> Gallagher's Motion for Summary
> Judgment, Docket Entry 271 at p.
> 11.

Gallagher and his staff consistently testified that
these forms and other information about bankruptcy issues were
only received after the Special Master had disbursed the funds,
at which point any remaining bankruptcy issues were investigated
and resolved for the benefit of various Estates.

> Q    Was [Sept. 4, 2001] the first time that
> you learned that there were some fen-phen clients

referred to the Gallagher law firm by the Bart law firm who were in bankruptcy?

A    As I recall, this is the first time that I was aware of this.

App. 7, McLemore depo. at p. 35.

Q    Did Lisa Cazaubon, or anybody else at the Bart law firm, tell you they were getting letter after letter from the Chapter 13 trustee in Montgomery in connection with the Edward Childs case?

A    No.

App. 8, Gallagher depo. at p. 171.

Due to the lack of any testimony to support the Trustees' allegations, under the controlling Eleventh Circuit and other caselaw, the bankruptcy court was required to grant summary judgment and dismiss the claims of the 33 Estates that submitted no evidence whatsoever of any knowledge by Gallagher.

In meeting its burden a 'mere "scintilla" of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party.

Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990); Bryant v. Cruises, Inc., 6 F.Supp.2d 1314, 1317 (N.D. Ala. 1998).

At the conclusion of the summary judgment argument, on March 30, 2006, the bankruptcy court summarily denied the motion and announced that Gallagher would be required to prepare for and defend 33 Estate claims at a two week trial commencing May 22, 2006. Based upon the same circumstances in another case,

the bankruptcy court previously stated that a sanction would violate due process of law, and yet, this trial is proceeding.

> While one may argue that the Court has jurisdiction over the lawsuit proceeds as they are property of the estate, it certainly would strain notions of due process to sanction a lawyer for violations of the bankruptcy laws when he had no reason to know that a bankruptcy case has been filed.
>
> App. 3, Judge Sawyer, Memorandum Decision in In re Lisa Gail Smock, Case No. 01-5533-WRS at p. 4, fn.2).

Bart recently agreed in writing to disgorge fees and to pay sanctions in the form of attorney's fees in connection with 19 of the 113 Estates that asserted claims against him in the three federal districts in Alabama. (Docket Entry 297). These 113 Estates include the 33 Estates asserting claims against Gallagher in this Adversary Proceeding. The gross amount to be paid by Bart is approximately $1,200,000. The $1,200,000 was allocated by Bart and the Estates as follows (Docket Entry 297):

1.    $189,000 was allocated to 19 Estates, including 5 of the Estates which purport to have claims against Gallagher in this Adversary Proceeding, thereby paying each of these Estates 100% of compensatory damages.

2.    Nothing was allocated to the other 94 Estates, 28 of which have filed claims against Gallagher in this Adversary

Proceeding. Since Gallagher's alleged knowledge is based upon Bart's knowledge, these Estates can have no claim against Gallagher if they have no claim against Bart. If they had a claim against Bart, it would be a breach of fiduciary duty for a trustee to pay money belonging to one estate to another estate's creditors.

  3. $998,000 of the gross amount was allocated to the Estates' attorney's fees and costs. There was no contract and there is no statute that provides for the recovery of attorney's fees from Bart, and therefore, Bart's voluntary agreement to pay $998,000 directly to counsel for the Estates can only be an admission of misconduct justifying the award of attorney's fees as a sanction.

  By structuring the "settlement" as an "agreed" direct payment to counsel for the Estates, the bankruptcy court reasoned that it had no subject matter jurisdiction over $998,000 of the gross recovery. The order has not yet been entered; however, the legal effect of this Agreement between the Estates and Bart in this Adversary Proceeding is that: (1) the 5 Estates that were paid in full can have no claim against Gallagher; and, (2) the 28 Estates that the parties agreed have no claim against Bart, cannot have any claim against Gallagher.

  The bankruptcy court scheduled a status conference to occur on April 6, 2006, (Docket Entry 302); however, no status

conference was conducted by the bankruptcy court. On April 12, 2006, the bankruptcy court issued a <u>sua</u> <u>sponte</u> order, claiming that the bankruptcy court may not have subject matter jurisdiction over the claims between Bart and Gallagher that were asserted in September of 2003. The settlement between Bart and the Estates has absolutely nothing to do with the claims between Gallagher and Bart over which the bankruptcy court exercised subject matter jurisdiction for two years and seven months. Since Bart's conduct is central to the Estates' claims, the trial of ultimate responsibility will not complicate the trial. If the claims by Gallagher and Bart against each other are severed for separate trial there is diversity jurisdiction in the District Court. If they were to be dismissed <u>sua</u> <u>sponte</u> at this late date, statutes of limitations might have expired, it would be a gross miscarriage of justice and waste of resources over the last two years and it would be inconsistent with Bankruptcy Rule 7042(b).

## II.  THE BANKRUPTCY COURT'S DENIAL OF SUMMARY JUDGMENT IS INCONSISTENT WITH CONTROLLING CASELAW AND THE EXPRESS LANGUAGE OF THE BANKRUPTCY CODE

### A.  CONTROLLING FEDERAL CASELAW REQUIRED THE ENTRY OF SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits,

if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party has the initial burden of showing the absence of a genuine issue as to any material fact. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In determining whether this burden is met, the court must view the evidence "and all factual references arising from it in the light most favorable to the nonmoving party." Id. (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, (1970)).

Once the movant's initial burden is met, "the burden shifts to the nonmovant to 'come forward with specific facts showing that there is a genuine issue for trial.'" Id. (quoting Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). In meeting its burden a "mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing Anderson, 477 U.S. at 242). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita, 575 U.S. at 587 (citation omitted).

> Bryant v. Cruises, Inc., 6 F.Supp.2d 1314, 1317 (N.D. Ala. 1998).

Under Walker and Matsushita, the Estates were required to present real evidence. The bankruptcy court was required to review that evidence and grant summary judgment in Gallagher's favor on the 33 Estates' claims because 28 of these Estates presented no evidence whatsoever of any knowledge by Gallagher

of any debtor misconduct, and 8 of these Estates presented testimony with no probative value.

**B.    11 U.S.C. § 542 MANDATES DISMISSAL OF THE ESTATES'
CLAIMS**

The bankruptcy court previously correctly referred to this case as a "turnover" case to recover property of Estates.

> While the Trustee's complaint is not specifically cast in terms of an action for turnover pursuant to 11 U.S.C. § 542, the Court is of the view that the Trustee's complaint is in the nature of an action to recover property of several bankruptcy estates.
>
> Memorandum Decision, Docket Entry 254 at p. 2.

Since Gallagher had no knowledge of any debtor misconduct, he possesses an absolute defense to any such claim by virtue of § 542(c). As a substitute for § 542, the Estates have created four "causes of action" that mention Code sections and rules, but that have no basis in law or fact. The four counts of the Complaint and the fact that they fail to state claims as a matter of law are discussed at pages 50-56 of Gallagher's initial brief. App. 1, Gallagher's Brief in Support of Motion for Summary Judgment. Except for Count Four, the Estates have cited no law to the contrary.

In Count Four (an "individual" injured by a "willful" violation of the automatic stay 11 U.S.C. § 362(h)) the Estates (who are not individuals) ask the court to use its "equitable"

powers under 11 U.S.C. § 105 to expand 11 U.S.C. § 362(h) for use by Estates allegedly injured by Bart's willful violations of the automatic stay). As a matter of law, § 105 can only be used for this purpose where there are no other provisions of the Bankruptcy Code applicable to the particular situation. In re Del Mission, Ltd., 98 F.3d 1147, 1154 (9th Cir. 1996); In re Woodhaven, 139 B.R. 745, 749 (N.D. Ala. 1992) (Mitchell, J.)

> The bankruptcy courts may not use their equitable powers if to do so would strip another code provision of its meaning, or as one court more eloquently said, Section 105(a) does not necessarily "constitute a roving commission to do equity." (internal citations omitted.)

Since § 542 expressly applies to a lawyer who discovers that his client has lied to numerous people and courts and has converted Estate funds, § 105 cannot be used by the bankruptcy court to repeal § 542.

### C.   11 U.S.C. § 554(C) REQUIRES THE DISMISSAL OF THE CURTIS ESTATE'S CLAIM.

§ 554(c) expressly states:

> Unless the court orders otherwise, any property scheduled under Section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of Section 350 of this title. (Emphasis supplied)

By denying summary judgment, the bankruptcy court ruled that a claim could be pursued for Bobbie Curtis' Chapter 7 Estate in which case the Fen-Phen claim was scheduled by the

Debtor and the case was <u>closed</u> by the Trustee, thus abandoning the asset as a matter of law. (Case No. 01-03373, Docket Entry 23).

**D.    <u>11 U.S.C. § 327 IMPOSES NO DUTY ON GALLAGHER TO ACCEPT EMPLOYMENT BY ANY ESTATE OR TO ACT AS GENERAL BANKRUPTCY COUNSEL.</u>**

§ 327 expressly provides:

> The <u>Trustee</u>, with the court's approval, <u>may employ</u>, for a specified special purpose other than to represent the trustee in conduction the case, an attorney that has represented the debtor… .

> 11 U.S.C. § 327(e) (emphasis supplied).

The bankruptcy court has expressly recognized this proposition of law:

> It is pretty clear in a seven and eleven it is the <u>trustee</u> or the debtor-in-possession that has to make the application.
>
> .    .    .
>
> Depending on what district you are in, you can probably make the argument that an application for employment [in a Chapter 13 case] is not strictly speaking required by the code.

> (App. 4, July 15, 2005 Transcript at p. 26) (emphasis supplied).

Gallagher was not hired by any debtor or trustee. Instead, he was referred certain individuals, who apparently did not own their personal injury claims by Bart. Gallagher, the clear victim of fraud, possesses the right to decline to represent a referred client that may not own his or her claim

and to ask that the claimant's bankruptcy counsel or trustee become involved and perform their statutory duties. For the benefit of various Estates, Gallagher has performed Pacer searches and he has advised persons disbursing group settlement funds to hold those funds until the Estates determine whether or not to accept the offers. The offers, which will not be outstanding forever, can be accepted or rejected by the Estates; however, the Estates have chosen to pursue this litigation rather than accept these settlement funds. 11 U.S.C. § 327 does not apply where a Trustee does not seek to retain counsel and counsel does not wish to be retained. Apparently, the Estates are going to let settlement offers expire and pursue the claims themselves.

### E.   CONTROLLING CASELAW CONCERNING DISMISSED CASES REQUIRES DISMISSAL OF FIVE CASES.

The law is clear that when a bankruptcy case has been dismissed, the bankruptcy court has no subject matter jurisdiction over alleged claims of the Estate. In re Harris, 306 B.R. 357, at 364 (M.D. Ala. 2004)("The estate ceased to exist when the case was dismissed"); Harris v. Citigroup, 298 B.R. 879, 901 (M.D. Ala. 2003); In re Woodhaven, 139 B.R. at 748 ("[A] case cannot be re-opened unless it has been closed. An order dismissing a bankruptcy case accomplishes a completely different result than an order closing it would and is not an

order closing it."); <u>In re Garcia</u>, 115 B.R. 169, 170 (Bankr. N.D. Ind. 1990); <u>In re Davison</u>, 186 b.R. 741, 742 (holding that the law does not permit discretion by the bankruptcy court to retain jurisdiction over a dismissed case.")

By denying summary judgment (without any analysis), the bankruptcy court has not followed Judge Thompson's decision (<u>In re Harris</u>), and other caselaw. Gallagher is unfairly being put to trial by five Estates whose cases have been dismissed and over which there is no subject matter jurisdiction as a matter of law.

F.    **CONTROLLING CASELAW CONCERNING 100% CHAPTER 13 CASES REQUIRES DISMISSAL OF FIVE CASES.**

Where a Chapter 13 Debtor proposes and pays out a 100% plan, the bankruptcy court does not have jurisdiction over a debtor's personal injury claims.

> [I]n a Chapter 13 bankruptcy case where the creditors have been paid at 100% and the debtor is entitled to a discharge, there is simply nothing left to which the adversarial proceeding can be related. The creditors have received all the monies due to them -- any recovery the debtors may receive in state court could not possibly affect the estate, as the estate has long since ceased to exist.
>
> <u>In re Harris</u>, 306 B.R. 357, 364 (M.D. Ala. 2004); <u>see also</u> 11 U.S.C. § 1327(b).

Gallagher is unfairly being put to trial by five Estates whose 100% Chapter 13 plans have been paid in full. Any

recovery after payment of a 100% plan will go to the debtors who defrauded Gallagher.

## III. WITHDRAWAL OF THE REFERENCE IS MANDATORY BECAUSE GALLAGHER POSSESSES THE ABSOLUTE RIGHT TO A JURY TRIAL

Pursuant to 28 U.S.C. § 1334(a) the District Court also has original and exclusive jurisdiction over all cases under Title 11. The District Court may refer to bankruptcy judges any cases arising under Title 11 as well as related proceedings. See 28 U.S.C. § 157(a). Under this authority, the Middle District of Alabama, through a general order adopted by the District Court, has referred all cases under Title 11 as well as related proceedings to the bankruptcy judges of the Middle District. That order provides that:

> "all cases under Title 11, United States Code, and all proceedings arising under Title 11, United States Code, or arising in or related to a case under Title 11 shall be referred to the bankruptcy judges for this district."

> See General Order of Reference, April 25, 1985.

Unless the parties consent, where there is the right to a jury trial, a district court must withdraw adversary proceedings referred to the bankruptcy court pursuant to 28 U.S.C. § 157(a). See 28 U.S.C. § 157(e) which provides:

> If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to

exercise jurisdiction by the district court and with the express consent of all the parties.

> See Northern Pipeline Const. Co. v. Marathon Pipeline Co., 458 U.S. 50 (1982); Malone v. Norwest Financial California, Inc., 245 B.R. 389, 400-01 (E.D. Cal. 2000); 28 U.S.C. § 157(e).

Gallagher has alleged diversity jurisdiction on his counterclaims and he does not consent to a jury trial in bankruptcy court. Gallagher requests that any jury trial be conducted in the District Court. Because Gallagher is entitled to a jury trial on all claims in this case, and because there is diversity jurisdiction, withdrawal of the reference is mandatory.

Two questions resolve the issue of whether a particular claim entails a right to trial by jury: first, whether the action or its analog was historically tried to juries at the time the Seventh Amendment was adopted in 1791; and then, second, whether the relief sought is legal or equitable in nature." Malone, 245 B.R. at 399 (citing Tull v. United States, 481 U.S. 412 (1987)).

> In Granfinanciera, the Supreme Court articulated a two part test for journaling such distinction: "First, we compare the statutory action to eighteenth century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature." RDM Sports Group, Inc. v. Equitex, Inc., 260 B.R. 915, 919 (N.D. Ga. 2001)

(citing Granfinanciera, S.A. v. Nordberg, 492
U.S. 33, 42 (1989) (quoting Tull v. United
States, 481 U.S. 412, 417-18 (1987)).

[T]he amount of punitive damages was an issue
committed to the jury on both sides of the
Atlantic in the late 18th century.

> Hartford Fire Ins. Co. v. First
> Nat'l Bank of Atmore, 198 F.Supp
> 2d 1308, 1311 (S.D. Ala. 2002)

The Supreme Court also noted that the "second stage of this
analysis the relief sought is more important than the first."
Granfinanciera, 492 U.S. at 42.

As stated above, the only count of the Estates'
complaint that comes anywhere close to asserting a cause of
action is Count Four in which the Estates claim compensatory and
punitive damages for the alleged willful violation of the
automatic stay under 11 U.S.C. § 362(h). Unless summary
judgment is granted, this claim must be tried to a jury. See
Curtis v. Loether, 415 U.S. 189, 195 (1974) ("More important,
the relief sought here - - actual and punitive damages - - is
the traditional form of relief offered in the courts of law.").

> It is established that suits for money damages,
> including punitive damages, are legal in nature
> entailing the right to a jury trial, and that
> this right cannot be abridged even if the damages
> are considered incidental to the equitable
> claims.

> Malone, 245 B.R. at 399.

> (Only under the most imperative circumstances,
> circumstances which in view of the flexible
> procedures of the Federal Rules we cannot now

> anticipate, can the right to a jury trial of
> legal issues be lost through prior determination
> of equitable claims
>
> Dairy Queen Inc. v. Wood, 369 U.S.
> 469, 473 (1989).

"Where an action is simply for the recovery … of a money

judgment, the action is one at law." RDM Sports Group, Inc.,

260 B.R. at 920 (citing Pernell v. Southall Relaty, 416 U.S.

363, 370 (1974) (quoting Whitehead v. Shattuck, 138 U.S. 146,

151 (1891))); see also Beesley v. Hartford Ins. Corp.,723 F.Supp

635, 650 (S.D. Ala. 1989) (holding that a demand for even

nominal damages renders the right to jury trial inviolate: "this

court cannot avoid pointing out the obvious, namely, that

"nominal damages" do constitute a *legal* and not an *equitable*

remedy)(emphasis in original).

> "Absent the express consent of all parties to a
> particular count, the bankruptcy court may not
> conduct a jury trial as to that count. Here, the
> plaintiff clearly is entitled to a jury trial as
> to at least one count of its complaint, a count
> for breach of contract, and therefore the
> adversary proceeding must be tried to a jury."
> (citations omitted)
>
> Wilson v. ENC Mortgage Corp. (In
> re Wilson), Bankruptcy No.
> 0016925, Adversary No. 04-1276,
> 2005 WL 3320594, at *1 (October
> 17, 2005 Bankr. D. Mass.)
>
> "As for the remedies sought by the trustee, he
> seeks money damages. He contends that the
> defendant's acts of commission or culpable
> omissions damaged the Debtors. All of the
> injuries complained of are compensable by a money
> judgment … Accordingly, since the remedies

sought and most of the claims sound in law, as opposed to equity, the Seventh Amendment applies to this case."

> RDM Holdings, Inc. v. Equitex, Inc. (In re RDM Sports Group, Inc.), 260 B.R. 915, 920 (N.D. Ga. 2001); see also Ward v. Assoc. Industries of Alabama Group Health Benefits Trust, 448 So. 2d 349, 352 (Ala. 1984).

[T]his court finds that debtors are entitled to a jury trial on these causes of action under the Seventh Amendment, and thus, this proceeding must be transferred to the United States District Court.

> Walton v. AG Credit, ACA (In re Walton), 158 B.R. 939, 942 (Bankr. N.D. Ohio 1993)

In addition to the right to a jury trial on the Estates' claims, Gallagher is entitled to a jury trial on his compulsory counterclaims and crossclaims for fraud and breach of contract under applicable Alabama or Texas law. Under both Alabama and Texas law, Gallagher's fraud claims against the Estates and Bart must be tried to a jury. Ex Parte Cupps, 782 So. 2d 772 (Ala. 2000). In Cupps, a bank sued a debtor to recover the outstanding balance of a note. The debtor counterclaimed alleging fraudulent inducement to enter into a forbearance agreement and fraudulent suppression. The debtor demanded a jury trial and the Alabama Supreme Court held that the debtor had a right to a jury trial for the fraudulent inducement and suppression claims. Id. at 773; see also In re

Education Management Corp., Inc., 14 S.W. 3d 418 (Tex. App. 2000).

Gallagher also has a right to a jury trial of the breach of contract claims contained in his counter claims, the cross claims and his affirmative defenses which include release, waiver, accord and satisfaction, failure of consideration and payment:

> In the present case, there existed a contract between [counter-plaintiff] and [counter-defendant]. [Counter-Plaintiff] claims that there was a breach of that contract and has brought an action based on that breach. Whether or not such a breach occurred is a factual determination accompanied by the right to a jury trial if so demanded.
>
> > Ex parte Ward, 448 So. 2d 349, 352 (Ala. 1984); see also, Cadle Co. v. Castle, 913 S.W. 2d 627, 631 (Tex. App. 1995); Ferguson v. Dresser Industries, Inc., 438 So. 2d 732, 734 (Ala. 1983) ("That would be a matter of affirmative defense for resolution by a jury.")

A jury trial has been demanded by Gallagher on all claims and issues in this Adversary Proceeding. As such, withdrawal of the reference is mandatory.

IV. **CAUSE ALSO EXISTS FOR THE DISCRETIONARY WITHDRAWAL OF THE REFERENCE**

While not necessary, in this case, the following constitutes cause under 28 U.S.C. § 157(d) for withdrawal of the reference.

A.    **THIS ADVERSARY PROCEEDING IS NOT A CORE PROCEEDING, AND THE BANKRUPTCY COURT CAN ONLY ENTER A REPORT AND RECOMMENDATION**

28 U.S.C. § 157(b) lists 15 categories of "core" proceedings, not one of which fits any of the four counts of the Complaint. The Estates avoid 11 U.S.C. § 542 (which is included in § 157(b)(2)(E)) and instead cite provisions of the Bankruptcy Code and Bankruptcy Rules that create no independent causes of action. The claim in Count Four that the Bankruptcy Court should use § 105 to apply § 362(h) to an Estate rather than to an individual requires a jury trial and is not a core proceeding. The District Court will be required to review de novo the report and recommendations of the bankruptcy court.

B.    **THE BANKRUPTCY COURT HAS ANNOUNCED THAT IT HAS NO SUBJECT MATTER JURISDICTION OVER 28 OF THE 33 ESTATE CLAIMS OR OVER THE CLAIMS BETWEEN BART AND GALLAGHER; HOWEVER, THE DISTRICT COURT DOES HAVE SUBJECT MATTER JURISDICTION OVER THE CLAIMS DUE TO COMPLETE DIVERSITY OF CITIZENSHIP UNDER 28 U.S.C. § 1332.**

The Estates and their representatives are citizens of the State of Alabama, the Bart defendants are citizens of the State of Louisiana and the Gallagher defendants are citizens of the State of Texas. The amount in controversy exceeds $75,000 exclusive of interest and costs. The District Court possesses independent subject matter jurisdiction under 28 U.S.C. § 1332, without reference to 28 U.S.C. § 1334.

On April 12, 2006 the Bankruptcy Court announced (Docket Entry 312) that it did not believe that it had jurisdiction over the claims between Bart and Gallagher because the outcome will have no effect upon any estate. Using the bankruptcy court's no effect reasoning, the bankruptcy court does not have subject matter jurisdiction over 28 Estates that Bart and the Trustee agreed have no claims and will receive nothing from this trial. The trial of this Adversary Proceeding should occur one time before the District Court which has complete subject matter jurisdiction and the power to try a jury trial.

C.    **THE BANKRUPTCY COURT HAS FAILED TO ADDRESS GALLAGHER'S LEGAL AND FACTUAL DEFENSES.**

The foregoing reveals that Gallagher has not had the Estates' evidence tested or his defenses addressed by the bankruptcy court. The legal defenses are based upon express statutory language and controlling caselaw and are uncontroverted. The undisputed facts have shown that Gallagher had no knowledge of debtor misconduct. Gallagher is being put to trial by at least 28 of the 33 Estates which have no claims whatsoever.

The bankruptcy court has said that the duties of trustees and debtors do not apply to Gallagher and that if the trial of these 33 cases resulted in sanctions against Gallagher,

it would be a violation of due process. Gallagher is entitled to have the undisputed facts and legal defenses addressed before a trial that the bankruptcy court says could violate due process.

## V.    TIMELINESS OF MOTION TO WITHDRAW REFERENCE

Gallagher's Motion for Mandatory and Permissive Withdrawal of Reference and Transfer of Adversary Proceeding to District Court is timely.

"The appropriateness of removal of the case to a district court for trial by jury, on asserted Seventh Amendment grounds, will become a question ripe for determination if and when the case becomes trial ready." Michaelesco v. Shefts, 303 B.R. 249, 253 (D. Conn. 2004) (citing In re Adelphi Institute, Inc., 112 B.R. 534, 538 (S.D.N.Y. 1990)); see also In re Wedtech Corp. v. Banco Popular de Puerto Rico, 94 B.R. 293, 297 (S.D. N.Y. 1988) (denying motion to withdraw reference in a non-core proceeding in which a jury demand was made because the case was still at the pretrial state); In re Adelphia Institute, Inc., 112 B.R. at 539 (same); In re Enron Corp., 2003 WL22171695 (S.D.N.Y. 2003) (same); In re Kenai Corp. v. National Union Fire Insurance Company, 137 B.R. 59 (S.D.N.Y. 1992) (denying motion to withdraw reference in a non-core proceeding in which a jury

demand was made because it was not clear the case was ready to proceed to trial).

The bankruptcy court has summarily denied summary judgment, has attempted to sever claims in violation of the rules of civil procedure, and has set 33 Estates' "claims" for what appear to be nonjury trials on May 22, 2006. Bart's agreement with the Estates, which mandates a total dismissal of all claims against Gallagher, is under advisement and should be approved by the bankruptcy court soon. Accordingly, now is the appropriate time for Gallagher to file his motion to withdraw the reference. See City Fire Equipment Company v. Ansil Fire Protection Wormald U.S., Inc., 125 B.R. 645 (N.D. Ala. 1989) (the bankruptcy court can handle all proceedings including ruling on dispositive motions, at which point the reference would be withdrawn).

WHEREFORE, premises considered, Gallagher requests this Court to withdraw the reference on the captioned adversary proceeding and to set this matter for a pretrial conference.

Respectfully submitted,

David B. Anderson (AND006)
Ryan K. Cochran  (COC020)
Deanna L. Weidner (WEI038)
Attorneys for Defendants
Gallagher, Lewis, Downey & Kim and
Michael T. Gallagher

OF COUNSEL:

WALLER, LANSDEN, DORTCH  & DAVIS, LLP
AmSouth-Harbert Plaza, Suite 1400
1901 6th Avenue North
Birmingham, AL  35203
Phone:  205-214-6380
Fax:  205-214-8787

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the above and foregoing Gallagher's Reply Brief in Support of Motion for Summary Judgment on Plaintiffs' Claims has been duly served upon counsel of record electronically and/or by mailing same by United States mail, properly addressed and postage prepaid, to the following:

      Mr. Steve Olen
      Mr. Royce A. Ray, III
      Olen, Nicholas & Copeland, P.C.
      P. O. Box 1826
      Mobile, AL  36633

      Mr. Frank L. Parker, Jr.
      Ms. Christina May Bolin
      Alford Clausen and McDonald, LLC
      One St. Louis Centre, Suite 5000
      Mobile, AL  36602

      Mr. Joseph P. Schilleci, Jr.
      Mr. David D. Schoel
      Mr. Gerald S. Topazi
      Natter & Fulmer, P.C.
      3800 Collonade Parkway, Suite 450
      Birmingham, AL  35243

      Mr. Curtis C. Reding
      Standing Chapter 13 Trustee
      P. O. Box 173
      Montgomery, AL  36101-0173

      Mr. Barry E. Teague
      P. O. Box 586
      Montgomery, AL  36101

Mr. Von G. Memory
Memory & Day
P. O. Box 4054
Montgomery, AL  36101

This the _19th_ day of April, 2006.

Of Counsel