# APPENDIX 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CHAPTER 13 |
| EDWARD CHILDS, | ) | |
| | ) | CASE NO.: 00-06028-WRS |
| Debtor. | ) | |

_____

| | | |
|---|---|---|
| CURTIS C. REDING, in his | ) | |
| capacity as Chapter 13 | ) | |
| Standing Trustee, and SUSAN S. | ) | |
| DePAOLO, Trustee, | ) | ADVERSARY PROCEEDING NO. |
| | ) | |
| Plaintiff, | ) | 03-01071 |
| | ) | |
| vs. | ) | |
| | ) | |
| MORRIS BART, P.L.C.; MORRIS | ) | |
| BART; GALLAGHER, LEWIS, DOWNEY | ) | |
| & KIM a/k/a THE GALLAGHER | ) | |
| FIRM; and MICHAEL T. | ) | |
| GALLAGHER, jointly and | ) | |
| severally, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| MICHAEL T. GALLAGHER and | ) | |
| GALLAGHER, LEWIS, DOWNEY & KIM | ) | |
| a/k/a THE GALLAGHER FIRM, | ) | |
| | ) | |
| Third Party | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| THE LAW OFFICES OF BEN C. | ) | |
| MARTIN, LLP and BEN C. MARTIN, | ) | |
| | ) | |
| Third Party | ) | |
| Defendants. | ) | |
| | ) | |
| MICHAEL T. GALLAGHER and | ) | |
| GALLAGHER, LEWIS, DOWNEY & KIM | ) | |
| a/k/a THE GALLAGHER FIRM, | ) | |

.o                          1

```
                                            )
          COUNTERCLAIMANTS                   )
          and THIRD PARTY                    )
          PLAINTIFFS,                        )
                                             )
vs.                                          )
                                             )
CURTIS C. REDING, in his                     )
capacity as Chapter 13                       )
Standing Trustee and the                     )
DEFENDANTS LISTED ON EXHIBIT A               )
ATTACHED HERETO,                             )
                                             )
          COUNTERCLAIM                        )
          DEFENDANTS and THIRD                )
          PARTY DEFENDANTS.                   )
```

## GALLAGHER'S BRIEF IN SUPPORT OF MOTION TO FOR SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS

**TABLE OF CONTENTS**

TABLE OF CONTENTS .............................................. I

INTRODUCTION ................................................... 1

BACKGROUND OF THIS ACTION ...................................... 4

IDENTIFICATION AND CLASSIFICATION OF THE 33 BANKRUPTCY
    ESTATES ASSERTING CLAIMS AGAINST GALLAGHER ............... 7

       A.   Gallagher Possesses No Direct Contractual
           Relationship with the Debtors Alleged to Be
           "At Issue" ...................................... 8

       B.   Debtors Who Were Not Referred to Gallagher ...... 8

       C.   Estates Whose Claims Were Abandoned to the
           Debtors Under 11 U.S.C. § 554(c) ............... 9

       D.   Debtors With 100% Chapter 13 Plans ............ 10

       E.   Debtors Whose Chapter 13 Bankruptcy Cases
           Were Dismissed ................................ 11

       F.   Childs, A Chapter 13 Debtor, Included His
           Acceptance of the Mississippi Settlement
           Offer In His Plan Which Was Consummated With
           Court Approval ................................ 12

       G.   Ben Martin's Work on the Thirteen
           Individuals Who Disclosed Their Bankruptcy
           Cases ........................................ 21

       H.   Chronological Categorization of Mississippi
           Fen-Phen Claimants ........................... 24

           1.   Post-Petition Retention of Counsel and
               Settlement of Claim. ..................... 24

           2.   Pre-Petition Retention of Counsel,
               Post-Petition Settlement of Claim. ........ 26

           3.   Pre-Petition Retention of Counsel, Pre-
               Petition Settlement of Claim and Post-
               Petition Payment by Special Master ........ 27

       I.   Pending Lotronex Claims ....................... 28

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

I.   SUMMARY JUDGMENT STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . 30

II.  THE DUTIES APPLICABLE TO THE VARIOUS COUNSEL AND
     FIDUCIARIES AND THE REMEDIES FOR THE BREACH OF
     THOSE DUTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

     A.   The Duties of Debtors, Debtor's Counsel and
          Trustees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

          1.   The Debtors are fiduciaries possessing
               federal and state law duties . . . . . . . . . . . . . . 32

          2.   Debtors' counsel is a fiduciary who
               undertakes to perform necessary
               bankruptcy services . . . . . . . . . . . . . . . . . . . . . . . 36

          3.   The Trustees are fiduciaries and
               representatives for the estates, but
               they possess different rights and
               duties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

     B.   Special Litigation Counsel Is Subject to the
          Duties Imposed Upon the Public, But Does Not
          Possess the Statutory or Contractual Duty to
          Perform the Bankruptcy Services Necessary to
          Obtain Court Approval for Employment of
          Counsel or for the Settlement of Claims . . . . . . . 39

     C.   Enforcement of Rights and Remedies Arising
          Out of Debtor Non-Disclosure Against Debtors
          and Bankruptcy and Special Counsel . . . . . . . . . . . . 41

     D.   The Practices of Gallagher With Respect to
          the Discovery of Debtor Violations of
          Statutory Duties Are Consistent With the
          Provisions of the Bankruptcy Code That the
          Trustees Seek to Enforce . . . . . . . . . . . . . . . . . . . . . . 44

III. THREE OF THE TRUSTEES' CAUSES OF ACTION DO NOT
     STATE CLAIMS AS A MATTER OF LAW, MUCH LESS CLAIMS
     AGAINST GALLAGHER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

     A.   Count One:  Breach of Duty to Comply with 11
          U.S.C. § 327(e) Fails to State A Claim . . . . . . . . 49

     B.   Count Two:  Breach of Duty to Comply with
          Bankruptcy Rule 9019 Fails to State A Claim . . . . 49

C.   Count Three:  Injury to Individual Debtor
     for Willful Violation of Automatic Stay
     Under § 362(h) Cannot Be Brought By a
     Trustee, and It Also Requires Actual
     Knowledge of the Bankruptcy Case .............. 50

IV.  THE TRUSTEE'S FOURTH CLAIM, COUNT FOUR:  USE OF
     11 U.S.C. § 105 FOR COMPENSATORY DAMAGES AND AN
     INJUNCTION FOR THE ALLEGED WILLFUL VIOLATION OF
     THE AUTOMATIC STAY REQUIRES THAT GALLAGHER HAVE
     ACTUAL KNOWLEDGE OF THE BANKRUPTCY CASES AND
     REQUIRES THE EXISTENCE OF SOME PROVISION OF THE
     BANKRUPTCY CODE TO BE CARRIED OUT ................. 52

     A.   The Trustees Cannot Establish By Clear and
          Convincing Evidence Any Willful Violation of
          the Automatic Stay by Gallagher .............. 52

     B.   Unless the Debtors, Other Alabama Counsel,
          Trustees and Bankruptcy Counsel Are Joined,
          There Are No Provisions of the Bankruptcy
          Code to be Carried Out Under § 105 ............. 54

V.   THE CHAPTER 13 TRUSTEE DOES NOT HAVE STANDING TO
     ASSERT THE DEBTOR'S CLAIMS OR TO ENFORCE THE
     AUTOMATIC STAY IN THE SIXTEEN CHAPTER 13 CASES ...... 55

     A.   A Chapter 13 Trustee Does Not Possess the
          Statutory Authority to Assert Claims That
          Belong to the Debtor. ........................ 56

     B.   Only the Chapter 13 Debtor Possess the
          Statutory Authority to Assert a Claim ......... 56

     C.   It Would be Inappropriate to Grant Standing
          Under the Circumstances of This Case .......... 58

VI.  SPECIAL CIRCUMSTANCES WARRANTING DISMISSAL OF
     CLAIMS OF SPECIFIC ESTATES ......................... 59

     A.   The Trustees' Claims Are Due To Be Dismissed
          Where the Debtors Were Not Gallagher
          Clients, Where the Cases Were Dismissed,
          Where the Claims Were Abandoned and Where
          the Plans Were 100% Plans ..................... 59

          1.   § 554(c) Abandonment ..................... 60

          2.    100% Chapter 13 Plans ..................... 60

          3.    Dismissed Cases .......................... 60

     B.    Bart and Gallagher Possess Compulsory
          Counterclaims As Pre-Petition Secured
          Creditors and/or Post-Petition Unsecured
          Creditors of the Various Estates .............. 64

     C.    In Order for the Trustees to Have Any Claim
          Based Upon the Mississippi Settlement, They
          Must Accept and Be Bound By Its Terms .......... 66

     D.    Reding Is Estopped By the Conduct of All
          Chapter 13 Debtors To Recover in This Case ..... 68

CONCLUSION ..................................................... 69

CERTIFICATE OF SERVICE ......................................... 70

## GALLAGHER'S BRIEF IN SUPPORT OF MOTION TO FOR SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS

Comes Now, Michael T. Gallagher and Gallagher, Lewis, Downey and Kim (now known as The Gallagher Law Firm) (collectively "Gallagher") and for his Memorandum in Support of Motion for Summary Judgment on Plaintiffs' Claims respectfully states as follows:

### INTRODUCTION

The Childs' complaint and the 32 new complaints filed on February 7, 2005 against Gallagher generally arise out of the failure of debtors, intentionally or unintentionally, to report pending tort claims to their bankruptcy counsel or to their Trustees; and, on the other hand, the same failure by debtors to report pending bankruptcy cases to their special (personal injury) counsel. This Court, in July of 2003, addressed the "common problem" of debtor non-disclosures in the context of a Chapter 13 debtor, his bankruptcy counsel and his special counsel, who, like Gallagher, acted in good faith and without actual knowledge of the Bankruptcy Case. See In re Smock, Case No. 01-5533-WRS-13 at *4 fn 2 (Bankr. M.D. Ala. 2003). This Court sanctioned the debtor for misconduct and the debtor's bankruptcy counsel for negligence, but not special counsel who was allowed to retain his fees.

> While one may argue that the Court has jurisdiction over the lawsuit proceeds as they

are property of the estate, it certainly would
strain notions of due process to sanction a
lawyer for violations of the bankruptcy laws when
he had no reason to know that a bankruptcy case
has been filed.

(App. 1, Memorandum Decision.)

The issues that arise out of a debtor's violation of
statutory and fiduciary duties can be both factually and legally
complex, and their solution can require a chronological analysis
of the accrual of each claim, the circumstances of retention of
special counsel by each debtor and the circumstances of
settlement of claims, all in relation to the pendency of each
bankruptcy case. In addition, there must be a legal analysis of
the duties applicable to the debtor, trustee, debtor's counsel,
special counsel and court-appointed special master under each of
such circumstances.

If § 105 is to be used "to carry out the provisions of
this title," then the purpose of these 32 new suits, like the
initial Childs suit, is unclear. The Trustees have
intentionally not sued: (a) the debtors who misappropriated the
Fen-Phen settlement funds or who failed to provide notice of
their bankruptcy cases under Bankruptcy Rule 2015 or who failed
to comply with § 327 and Bankruptcy Rules 2014 and 9019; (b) the
bankruptcy counsel who submitted to the jurisdiction of the
bankruptcy court but then failed to provide bankruptcy services;
or (c) the several Alabama counsel who were actually retained by

.o                                    2

debtors and who, contrary to Gallagher, were directly involved in the transactions made the bases of the Trustees' Complaints. Rather than use the statutory cause of action granted to a trustee by 11 U.S.C. § 542 (to which Gallagher possesses an absolute defense under § 542(c)), the Trustees impermissibly seek to use § 105 to eliminate § 542 from the Bankruptcy Code. In addition, the Trustees seek to use the Debtors' violations of statutory and fiduciary duties as the operative facts for suing Gallagher under three alleged, but non-existent, causes of action:  11 U.S.C. § 327, § 362(h) and Bankruptcy Rules 2014 and 9019 (Counts One through Three).

Using 11 U.S.C. § 105 (Count Four), the Trustees seek to enjoin Gallagher from ongoing conduct, which conduct, ironically, has been to use the Pacer system to discover the referral of debtors who may not possess valid claims in mass tort settlements.  Upon learning that a referred claimant may not have a claim because of a bankruptcy case Gallagher has noted the bankruptcy in his file to prevent any settlement package from being mailed to the debtor, and Gallagher has notified the referring counsel that he cannot accept the referral of a claim that may belong to a Chapter 7 or 13 bankruptcy estate.  Referring counsel then have contacted debtors and trustees in an effort to determine who owns the

claim; and, if it is an asset of some estate, whether or not the estate desires to participate in the group settlement.

The below-described case histories and classifications of the Childs estate and the 32 other bankruptcy estates which recently filed claims against Gallagher illustrates the complexity of the issues, the failure of the Trustees to state a claim and the good faith efforts by Gallagher to preserve the status quo with respect to potential property of bankruptcy estates and his cooperation with respect to the resolution of bankruptcy "issues" in the context of the settlement of mass tort litigation, debtor nondisclosures and/or misconduct and the failure of various parties in interest to satisfy their respective statutory and contractual duties.

### BACKGROUND OF THIS ACTION

Due to Gallagher's use of the Pacer system for the last two years, the Mississippi Fen-Phen Settlement (which was fully consummated in reliance upon two false written certifications of no bankruptcy by Childs and the other individuals claimed by the Trustees to be "at issue" and one false certification of authority to settle),presents a unique and non-recurring fact pattern. By the time Childs (the original plaintiff estate) filed his Chapter 13 case, he had already retained Bart and Bart had associated Gallagher as special counsel to join a group of almost 5,000 Fen-Phen

claimants whose claims were being settled in a Mississippi Chancery Court action in which a Qualified Settlement Fund was being administered by a Court-appointed Special Master. (Cf. App. 2, Gallagher Aff., Exh. C, Bart/Childs Retainer Agreement, Pl. Exh. 111; App. 3, Childs's Bankruptcy Docket #1, Petition.) Within the first month of his Chapter 13 case, in response to questioning from Collier Espy, Childs failed to include the Fen-Phen claim in his bankruptcy Schedules and he failed to include his bankruptcy case in the sworn Client Disclosure he executed to participate in the Mississippi Settlement.

Childs subsequently revealed at his § 341 meeting the fact that on a post-petition basis, without advising anyone, he had signed and submitted the settlement documents and he was waiting on a settlement check. (App. 4, Childs' 341 Meeting Transcript, Pl. Exh. 145.) Thereafter, Childs' joinder in the settlement was approved by this Court twice, once at the request of debtor's counsel in an amended plan and once at the request of Curtis Reding, Chapter 13 Trustee ("Reding"). (App. 5, Modification of Chapter 13 Plan, Pl. Exh. 115; App. 6, Trustee's Motion to Approve Settlement, Pl. Exh. 128; App. 7, Order Approving Settlement, Pl. Exh. 148, Childs Docket #64.) Gallagher did not become aware of the Childs bankruptcy case until after Childs executed one of the two receipts for his settlement checks on which he disclosed his bankruptcy case.

(App. 2, Gallagher Aff., ¶¶ 10-11.)    With the knowledge of Reding, as Trustee, and with two court authorizations, the Special Master then disbursed the Qualified Settlement Fund to Reding, thereby releasing contingent fees and costs (most, if not all, of which were secured and rendered pre-petition) to special counsel.

Reding initiated this Adversary Proceeding in the Childs bankruptcy case against Morris Bart, individually, and the law firm of Morris Bart, P.L.C. (collectively referred to as "Bart").    Bart joined Gallagher claiming indemnification; and, Gallagher, in turn, asserted indemnity claims against Ben Martin who, as part of the Fen-Phen group representation, had undertaken to attempt to resolve approximately fifteen bankruptcy issues that had arisen.    Reding asserted the same claims directly against Gallagher.

Susan DePaolo next joined Reding in the Third Amended Complaint, in which Reding and DePaolo (collectively the "Trustees") on March 30, 2005 filed 32 new cases against Gallagher and 60 new cases against Bart.    Rather than comply with the due process and allege the operative facts supporting the individual claims, the Trustees generally, and it appears, many times falsely, allege that Bart represented all 60 debtors and that Gallagher represented 33 of the debtors while they were in bankruptcy, and that Bart and Gallagher have possessed and

disbursed settlement funds without authority of the bankruptcy court.

## IDENTIFICATION AND CLASSIFICATION OF THE 33 BANKRUPTCY ESTATES ASSERTING CLAIMS AGAINST GALLAGHER

Twenty-nine of the 33 debtors participated in the Mississippi Fen-Phen Settlement with American Home Products ("AHP"); two of these 33 debtors have Lotronex claims (which are pending, but unsettled); and, two were persons whose names appeared on a list of referred Fen-Phen claimants but who were never actually referred to Gallagher. Of the 29 Fen-Phen claimants, it appears that 27 people received settlement checks from the Special Master, some appropriately and some inappropriately. Included in the 33 cases are dismissed bankruptcy cases, § 554(c) abandonments, 100% Chapter 13 plans and one debtor (Childs) whose settlement was approved by this Court, and the net proceeds paid to creditors.

For purpose of analysis, particularly with respect to the Trustees' claims that Gallagher is not entitled to a contingent fee as a secured creditor or as an administrative claimant, the 33 Estates must be separated by the nature of the claim, when it arose, when counsel was retained, when the claim was settled, when the settlement check was presented, when the person was a debtor in bankruptcy and whether the bankruptcy case was a Chapter 7 or a Chapter 13 case.

A.    **Gallagher Possesses No Direct Contractual Relationship with the Debtors Alleged to Be "At Issue"**

Gallagher was not retained by and has no direct agreement with any of the debtors "at issue." Instead, the referring counsel and the debtors enter into retainer agreements that allow the referring counsel to associate another counsel for a division of the contingent fee. Gallagher, in turn, has agreements with referring counsel to divide fees from the inclusion of referred claimants in group settlements. Where a referred claimant does not possess authority to assert a claim because of death or a bankruptcy case, or where the claimant has retained a different law firm, there is no valid claim for referring counsel to refer to Gallagher. (App. 2, Gallagher Aff., ¶ 16.) Under the Bart/Gallagher Co-Counsel Agreement, in particular, Gallagher did not undertake any contractual duty to represent a referred claimant who had no authority to pursue the claim and who needed bankruptcy advice and services with respect to the claim.

B.    **Debtors Who Were Not Referred to Gallagher**

The following debtors may have appeared on a list of referred clients, but they did not join the Mississippi Settlement.

1.   Christine Kelly (#22) (Chapter 7).   Ms. Kelly joined a different settlement with the Garrison Scott firm. (App. 8, McLemore Aff., ¶ 6.)

2.   Lisa Haynes (#28) (Chapter 7).   Ms. Haynes was a Bart client only.   The Lisa Haynes that Gallagher represented was a Mississippi claimant.   (App. 8, McLemore Aff., ¶ 6, Exh. B; Cf., App. 9, Bart/Haynes Retainer Agreement, Pl. Exh. 402 (Social Security Number xxx-xxx-2815) and App. 10, Haynes Database Information, (Social Security Number xxx-xx-4734).)

The claims of these Chapter 7 estates are due to be dismissed.

C.   **Estates Whose Claims Were Abandoned to the Debtors Under 11 U.S.C. § 554(c)**

The following Chapter 7 debtor scheduled his Fen-Phen claim and his case was closed, resulting in an abandonment under 11 U.S.C. § 554(c) as a matter of law.

1.   Bobbie Curtis (Robinson) (#5) (Chapter 7).   (App. 11, Reding Depo., pp. 234-36; App. 12, Curtis (Robinson) Schedules, Pl. Exh. 756, Curtis (Robinson) Case Summary, Pl. Exh. 750).

The claims of these Chapter 7 estates are due to be dismissed.

D. **Debtors With 100% Chapter 13 Plans**

The following Chapter 13 debtors proposed, and it appears from the court records, completed 100% Chapter 13 plans and received discharges. Pursuant to 11 U.S.C. § 1327(b), the effect of the confirmation orders was to vest all property of the estate in the debtor whether initially or upon completion of payments (depending upon the plan language). Discharges have been granted after payment in full, and therefore, these Fen-Phen claims belong to the Debtor and are not property of the estate that can be recovered by the Trustees.

Gloria Fort (#12) is a Chapter 13 debtor who had a 100% plan and received a discharge. (App. 14, Fort Case Summary, Pl. Exh. 330, Chapter 13 Trustee's Office Case Notes, Pl. Exh. 343; App. 11, Reding Depo., p. 123.)

Sandra Joiner (#20) is a Chapter 13 debtor who had a 100% plan and received a discharge on August 10, 2001. (App. 15, Joiner Case Summary, Pl. Exh. 555, Chapter 13 Trustee's Office Case Notes, Pl. Exh. 564.)

Karen Morgan (#24) is a Chapter 13 debtor who had a 100% plan and received a discharge on June 20, 2001. (App. 16, Morgan Case Summary, Pl. Exh. 680, Chapter 13 Trustee's Office Case Notes, Pl. Exh. 687.)

Melinda Russell (#25) is a Chapter 13 debtor who had a 100% plan and received a discharge on June 17, 2003. (App. 17,

Russell Case Summary, Pl. Exh. 760, Chapter 13 Trustee's Office Case Notes, Pl. Exh. 767.)

Lawanda Similton (#27)is a Chapter 13 debtor who had a 100% plan and received a discharge on February 7, 2002. (App. 18, Similton Case Summary, Pl. Exh. 810, Chapter 13 Trustee's Office Case Notes, Pl. Exh. 818.)

The claims of these Chapter 13 estates are due to be dismissed.

### E.    Debtors Whose Chapter 13 Bankruptcy Cases Were Dismissed

Under 11 U.S.C. § 349(b)(3) a dismissal of a bankruptcy case revests property in the debtor as a matter of law. (See App. 11, Reding Depo., p. 95 (dismissed cases).) On October 15, 2001, Sabrina McKinney, acting on behalf of Reding, wrote Bart (Wendy Davies), Martin, and the Special Master and admitted that the Trustees had no claim to Fen-Phen settlements in dismissed cases; and yet, the following estates filed these suits anyway.

> Please be advised that Ms. Davison's Chapter 13 case was dismissed by this Honorable Court on April 25, 2001. She is no longer in Chapter 13 bankruptcy in the Middle District of Alabama. We regret we are unable to assist you with the securing of the settlement in this case. However, as Ms. Davison is no longer in Chapter 13, we cannot rightfully insist on these funds being paid to us.

> (App. 19, October 15, 2001 McKinney Letter, Pl.

Exh. 193.)(Emphasis
Supplied.)

The following debtors' cases were dismissed.

1.  Rosie Davison (#6) (Chapter 13).     (App.  20,
    Davison  Case  Summary,  Pl. Exh. 185;  App.  11,
    Reding Depo., p. 92.)

2.  Audrey Edwards (#10) (Chapter 13).  She has filed
    two  bankruptcy  cases.     Her  first  case  was
    dismissed during which time she received her Fen-
    Phen settlement.     She filed a second bankruptcy
    petition on March 10, 2003, but at that time the
    Fen-Phen settlement had already been consummated.
    (App.  21,  Edward Case Summaries,  Pl. Exh.  290;
    App. 11, Reding Depo., pp. 119-20.)

3.  Charstain  Hicks  (#17)  (Chapter 13).     (App.  22,
    Hicks Case Summary, Pl. Exh. 415; App. 11, Reding
    Depo., pp. 91, 136.)

4.  Angela  Jarrett  (#18)  (Chapter 13).     (App.  23,
    Jarrett  Case  Summary,  Pl. Exh.  505;  App.  11,
    Reding Depo., p. 223.)

5.  Moses  Shears  (#26)  (Chapter 13).     (App.  24,
    Shears  Case  Summary,  Pl. Exh.  795;  App.  11,
    Reding Depo., p. 240.)

**F.   Childs, A Chapter 13 Debtor, Included His Acceptance
    of the Mississippi Settlement Offer In His Plan Which
    Was Consummated With Court Approval**

On February 8, 2000, Childs retained Morris Bart to

pursue the settlement of a Fen-Phen claim against AHP.  (App. 2,

Gallagher Aff., Exh. C, Bart/Childs Retainer Agreement, Pl. Exh.

111.)   On February 3, 2000 Bart entered into a Co-Counsel

Agreement with Gallagher for joint handling of Fen-Phen claims

only.   (App. 2, Gallagher Aff., Exh. D, Co-Counsel Agreement,

Pl. Exh. 24.)  Neither Bart, nor Gallagher, undertook to perform bankruptcy services for Childs.

In October of 2000, Childs, represented by Collier Espy ("Espy") as bankruptcy counsel, filed a Chapter 13 bankruptcy case in which case Childs failed to disclose his pending Fen-Phen claim or the Bart Retainer Agreement.  (App. 3, Childs Bankruptcy Docket #2, Schedules.)  Espy asked Childs about pending claims and acknowledges that they are signed under penalty of perjury and that Childs failed to schedule his Fen-Phen claim.  (App. 25, Espy Depo., pp. 89-90.)  Childs failed to provide notice of his bankruptcy case required by Bankruptcy Rule 2015(c).  As a Chapter 13 debtor Childs was in possession of the Fen-Phen claim (§ 1306(b)) with the right and power to use the same upon order entered after notice by Childs and hearing (§ 1303, § 363(b) and § 363(d)).  Childs was actually operating a sole proprietorship, and therefore, 11 U.S.C. § 1304 granted Childs additional powers with respect to his business.

Within one month of commencing his case, Childs, as a Chapter 13 debtor, executed and delivered to Bart a Client Disclosure and final Release for Bart to use to include Childs in the Mississippi Settlement in which Childs qualified for a gross award of $13,500.  (Cf. App. 2, Gallagher Aff., Exh. E, Childs Settlement Disclosure, Pl. Exh. 112; App. 2, Gallagher Aff., Exh. F, Childs AHP Release, Pl. Exh. 113; App. 3, Childs

Bankruptcy Docket #2, Schedules.) Childs disclosed his participation in the Mississippi Settlement at his § 341 meeting in December 2000. (App. 4, Childs 341 Meeting Transcript, Pl. Exh. 145; App. 25, Espy Depo., p. 87.) Similar to the conduct of the bankruptcy counsel criticized by this Court in Smock, from November of 2000 until September of 2001 Espy, who had contractually undertaken to perform bankruptcy services for Childs, relied upon Childs to explain to Bart, who is not a bankruptcy practitioner, that Childs was a debtor in bankruptcy and needed bankruptcy advice and services. Espy also admitted that it was Espy's duty, not Bart's or Gallagher's duty, to perform those bankruptcy services and to present the settlement to the court.

> Q. Do you recall, if any, what instructions were given to Mr. Childs following the disclosure of his Fen-Phen claim at the three forty-one hearing?
>
> A. No, sir. I do not recall specific -- I do not recall specifics, no sir.
>
> Q. Did you direct him to contact Morris Bart?
>
> A. I didn't know who his attorney was. I just told him that he needed to, you know, be in contact with that attorney and that attorney needed to -- if there was a settlement or anything, that we would need to present that to the court and the trustee -- settlement or recovery.
>
> Q. And did you follow up with him about his Fen-Phen claim after this three forty-one meeting?

A.   Well, after the three forty-one meeting, I would have drafted this preconfirmation modification, sent it to Ms. McKenny.  We would have discussed it.   And then when it was finalized, I would have sent a copy to Mr. Childs. Most likely I certainly would have served him with it.  <u>And I just left him with the standing instruction to contact us</u>.  So at that point that would be January of 2001.   I don't remember the next few months anything in particular.

(App. 25, Espy Depo., pp.<br>110-11.) (Emphasis supplied.)

A.   No, sir, other than, again, a standing instruction to keep myself and Mr. Reding apprised of any progress with that claim.

Q.   At that time that this preconfirmation was filed, did anything need to be done so that Mr. Reding could receive the recovery from the Fen-Phen lawsuit?

A.   Well, anything need to be done.  Well, based on this modification, it was my understanding that there were no other objections to the plan or, if there were others, I'd worked them out. So the plan was confirmed, and <u>Mr. Childs was just to inform myself so I could inform Mr. Reding or both of us of any -- any other progress in the claim.  So --</u>

Q.   And what did you plan to do when he informed you of an event in the Fen-Phen lawsuit?

A.   What I would have done would be sure that Mr. Reding was aware of it so that the proposed settlement, approval of fees would be presented to the court.

Q.   And did you plan to file those motions?

A.   You know, that's a real -- <u>that's kind of a gray area because</u>, as I said, in sevens as trustee, yes, I file them.  As debtor's attorney in seven, no, I do not.  In eleven we do.  You know, <u>in thirteens under section three twenty-</u>

<u>seven in bankruptcy rule two thousand and
fourteen, it's just kind of -- if I recall, it's
just open about how these applications are to
come.</u>

So I would have done so if I'd had the
information, and I guess I assume Mr. Reding
would. But somehow either one of us would have
to have, you know, the contract, the specifics of
settlement and the affidavit from civil counsel
as to their disinterestedness, which I didn't
have.

Q.   Did you ever try to get that from Mr. Bart?

A.   I don't recall specifically. I think I was
involved in some correspondence. I may have sent
a letter about the settlement. No, sir. I never
spoke with Mr. Bart.

> (App. 25, Espy Depo., pp.
> 112-14.) (Emphasis supplied.)

Q.   Is this September 11, 2001, letter your
first contact with the Morris Bart firm?

.   .   .   .

A.   My contact? Yes, sir. I would from
recollection. I mean whatever my file or
whatever letters Morris Bart has, I don't recall,
but I would think so except for the -- what was
the earlier settlement? I'm trying to look back
at Plaintiff's Exhibit 117 and 119. Yes, sir. I
don't remember in response to 117 and 119 that I
had any contact with Morris Bart, so I would say
most likely the September 11, 2001, letter would
be my first contact.

> (App. 25, Espy Depo., pp.
> 119-20.)

Consistent with Espy's recognition that "we [Espy and
Childs] would need to present that to the court and the
trustee," on or about February 7, 2001, Espy filed a Pre-

Confirmation Modification of Chapter 13 Plan in which Espy included Childs' claim described as a class action claim. (App. 5, Amended Plan, Pl. Exh. 115, Childs Docket #19.) The Plan generally proposed that Childs accept the settlement, obtain the settlement check and pay to the Chapter 13 Trustee the "recovery received" by Childs. (App. 5, Modification of Chapter 13 Plan, Pl. Exh. 115, Childs Docket #19.) Childs' Amended Plan was confirmed on or about February 26, 2001 and Childs was authorized to obtain his "recovery." (App. 3, Orders Confirming Plan, Childs Bankruptcy Docket # 21.) Espy subsequently scheduled the claim as property of the estate and, consistent with the Plan and the acceptance of the settlement, he described the property of the estate as being net of attorney's fees (which under the Childs facts were basically earned by the time the case was commenced).

Confirmation of the Plan bound Childs and the creditors (including Gallagher as a pre-petition secured creditor) and pursuant to § 1322(b)(8) the Plan authorized Childs to use property of the estate to pay creditors by accepting the Mississippi Settlement and obtaining the net recovery for the estate. On April 27, 2001, Childs performed under his Plan and executed a Release and Distribution Form in which Childs, acting on behalf of the Chapter 13 estate under a confirmed plan, released the Special Master and agreed to the

distribution of the settlement proceeds as follows:   (App. 26,
Childs 4/27/01 Release and Distribution Sheet, Pl. Exh. 117):

| | |
|---|---|
| Total Gross Settlement | $10,000.00 |
| Less Attorney Fee | $ 3,333.33 |
| Less Expenses | $   184.84 |
| Net Amount to Client | $ 6,481.83 |

Because the form included a bankruptcy question for
the second time, Childs disclosed to Bart and, in turn, the
Special Master, for the first time, his pending bankruptcy case
in April of 2001.

Rather than engage in the misconduct alleged by the
Trustees, the Special Master, upon seeing bankruptcy, complied
with § 542(a) and refused to release any settlement proceeds to
Childs until Childs could demonstrate that it was proper to do
so.   Reding knew that the funds were "being held by the Special
Master for American Home Products" (not by Bart or Gallagher),
but Reding has not sued the Special Master.   (App. 6, Trustee's
Motion to Approve Settlement, Pl. Exh. 128, Childs Docket #52.)
Subsequently, the Special Master increased distributions by
$3,500 and on August 22, 2001, Childs executed a second Release
and Distribution Sheet.   (App. 27, Childs 8/22/01 Release and
Distribution Sheet, Pl. Exh. 119.)

Gallagher learned of the Childs bankruptcy for the
first time in mid to late 2001 as an indirect result of the

Release and Distribution Sheet delivered to Bart.    (App. 2, Gallagher Aff., ¶ 11.)   For example, on September 4, 2001, Bart wrote  Gallagher  and  Tim  Goss  (another  settling  counsel) regarding 13 claimants who were in bankruptcy and advised that the Special Master would not release settlement checks for these individuals.    (App. 2, Gallagher Aff., Exh. H, 9/4/01 letter, Pl. Exh. 4196; App. 8, McLemore Aff., Exh. A).   When Espy failed to contact Bart for nine or ten months, Bart's office sent Childs a certified letter looking for Espy:

> The name of your bankruptcy attorney, the name of the Trustee handling your case,  and  their  address  and  phone numbers.
>
> (App.     28,     8/27/01 Letter, Pl. Exh. 120.)

Ben Martin, one of the numerous settling counsel, in consideration of a division of fees, agreed to perform the services necessary for referring counsel, such as Bart, to resolve pending bankruptcy issues so that the Special Master could release the funds to the true owner of the claim if the true owner desired to participate in the group settlement negotiated by Gallagher.     See generally Childs Adversary Proceeding Docket Entry #79, Memorandum Brief In Opposition to Motion for Summary Judgment Filed By Third Party Defendants, Ben C. Martin  and  the  Law  Office  of  Ben  C.  Martin  and  Childs Adversary  Proceeding  Docket  Entry  #80,  Notice  of  Filing  of

Affidavit in Support of Gallagher's Memorandum Brief In Opposition to Motion for Summary Judgment Filed by Third Party Defendants, Ben C. Martin and the Law Offices of Ben C. Martin.

Although Reding knew of the claim in December of 2000 and he knew of the Special Master in the fall of 2001 and he was required to assist Childs in performance under his plan (11 U.S.C. § 1302(b)(4)), it was not until June of 2002 that Reding corresponded with the Special Master regarding the bankruptcy case of Edward Childs. (App. 29, 6/20/02 Facsimile, Pl. Exh. 138; App. 30, 6/25/02 Letter, Pl. Exh. 139.) Reding thanked the Special Master for providing him with the Release and Distribution Sheets (that showed attorney's fees and costs) and asked that the Debtor's (Childs') funds ($8,815.16), which were net of Bart's and Gallagher's attorneys' fees and expenses, be paid to the Trustee. Id. By check dated June 28, 2002, the Special Master paid $8,815.16 to the Trustee. (App. 31, Settlement Funds, Pl. Exh. 140.) Once the Special Master authorized the release of funds to Childs, under the settlement accepted by the estate, Gallagher was authorized to withdraw fees from trust for the payment of attorney's fees and expenses. (App. 2, Gallagher Aff., ¶ 13.) When this suit was commenced to recover allegedly unauthorized attorney's fees, Gallagher did not desire to litigate over his percentage of (approximately $2,000 to $3,000) the contingent fees, so he returned the fees

(that were earned when Childs' estate accepted the settlement) to Reding.  (App. 2, Gallagher Aff., ¶ 20.)

## G.  Ben Martin's Work on the Thirteen Individuals Who Disclosed Their Bankruptcy Cases

On September 4, 2001, Bart wrote John Kim ("Kim") and Gallagher informing Kim and Gallagher about "several problem settlements remaining, primarily because of bankruptcy and death."  (App. 2, Gallagher Aff., Exh. H, 9/4/01 Letter, Pl. Exh. 4196; App. 8, McLemore Aff., Exh. A.)  In that letter Bart stated that he was "turning these cases back over to you to resolve these problems so we can complete the settlements."  Id. The letter identified thirteen claimants who disclosed their bankruptcy on their Release and Distribution Sheets.  Id.  Ben Martin had the responsibility to "clear" the bankruptcy issues related to these claimants.  (App. 37, 10/4/01 Letter, Pl. Exh. 28 at Exh. 14.)  The Trustees have asserted claims on behalf of these individuals.  What follows is a sample of Martin's efforts to resolve the bankruptcy issues of these claimants.

1.  John G. Anderson ("At Issue" in the Northern District):  On October 3, 2001, Chapter 13 Trustee, David P. Rogers, wrote Cothren, the Special Master, the Martin and Bart and informed them that "the Trustee does not object to [the payment of the settlement directly to Anderson]."  (App. 32, 10/3/01 Letter, Pl. Exh. 10.)  Thereafter, the Trustee filed

Trustee's Motion for Direction Regarding Disbursement of Funds and obtained court approval of the settlement directing that the funds pay off the remainder of Anderson's plan and the excess funds be paid to Anderson. (App. 33, Trustee's Motion, Pl. Exh. 1069; App. 34, Order Granting Motion.)

      2.  <u>Edward Childs ("At Issue" in the Middle District)</u>: Payment of the net amount of Childs' settlement award was made by the Special Master directly to Reding on June 28, 2002. (App. 31, Settlement Funds, Pl. Exh. 140.)

      3.  <u>Rosie Davison ("At Issue" in the Middle District)</u>: Chapter 13 Trustee stated that it had no interest in settlement because her bankruptcy case was dismissed. (App. 19, 10/15/01 Letter, Pl. Exh. 193).

      4.  <u>Sarah Dial ("At Issue" in the Northern District)</u>: On October 3, 2001, Chapter 13 Trustee, David P. Rogers, wrote Cothren, the Special Master, Martin and Bart and informed them that "the trustee does not object to the payment of [the settlement directly to Dial]". (App. 32, 10/3/01 Letter, Pl. Exh. 10.)

      5.  <u>Jerry D. Hoagland ("At Issue" in the Northern District")</u>: On July 26, 2003, Cottingham wrote Martin regarding Hoagland stating: "This case is paid out, and proceeds should be paid directly to him." (App. 39, Cottingham 7/26/02 letter.)

6.    <u>Keisha Killings</u> ("At Issue" in the Northern District): On October 3, 2001, Chapter 13 Trustee, David P. Rogers, wrote Cothren, the Special Master, Martin and Bart and informed them that "the trustee does not object to the payment of [the settlement directly to Killings]." (App. 32, 10/3/01 Letter, Pl. Exh. 10.)

7.    <u>Donna Martin-Dockery</u> ("At Issue" in the Northern District): Claims related to this individual were resolved by court ordered mediation. (App. 35, Order Approving Mediation Award.) Gallagher was one of the parties released in the Settlement and Release Agreement executed by Cottingham. (App. 35, Settlement and Release Agreement.)

8.    <u>Connie Miles</u>: The settlement was approved by the court and the net award paid to the trustee. (App. 36, Bankruptcy Administrators Motion for Status Conference, Order (11/20/01, Motion to Amend Order of 11/20/01, Order (1/15/02), Settlement Funds (payable to Cottingham).)

9.    <u>Annie Nabors</u> ("At Issue" in the Northern District): On October 3, 2001, Chapter 13 Trustee, David P. Rogers, wrote Cothren, the Special Master, Martin and Bart and informed them that "the trustee does not object to the payment of [the settlement amount directly to Nabors]." (App. 32, 10/3/01 Letter, Pl. Exh. 10.)

10.  Brenda Sue Speights:  Ms. Speights received her Chapter 7 discharge from Judge Bennett in August of 1996 before her Fen-Phen claim arose.  (App. 37, 10/4/01 Letter, Pl. Exh. 28, Exh. 14 (Attached Order of Discharge).)

11.  Teresa Ann Williams ("At Issue" in the Northern District):  The settlement was approved by the court and the net award paid to the Trustee.  (App. 38, Debtor's Motion to Approve Settlement, Order (7/30/01).)

12.  Charstain Hicks ("At Issue" in the Northern District):  Hicks' bankruptcy case was dismissed July 9, 2002. (App. 22, Hicks' Case Summary, Pl. Exh. 415.)

## H.  Chronological Categorization of Mississippi Fen-Phen Claimants

There are three basic chronological fact patterns for the 27 Fen-Phen claimants who misrepresented or concealed their status and authority and received their settlement checks.

### 1.  Post-Petition Retention of Counsel and Settlement of Claim.

The following Chapter 7 Debtors and Chapter 13 Estates retained Bart and were referred to Gallagher who settled Fen-Phen claims all on a post-petition basis without knowledge of their bankruptcy cases.

a.  Dorothy Anderson (#1) (Chapter 13).  (App. 40, Anderson Case Summary, Pl. Exh. 61, Bart/Anderson Retainer Agreement, Pl. Exh.

63 and Anderson Settlement Disclosure, Pl. Exh. 64.)

b.   Amy Betzhold (#3) (Chapter 7). (App. 41, Betzhold Case Summary, Pl. Exh. 85, Bart/Betzhold Retainer Agreement, Pl. Exh. 86 and Betzhold Settlement Disclosure, Pl. Exh. 90.)

c.   Rosie Davison (#6) (Chapter 13). (App. 20, Davison Case Summary, Pl. Exh. 185, Bart/Davison Retainer Agreement, Pl. Exh. 186, Davison Release and Distribution Sheet, Pl. Exh. 188.)

d.   Mary F. Gillis (#14) (Chapter 7). (App. 42, Gillis Case Summary, Pl. Exh. 345, Bart/Gillis Retainer Agreement, Pl. Exh. 346 and Gillis Settlement Disclosure, Pl. Exh. 348.)

e.   Madgelyon Johnson (#19) (Chapter 13). (App. 43, Johnson Case Summary, Pl. Exh. 520, Bart/Johnson Retainer Agreement, Pl. Exh. 521 and Johnson Settlement Disclosure, Pl. Exh. 523.)

f.   Sandra Joiner (#20) (Chapter 13). (App. 15, Joiner Case Summary, Pl. Exh. 555, Bart/Joiner Retainer Agreement, Pl. Exh. 556 and Joiner Settlement Disclosure, Pl. Exh. 558.)

g.   Karen Morgan (#24) (Chapter 13). (App. 16, Morgan Case Summary, Pl. Exh. 680, Bart/Morgan Retainer Agreement, Pl. Exh. 681, Morgan Settlement Disclosure, Pl. Exh. 682.)

h.   Melinda Russell (#25) (Chapter 13). (App. 17, Russell Case Summary, Pl. Exh. 760, Bart/Russell Retainer Agreement, Pl. Exh. 761 and Russell Settlement Disclosure, Pl. Exh. 762.)

i.   Lawanda Similton (#27) (Chapter 13). (App. 18, Similton Case Summary, Pl. Exh. 810, Bart/Similton Retainer Agreement, Pl. Exh.

811 and Similton Settlement Disclosure, Pl. Exh. 813.)

j.    Gail Summers (#29) (Chapter 7). (App. 44, Summers Case Summary, Pl. Exh. 840, Summers Release and Distribution Sheet, Pl. Exh. 841.)

k.    Barbara Wells (#32) (Chapter 13). App. 45, Wells Case Summary, Pl. Exh. 925, Bart/Wells Retainer Agreement, Pl. Exh. 926 and Wells Settlement Disclosure, Pl. Exh. 927.

2.    Pre-Petition Retention of Counsel, Post-Petition Settlement of Claim.

Having retained Bart and having been referred to Gallagher on a pre-petition basis, the following Chapter 7 debtors and Chapter 13 Estates settled Fen-Phen claims on a post-petition basis without disclosing their bankruptcy cases to Gallagher.

a.    Edward Childs (#4) (Chapter 13). (App. 46, Childs Case Summary, Pl. Exh. 110; App. 2, Gallagher Aff., Exh. C, Bart/Childs Retainer Agreement, Pl. Exh. 111; App. 2, Gallagher Aff., Exh. E, Childs Settlement Disclosure, Pl. Exh. 112.)

b.    Sharon Day (#7) (Chapter 7). (App. 47, Day Case Summary, Pl. Exh. 195, Day Phone Intake Form, Pl. Exh. 196, Day Settlement Disclosure, Pl. Exh. 198.)

c.    Sarah Dennis (#8) (Chapter 7). (App. 48, Dennis Case Summary, Pl. Exh. 220, Bart/Dennis Retainer Agreement, Pl. Exh. 222 and Dennis Settlement Disclosure, Pl. Exh. 224.)

d.    Mae Dickinson (#9) (Chapter 13). (App. 49, Dickinson Case Summary, Pl. Exh. 240, Bart/Dickinson Retainer Agreement, Pl. Exh.

241 and Dickinson Settlement Disclosure, Pl. Exh. 242.)

e.   Patricia Ford (#11) (Chapter 7). (App. 50, Ford Case Summary, Pl. Exh. 320, Bart/Ford Retainer Agreement, Pl. Exh. 321 and Ford Settlement Disclosure, Pl. Exh. 322.)

f.   Gloria Fort (#12) (Chapter 13). (App. 14, Fort Case Summary, Pl. Exh. 330, Bart/Fort Retainer Agreement, Pl. Exh. 331 and Fort Settlement Disclosure, Pl. Exh. 332.)

g.   Sandra Gilbert (Welcher) (#13) (Chapter 7). (App. 51, Gilbert Case Summary, Pl. Exh. 915, Bart/Gilbert Retainer Agreement, Pl. Exh. 916 and Gilbert Settlement Disclosure, Pl. Exh. 919.)

h.   Gladys Grandberry (#15) (Chapter 13). (App. 52, Grandberry Case Summary, Pl. Exh. 360, Bart/Grandberry Retainer Agreement, Pl. Exh. 361, Grandberry Settlement Disclosure, Pl. Exh. 362 and Grandberry Phone Intake Form, Pl. Exh. 365.)

i.   Angela Jarrett (#18) (Chapter 13). (App. 23, Jarrett Case Summary, Pl. Exh. 505, Bart/Jarrett Retainer Agreement, Pl. Exh. 506 and Jarrett Settlement Disclosure, Pl. Exh. 510.)

j.   Claudia Josey (#21) (Chapter 7). (App. 53, Josey Case Summary, Pl. Exh. 570, Bart/Josey Retainer Agreement, Pl. Exh. 571 and Josey Settlement Disclosure, Pl. Exh. 574.)

k.   Brenda Ziglar (#33) (Chapter 13). (App. 54, Ziglar Case Summary, Pl. Exh. 965, Bart/Ziglar Retainer Agreement, Pl. Exh. 966 and Ziglar Settlement Disclosure, Pl. Exh. 969.)

3.   Pre-Petition Retention of Counsel, Pre-Petition Settlement of Claim and Post-Petition Payment by Special Master

Having retained counsel, referred claims and settled Fen-Phen claims on a pre-petition basis, the following Chapter 7 and Chapter 13 debtors received settlement checks without disclosing their bankruptcy cases.

> a. <u>Shellwanda Babers (#2) (Chapter 7)</u>. (App. 55, Babers Case Summary, Pl. Exh. 70, Bart/Babers Retainer Agreement, Pl. Exh. 71 and Babers Settlement Disclosure, Pl. Exh. 74.)

> b. <u>Audrey Edward (#10) (Chapter 13)</u>. (App. 21, Edward Case Summary, Pl. Exh. 290, Bart/Edward Retainer Agreement, Pl. Exh. 291 and Edward Settlement Disclosure, Pl. Exh. 293.)

> c. <u>Evelyn Terry (#30) (Chapter 7)</u>. (App. 56, Terry Case Summary, Pl. Exh. 850, Bart/Terry Retainer Agreement, Pl. Exh. 851 and Terry Settlement Disclosure, Pl. Exh. 855.)

> d. <u>Pamela Thornell (#55) (Chapter 7)</u>. (App. 57, Thornell Case Summary, Pl. Exh. 885, Bart/Thornell Retainer Agreement, Pl. Exh. 887 and Thornell Settlement Disclosure, Pl. Exh. 888.)

## I.    **Pending Lotronex Claims**

Gallagher is currently working on other group settlements of mass tort claims in which cases he has received referrals of claimants who filed bankruptcy cases and may not have authority to pursue their claims. For example, Gallagher has been referred a number of persons who ingested Lotronex, a drug alleged to cause intestinal problems. Two of the plaintiff estates, Billie Jean Montgomery (#23) (Chapter 7 case commenced January 8, 2003) and Carolyn Stephens (#28) (Chapter 7 case

commenced February 12, 2003) possess Lotronex claims. These persons each hired Langston, Sweet and Freese (Birmingham, Alabama), now Sweet & Freese, and the Sweet & Freese firm referred these clients to Gallagher. Any contingent fees earned will be divided among the Sweet & Freese Firm, The Gallagher Law Firm, Capshaw, Goss & Bowers, L.L.P. (the "Goss Firm") and Ben Martin.

In 2003 Gallagher performed a Pacer search on all referred Lotronex claimants and created a list that noted bankruptcy cases. (App. 8 McLemore Aff., ¶ 8, Exh. C.) In addition to making a notation in his files, Gallagher notified referring counsel that he could not accept the referral of bankrupt individuals who may not own or possess the authority to settle any claim. (App. 8, McLemore Aff., ¶¶ 9-10, Exhs. D and E.) Since no settlement offer had been received that required consideration; and, since a new Pacer search would need to be conducted anyway if a settlement offer were to be received, generally referring counsel have taken no action to resolve bankruptcy issues on pending claims.

In connection with the Lotronex claims, as is the case with other pending mass tort personal injury claims, Gallagher has attempted to negotiate a favorable group settlement with the manufacturers of the drug. Where a bankruptcy issue is involved, Gallagher has noted the file and has attempted to

preserve the status quo.  If a group settlement is reached, Gallagher then conducts another Pacer search and he again notifies referring counsel that the referral cannot be accepted and the claimant cannot be included in the settlement without proof of authority.  Gallagher has cooperated with Trustees and other counsel in an effort to supply information so that bankruptcy estates can determine the ownership of claims and whether or not to participate in group settlements and accept the benefits of Gallagher's and other counsel's efforts, for which payment would then be due.  If the referred claimant does not qualify, then the claim cannot be accepted by Gallagher; or, if the Trustee or Chapter 13 debtor determines not to hire Gallagher, then referring or other counsel hired by the estate will pursue or abandon the claim as they deem appropriate.

**ARGUMENT**

## I.    SUMMARY JUDGMENT STANDARD

Pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure, Rule 56 of the Federal Rules of Civil Procedure is applicable in adversary proceedings.    See Fed.R.Bankr.P., Rule 7056.    The Rule 56 summary judgment standard is stated as follows in <u>Bryant v. Cruises, Inc.</u>, 6 F.Supp. 2d 314, 1317 (N.D. Ala.  1998):

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forwith if the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party has the initial burden of showing the absence of a genuine issue as to any material fact. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986)). In determining whether this burden is met, the court must view the evidence "and all factual references arising from it in the light most favorable to the nonmoving party." Id. (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed. 2d 142 (1970)).

Once the movant's initial burden is met, "the burden shifts to the nonmovant to 'come forward with specific facts showing that there is a genuine issue for trial.'" Id. (quoting Matsushita Electric Industrial Co. v. Zenith Radio Corp.,475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)). In meeting its burden a "mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing Anderson, 477 U.S. at 242, 106 S.Ct 2505, 91 L.Ed.2d 202). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita, 575 U.S. at 587, 106 S.Ct. at 1356 (citation omitted).

## II.  THE DUTIES APPLICABLE TO THE VARIOUS COUNSEL AND FIDUCIARIES AND THE REMEDIES FOR THE BREACH OF THOSE DUTIES

When a debtor fails to disclose a pending claim or bankruptcy case there are various rights, duties and remedies that pertain to the debtor, debtor's bankruptcy counsel, a Chapter 7 Trustee, a Chapter 13 Trustee, debtor's special

counsel and a Special Master appointed by the final order of a state chancery court administering a Qualified Settlement Fund in a mass tort settlement.

## A.    The Duties of Debtors, Debtor's Counsel and Trustees

### 1.    The Debtors are fiduciaries possessing federal and state law duties

Pursuant to 11 U.S.C. § 521(1) and Bankruptcy Rule 1007(b), a debtor must complete a Schedule of assets.  Pursuant to Bankruptcy Rule 2015(a)(4) and (c), a debtor is required to give notice of the bankruptcy case to any entity (e.g., the Special Master administering the Qualified Settlement Fund) holding the debtor's money.  A debtor has an affirmative duty to be truthful and disclose all assets.  See e.g., In re Robinson, 292 B.R. 599, 607-08 (Bankr. S.D. Ohio 2003); In re Colvin, 288 B.R. 477, 479-80 (E.D. Mich. 2003); Van Roy vs. Watkins (In re Watkins), 84 B.R. 246, 250 (Bankr. S.D. Fla. 1988) (citing Chalik vs. Moorefield (In re Chalik), 748 F.2d 616, 618 (11th Cir. 1984) ("The veracity of the [debtor's] statements is essential to the successful administration of the Bankruptcy Code.").

Pursuant to the express language of 11 U.S.C. § 327(e), and Bankruptcy Rules 2014 and 9019, only the "Trustee" (including debtor) is authorized to hire counsel to "represent" the debtor or trustee as the representative of the bankruptcy

estate in connection with a personal injury claim or the approval of a settlement thereof under Rule 9019. Since this power is limited by statute to the fiduciaries for the estates (Trustees and Chapter 13 debtors), then the failure to exercise that power, to the extent there can be a "duty" to exercise a "power," can only be asserted against the fiduciaries and their bankruptcy counsel who undertook to perform the bankruptcy services necessary to exercise those powers.

Other than the alleged injury to individual debtors by a willful violation of the automatic stay (Count Three § 362(h)), the Trustees entire case is premised upon the alleged breach of the duty to obtain court approval for the retention of special counsel and for the compromise of claims. Contrary to the express language of the statute and contrary to the contractual undertaking of bankruptcy counsel, Gallagher was under no duty, statutory or contractual, to determine whether or not the referred claimant is a proper party to the settlement; and, if the owner of the claim is not the debtor but the estate, Gallagher is under no duty to represent the estate in obtaining approval for the settlement and the allowance of contingent fees to the various special counsel.

This issue of statutory construction was before Judge Mitchell in the decision of In re WAPI, Inc., 171 B.R. 130 (N.D. Ala. 1994), which decision mandates the dismissal of Counts One

and Two.  In WAPI a business broker who had performed services on a post-petition basis (without court approval) and whose contract with the debtor had expired, claimed a fee for a subsequent sale of assets by filing an application to approve the broker's employment on a nunc pro tunc basis.  Judge Mitchell analyzed the law and the claims and properly concluded that the express language of § 327 and Bankruptcy Rule 2014 limited the power to retain professionals to the fiduciaries of the estate (debtors, or trustees, or committees where applicable).  WAPI, 171 B.R. at 133.  The broker argued the debtor's lack of incentive to request employment under § 327 as grounds justifying the broker's exercise of that power; however, Judge Mitchell ruled that the intent of the parties was immaterial and that:

> ...because the Code and Rules require that only they may do so, this Court has no authority whatsoever to approve [the broker's] employment by its own application.
>
> In re WAPI, Inc., 171 B.R. at 133.

The Court further ruled that § 105 could not be used to expand § 327 to include the professionals themselves.  Id.

In so ruling, the Court literally applied § 327 and Bankruptcy Rule 2014 as authorizing, but not requiring, debtors and trustees to obtain court approval of retention of special

counsel.    Pursuant  to  11  U.S.C.  § 103(a),  § 327  applies  in
Chapters 7 and 13 cases as well as in Chapter 11 cases.

In  the  context  of  the  Mississippi  Settlement,  the  27
debtors  who  received  their  checks  possessed  the  statutory  and
fiduciary  duty  to  schedule  their  Fen-Phen  claims,  and,  to
provide  notice  of  their  bankruptcy  cases  to  the  Special  Master
as  well  as  to  Gallagher;  and,  these  27  debtors  committed  either
innocent  or  intentional  fraud  and/or  suppression  in  order  to
induce  Bart,  Gallagher  and  the  Special  Master  to  act  with
respect  to  alleged  assets  of  the  various  plaintiff  estates.
With  respect  to  the  retention  of  counsel  and  settlement  of
claim,  under  the  statute  and  the  WAPI  case,  the  debtors  and
trustees  possess  the  sole  power  to  seek  approval  of  the  court
and  there  can  be  no  claim  under  § 327  or  Bankruptcy  Rules  2014
or 9019 against special counsel.

In  response  to  Gallagher's  counterclaims,  Mr.  Reding's
co-counsel,  who  have  now  been  terminated  for  allegedly  making
incorrect  statements  of  law,  correctly  analyzed  in  the
Bankruptcy Code and the WAPI decision.

> The  Gallagher  Defendants  cannot,  however,  make
> such  an  application.  See  11  U.S.C.  § 327;  Fed.
> R.  Bankr.  P.  2014  (a)  (retention  of  a
> professional  may  be  only  by  application  of  the
> trustee  or  a  committee);  In re WAPI, Inc.,  171
> B.R.  130  (Bankr.  N.D.  Ala.  1994).  Nothing  in  the
> Bankruptcy  Code  allows  the  Gallagher  Defendants
> to  make  their  own  application  for  retention  or
> fees.    In re WAPI, Inc.,  171  B.R.  at  133

(allowing the professional to make its own application to be employed would "eviscerate Section 327 and its mandate that the trustee (or debtor in possession) or committee seek the approval of the professional sought to be employed.")

and

In sum, to the extent that the Gallagher Defendants seek any form of retention or compensation, they cannot do so themselves....In re WAPI, Inc., supra, Fed. R. Bankr. P. 7001.

(App. 58, The Trustee's Reply Brief in Further Support of Motion to Dismiss Counterclaim at 4, 6.)

2.   **Debtors' counsel is a fiduciary who undertakes to perform necessary bankruptcy services**

Debtor's counsel is a fiduciary for the estate and possesses the affirmative duty to inquire of the debtor whether or not there exist any pending claims. See, e.g., In re GIT-N-GO, 321 B.R. 54, 59 (Bankr. N.D. Okla. 2004). Debtor's counsel generally undertakes to perform all bankruptcy services for the debtor which would include notifying special counsel of the pendency of a bankruptcy case. In In re Smock, Case No. 01-5533-WRS-13 at *4, 6 (Bankr. M.D. Ala. 2003) this Court found that bankruptcy counsel (similarly situated to Espy in the Childs case) had a duty to notify special counsel that the "net proceeds" were to be paid to the Trustee and was negligent for failing to do so:

"[I]f nothing else, [debtor's bankruptcy counsel] should have made [special counsel] aware that the

net proceeds of the lawsuit were to be paid to the Chapter 13 trustee and [Debtor's bankruptcy counsel] was negligent in failing to notify [special counsel]").

In the context of the Mississippi Settlement and the two Lotronex claims, other than Collier Espy who asked Childs, it is as yet unknown what debtors' bankruptcy counsel did to inquire about and discover pending claims. Gallagher assumes that the debtors similarly concealed their claims from their bankruptcy counsel, so that their counsel did not even know to retain Bart and Gallagher or to seek approval of any settlements. Contrary to the Trustees' allegations concerning the duty to obtain court approvals, with respect to Espy, it is clear that once Child's settlement of his claim was discovered Espy performed his and Childs' duties in a very efficient manner by including Childs' acceptance of and participation in the Mississippi Settlement in Childs plan and the payment of his recovery (scheduled as being net of attorneys' fees and costs) to his creditors. Reding also had the Childs' settlement approved so that he, rather than Childs, could receive the net funds directly under § 1306(b) and § 1326(a)(1). Reding has no claim against Espy for the Trustees' alleged breach of the duties he undertook in connection with § 327 and Bankruptcy Rules 2014 and 9019; and, any claim against Espy for his delay in contacting Bart on a $13,500 claim is minimal.

**3. The Trustees are fiduciaries and representatives for the estates, but they possess different rights and duties**

A Chapter 7 trustee is the representative of and a fiduciary for the estate. See 11 U.S.C. § 323(a) and § 704(1). A Chapter 13 trustee is also a fiduciary and representative of the estate; however, a Chapter 13 trustee (11 U.S.C. § 1302) does not possess the duty to reduce assets to money that is contained in 11 U.S.C. § 704(1). A Chapter 13 trustee must assist the debtor in performing under the plan. 11 U.S.C. § 1302(b)(4). There is conflicting caselaw whether a Chapter 13 trustee even has standing to pursue claims on behalf of the estate which is discussed below. All trustees must investigate the financial affairs of the debtor under § 704(4). A trustee has the capacity to sue or be sued. 11 U.S.C. § 323(b). With respect to various rights and remedies asserted on behalf of an estate, a trustee steps into the shoes of a debtor. In re Hunter, 2001 WL 34076613 (Bankr. N.D. Ohio 2001); In re Gaudette, 241 B.R. 491 (D.N.H. 1999).

In the context of the Mississippi Settlement and the two Lotronex claims, all Trustees should have asked the debtors questions at § 341 meetings that would, absent intentional concealment, have revealed the pending claims. The Chapter 13 trustees should have assisted the debtor, as did Reding in the Childs case.

Because the Trustees step into the debtors' shoes, they cannot assert claims that are based upon a debtor's fraud or a debtor's breach of statutory and fiduciary duties. <u>See</u> <u>In re Gaudette (Erricola v. Gaudette)</u>, 241 B.R. 491, 500-02 (Bankr. D. N.H. 1999) (trustee who steps into the shoes of the debtor cannot sue a co-conspirator alleging wrongful conduct committed in connection with debtor's conduct); <u>In re Rice (Hunter vs. Contimortgage Corp.</u>, Case No. 00-3139, 00-31646, 2001 WL 34076613, * 5 (Bankr. N.D. Ohio July 12, 2001) (trustee in bankruptcy stands in the shoes of the debtor). Similarly, where it was a Chapter 13 debtor that engaged in misconduct with respect to an asset of the estate, the Chapter 13 estate cannot merely change fiduciaries and through the Trustee seek to profit from the prior fiduciary's misconduct in connection with such asset.

**B.** **Special Litigation Counsel Is Subject to the Duties Imposed Upon the Public, But Does Not Possess the Statutory or Contractual Duty to Perform the Bankruptcy Services Necessary to Obtain Court Approval for Employment of Counsel or for the Settlement of Claims**

Contrary to the allegations of the Trustees, there is no statutory imposition upon or contractual undertaking by Gallagher of <u>any</u> duties relating to the debtors or their bankruptcy estates. Instead, special litigation counsel (like Gallagher) who discovers that a referred claimant may not own

the claim because of a bankruptcy case possesses the duties that all persons, firms and entities possess not to violate, knowingly, the automatic stay (11 U.S.C. § 105 or § 362(h), as applicable) and to be accountable for and to turnover assets of the estate (11 U.S.C. § 542(a)).

Special litigation counsel controlling the settlement of a personal injury claim or a Special Master in possession of its proceeds on a post-petition basis would be an entity in control of property if the claim is property of the estate. If it is property of the estate under 11 U.S.C. § 542(a), such entity must "account" for the property or its value. Pursuant to the express language of 11 U.S.C. § 542(c) an entity (which includes person (11 U.S.C. § 101(15)) that "has neither actual notice nor actual knowledge" of the bankruptcy case (like Bart, Gallagher and the Special Master) may transfer property of the estate (i.e., deliver the Special Master Fen-Phen settlement checks to debtors) in good faith as if the bankruptcy case had not been commenced.

Once Gallagher learns of a pending bankruptcy case, he would be accountable for any property of the estate in his possession; however, in the context of the Mississippi Settlement, the Special Master, not Gallagher, controlled the settlement funds; and, by the time Gallagher learned of the various bankruptcy cases, the Special Master had already paid

the settlement funds to the debtors and had authorized Gallagher to withdraw his and Bart's fees from trust; and, there was no property of these Chapter 7 and 13 estates for which Gallagher needed to account. With respect to the two Lotronex claims the status quo is being preserved pending a determination by referring counsel and the estates of who owns these claims.

C.    **Enforcement of Rights and Remedies Arising Out of Debtor Non-Disclosure Against Debtors and Bankruptcy and Special Counsel**

The courts that have addressed similar fact situations (which have involved single claims or causes of action, not group settlements of mass torts) have ruled in favor of special counsel (who settled cases and/or paid funds to the debtors without actual knowledge of any bankruptcy case) and have ruled against the debtors and their bankruptcy counsel. This Court, in In re Smock, required debtor's counsel (who should have notified special counsel to pay the net proceeds to the Trustee) to forfeit his fee as bankruptcy counsel for this breach of duty; and, this Court dismissed the debtor's bankruptcy case with sanctions against refiling and referred the debtor's conduct for further investigation. (App. 1, In re Smock, Case No. 01-5533-WRS-13 at *4-5 (Bankr. M.D. Ala. 2003).) In Smock special counsel who settled the personal injury suit and distributed the funds to the debtor without knowledge of the bankruptcy case was allowed to retain his fee. See id. at 6.

.0                                       41

In the case of In re Barber, 223 B.R. 830 (Bankr. N.D. Ga. 1998) the bankruptcy court also allowed special counsel to be compensated in a similar situation. The Chapter 13 debtor retained special counsel on a post-petition basis to pursue a personal injury claim. See id. at 831. The Chapter 13 case was dismissed and a Chapter 7 case was filed four months later. See id. at 831-32. The personal injury claim was then disclosed at the § 341 meeting and was settled shortly thereafter by special counsel, who, like Gallagher, was not told about the bankruptcy case. See id. at 832. Upon learning of the claim, the Chapter 7 trustee advised special counsel of the bankruptcy case, but then refused to allow special counsel to be paid a contingent fee from the settlement proceeds that special counsel had produced. See id. at 832-33. Special counsel sought an administrative expense award. See id. at 833.

The court, in Barber, recognized that the Pacer system was available, should be used, but generally was not being used by personal injury lawyers; and therefore, the court allowed special counsel, who had no actual knowledge of the bankruptcy case, and who did not conduct a Pacer search, a contingent fee as a post-petition administrative expense. See id. at 832 Fn. 2, 833. The court found the debtor had violated his duties to schedule the claim and to file an application to retain special counsel; and, the court noted that debtor's counsel had

not been diligent in performing bankruptcy services.  See id. at 832.  Debtor's counsel's fees were reduced because he failed to amend the schedules, notify special counsel or explain the significance of the claim to the debtor.  See id. at 833.

In the case of In re Albert, 206 B.R. 636 (Bankr. D. Mass. 1997) the special counsel was retained on a pre-petition basis; and, a judgment was entered on the claim after the debtor filed Chapter 7 and without special counsel's knowledge of the bankruptcy case.  See id. at 638-39.  Special counsel upon learning of the bankruptcy case contacted the Trustee who refused to hire him to pursue collection of the judgment.  See id. at 638.  The Trustee then settled the judgment directly, with court approval, and refused to pay special counsel for his efforts.  See id. at 639.  Upon motion of the special counsel and upon the filing of an application on behalf of special counsel, the court enforced the pre-petition attorney's lien as to pre-petition services and awarded an administrative expense claim for post-petition services.  See id. at 639-41.  As in Albert, Gallagher, by Count III of his Counterclaim, has sought to enforce his claims for compensation to the extent his fees are "at issue."

In the case of In re Moore, 312 B.R. 902 (Bankr. N.D. Ala. 2004), like the 27 debtors who misappropriated the Mississippi Settlement proceeds, the personal injury claim was

discovered after the settlement had been consummated and the funds had been paid to the debtor. Unlike the Mississippi Settlement, in <u>Moore</u>, special counsel had actual knowledge of the bankruptcy case, and yet, he proceeded to settle the claim and to pay the proceeds to the debtor, rather than to the estate. <u>See id</u>. at 910. Using the correct remedy, the Chapter 7 Trustee brought an action against special counsel under 11 U.S.C. § 542 to recover the settlement amount or the value thereof. <u>See id</u>. at 909. The Court ordered special counsel to pay to the Trustee the value of the funds paid to the debtor and the fees retained by the special counsel. The Trustee was not allowed to recover attorney's fees for seeking recovery under § 542. <u>See id</u>. at 911.

### D. The Practices of Gallagher With Respect to the Discovery of Debtor Violations of Statutory Duties Are Consistent With the Provisions of the Bankruptcy Code That the Trustees Seek to Enforce

Debtors' violations of statutory duties can be discovered by various persons through the search of real estate, personal property, motor vehicle and state and federal court records that are available through various services. Bankruptcy counsel and trustees possess the statutory duty to inquire; special counsel do not. Both Reding and McKinney testified that, in satisfaction of their duty to investigate the financial affairs of the debtors, they rely on the debtor to disclose a

pending claim and do not search SJIS or any other court filing systems to determine whether a debtor has failed to disclose a pending lawsuit. (App. 11, Reding Depo., p. 148; App. 59, McKinney Depo., p. 221.)

For years Gallagher has trusted referred and direct clients to disclose basic and material facts in connection with their claims, such as whether or not they had hired a different counsel to file a bankruptcy case. In the fall of 2000, in connection with the Mississippi Settlement, the referred claimants were required to certify, in writing, on two occasions, that there were no bankruptcy issues: first, when they joined the group settlement; and, again, when they met with Bart's staff to receive their settlement checks.

As stated above, in 2003 Gallagher began to use the Pacer system to identify bankruptcy cases and potential bankruptcy issues. Gallagher has submitted documents which evidence Gallagher's efforts to monitor the resolution of potential bankruptcy issues (App. 2, Gallagher Aff., ¶ 16; App. 8, McLemore Aff., ¶¶ 8, 12, Exhs. C and G) in connection with pending claims. All such claims are pending and the status quo is being preserved while the estates determine what to do, except for Rezulin claims in which a group settlement has been reached, and a new Pacer search done; and, in which various referring counsel, debtors and estates are in the process of

determining who owns the claim and whether or not to participate. (App. 8, McLemore Aff., ¶ 12, Exh. G.)

Specifically, with respect to the Rezulin settlement, a Pacer search was conducted by Gallagher in October 2003 and it revealed several referred Rezulin claimants who possibly did not own their claims because of bankruptcy cases. These claimants were referred to Gallagher by Sweet & Freese, by Pittman Hooks and by Bart. When Gallagher learned that certain referred Rezulin claimants may not own their claims, he wrote referring counsel and advised that the referrals could not be accepted. (App. 8, McLemore Aff., ¶¶ 9-10, Exhs. D and E; App. 2, Gallagher Aff., Exh. I; App. 2, Gallagher Aff., Exh. I.) After the rejection of potentially invalid claims, referring counsel each agreed to investigate and resolve, if possible, the bankruptcy issues that invalidate the Debtors' claims. (App. 8, McLemore Aff., ¶¶ 9-11, Exhs. D and E.) In December of 2004 another Pacer search was conducted to use in the dissemination of settlement packages. Referring counsel (with Gallagher's input when requested) have contacted trustees and have obtained approval of several pending Rezulin settlements by determining there were no bankruptcy issues created by the bankruptcy cases. For example, on March 21, 2005, McKinney wrote to Richard Freese, a referring attorney and authorized four settlements without court approval:

We are in receipt of your letter dated March 17, 2005. The Trustee has no interest in funds being distributed to Velvet N. Davis, Catherlean Burks, Mary Alice Culpepper and Charles and Gaylena Bryant.

We do however have an interest in the case of Ruth M. Harris. As Ms. Harris currently has an active Chapter 13 case (05-30261) the lawsuit is an asset of her estate. [You will need to file the "appropriate motions."]

> (App. 8, McLemore Aff., ¶ 11, Exh. F, 3/21/05 McKinney Letter, Pl. Exh. 4211.)

The following correspondence show additional successful efforts of referring counsel to resolve bankruptcy issues:

a) Chapter 7 Trustee, DePaola, responds "abandoned" to Freese's March 30, 2005 letter regarding the settlement of Mary Sue Dees, Bankruptcy Case No. 04-30120. (App. 8, McLemore Aff., ¶ 11, Exh. F, 3/30/05 Freese Letter.)

b) Chapter 7 Trustee, Toffel, responds to letter regarding the bankruptcy cases of Mildred Amonie and James M. Martin, Rezulin clients:

> Thank you for your letter of March 30, 2005 regarding the above debtor and the amount of the lawsuit settlement, the attorney fees and other expenses. I have reviewed my file and, based on your information, I as Trustee will not reopen the case to administer the lawsuit proceeds. I have filed my No Asset Report abandoning all interest in this matter.

> (App. 8, McLemore Aff., ¶ 11, Exh. F, 4/12/05 Toffel Letters.)

c)    When chapter 7 Trustee, Jim Henderson, was contacted about Rezulin clients Gloria Giernoth, Georganne Dewberry, Charles Hurst, Barbara Sullivan, Donald Walker and Randy Taylor he responded.

> R - The Trustee will claim no interest. Jim 4-4-05.

> > (App. 8, McLemore Aff., ¶ 11, Exh. F, 4/4/05 Henderson Letter.)

d)    Chapter 13 Trustee, Sims Crawford, responded on February 28, 2005 to Richard Freese's letter regarding the bankruptcy case of Paulette Wilson stating that he did not intend to make a claim against settlement proceeds and citing Freese to In re Moore, 312 B.R. 902 (N.D. Ala. Bankr. 2004) as authority on the issue.

> > (App. 8, McLemore Aff., ¶ 11, Exh. F, 2/28/05 Crawford Letter.)

The Rezulin spreadsheets (App. 8, McLemore Aff., ¶¶ 8, 9 and 12, Exhs. C and G) demonstrates that Gallagher's staff has been searching Pacer and has been preserving the status quo while referring counsel, bankruptcy counsel, debtors and trustees determine who owns the claims and whether or not they desire to participate in the settlement.    If the bankruptcy issues cannot be resolved before the Rezulin settlement is fully consummated, then the unsupported or unauthorized claims can not be included in the settlement, the settlement funds will be returned to the drug manufacturers and referring counsel and the respective bankruptcy estates can pursue the claims as they deem appropriate.

### III. THREE OF THE TRUSTEES' CAUSES OF ACTION DO NOT STATE CLAIMS AS A MATTER OF LAW, MUCH LESS CLAIMS AGAINST GALLAGHER

#### A. Count One:  Breach of Duty to Comply with 11 U.S.C. § 327(e) Fails to State A Claim

The Trustees claim that Bart and Gallagher represented the debtors while they were in bankruptcy and failed to perform the bankruptcy services necessary for the debtors to obtain court approval of the employment of Gallagher, as special counsel (in bankruptcy cases of which Gallagher was unaware); and, that 11 U.S.C. § 327(e) and Bankruptcy Rule 2014 create causes of action.  To the extent there is any such "duty" to seek approval it is the statutory duty that is expressly imposed upon the Trustees and the debtors, by statute, and upon bankruptcy counsel, by contract.   In Re Smock, Id.;   In re Barber, Id.; In re Albert, Id.   There is no cause of action created under § 327(e).   To the extent the Trustees can establish any duty under § 327, its breach can only apply to trustees and debtors.   WAPI, 171 B.R. at 130.

#### B. Count Two:  Breach of Duty to Comply with Bankruptcy Rule 9019 Fails to State A Claim

The Trustees claim that Gallagher failed to perform the bankruptcy services necessary to have the debtor's joinder in the Mississippi Settlement approved under Bankruptcy Rule 9019 (again in bankruptcy cases of which he had no knowledge). Like the retention of special counsel, any duty to have settlements approved can only apply to the Trustees, the debtors

and their bankruptcy counsel, by statute or by contract.  There
is no cause of action created under Bankruptcy Rule 9019.

C.   **Count Three:  Injury to Individual Debtor for Willful
     Violation of Automatic Stay Under § 362(h) Cannot Be
     Brought By a Trustee, and It Also Requires Actual
     Knowledge of the Bankruptcy Case**

Except for the two pending Lotronex claims, the
Trustees allege that Bart and Gallagher exercised control of the
Fen-Phen Qualified Settlement Fund (that the Trustees actually
knew was being controlled and disbursed by the Special Master)
and injured some unidentified person in _willful_ violation of the
automatic stay under 11 U.S.C. § 362(h).  As a matter of law a
Trustee cannot sue under § 362(h) because it expressly only
applies to injuries to individual debtors.  See _Havelock vs.
Taxel (In re: Pace)_, 67 F.3d 187, 193 (9th Cir. 1995) ("Chapter 7
trustee is not an "individual" for purposes of 11 U.S.C.
§ 362(h) entitled to recover attorney's fees as damages"); _In re
International Forex of California, Inc._, 247 B.R. 284, 291
(Bankr. Ct. S.D. Calif. 2000) ("Creditors have standing under
§ 362(h) to seek damages for alleged stay violations."); see
also See _McRoberts vs. S.I.V.I. (In re Bequette)_, 184 B.R. 327,
333 (Bankr. S.D. Ill. 1995) (A Chapter 13 trustee's standing
depends not on whether the trustee has alleged an injury or
benefit to be derived from the successful prosecution of their
claim, but whether the action is an appropriate exercise of the

powers of a Chapter 13 trustee.).    No courts have given a Chapter 13 Trustee such standing.  See In re Bequette, 184 B.R. 327, 335 (Bankr. S.D. Ill. 1995) ("the trustee lacks statutory, as well as constitutional, standing to seek damages for violation of the stay, as the remedy of § 362(h) is available to debtors and creditors only.").

Moreover, in order to assert a claim under § 362(h), the entity to be charged must have actual knowledge of the bankruptcy case.  In re Parker, 279 B.R. 596, 603 (Bankr. S.D. Ala. 2002) ("A violation of the stay is willful if the creditor knows of the bankruptcy filing.") (citing In re Rainwater, 233 B.R. 126, 156 (Bankr. N.D. Ala. 1999).    In re International Forex of California, Inc., 247 B.R. 284, 188-89 (Bankr. S.D. Ca. 2000) (a willful violation of the stay requires knowledge of the bankruptcy case); In re Rainwater, 233 B.R. 126, 156 (Bankr. N.D. Al. 1999) (cases cited therein); In re Lord, 270 B.R. 787, 794 (Bankr. M.D. Ga. 1998) (court finds that creditor who failed to dismiss garnishment when it received the court's notice of plaintiff's bankruptcy filing and placed it in lawyer's file without reviewing it violated the stay as a result of carelessness or negligence, and therefore, plaintiff was not entitled to punitive damages); In re Hardy, 97 F.3d 1384, 1390 (11th Cir. 1996) (knowledge of stay and intended actions); Jove Engineering Inc. vs. IRS, 92 F.3d 1539, 1555 (11th Cir. 1996).

It is undisputed that Gallagher did not have knowledge that 27 Fen-Phen clients had filed bankruptcy cases, until after the Special Master had paid the settlement funds to the debtors.

**IV.  THE TRUSTEE'S FOURTH CLAIM, COUNT FOUR:  USE OF 11 U.S.C. § 105 FOR COMPENSATORY DAMAGES AND AN INJUNCTION FOR THE ALLEGED WILLFUL VIOLATION OF THE AUTOMATIC STAY REQUIRES THAT GALLAGHER HAVE ACTUAL KNOWLEDGE OF THE BANKRUPTCY CASES AND REQUIRES THE EXISTENCE OF SOME PROVISION OF THE BANKRUPTCY CODE TO BE CARRIED OUT**

The Trustees seek compensatory and punitive damages and to enjoin Bart and Gallagher for alleged intentional misconduct by using 11 U.S.C. § 105.  Where a claim under § 362(h) expressly cannot be asserted by a Trustee, a Court, in the appropriate circumstances, can use § 105 to award compensatory, but not punitive, damages to a Trustee for an intentional violation of the automatic stay.  Any such award must be under the court's contempt power, which also requires actual knowledge of the stay and intent to act contrary thereto.  See, e.g., In re Del Mission Limited, 98 F.3d 1147, 1152 (9th Cir. 1996); In re Dyer, 322 F.3d 1178, 1990 (9th Cir. 2003).

**A.  The Trustees Cannot Establish By Clear and Convincing Evidence Any Willful Violation of the Automatic Stay by Gallagher**

Contempt, which requires a willful violation of an order (the automatic stay), must also be shown by clear and convincing evidence.  See, In re Dyer, 322 F.3d at 1190-91.  If it is shown, the court may award compensatory damages; however,

punitive damages are not recoverable under § 105, which is remedial in nature.  See, id. at 1193-94; Knupfer vs. Lindblade (In re Dyer), 322 F.3d 1178, 1191-95 (9th Cir. 2003); State of California Employment Development Department vs. Taxel (In re Del Mission Limited), 98 F.3d 1147, 1152 (9th Cir. 1996) ("§ 105(a) is broad enough to provide relief to those entities that are injured by willful violations of the automatic stay, but cannot recover under § 362(h)"); Havelock vs. Taxel (In re Pace), 67 F.3d 187, 193-94 (9th Cir. 1995); Johnston Environmental Corp. vs. Knight (In re Goodman), 991 F.2d 613, 618 (9th Cir. 1993); Faust vs. Texaco Refining and Marketing, Inc. (In re Faust), 270 B.R. 310, 316-17 (Bankr. M.D. Ga. 1998).

        Gallagher has shown that he did not have knowledge of the bankruptcy cases of the 27 debtors who apparently received their Mississippi Settlement checks from the Special Master (which settlement checks may or may not belong to the estates). With respect to the two Lotronex claims, once Gallagher learned of pending bankruptcies and the fact that he may not be able to accept the referral, he has preserved the status quo while referring counsel and bankruptcy estates determine what to do.

B.    **Unless the Debtors, Other Alabama Counsel, Trustees and Bankruptcy Counsel Are Joined, There Are No Provisions of the Bankruptcy Code to be Carried Out Under § 105**

The Trustees have intentionally not sued the debtors who violated 11 U.S.C. § 327 and § 521(1) and Bankruptcy Rules 1007(b), 2014 and 2015(a)(4) and (c).    If the Trustees' allegations are correct, 27 of these debtors misappropriated assets of the estate and claims could be asserted against them under § 542 and for contempt.    (App. 25, Espy Depo., pp. 89-90 (Espy confirms that Childs failed to schedule his Fen-Phen claim under penalty of perjury.)    Apparently, as part of any remedial action under § 105 the Trustees have determined not to compel 33 or 60 debtors to comply with their statutory and fiduciary duties.

The Trustees also have not sued Alabama counsel who conducted other Fen-Phen settlements unrelated to Gallagher and who disbursed funds to debtors.    The Trustees also have not sued Alabama counsel (who actually have the attorney-client relationship with the debtors) retained by debtors without disclosure of their bankruptcy cases) who referred the potentially invalid and pending claims to Gallagher.    The Trustees also have not sued debtor's counsel who may have failed to inquire or, on the other hand, whose testimony that may allow

the Court to determine which debtors should be referred for potential prosecution for bankruptcy crimes.

The essential provisions of the Bankruptcy Code to be carried out in this case are the duties of the debtor, bankruptcy counsel, trustees, special counsel and a special master with respect to settlement proceeds that have been misappropriated by the debtor. The misappropriation of assets could be due to intentional debtor misconduct or to the carelessness of fiduciaries and bankruptcy counsel, however, it cannot be due to Gallagher because he undisputably lacked actual knowledge of the bankruptcy cases "at issue," and, in good faith, he inquired about bankruptcy issues and was lied to, which conduct provides an absolute defense under § 542(c). 11 U.S.C. § 105 cannot be used to eliminate § 542(c) from the Bankruptcy Code. See WAPI 171 B.R. at 130. Gallagher's continued conduct of searching Pacer and notifying referring counsel of bankruptcy cases should be rewarded, not punished.

## V.   THE CHAPTER 13 TRUSTEE DOES NOT HAVE STANDING TO ASSERT THE DEBTOR'S CLAIMS OR TO ENFORCE THE AUTOMATIC STAY IN THE SIXTEEN CHAPTER 13 CASES

There are sixteen Chapter 13 Estate claims that are due to be dismissed for lack of standing.

A.    **A Chapter 13 Trustee Does Not Possess the Statutory Authority to Assert Claims That Belong to the Debtor.**

A Chapter 13 trustee possesses specific enumerated powers that belong to a Chapter 7 bankruptcy trustee. See 11 U.S.C. § 1302(b); 11 U.S.C. § 1303. Pursuant to 11 U.S.C. § 1302, the Chapter 13 trustee:

> (a) shall perform the duties specified in sections 704 (2), 704 (3), 704 (4), 705 (5), 704 (6), 704 (7), and 704 (9); (b) may appear and be hear at any hearing; (c) shall administer moneys received; (d) assist the debtor in the performance of the debtor's plan; and, (e) insure the debtor makes timely payments under the plan.

B.    **Only the Chapter 13 Debtor Possess the Statutory Authority to Assert a Claim**

The Chapter 13 debtor is granted exclusive rights to perform the following: (a) collect and reduce to money the property of the estate (11 U.S.C. § 704(1)); and (b) exercise the powers which would otherwise have been the trustee's under the following sections: 363(b), 363(d), 363(e), 363(f), and 363(e) (11 U.S.C. § 1303).

The Bankruptcy Court for Massachusetts wrote an opinion in the case of Jackson vs. Marlette (In re Jackson), 317 B.R. 573, 578 Fn. 4 (Bankr. D. Mass. 2004) in which it surveyed and discussed numerous opinions addressing the standing of a Chapter 13 Trustee. In Jackson the court concluded that the debtor, alone, should pursue litigation. See id. at 580.

Similarly, in In re Frausto, 259 B.R. 201, 210 (Bankr. Ct. N.D. Ala. 2000) Judge Cohen also held that the Chapter 13 Trustee had no standing:

> Under section 704(l) of the Bankruptcy Code, a Chapter 7 trustee may 'collect and reduce to money the property of the estate for which such trustee serves. . . .' These powers are absent from Chapter 13. A Chapter 13 trustee is neither empowered nor authorized to collect or liquidate property of the estate or property of the debtor. Similarly, Chapter 13 does not contain any provision, like that in section 726(a) for Chapter 7 trustees, which either permits or directs the distribution of 'property of the estate' or which specifies how 'property of the estate shall be distributed. . . .' In fact, the only provision in Chapter 13 which authorizes or permits a Chapter 13 trustee to handle property of any nature is found in section 1302(b)(3), which requires the trustee to distribute the plan payments received from a debtor. Consequently, other than relaying the funds directly entrusted to the trustee by the debtor pursuant to a confirmed plan, a Chapter 13 trustee, unlike a Chapter 7 trustee, has no statutory obligation, right, duty or power to sell, use, lease, collect, liquidate or distribute any property, whether that property is denominated 'property of the estate' or 'property of the debtor.'

> \* \* \*

> . . .The Chapter 13 debtor, rather than the trustee, is specifically endowed, pursuant to section 1303, with the authority, 'exclusive of the trustee' to use, sell or lease property of the estate.

> Frausto, 259 B.R. at 210 (citations omitted) (emphasis supplied).

In *In re Bequette* the Bankruptcy Court for the Southern District of Illinois also held that the Chapter 13 trustee had no standing:

> The status of a Chapter 13 trustee differs from that of a Chapter 7 trustee, who is obligated to enhance the debtor's estate for the benefit of unsecured creditors. In a Chapter 13 case, the debtor retains control of his assets, and creditors are paid out of the debtor's future income and earnings rather than from any assets of the estate.
>
>                         In re Bequette, 184 B.R. 327,
>                         333 (Bank. S.D. Ill. 1995).

In *Bequette* the trustee "sought to justify his status as plaintiff by asserting that he is trying to protect the estate and redress an injury that resulted when [the defendant] took estate property without notice." Id. at 334. The court rejected the trustee's argument stating that the trustee's action would benefit a creditor of the estate rather than the estate itself. See id.

## C.    It Would be Inappropriate to Grant Standing Under the Circumstances of This Case

A Chapter 13 trustee has a "limited administrative function of ensuring that the debtor's plan meets the standards for confirmation, objecting to claims, and paying approved claims according to the confirmed plan." Id. In the instant cases the Trustees' allegations are premised upon the misconduct of the debtors (who have not been sued) and the potential negligence of various fiduciaries and their representatives (who

.o                                58

have not been sued).  There is no purpose to be served under the Bankruptcy Code in granting standing to the Chapter 13 Trustees to selectively sue Gallagher for not acting in bankruptcy cases of which he was undisputably unaware and for which claims he has an absolute defense under § 542(c).  All cases filed by Chapter 13 estates should be dismissed.

## VI.  SPECIAL CIRCUMSTANCES WARRANTING DISMISSAL OF CLAIMS OF SPECIFIC ESTATES

### A.  The Trustees' Claims Are Due To Be Dismissed Where the Debtors Were Not Gallagher Clients, Where the Cases Were Dismissed, Where the Claims Were Abandoned and Where the Plans Were 100% Plans

The following claims are due to be dismissed as a matter of law:

Christine Kelly (#22).  Not a Gallagher client.

Lisa Haynes (#28).  Not a Gallagher client.

Bobbie Curtis (#5).  § 554(c) abandonment of claim to debtor.

Gloria Fort (#12).  100% Chapter 13 plan.

Sandra Joiner (#20).  100% Chapter 13 plan.

Karen Morgan (#24).  100% Chapter 13 plan.

Melinda Russell (#25).  100% Chapter 13 plan.

Lawanda Similton (#27).  100% Chapter 13 plan.

Rosie Davison #6).  Case dismissed.

Audrey Edwards (#10).  Case dismissed.

Chastain Hicks (#17).  Case dismissed.

Angela Jarrett (#18).  Case dismissed.

Moses Shears (#26).  Case dismissed.

### 1.   § 554(c) Abandonment

With respect to abandonment, § 554(c) provides:

> Unless the court orders otherwise, any property
> scheduled under section 521(1) of this title not
> otherwise administered at the time of the closing
> if a case is abandoned to the debtor and
> administered for purposes of section 350 of this
> title.

The Fen-Phen claim of Bobbie Curtis (#5) was a scheduled asset of the debtor.  This Fen-Phen claim was abandoned by the Trustees and the claim revested in the debtor as if no bankruptcy petition was filed.  See Denis v. Delta Airlines, Inc., 546 S.E. 2d 805, 808 (Ct. App. Ga. 2001).

### 2.   100% Chapter 13 Plans

As discussed above, upon completion of a 100% Plan the property (claim) vests in the debtor.  Since the creditors of the estate have been paid in full, there would be no property of the estate and no creditors for the Trustees to pay.

### 3.   Dismissed Cases

The Trustees have no claim where the cases of the debtors "at issue" have been dismissed.  Where a debtor's case is dismissed, even after confirmation of a Chapter 13 plan, the property rights of all parties are restored to the position they occupied pre-petition and property of the estate is revested in the debtor.  See 11 U.S.C. § 349(b)(3); see also In re Beeman, 268 B.R. 268, 270-71 (Bankr. D. Kansas 2001) (upon dismissal of

the bankruptcy case the parties occupied the legal position they occupied before the case was filed); In re Groves, 27 B.R. 866, 868 (Bankr. D. Kansas 1983) (creditors security interest revested when the debtor's case was dismissed). Gallagher's position would be as associated counsel having settled a claim on which he possessed an attorney's lien to secure his assignment of a percentage of the referring counsel's contingent fee.

In the case of In re Irons, the court addressed the effect of a previous dismissal of a Chapter 13 case on a second Chapter 13 bankruptcy. See In re Irons, 173 B.R. 910, 911 (Bankr. E.D. Ark. 1994). The IRS filed a proof of claim in the debtor's second Chapter 13 case that included interest which accrued while the debtor was in their first case. See id. at 910. The Irons court stated that the effect of 11 U.S.C. § 349(b) was to negate the consequences of the filing of the dismissed bankruptcy case, including the imposition of the automatic stay which would have precluded interest from accruing while the debtors were in bankruptcy. See id. The Irons court held that the IRS was entitled to claim interest which accrued during the pendency of the prior dismissed bankruptcy case because the dismissal of the case returned the IRS to the position it held pre-petition. See id. at 911 (citing In re Whitmore, 154 B.R. 314 (Bankr. D. Nev. 1993) ("If the effect of

the dismissal of a case is to completely 'undo' a case and to restore all parties to their pre-bankruptcy positions regardless of all interim activities undertaken and orders and judgment entered by the bankruptcy court....").

In In re Davison the bankruptcy court determined that it had no jurisdiction over an adversary proceeding to recover a preferential transfer when the underlying bankruptcy case was dismissed. See In re Davison, 186 B.R. 741, 744 (Bankr. N.D. Fla. 1995). The bankruptcy court stated that "the results of a dismissed case have different consequences, especially for actions to recover preferential transfers and other actions that depend upon the existence of the bankruptcy for their viability." Id. Citing 11 U.S.C. § 349 the court stated that a dismissal revests property of the estate in the entity where such property was vested before the commencement of the case. See id. (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 338 (1977) ("Congress intended this section "to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case.").

In determining that the adversary proceeding to recover alleged preferential transfers was moot the court in Davison analyzed the case of In re Stat. Tabulating Corp., 60 F.3d 1286 (7th Cir. 1995). See id. at 743-44. In that case a

creditor and lienholder filed an appeal challenging a distribution approved by the bankruptcy court to a second lienholder. See id. at 744. While the case was on appeal the underlying bankruptcy case was dismissed. See id. The In re Stat. Tabulating Corp. court in determining that the dismissal mooted the matter on appeal (a controversy regarding the automatic stay) stated that: "Because the stay is dependent on the existence of the bankruptcy, the dismissal of the case disposed of any dispute about the stay." Id. Where a case is dismissed "the property of the estate is revested in "the entity in which the property was vested immediately before the commencement of the case." In re M.O.D., Inc., 170 B.R. 465, 466 (Bankr. M.D. Ala. 1994). Once the case is dismissed the assets and parties are restored to their pre-petition status, as if the case had never been filed. See In re Woodhaven, Ltd., 139 B.R. 745, 748 (Bankr. N.D. Ala. 1992).

Because these bankruptcy cases have been dismissed the bankruptcy court could not reopen the case to administer any recovery. See id. at 747-749; In re Garcia, 115 B.R. 169, 1709 (Bankr. N.D. Ind. 1990) ("Accordingly, we hold that a case which has been dismissed may not be reopened pursuant to 11 U.S.C. § 359(b).").

**B.  Bart and Gallagher Possess Compulsory Counterclaims As Pre-Petition Secured Creditors and/or Post-Petition Unsecured Creditors of the Various Estates**

The following debtors who had Fen-Phen claims retained Bart and Gallagher on a pre-petition basis (February 2000) thereby rendering Bart and Gallagher secured creditors possessing attorney's liens on the Fen-Phen claims claimed to be assets of bankruptcy estates.  11 U.S.C. § 506(a) and § 546(c); Code of Alabama § 34-3-61 (1975).

    1.  Edward Childs (#4)

    2.  Sharon Day (#7)

    3.  Sarah Dennis (#8)

    4.  Patricia Ford (#11)

    5.  Gloria Fort (#12)

    6.  Sandra Gilbert (Welcher) (#13)

    7.  Gladys Grandberry (#15)

    8.  Angela Jarrett (#18)

    9.  Claudia Josey (#21)

    10.  Brenda Ziglar (#33)

The following debtors retained Bart and were referred to Gallagher on a post-petition basis without disclosing the bankruptcy cases to Gallagher.

    1.  Dorothy Anderson (#1) (Chapter 13).  (App. 40, Anderson Case Summary, Pl. Exh. 61, Bart/Anderson Retainer Agreement, Pl. Exh. 63 and Anderson Settlement Disclosure, Pl. Exh. 64.)

    2.  Amy Betzhold (#3) (Chapter 7).  (App. 41, Betzhold Case Summary, Pl. Exh. 85, Bart/Betzhold

Retainer Agreement, Pl. Exh. 86 and Betzhold
Settlement Disclosure, Pl. Exh. 90.)

3.  <u>Rosie Davison (#6) (Chapter 13)</u>.  (App. 20,
    Davison Case Summary, Pl. Exh. 185, Bart/Davison
    Retainer Agreement, Pl. Exh. 186, Davison Release
    and Distribution Sheet, Pl. Exh. 188.)

4.  <u>Mary F. Gillis (#14) (Chapter 7)</u>.  (App. 42,
    Gillis Case Summary, Pl. Exh. 345, Bart/Gillis
    Retainer Agreement, Pl. Exh. 346 and Gillis
    Settlement Disclosure, Pl. Exh. 348.)

5.  <u>Madgelyon Johnson (#19) (Chapter 13)</u>.  (App. 43,
    Johnson Case Summary, Pl. Exh. 520, Bart/Johnson
    Retainer Agreement, Pl. Exh. 521 and Johnson
    Settlement Disclosure, Pl. Exh. 523.)

6.  <u>Sandra Joiner (#20) (Chapter 13)</u>.  (App. 15,
    Joiner Case Summary, Pl. Exh. 555, Bart/Joiner
    Retainer Agreement, Pl. Exh. 556 and Joiner
    Settlement Disclosure, Pl. Exh. 558.)

7.  <u>Karen Morgan (#24) (Chapter 13)</u>.  (App. 16,
    Morgan Case Summary, Pl. Exh. 680, Bart/Morgan
    Retainer Agreement, Pl. 681, Morgan Settlement
    Disclosure, Pl. Exh. 682.)

8.  <u>Melinda Russell (#25) (Chapter 13)</u>.  (App. 17,
    Russell Case Summary, Pl. Exh. 760, Bart/Russell
    Retainer Agreement, Pl. Exh. 761 and Russell
    Settlement Disclosure, Pl. Exh. 762.)

9.  <u>Lawanda Similton (#27) (Chapter 13)</u>.  (App. 18,
    Similton Case Summary, Pl. Exh. 810,
    Bart/Similton Retainer Agreement, Pl. Exh. 811
    and Similton Settlement Disclosure, Pl. Exh.
    813.)

10. <u>Gail Summers (#29) (Chapter 7)</u>.  App. 44, Summers
    Case Summary, Pl. Exh. 840, Summers Release and
    Distribution Sheet, Pl. Exh. 841.)

11. <u>Barbara Wells (#32) (Chapter 13)</u>.  App. 45, Wells
    Case Summary, Pl. Exh. 925, Bart/Wells Retainer
    Agreement, Pl. Exh. 926 and Wells Settlement
    Disclosure, Pl. Exh. 927.

Pursuant to the reasoning of Smock, Albert and Barber, Bart and Gallagher are entitled to retain their fees earned on a pre-petition basis as secured creditors and on a post-petition basis as administrative claimants upon a showing of the services performed in connection with the negotiation and administration of the Mississippi Settlement. See In re Smock, Case NO. 01-5533-WRS-13 (Bankr. M.D. Ala. 2003); In re Albert, 206 B.R. 636, 639-41 (Bankr. D. Mass. 1997); In re Barber, 223 B.R. 830 (Bankr. N.D. Ga. 1998). The Appendix being submitted herewith contains far more information than would be required under § 327 or Bankruptcy Rule 9019 for Gallagher to establish entitlement to a fee for negotiating and consummating the Mississippi Settlement which has proven to be a beneficial settlement.

C.    **In Order for the Trustees to Have Any Claim Based Upon the Mississippi Settlement, They Must Accept and Be Bound By Its Terms**

Each Fen-Phen claimant who participated in the Mississippi Settlement and received settlement funds opted out of the National Class and was bound by the final orders of the Mississippi Chancery Court approving the settlement, appointing a Special Master, approving a compensation Matrix, creating a Qualified Settlement Fund and vesting in the Special Master complete control over the Fund. (App. 2, Gallagher Aff., ¶¶ 3-4, Exhs. A & B, Chancery Court Orders.) The Trustees who claim that these settlements were without necessary court authority

and in violation of the automatic stay, have decided to affirm the debtors' acceptance of the settlement (and claim the benefits of the settlement) rather than to pursue the Fen-Phen claim against AHP by avoiding the debtors' acceptance and release of American Home Products.

The Trustees step into the shoes of the debtors and cannot accept the benefits of the Mississippi Settlement and at the same time attempt to reject the conditions by collaterally attacking the final orders of the Mississippi Court approving the settlement.   The final orders of the Mississippi Court conclusively establish the possession and control of the Fund by the Special Master and the Release of the Special Master by each debtor for the payment of funds to the debtors and fees and expenses to counsel.  These findings, which would collaterally estop each debtor, cannot be collaterally attacked by the Trustees in this action.  See Kamilewicz vs. Bank of Boston Corp., 92 F.3d 506, 512 (7th Cir. 1996) (dismissing the case as an impermissible challenge of a state court judgment); see generally, Rooker vs. Fidelity Trust Co., 263 U.S. 412 (1923); District of Columbia Court of Appeals vs. Feldman, 460 U.S. 462 (1983).  Thus, by court order it has been finally determined that the Qualified Settlement Fund was in the possession of and or under the control of the Special Master (who controlled both the disbursement of fees and net settlement amounts); and, the

Trustees are barred by res judicata and collateral estoppel from re-litigating this issue and claiming Gallagher possessed and disbursed these funds.

Also, by accepting the Mississippi Settlement and claiming the benefits as assets of the estates, the Trustees are bound by the Release and Distribution Sheets executed by each debtor to obtain their settlement checks, which funds expressly released the Special Master and "his agents and representatives." (See, e.g., App. 27, Childs 8/22/01 Release and Distribution Sheet, Pl. Exh. 119). To the extent the Trustees claim that Bart or Gallagher controlled the settlement funds as agents or representatives of the Special Master, or were joint tortfeasors, they have been released from every claim by 31 of the 33 estates.

### D. Reding Is Estopped By the Conduct of All Chapter 13 Debtors To Recover in This Case

It is undisputed that Gallagher had no knowledge of bankruptcy cases until after each debtor misappropriated the proceeds of the Mississippi Settlement. If the Trustees are correct about their allegations of misconduct, it is the misconduct of each debtor who either misrepresented or concealed from Bart and Gallagher and AHP their bankruptcy cases. These debtors, who the Trustees claim did not own their claims, whether innocently or intentionally, but nevertheless,

fraudulently, procured the representation of Bart and Gallagher or their inclusion in the Mississippi Settlement, or both. The Trustees, as representatives of the estates, stand in the shoes of the debtors and cannot profit from the fraudulent misconduct of debtors. Gallagher is entitled to avoid any fraudulently procured relationship and to recover damages. The Trustees are estopped by the misconduct (violations of the Bankruptcy Code and Rules) of the debtors with respect to an asset of the estate to use that misconduct to recover from Gallagher who was a victim of that misconduct.

## CONCLUSION

The Trustees profess to seek to remedy wrongs and to enjoin continuing misconduct under § 105; however, the Trustees have identified no evidence of any misconduct by Gallagher. Gallagher has demonstrated that he has respected the federal bankruptcy laws. Moreover, there are no causes of action created under 11 U.S.C. § 327 or Bankruptcy Rules 2014 or 9019. Section 362(h) does not apply to Trustees, leaving only § 105 and the glaring omission of § 542. The "provisions of" the Bankruptcy Code "at issue" in this case carried out under § 105 are 11 U.S.C. § 327, § 521(1), § 704 and § 1302 and Bankruptcy Rules 1007(b), 2014, 2015(a)(4) and (c) and 9019. These provisions apply to the debtors and the Trustees and bankruptcy counsel; but, these persons are not defendants, thereby leaving

as the only possible use of § 105 to eliminate § 542(c) from the Bankruptcy Code. The Trustees' claims are both legally and factually deficient. As a matter of law and undisputed fact, Gallagher is entitled to summary judgment dismissing all claims of the 33 Estates.

Respectfully submitted,

/s/ David B. Anderson
David B. Anderson (AND006)
Ryan K. Cochran (COC020)
Attorneys for Defendants,
Gallagher, Lewis, Downey & Kim and
Michael T. Gallagher

OF COUNSEL:

WALSTON, WELLS, ANDERSON & BIRCHALL, LLP
One Federal Place
1819 5th Avenue North, Suite 1100
Birmingham, AL 35203
Phone: 205-244-5200
Fax: 205-244-5400

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Gallagher's Brief in Support of Motion for Summary Judgment on Plaintiffs' Claims has been duly served upon counsel of record electronically and/or by mailing same by United States mail, properly addressed and postage prepaid, to the following:

Mr. Steve Olen
Mr. Royce A. Ray, III
Olen, Nicholas & Copeland, P.C.
P. O. Box 1826
Mobile, AL 36633

.0

70

Mr. Frank L. Parker, Jr.
Ms. Christina May Bolin
Alford Clausen and McDonald, LLC
Suite 5000
One St. Louis Centre
Mobile, AL  36602

Mr. Joseph P. Schilleci, Jr.
Mr. David D. Schoel
Mr. Gerald S. Topazi
Natter & Fulmer, P.C.
3800 Collonade Parkway, Suite 450
Birmingham, AL  35243

Mr. Curtis C. Reding
Standing Chapter 13 Trustee
P. O. Box 173
Montgomery, AL  36101-0173

Mr. Barry E. Teague
P. O. Box 586
Montgomery, AL  36101

Mr. Von G. Memory
Memory & Day
P. O. Box 4054
Montgomery, AL  36101

This the 27th day of April, 2006.


                          /s/ David B. Anderson
                          Of Counsel

**EXHIBIT A**
**LIST OF COUNTERCLAIM DEFENDANTS AND THIRD PARTY DEFENDANTS (the "33 Debtors") IN ADVERSARY PROCEEDING NO. 03-01071**

1       Dorothy Anderson
2       Shellwanda Babers
3       Amy Betzhold
4       Edward Childs
5       Bobbie Curtis
6       Rosie Davison
7       Sharon Day
8       Sarah Dennis
9       Mae Dickinson
10      Audrey Edward
11      Patricia Ford
12      Gloria Fort
13      Sandra Gilbert (Welcher)
14      Mary Gillis
15      Gladys Grandberry
16      Lisa Haynes
17      Charstain Hicks
18      Angela Jarrett
19      Madgelyon Johnson
20      Sandra Joiner
21      Claudia Josey
22      Christine Kelley
23      Billie Montgomery
24      Karen Morgan
25      Melinda Russell
26      Moses Shears
27      Lawanda Similton
28      Carolyn Stephens

29    Gail Summers

30    Evelyn Terry

31    Pamela Thornell

32    Barbara Wells

33    Brenda Ziglar