# APPENDIX 2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CHAPTER 13 |
| EDWARD CHILDS, | ) | |
| | ) | CASE NO.: 00-06028-WRS |
| Debtor. | ) | |

---

| | | |
|---|---|---|
| CURTIS C. REDING, in his capacity as Chapter 13 Standing Trustee, and SUSAN S. DePAOLA, Trustee, | ) | ADVERSARY PROCEEDING NO. |
| Plaintiff, | ) | 03-01071 |
| vs. | ) | |
| MORRIS BART, P.L.C.; MORRIS BART; GALLAGHER, LEWIS, DOWNEY & KIM a/k/a THE GALLAGHER FIRM; and MICHAEL T. GALLAGHER, jointly and severally, | ) | |
| Defendants. | ) | |
| MICHAEL T. GALLAGHER and GALLAGHER, LEWIS, DOWNEY & KIM a/k/a THE GALLAGHER FIRM, | ) | |
| Third Party Plaintiffs, | ) | |
| vs. | ) | |
| THE LAW OFFICES OF BEN C. MARTIN, LLP and BEN C. MARTIN, | ) | |
| Third Party Defendants. | ) | |
| MICHAEL T. GALLAGHER and GALLAGHER, LEWIS, DOWNEY & KIM a/k/a THE GALLAGHER FIRM, | ) | |

COUNTERCLAIMANTS and THIRD PARTY PLAINTIFFS,

vs.

CURTIS C. REDING, in his capacity as Chapter 13 Standing Trustee,

COUNTERCLAIM DEFENDANT and THIRD PARTY DEFENDANT.

**GALLAGHER'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS**

**TABLE OF CONTENTS**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I. GALLAGHER ACTED PROPERLY WHEN HE DISCOVERED THAT various persons submitted fraudulent Fen-Phen claims in a mass tort settlement . . . . . . . . . . . . . . . . . . . . 5

II. The Court does not have the Power to order a lawyer to represent a bankrupt estate against his will or to use § 105 as a sanction for such lawyer's refusal to do so . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**GALLAGHER'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS**

Comes Now, Michael T. Gallagher and Gallagher, Lewis, Downey and Kim (now known as The Gallagher Law Firm) (collectively "Gallagher") and for his Reply Brief in Support of Motion for Summary Judgment on Plaintiffs' Claims respectfully submits the following:

**INTRODUCTION**

This case was commenced to punish Bart and enjoin him from alleged continuing and intentional violations of the Bankruptcy Code in 60 bankruptcy cases in the Northern District. Bart, who apparently referred debtors without claims to Gallagher, joined Gallagher as a third party defendant claiming that, pursuant to the Co-Counsel Agreement, Gallagher had agreed to solve the problems of Bart's bankrupt clients whose bankruptcies were concealed from Gallagher.

The Trustees agree that Bart and Gallagher occupy different positions.

> and I am talking about the Bart defendants. Mr. Gallagher is in a different situation. I want to make sure that I am clear there.

(App. 1, July 15, 2005 Hearing at p. 32).

The Trustees also agree with Gallagher that the right way to address these 60 claims is category by category.

> if they [Bart] want to challenge or, you know, they want to find out how this ought to work in each scenario, they ought to file

> a motion for summary judgment, do it the right way, the way Mr. Anderson has done it, and say here is this debtor who is in this category and here is this debtor who is in this category; and we get to come back in and tell you as a factual matter, putting it on the record, what I have just told you as opposed to me making that presentation.

(App. 1, July 15, 2005 Hearing at p. 33).

Contrary to their statements, rather than address the claims the "right way" - category by category - the Trustees have done it the wrong way, coming forward with no legal or factual support for their claims. The Trustees have not identified one single violation by Mike Gallagher or his firm of Title 11 of the United States Code. Instead, all they have been able to do is to identify a few estates mentioned in a September 4, 2001 letter with bankruptcy issues, each of which issues Gallagher has shown have been satisfactorily resolved. The Trustees have come forward with <u>no</u> evidence, much less evidence that would support their burden of proof, of any claim against Gallagher.

Moreover, the Trustees have now settled with Morris Bart and in so doing have admitted that there are only 5 of 60 estates in the Middle District that possessed claims for compensatory damages against Bart, which claims are being satisfied by Bart, leaving no claims against Gallagher. Contrary to the Trustees' contentions in this case, the

Trustees' counsel is not filing a fee application, but rather the estates are receiving one amount and Morris Bart is paying $998,000 directly to the Trustee's attorneys. These actions by the Trustees constitute a release of Gallagher and an admission of no wrongdoing on the part of Gallagher.

**SUMMARY OF ARGUMENT**

Having been unable to demonstrate any violation of the automatic stay, the Trustees essentially claim that a "duty" to represent Chapter 7 and Chapter 13 estates arose when Gallagher was fraudulently induced by Bart and various of his clients to include them in a mass tort settlement in which they did not possess a claim. Having defrauded Gallagher into including these people in the group Fen-Phen settlement, these persons next defrauded the Special Master into delivering settlement checks to Bart who delivered them to the claimants. These persons who committed intentional fraud, and perhaps their bankruptcy lawyers, should have been sanctioned; however, the Court has dismissed the wrongdoers and has left the victim of fraud to be sued by the Trustees for conduct that the Trustee's in two years have been unable to identify.

Gallagher has not been requested to represent any fiduciary of any estate, nor has Gallagher agreed to represent any estate in the pursuit of any personal injury claims. As this Court has said:

> It is pretty clear in a seven and eleven it is the trustee or the debtor-in-possession that has to make the application.
>
> . . .
>
> Depending on what district you are in, you can probably make the argument that an application for employment [in a Chapter 13 case] is not strictly speaking required by the code.

(App. 1, July 15, 2005 Hearing at p. 26). This Court has also said:

> While one may argue that the Court has jurisdiction over the lawsuit proceeds as they are property of the estate, it certainly would strain notions of due process to sanction a lawyer for violations of the bankruptcy laws when he had no reason to know that a bankruptcy case has been filed.

(App. 2, Memorandum Decision in In re Lisa Gail Smock at p. 4, fn.2).

In addition to the Fen-Phen settlement (which has been consummated) Gallagher, along with several other law firms, has participated in negotiating other mass tort settlements which have not been consummated. There are presently group settlements for Lotronex and for Rezulin that certain estates could join and settle their claims if they so desire; and, if they get proper approval to do so. Rather than cooperate to settle estate's claims, in a rather bizarre turn of events, Trustee Susan DePaola recently applied to retain Rich Freese as counsel for the estate of Billie Montgomery (Case No. 03-30059)

for the purpose of settling the estate's claims in the Lotronex group settlement. Susan DePaola then objected to her own motion. (App. 12, Billie Montgomery). Why would a Trustee file an intentionally defective motion to retain counsel to which the Trustee then objected? Unless the Trustees are going to start suing each other for violating the Bankruptcy Code, Susan DePaola's defective motion to retain counsel is an admission of no intentional wrongdoing. As a consequence of her actions as Trustee the Montgomery estate claim will not be settled in the group settlement, the estate will be deprived of its benefit and the Trustee will be left to pursue the claim through Alabama counsel or to abandon the claim.

Having shown no knowledge of bankruptcy cases in which estate funds were allegedly mishandled and having shown no duty to represent an estate arising from the fraud of Bart or his debtor clients, summary judgment is due to be granted in favor of Gallagher and against the Trustees.

## I. GALLAGHER ACTED PROPERLY WHEN HE DISCOVERED THAT VARIOUS PERSONS SUBMITTED FRAUDULENT FEN-PHEN CLAIMS IN A MASS TORT SETTLEMENT

Although the Trustees make several general unsupported statements, the truth is that Gallagher's lack of knowledge of the involvement of various estates is undisputed, leaving only 13 estates in the Middle and Northern Districts to evaluate. Of

these 13 estates only 3 were debtors in the Middle District. In allocating Bart's settlement proceeds, the Trustees have further narrowed their claims against sixty estates to five estates. Excerpts from the testimony attached hereto as App. 3 establish Gallagher's lack of knowledge.

The Special Master used a standard release which he required each claimant to execute before he would disburse their settlement award. The Release and Distribution Sheet, which was sent to Bart for presentation to the client, contains a line of information just above the signature line that says "I am currently in bankruptcy" with the words "Yes" and "No" with a line next to each available to be marked. (See e.g., App. 4, Pl. Exh. 119, Childs Release and Distribution Sheet). The Trustees admit that these forms were presented by Bart to Bart's clients, and if a bankruptcy was noted the forms and checks were returned to the Special Master, not to Gallagher.

> Once a Bart firm client checked "yes" indicating that he or she was in bankruptcy, Cazaubon [a Bart employee] would tell those clients that she could not "give them their money at this time, and that per the instructions of the Special Master" she "had to forward the disbursement sheet, as well as the check, back to him." (Cazaubon depo. at 88, 247-48, 419; Crory depo. at 25-27, 28-29; Davies depo. 40-42, 54, 60-61). The distribution sheets and settlement checks for clients who checked "yes" indicating that they were in bankruptcy were then forwarded to the Fen-Phen Special Master

> Burch Cothern. (Crory depo. at 29-32, 38-39).

(Trustee's Brief in Opposition at 11). Bart's office's primary function was communicating with these thirty Fen-Phen clients "at issue". (Trustee's Brief in Opposition at 8) (citing Bart depo 106; see also 114, 162-64, 170; Cazaubon depo 228-29; see also Alvarez dep. 32-33).

The Trustees deposed Gallagher and his staff for more than a day. It is undisputed that the first knowledge Gallagher had of these debtors was when he received a September 4, 2001 letter from Bart in which Bart admitted: (1) that he had knowledge of clients who had filed bankruptcy; (2) that he had been handling bankruptcy issues; and (3) that he had received calls about settlement awards for bankruptcy clients. (App. 5, September 4, 2001 letter). Ben Martin, another counsel participating in the Fen-Phen settlements, agreed to perform the services necessary to resolve the bankruptcy issues. (See, App. 6, Gallagher Aff. at ¶ 11). Only two (2) debtors "at issue" in the Middle District who checked "Yes" on their Release and Distribution Sheet were forwarded by Bart to Martin. (App. 5, September 4, 2001 letter; App. 7, September 26, 2001 letter).

1. Edwards Childs. Payment of the net amount of Childs' settlement award was approved by the Court and payment was made by the Special Master directly to Reding on June 28,

2002. (App. 8, Pl. Exh. 140, Settlement Funds). This is precisely what the Trustees are seeking in the Bart settlement and if there is any problem with the Childs case the Trustee's counsel in this adversary proceeding should be required to forfeit fees for not complying with 11 U.S.C. § 330 and Bankruptcy Rule 2016.

2. Rosie Davison. In a letter dated October 15, 2001 from Sabrina McKinney on behalf of the Chapter 13 Trustee to a Bart employee, McKinney stated that the Chapter 13 Trustee had no interest in the settlement because Davison's bankruptcy case was dismissed. (App. 9, Pl. Exh. 193, 10/15/01 Letter).

A third debtor, Charstain Hicks, checked "No" but due to contacts with Bart's office by the Chapter 13 Trustee and her bankruptcy counsel, her name was forwarded by Bart to Martin.

1. Charstain Hicks. Hicks bankruptcy case was dismissed on her motion and the Trustee with knowledge that Hicks had participated in the Fen-Phen settlement and received settlement proceeds failed to object to the dismissal.

In all, only five (5) debtors "at issue" in the Middle District checked "Yes" on their Release and Distribution Sheets. (See App. 10, Pl. Exhs. 119, 188, 334, 513 and 562; see also App. 11, Bart Brief at pp. 4-13 (identifying only six cases in which Bart had knowledge of individuals with bankruptcy issues)).

After September 4, 2001 the following occurred or was discovered with respect to these five estates.

1. Edward Childs: See supra at 9.

2. Rosie Davison: See supra at 9.

3. Gloria Fort: 100% Plan. Discharge approved by Trustee with knowledge of debtor's Fen-Phen claims.

4. Angela Jarrett. Case dismissed before Jarrett checked "Yes."

5. Sandra Joiner. Settlement Funds were paid to Trustee causing her 100% Plan to pay out immediately and for which she received a discharge.

## II. THE COURT DOES NOT HAVE THE POWER TO ORDER A LAWYER TO REPRESENT A BANKRUPT ESTATE AGAINST HIS WILL OR TO USE § 105 AS A SANCTION FOR SUCH LAWYER'S REFUSAL TO DO SO

The Trustees and this Court admit that the fiduciaries of the estates, not Gallagher, possess the duty to obtain the approval of settlements and the retention and payment of special counsel. The Trustee's contention that some duty exists is founded upon the fact that a debtor, who does not own a personal injury claim, lies to special counsel about his or her status as a debtor, this fraud nevertheless creates an attorney/client relationship, not with the debtor, but with the actual fiduciary of the estate. Having fraudulently induced a relationship with a person who does not possess a claim, the Trustees contend that

§ 105 can be used to punish professionals who have been the victims of fraud. Under the Trustee's theory this Court can order any professional to represent any estate and impose sanctions if the professional declines. 11 U.S.C. § 105 does not confer that power.

A review of the omitted factual backgrounds of the § 105 cases cited by the Trustees demonstrates that Gallagher is entitled to summary judgment on the Trustee's claim under § 105.

In In re Jove Eng'r., Inc. v. IRS, 92 F. 3d 1539 (11th Cir. 1996) the court found that § 105 provided a remedy only after finding that the IRS had willfully violated § 362(a) (the automatic stay). See id at 1555-56. However, because Jove was a corporation and not an "individual" as used in § 362(h), Jove was not entitled to relief under § 362(h). See id. at 1552-53. The court concluded that § 105 gave it the power to fashion relief for a willful violation of § 362(a) by a corporation. See id at 1554. Section 105 was not an independent remedy, but was used only after the court found an intentional violation of § 362(a) by the IRS. The Trustees have failed to present any evidence that Gallagher willfully violated the automatic stay.

In In re Rucker (Rucker v. Conseco Financing Serv. Corp.), 278 B.R. 262 (Bankr. M.D. Ga. 2001) the court found that a creditor had knowingly filed a false affidavit in support of its Default Motion. See id. at 265. The creditor sought by

Affidavit to collect insurance premiums contrary to the provisions of the court's consent order. See id. at 268. The court determined that it could not award sanctions under 9011 because the debtor's motion "did not comply with the 'safe harbor' provision of Rule 9011(c)(1)(A)." Id. at 266. The court fashioned its remedy under its § 105 power to carry the provisions of Rule 9011. The Trustees have failed to prove a violation of any section of the Bankruptcy Code or Rules.

In In re Ludlow Hospital Society, Inc. (Noonan v. Secretary of Health and Human Servs., 124 F.3d 22 (1st Cir. 1997), the court specifically discussed the fact that § 105 can only be used to preserve or enforce a right provided elsewhere in the Bankruptcy Code. In Noonan the Chapter 7 Trustee sought to use § 105 to obtain an extension of a one year deadline for a hospital which had closed to be eligible for depreciation reimbursements from the Health and Human Services ("HHS") on a Medicare-related capital asset which was sold within one year of the hospital's closure for less than its depreciated bases. See id. at 24. The HHS objected to the trustee's motion on the grounds that 42 C.F.R. § 413.134(f)(3) permitted neither exceptions nor extensions of the deadline and that the Bankruptcy Court was not entitled under § 105 to bestow substantive rights not authorized under HHS regulations. See id. at 25. The court in holding that § 105(a) did not afford

the court the power to extend the HHS deadline imposed by 42 C.F.R. § 413.134(f)(3) stated that "section 105(a) may not be invoked to alter substantive debtor rights defined under the applicable nonbankruptcy law." Id. at 27. In reaching its decision the Noonan court reasoned that: 1) "Although expansively phrased, section 105(a) affords bankruptcy courts considerably less discretion than first meets the eye, and in no sense constitutes 'a roving commission to do equity,'" and 2) "but since section 105 itself is not a source of new substantive rights, the bankruptcy court may invoke section 105(a) only if the equitable remedy utilized is demonstratably necessary to preserve a right elsewhere provided in the Code." Id. at 27 and 28. The Trustees have failed to prove a violation of any section under the code.

In In re Harris (Harris v. Washington Mutual Home Loans, Inc.), 297 B.R. 61 (Bankr. N.D. Miss. 2003), the plaintiff claimed that Washington Mutual had wrongfully asserted monthly late fees against the payments that the plaintiff made through the Chapter 13 trustee on the indebtedness owed to Washington Mutual pursuant to their confirmed Chapter 13 bankruptcy plan. See id. at 64. When faced with a violation of the code (under the motion to dismiss standard) but no code provision to allow for damages just as it did in Jove (dealing with § 362(h)) the court fashioned a remedy for the § 1332(b)(5)

violation from § 105. See id. at 70-71. Again, the Trustees have failed to prove that Gallagher has violated any section of the Bankruptcy Code.

In In re Hardy (Hardy v. United States of America), 97 F.3d 1384 (11th Cir. 1996) the IRS, with knowledge of payments and the debtor's discharge, attempted to collect the pre-petition discharged tax liability. See id. at 1387. The court in recognizing that a violation may have occurred under § 524 stated that it had the power to award damages under § 105(a) to enforce § 524. See id. at 1389-90. Again, the Trustees have failed to prove that Gallagher has violated any section of the Bankruptcy Code.

Under each case cited by the Plaintiffs, the party to be charged had knowledge of the bankruptcy case and had violated a section of the Bankruptcy Code. Section 105 was used to allow a party to recover damages where no code section allowed for the damages. The court specifically held that § 105 did not create a new cause of action, but only used § 105 where it determined that another code section had been violated.

In In re McCrary & Dunlop Constr. Co., LLC (Vergos v. Mendes & Gonzales PLLC), 79 Fed. Appx. 770, 784-85 (6th Cir. 2003 (unpublished opinion), the court sanctioned Mendes & Gonzales for violations related to the firm's failure to disclose prior to the submission of a fee application the receipt of a

retainer. In McCrary the sanctioned law firm had knowledge of the bankruptcy proceeding. Gallagher had no knowledge of the bankruptcy cases at the time monies were paid.

In In re Hardy, 97 F.3d at 1390 the court held that sanctions under § 105 can only be coercive and not punitive in nature. The Hardy court stated that in order to determine whether a sanction was coercive the court was to ask: '"(1) whether the award directly serves the complainant rather than the public interest and (2) whether the contemnor may control the extent of the award.'" Id. "If the court finds...that the appellant primarily seeks monetary damages in the form of a final non-compensatory fine, then the court may not order such monetary damages, as they are punitive and not coercive." Id.

To the extent the court's power to sanction is designed to coerce conduct rather than punish conduct, there is no need to sanction Gallagher. Gallagher has instructed all referring counsel to obtain bankruptcy court approval before a claimant may be referred to participate in a settlement. Referring counsel has agreed to perform the task and has sought to get the appropriate approvals. The Trustees have, however, objected to the approval. [App. 13 Gloria Calhoun].

## CONCLUSION

Gallagher has demonstrated on a case by case basis that he had no knowledge of any fraudulent activity or mishandling of estate funds. When Gallagher learned he had been defrauded in the Fen-Phen settlement he conducted Pacer searches and refused to accept any referrals of bankrupt claimants unless these debtors or trustees complied with the Bankruptcy Code.

The Trustees have been unable to identify one single problem, and therefore, they argue that Bart is a bad person and that Gallagher should be punished for conduct which the Trustees cannot identify. The Trustees' claims are due to be dismissed.

Respectfully submitted,

/s/ David B. Anderson

David B. Anderson (AND006)
Ryan K. Cochran (COC020)
Attorneys for Defendants
Gallagher, Lewis, Downey & Kim and
Michael T. Gallagher

OF COUNSEL:

WALLER, LANSDEN, DORTCH & DAVIS, LLP
AmSouth-Harbert Plaza, Suite 1400
1901 6th Avenue North
Birmingham, AL 35203
Phone: 205-214-6380
Fax: 205-214-8787

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Gallagher's Reply Brief in Support of Motion for

Summary Judgment on Plaintiffs' Claims has been duly served upon counsel of record electronically and/or by mailing same by United States mail, properly addressed and postage prepaid, to the following:

Mr. Steve Olen
Mr. Royce A. Ray, III
Olen, Nicholas & Copeland, P.C.
P. O. Box 1826
Mobile, AL 36633

Mr. Frank L. Parker, Jr.
Ms. Christina May Bolin
Alford Clausen and McDonald, LLC
One St. Louis Centre, Suite 5000
Mobile, AL 36602

Mr. Joseph P. Schilleci, Jr.
Mr. David D. Schoel
Mr. Gerald S. Topazi
Natter & Fulmer, P.C.
3800 Collonade Parkway, Suite 450
Birmingham, AL 35243

Mr. Curtis C. Reding
Standing Chapter 13 Trustee
P. O. Box 173
Montgomery, AL 36101-0173

Mr. Barry E. Teague
P. O. Box 586
Montgomery, AL 36101

Mr. Von G. Memory
Memory & Day
P. O. Box 4054
Montgomery, AL 36101

This the 7th day of March, 2006.

/s/ David B. Anderson
Of Counsel