# APPENDIX 3

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF ALABAMA

In re

LISA GAIL SMOCK,

Debtor

Case No. 01-5533-WRS
Chapter 13

## MEMORANDUM DECISION

This Chapter 13 case is before the Court upon the Chapter 13 Trustee's motion to examine the Debtor's transactions with her attorney. (Doc. 22). The motion was first heard on May 28, 2003. The Court, having heard the Chapter 13 Trustee's argument, considered dismissing the Chapter 13 case. To give the Debtor adequate notice, a show cause order was entered on June 17, 2003. (Doc. 24). The case was called for hearing again on July 9, 2003. Chapter 13 Trustee Curtis C. Reding was present and the Debtor was present by counsel Kerry Curtis. For the reasons set forth below, the Court DISMISSES this case WITH PREJUDICE and further ENJOINS THE DEBTOR FROM FILING ANY CASES UNDER TITLE 11 FOR A PERIOD OF FIVE YEARS FROM THE DATE OF THIS ORDER. In addition, the Court will, by separate order, require Debtor's counsel Kerry Curtis to return the $1,300 fee paid to him in this case.

## I. FACTS

This Chapter 13 case was filed on September 4, 2001. The first Chapter 13 plan proposed a payment of only 10% to unsecured creditors.[1] The Chapter 13 Trustee insisted that the

---

[1] On its face, the Debtor's Plan proposes to pay 100%, however, the Plan called for payments of only $30 bi-weekly. To cure the arrearage on the Debtor's mortgage would require a payment of $45 per month. Moreover, the Debtor had administrative expenses of $1,300 for attorney's fees and more than $10,000 in unsecured debt. Once one does the arithmetic, it is readily apparent that either the percentage paid to unsecured creditors must drop significantly or

proceeds of a lawsuit be paid over for distribution to unsecured creditors. The Chapter 13 Plan was amended, and the Plan was confirmed on December 18, 2001. (Docs. 9, 14). The Chapter 13 case proceeded without incident until April of this year when the trustee wrote Phenix City lawyer Richard Chancey to inquire as to the Debtor's suit. Chancey responded that the suit had been settled and that the net proceeds had been distributed to the Debtor. The Debtor failed to remit the proceeds to the Chapter 13 Trustee as called for under her Plan and has spent the $28,000 distributed to her.

Chancey claims that he was not aware of the pendency of this bankruptcy case or the Debtor's obligation to pay over the lawsuit's proceeds to the Chapter 13 Trustee. The Debtor's lawyer, Kerry Curtis claims that he instructed the Debtor to make Chancey aware of her obligations under the plan and his duty to pay the funds to the Chapter 13 Trustee. In light of Chancey's claim of innocence and the fact that there is no evidence to the contrary, the Court cannot hold him responsible for the default. The Court concludes that Debtor's counsel has been negligent in the execution of his duties in this case. Mr. Curtis should not have left it to the Debtor to do the right thing with the lawsuit proceeds.

## II. CONCLUSIONS OF LAW

This case illustrates a common problem in Chapter 13 cases. How does the Court make sure that litigation proceeds which are committed to payment of the claims of creditors actually reach the Chapter 13 Trustee? The Court will discuss separately the obligations owed by the

---

the monthly payment must increase substantially.

2

Debtor, her counsel in the bankruptcy case and her counsel in her civil action, and possible consequences for their failure to act appropriately on their respective obligations.

### A. The Debtor

Of all the actors here, the Debtor appears to be the most culpable. She appeared at a Section 341 meeting of creditors on October 16, 2001, where she was told that her Plan would not be confirmed unless it was amended to provide for payment of the lawsuit proceeds to the Trustee. On October 24, 2001, she amended her Chapter 13 Plan to satisfy the Trustee's objection. (Doc. 9). The suit was settled in March of 2003. The Debtor did not tell the lawyer handling the civil suit of the pendency of her bankruptcy case nor did she tell her bankruptcy lawyer of the settlement of the civil action. By converting the litigation proceeds to her own use, the Debtor committed a material breach of a confirmed Chapter 13 Plan, thereby providing grounds to dismiss the case. 11 U.S.C. Section 1307(c)(6). Due to the seriousness of the breach, the Court finds sufficient cause to dismiss this case.

Next the Court will consider the effect of this dismissal. In general, the dismissal of a case does not bar the Debtor from receiving a discharge in a subsequent case. However, where sufficient cause exists, the Court may make a finding that debts in existence as of the date of the petition, will not discharge in future cases. 11 U.S.C. Section 349(a); In re: Jones, 289 B.R. 436 (Bankr. M.D. Ala. 2003). Such dismissals are sometimes referred to as dismissals with prejudice. In addition, the Court may also impose an injunction against refiling. Id.

3

In the case at bar, the Debtor has not offered any excuse for her actions. In fact, she did not appear, in person, at the show cause hearing. The Debtor has been in bankruptcy for two years and enjoyed the protection of the automatic stay while she litigated her civil suit unmolested by her creditors. A simple dismissal is not a sufficient deterrent against misconduct such as this. The Court will dismiss this case, with prejudice, and will impose a five-year injunction from refiling under any Chapter of Title 11 in any court in the United States.

The Court is of the view that the Debtor's misconduct here may be criminal in nature. By spending the litigation proceeds she converted property of the estate, placing it beyond the reach of the Trustee and depriving the creditors of what should have rightfully been theirs. In effect, the Debtor has stolen $28,000 from the estate. It would appear that the Debtor may have violated the provisions of 18 U.S.C. Section 152(1) or 18 U.S.C. Section 157. In addition, the Court is of the view that it has sufficient cause to refer this case to the United States Attorney for such action as she may find appropriate. See, 18 U.S.C. Section 3057.

## B. Debtor's Bankruptcy Counsel

The conduct of Kerry Curtis, Debtor's bankruptcy counsel here, has been deficient. First, he should have caused Richard Chancey's employment to have been approved by the Court.[2] Second, if nothing else, he should have made Chancey aware that the net proceeds of the lawsuit

---

[2] The Court is aware that there is a difference of opinion among the Bankruptcy Courts as to whether this is strictly necessary. Even if it is not, the practice is advisable for several reasons. First, it brings counsel squarely within the jurisdiction of the Bankruptcy Court. While one may argue that the Court has jurisdiction over the lawsuit proceeds as they are property of the estate, it certainly would strain notions of due process to sanction a lawyer for violations of the bankruptcy laws when he had no reason to know that a bankruptcy case has been filed.

4

were to be paid to the Chapter 13 Trustee. Had Chancey known of the bankruptcy proceeding he undoubtedly would have paid the proceeds to the Chapter 13 Trustee, leaving further distribution to him, which would have prevent the difficulty here. Third, under no circumstances should he have permitted the Debtor to come into possession of the proceeds.

An attorney who represents debtors in this Court is not merely the debtor's mouthpiece or her word processor. Any attorney is a professional who is expected to exercise independent professional judgment. An attorney is also an officer of the Court. As this case has demonstrated, a financially-distressed debtor cannot be relied upon to properly disburse large sums of money. Any reasonably competent bankruptcy lawyer should know this. The Court is of the view that it could hold Mr. Curtis responsible for the entire $28,000 which has been dissipated by the Debtor. Were there any indication that Curtis had been complicit in the defalcation, the Court would not hesitate to do so. As the Court finds that Curtis has been inexcusably negligent and as the entire purpose of this case has been defeated, the Court finds that it is appropriate that Curtis forfeit his entire fee. The Trustee is to take those funds and distribute them to creditors.

## C. Debtor's Litigation Counsel

The Court is aware that there is a difference of opinion among bankruptcy courts as to whether counsel in Chancey's position must have their employment approved by the Court. See, 11 U.S.C. Section 327. This Court has not published an opinion on the question and it does not appear that there is any controlling authority from either the United States Court of Appeals for

the Eleventh Circuit or the United States Supreme Court. However, by having one's employment approved in advance, counsel avoids problems as to the payment of attorney's fees and possible conflicts of interest. The difficulty in this case is exacerbated due to the fact that it appears that Chancey was not told of the bankruptcy filing. Curtis was negligent in failing to notify Chancey. It is not possible to fault Chancey for his part in the Debtor's defalcation as it does not appear that he knew of the bankruptcy proceeding. The Court will not take any further action with respect to Richard Chancey.

## CONCLUSION

In this case, the Debtor has used the automatic stay in bad faith to hold her creditors at bay for two years while she litigated her claim against David Arnold Trucking and unlawfully converted the proceeds of the settlement to her own use, contrary to the provisions of her Chapter 13 Plan. The Court will dismiss this case with prejudice and enjoin future filings for a period of five years. In addition, the Court will order Kerry Curtis, Debtor's counsel, to return the fee paid to him. His negligence in this case caused a complete frustration of the purpose of this bankruptcy.

Done this __17__ day of July, 2003.

William R. Sawyer
United States Bankruptcy Judge

c: Debtor
   C. Kerry Curtis, Attorney for Debtor
   Richard Chancey, Esq.
   Curtis C. Reding, Trustee

6