# APPENDIX 4

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

In the matter of:          )
                           )
CURTIS C. REDING, Trustee  )
                           )
    Plaintiff              )
                           )
vs.                        ) Adv. No. 03-01071
                           )
MORRIS BART, A.P.L.C., Et Al.,)
                           )
    Defendants.            )
                             Montgomery, AL
                             July 15, 2005, 1:32 p.m.

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE WILLIAM R. SAWYER
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

Mr. Steve Olen
Royce A. Ray, III
Olen, Nicholas & Copeland, PC
P.O. Box 1826
Mobile, AL 36633

Frank L. Parker, Jr.
Alford, Clausen
 & McDonald LLC
One St. Louis Centre, #5000
Mobile, AL 36602

Electronic Recorder
Operator:                  Linda Bodden

Transcriber:               Patricia Basham
                           6411 Quail Ridge Drive
                           Bartlett, TN  38135
                           901-372-0613

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.

2

APPEARANCES (Continued):

                              Von G. Memory
                              Attorney at Law
                              469 S. McDonough St.
                              Montgomery, AL 36103

                              David B. Anderson
                              Ryan K. Cochran
                              Deanna L. Weidner
                              Walston, Wells, Anderson
                                & Bains, LLP
                              One Federal Place, Suite 1100
                              1819 Fifth Avenue North
                              Birmingham, AL 35203

                              Joseph P. Schilleci, Jr.
                              Emond, Vines, Gorham
                                & Waldrep, PC
                              2101 Sixth Avenue North, #700
                              Birmingham, AL 35203

3

1        THE COURT: Good afternoon everyone.  We are here in an

2    adversary proceeding, Reding versus Morris Bart, et al.,

3    adversary proceeding 03-1071.  We originally scheduled this for

4    a telephonic hearing but everybody is showing up.

5        So, for starters, why don't we just take appearances

6    from everybody here.  We will start immediately on my left with

7    Mr. Anderson.

8        MR. ANDERSON: I will put everybody together.  It is

9    David Anderson, Ryan Cochran and Deanna Widener for Michael

10   Gallagher and his firm.

11       THE COURT: Okay.

12       MR. OLEN: Steve Olen and Royce Ray for the plaintiffs.

13       MR. MEMORY: Von Memory and Frank Parker for the Bart

14   defendants.

15       THE COURT: All right.

16       MR. SCHILLECI: Jodie Schilleci for Ben Martin.

17       THE COURT: Good afternoon all.  Let me start out with

18   just letting everybody know what I had in mind and, like I

19   said, I was looking at the motion to dismiss.  This is Reding's

20   motion to dismiss the counterclaim filed by Gallagher.  It has

21   been briefed.  I have read the briefs carefully.  I had a

22   question in my mind that was nagging me, so I thought, well, I

23   would just get everybody on the phone and ask them and they

24   have all shown up here.

25       So I guess I would put the question out for everybody

4

1  to answer.  As long as we are all here, we can take up other

2  matters, as well.  We have got a motion for summary judgment

3  more recently filed by the Gallagher defendants.  The motion

4  has been filed but still pending briefing.  So I had not

5  intended to get into that yet unless we have got a procedural

6  matter that you want to talk about.

7          There is a motion for instructions that was filed, I

8  believe, by the Bart defendants that we can address if the

9  parties would like to address that.  I don't recall if there is

10  anything else.  Are there any other pending motions?

11          MR. OLEN: Plaintiff's motion to amend the protective

12  order.

13          THE COURT: Okay.

14          MR. OLEN: But it is not pressing.  It is not something

15  we need to address today if you prefer not.

16          THE COURT: Have I set any kind of a schedule on that

17  as far as asking for responses or briefs?

18          MR. OLEN: You did set a deadline.

19          MR. PARKER: And we have responded.

20          MR. OLEN: And they have responded.

21          THE COURT: Okay.  Well, we can talk about that, as

22  well.  The question I had in my mind, and I guess we will start

23  with that and we can go from there, and I thought maybe I would

24  address it first to the plaintiffs.  As I understand the

25  Gallagher motion to dismiss - I am sorry - the Gallagher

5

1   response to the motion to dismiss the Gallagher counterclaim is
2   they are saying basically, well, if the court has jurisdiction
3   over Reding's claim, then it necessarily has jurisdiction to
4   hear what they consider to be a mandatory counterclaim, which
5   sort of directed me back to the complaint and the briefs.  We
6   launched into a discussion as to the nature of the trustee's
7   action against, you know, the defendants.

8           I had gone under the assumption and, if I am wrong, I
9   want to be told now rather than in the middle of trial or at
10  some later point but, if I have got this wrong, I want to know
11  now and not later, is that I had looked at the trustee's action
12  as something in the nature of an action either for turnover or
13  to recover property of the estate or possibly also something in
14  the way of sanctioning lawyers who didn't do things that the
15  trustee says they should have done.

16          My recollection is in one of the Gallagher briefs they
17  said that, no, the trustee does not consider this to be a
18  turnover action and then he sort of backs into, what I see,
19  backs into an argument as to what exactly is this cause of
20  action.

21          So I thought what we would do, before we get any
22  further down the road, is we would go all the way back to
23  square one and I would ask the trustee to explain – the
24  plaintiff to explain how they see their cause of action and
25  then what is the basis for it and then we would let the other

6

1    defendants respond.

2          So I guess I would start with Mr. Olen.  What do you

3    see is the nature of your claim?

4          MR. OLEN: We see the nature of the claim as centering

5    on these things that the defendants failed to do.  That they

6    failed to seek employment to represent either Chapter 13

7    debtors or Chapter 7 trustees at a point when they knew or, in

8    some instances, should have known about the bankruptcies.

9          Secondly, that they failed to seek approval of

10   settlements for people once they learned that the people were

11   in bankruptcy.

12         And, third, that they failed to seek approval of their

13   attorney's fees and expenses.

14         There are some cases or some debtor estates where all

15   three of those things are at issue but there are some where the

16   only issue is failure to get employed because there is not yet

17   a settlement and, therefore, without a settlement, also not any

18   attorney's fees or expenses.

19         And it is correct that we believe that we will be

20   asking the court to consider this conduct and whether there

21   ought to be some significant sanctions imposed given what we

22   believe to be the wide-spread nature and magnitude of the

23   misconduct.

24         In terms of the relief - do you want me to also tell

25   you what we think the relief is or have I answered your

7

1    question?

2            THE COURT: Well, here is the thing.  I mean I have

3    seen from time to time a problem of, say, a lawyer not seeking

4    approval of employment or a lawyer taking a fee and not seeking

5    approval of the payment of the fee.  The remedy there generally

6    in those instances usually I have got some sort of control over

7    the settlement proceeds and, if I want to sanction a lawyer, I

8    can simply not pay him or pay him something less than the full

9    amount owed but that is not what we are doing.  Here, as I take

10   it, at least in some of these instances the settlement money is

11   gone and so it has got to be recovered and that's how this is

12   different than the usual case in which - see, usually the

13   lawyers are coming to me wanting to get paid.  I am not usually

14   having to worry about a trustee or somebody going outside and

15   trying to recover.

16           So I guess what I see as the bedrock question is what

17   is the - you know, what is the nature of the cause of action.

18   I mean is there simply in your view a cause of action for

19   failure to comply with either section 330 or 327 or is that

20   simply a remedy as part of something else?

21           MR. OLEN: If I had to describe the primary relief we

22   are seeking, I would describe it as disgorgement.  Now maybe

23   that is something similar to turnover but I view it as

24   disgorgement, that they have obtained fees and expenses to

25   which they were not entitled and frankly obtained control over

1  and participated in distribution of settlement funds that

2  should have gone through the court process.

3      You know, in terms of what we cited in the complaint,

4  I think we said we rely on 105, 362 and the court's inherent

5  powers, but I would view this as a disgorgement action

6  primarily and also injunctive relief going forward in the sense

7  that, as we sit here today, there are a number of cases where

8  these defendants are representing either debtors on an ongoing

9  basis or purporting to represent a Chapter 7 debtor when, of

10 course, we believe the real plaintiff is the seven trustee, and

11 they have done absolutely nothing to get employed knowing for

12 a substantial period of time that the bankruptcy has existed.

13     THE COURT: Okay. Well, that answers my question then.

14 You know, if you want to, we can all go home. I suspect, Mr.

15 Anderson, you have maybe a different thought.

16     MR. ANDERSON: Would you like me to express it?

17     THE COURT: Well, if you care to.

18     MR. OLEN: Judge, may I make one comment before he

19 does?

20     THE COURT: Sure.

21     MR. OLEN: Because I think this will help narrow down

22 where we are on the counterclaim. The motion to dismiss the

23 counterclaim was filed by counsel hired by Mr. Reding's

24 insurance company, and you have seen the pleading I filed.

25 They are not in the case anymore and they won't be back. But

1    what is important here is that Mr. Anderson in his brief in

2    opposition to the motion to dismiss has clarified the relief

3    that they are seeking.  And when you read his brief, he makes

4    it clear that the relief they are seeking in the counterclaim

5    is against the estate itself.  In other words, they are not

6    seeking some claim against Curtis Reding in his individual

7    capacity, and that means that a number of the arguments raised

8    in the motion to dismiss are not relevant, like this argument

9    about getting permission from the court in order to sue, which

10   frankly I don't advance because, as I read that case, that's

11   when you go sue a trustee in the district court, you are

12   supposed to get permission from the bankruptcy court.  Well,

13   Mr. Anderson sued Mr. Reding right here in your court.  I don't

14   think he had to ask your permission to do it.  I think in suing

15   him he has done that.

16           And so I think several of the arguments in our

17   original motion to dismiss are rendered irrelevant by the fact

18   that the Gallagher defendants have narrowed their counterclaim

19   to saying in counts one and three we think that, because of the

20   nature of certain conduct by these debtors, they have a claim

21   back against the estate.  And I guess, to cut to the heart of

22   it, we do not think that count one states a claim; we think

23   count three is a closer call.  Count two is against debtors.

24   It is not actually a counterclaim against us, against Mr.

25   Reding, the trustee.

10

1          But what we argue in the original motion to dismiss,

2     much of that is - there is a big discussion in there about the

3     *Carter* case and all of that, I think, is irrelevant because

4     they clearly say repeatedly in their brief they have not joined

5     Reding individually and make no claim against Reding

6     individually.    They are suing him in his representative

7     capacity.  They are seeking no recovery from him individually.

8          And, again, I will just go ahead and say - I mean I

9     want to be up-front one way or the other.    We had this

10    identical argument in Tuscaloosa and Judge Stilson ruled with

11    David and against me from the bench on the motion to dismiss.

12         THE COURT: Okay.  I understand.

13         MR. OLEN: I am sorry.  I didn't mean to interrupt.

14         THE COURT: Oh, thank you.

15         MR. ANDERSON: Judge, my client, Mike Gallagher, is a

16    nationally known trial lawyer and he has developed experience

17    in drug cases and in these cases he will try one, he will get

18    a verdict and then people will opt out of a national class or

19    people in multi-district litigation will get out of those cases

20    and enter into group settlements which he negotiates for

21    whoever wants to participate in the group.    And so Mr.

22    Gallagher has done this and, like in the case in front of you,

23    most of the claims are these Phen-Fen claims, and this case was

24    actually settled and the monies were paid out early on.  The

25    rest of them are sort of pending claims.  So they fall in two

1  categories.  The first category being the Phen-Fen claims.  He

2  did not know that these people were in bankruptcy, and I know

3  Steve may dispute that on some of them, but we view this as a

4  turnover action, that he did not come in and get hired to

5  represent these people because the cases were settled and the

6  monies were paid out, you know, before he ever knew anybody was

7  in bankruptcy, so there is nothing to be done at this point.

8  The money has come and gone.

9          And  so  to  the  extent  he  has  touched,  handled,

10  controlled assets of an estate, he has done it in two respects.

11  Well, the special master handled the money; he didn't; but we

12  just put that aside as a factual issue.

13          To  the  extent  he  handled  monies  that  went  to  the

14  plaintiffs in the case, debtors rather than their estates, and

15  to  the  extent  he  handled  monies  that  then  went  to  pay

16  attorney's fees, these would be assets of  the estate that he

17  handled and paid out without knowledge of the bankruptcy cases,

18  and I believe it is a turnover action under 542 and that, if he

19  acted in good faith and without knowledge of the bankruptcy

20  cases, then that's an absolute defense.

21          I  don't  think  that  section  327  creates  a  cause  of

22  action.   I  don't  think  there  is  a  cause  of  action  under

23  Bankruptcy Rule 9019.  Their count three for willful violation

24  of the automatic stay, injury to an individual, really doesn't

25  fit a trustee but, irrespective of that, it still gets back to

1    the willful knowledge issue.  And then count four is to use

2    section 105 however is appropriate, either to punish,

3    compensate or enjoin.

4         And so when they filed these lawsuits, to the extent

5    the trustee has – the trustee claims that we represented

6    debtors while they were in bankruptcy.  So we didn't know it.

7    These Chapter 13 debtors say hire us and we have a form and

8    they check the form and they say I am not in bankruptcy.  They

9    sign a sworn statement saying I am not in bankruptcy and they

10   sign a release saying I own the claim and have authority to

11   settle it.  They do that as Chapter 13 debtors.  And if we

12   represented them as Chapter 13 debtors, so if a relationship

13   was created by that, then in that relationship they defrauded

14   us and they suppressed because they have a duty under Rule 2015

15   to notify us of the pendency of a case.  So they have breached

16   their duties to us and they have committed fraud in that, even

17   if it is innocent fraud because it is a representation of

18   existing fact.  I am not saying it is a future fact and I have

19   to prove intent to defraud.  It is an existing fact.  I either

20   am or am not.  So it is legal fraud in Alabama and it arises

21   out of the same transaction.  You don't even have to go to

22   series of transactions.  And the questions of law are

23   identical.  So I viewed this as a compulsory counterclaim.

24        So when the trustee sues us to saying we should be

25   punished for representing these people, the compulsory

1    counterclaim is we didn't represent these people because we

2    were fraudulently induced to enter into that relationship.

3    When the trustee sues us to say pay the fees back to us, the

4    compulsory counterclaim is I am entitled to those fees, and

5    those are the two claims we have asserted against the Chapter

6    13 trustees.

7              And then what we have done is on the fraud claim,

8    since we are going to try it as to the Chapter 13 debtors, we

9    have added the other debtors who committed the same fraud as

10   counterclaim defendants and we also sued all of the debtors on

11   a third-party claim saying they had the duty to notify us and

12   they had the duty to get us hired.  They had the duty to get

13   the settlements approved, and their breach of duty is why we

14   may be liable to the trustee.  So if we owe the trustee, they

15   owe us, and that's what we have done in this counterclaim and

16   third-party claim.    And I think our counterclaims are

17   compulsory, which is why I asserted them at this point because

18   it is either assert them or waive them.

19             And I think in terms of the standard for the motion to

20   dismiss, we need to accept the allegations of the complaint as

21   pled.  So it really would boil down to as a matter of law, I

22   think, do I have a compulsory counterclaim.  And I think if the

23   trustee has a claim, then I have a compulsory counterclaim.  If

24   the trustee doesn't, then I don't.

25             THE COURT:  Okay.  Thank you.  Did either of you

14

1    gentlemen want to –

2           MR. MEMORY: We are not in that.

3           THE COURT: Okay.  All right.  Anything further?  I

4    mean, I have gotten the answer to the question that I want but,

5    as long as we are all here, we can take up anything else.

6           MR. OLEN: We don't have anything further on this

7    issue.  Again, I want to be very clear to the court that there

8    are things in the original brief you should disregard because

9    given their narrowing the scope – maybe it was pled that way to

10   begin with but I didn't read it that way but I felt like the

11   original third-party complaint could have been read to assert

12   claims against Cleve Reding, individually, and so, you know,

13   again we just reiterate the arguments that were made that would

14   go to what might have been claims against him individually are

15   not any longer relevant.

16          MR. ANDERSON: And as soon as that issue came up, I

17   clarified that because you can't sue, you know, the XYZ Trust,

18   you can't sue the bankruptcy estate.  You sue the fiduciary as

19   representative of that estate, and that is why I named it that

20   way.  And I have not alleged anywhere in the complaint that the

21   trustee individually engaged in any sort of misconduct.

22          THE COURT: Okay.  I understand.  Thank you.  Well,

23   what about the protective order?  Is there any dispute?  I

24   guess there is.

25          MR. OLEN: There is and it has to do with the language

1    in a particular paragraph that we sought.  I think I have a

2    copy.  I am looking right here, Judge.  I was going to just

3    read you what the language is as to which we have an issue and

4    I thought I would explain to the court why we sought to modify

5    it in that respect.  Give me just a second and I will put my

6    hands on it.  Yes, we sought to amend the protective order to

7    include a provision that the Chapter 13 trustee, or any Chapter

8    7 trustee, and the bankruptcy administrator could use documents

9    or information other than client lists – there were some client

10   lists produced early on and we were not looking for an

11   exception as to that – that were obtained from the defendants

12   could be used, quote, as he or she deems necessary in

13   connection with any bankruptcy case in the Southern District of

14   Alabama where that person is a trustee.

15        And the reason we put that in there and what we had in

16   mind was this: You could have a situation where a trustee has

17   learned that there is a lawsuit out there in which one or more

18   of the defendants represent the debtor, and let's say that case

19   were approaching a discharge date.  The trustee may want to

20   move to modify the plan based on learning about the lawsuit or

21   take some action in the Chapter 13 case but would be presently

22   prohibited from doing so because the only basis for their doing

23   that would be knowledge they gain through the discovery in this

24   case.

25        Another now more pertinent and better example is that

16

recently the Bart defendants through their lawyer in this case
have written some letters to trustees saying we have some
Rezulin settlements and, you know, do you all claim an interest
in the proceeds.  If at some point any of the defendants file
applications for approval of employment in pending cases, that
is probably the best example, Your Honor.  And when we took Mr.
Gallagher's deposition he produced in discovery, it appears
that he is in the process of getting employed in some pending
cases here in the Middle District of Alabama.  If one of those
came up before Your Honor and let's say we wanted to prove to
you that this employment application they are filing comes two
years after they knew about the bankruptcy, presently under the
protective order we would not be in a position to use that
information for that purpose.  And so those are the kinds of
things that we had in mind.

And, again, I guess to give you the frame work,
whether it is pertinent or not, Judge Stilson agreed with the
defendant.  It was the Bart defendants who opposed the motion
to amend.  The Gallagher defendants took no position.  And he
thought the language was overly broad and denied our motion
without prejudice.

However, I do want to point out that the Bart
defendants who objected to my proposed protective order agreed
to this identical protective order in Mobile and it has been
entered.  The very one that I proposed word for word they

17

1    agreed to in open court in Mobile and again in a letter and it

2    has been entered by Judge Shulman.  So I am having a very

3    difficult time understanding why they have a problem with it in

4    this case.

5              I think that is where we are.

6              THE COURT: Okay.  Mr. Parker or Mr. Memory.

7              MR. PARKER: Your Honor, I will do the best I can.  I

8    wasn't really prepared for this today.

9              THE COURT: That's fine.  This really wasn't my purpose

10   today but I just thought, well, as long as we have everybody

11   here.

12             MR.  PARKER:  Generally  our  objection  was  to  the

13   broadness of the language, as Mr. Olen has just told you, that

14   we felt that it was too broad.  The concern was that any

15   information could be used by the trustee for any reason and it

16   kind of defeated the purpose of the protective order itself,

17   and that was the argument we made to Judge Stilson in the

18   Northern District.  We were concerned that, if the language was

19   tightened up some, that it would – we are not objecting to them

20   using the information in other cases but we were concerned that

21   the wording of the proposed order itself was overly broad.

22             THE COURT: Have you proposed an order that would be

23   acceptable to your client?

24             MR. PARKER: No, sir, we have not talked with Mr. Olen

25   about that but I would be happy to do so.

18

1          THE COURT: Okay. Well, here is the thing. For the

2    next fifteen or twenty days, if there is something that would

3    be acceptable to you, you could run it by Mr. Olen and, if it

4    is agreed, I would just enter it and, if not, go ahead and file

5    it anyway and I will look at it. You know, my thoughts being

6    that I will, you know, rule on the motion and, if there is -

7    obviously what I may do may be different than what you think is

8    a good idea. So if you get the first whack at what you think

9    is a good idea in the way of a protective order, I would be

10   happy to consider it.

11         MR. PARKER: Do you want us to submit it to you or do

12   you want Steve and I to get together and, if we can agree, we

13   can agree; otherwise, we will file it with the court?

14         THE COURT: Right.

15         MR. PARKER: Okay.

16         THE COURT: That will be fine.

17         MR. PARKER: Yes, sir.

18         THE COURT: Well, like I say, the big thing is the

19   motion for summary judgment that's in the briefing stage still.

20   Is there anything else?

21         MR. MEMORY: The motion for instructions.

22         THE COURT: The motion for instructions, that's right.

23         MR. OLEN: Judge, can I raise two procedural points

24   about the - well, a question and a request as to the motion for

25   summary judgment?



1    THE COURT: Okay.

2    MR. OLEN: First of all, as to the Gallagher

3    defendants' motion for summary judgment, as you know you have

4    entered a scheduling order and gave the plaintiffs a

5    substantial period of time. It is possible that we are going

6    to need one additional week, and I just want to take a quick

7    second to tell you why. We try really hard to meet deadlines,

8    but we don't have - we have all of the Bart defendants'

9    depositions. We have taken the Gallagher defendants'

10   depositions. We don't have the transcripts yet. But our real

11   problem is that, way before we knew the timing of this motion,

12   I am taking next week off and then shortly thereafter taking

13   one more week, both family vacations with my wife and kids, and

14   Royce is going to be out almost two weeks because his wife is

15   having another major surgery in New Orleans. So not only are

16   we out, we are only going to be in town at the same time for

17   like two or three days, and we are going to do our best to get

18   it done before I leave on the second vacation, but we wanted to

19   say up-front that it may be that we would be pressed and need

20   to ask for one more week and obviously would expect you to then

21   give them the same amount of additional time. But we didn't

22   want to wait until the last minute and ask you for that and

23   Royce is more confident than I that we won't need extra time.

24   THE COURT: Okay. Well, that's fine. If you need it,

25   just put in. My purpose is the motion for summary judgment -

20

1    the Gallagher motion came in, in plenty of time. I wanted to

2    have plenty of time to look at it and rule on it. I just

3    didn't want to let things slip. Quite frankly, some things you

4    kind of let slip and some you don't and this is one that I

5    didn't want to let slip. I wanted to get on this as quickly as

6    we could.

7            MR. ANDERSON: Judge, I certainly have no opposition to

8    that.

9            THE COURT: Okay. Mr. Anderson, anything further? Is

10   there anything else pending you want to talk about now?

11           MR. OLEN: I have another question about the summary

12   judgment.

13           THE COURT: Oh, yeah.

14           MR. OLEN: Just in terms of what the court wants, and

15   I meant to ask Mr. Anderson what they did. They had a very

16   substantial filing in support of their motion and we are going

17   to have a substantial filing in opposition, both deposition

18   excerpts and exhibits, probably significantly more voluminous

19   than theirs, and our only question is do you want all of that

20   filed electronically?

21           THE COURT: Here is kind of my druthers on the - and

22   that was one of the things Judge Williams and I talked about in

23   our local rules and we couldn't figure out how to do it and

24   fortunately we are a small enough court it doesn't come up but,

25   when the responses get to be a certain length, you know, and I

1    didn't know exactly what that was, you know, so many gigabytes

2    of this or that, I would prefer that you simply submit them on

3    a CD.   That is, send us in the mail a CD and then send a copy

4    of the same CD to everybody else and then, if for some reason

5    I want something, I can download it and file it but, yeah, in

6    some of these more complicated cases, the packets can get to be

7    pretty long.  So I would prefer just a CD.  Eventually we will

8    probably put something in our local rules.  We just don't have

9    it yet, you know.

10        In the good old days when someone came in with three

11   big boxes of stuff, we just threw it in the corner, ruled and

12   then ninety days after the order, we just sent it back to them

13   and the box may have never been opened. The difference is now

14   it starts to fill up our server space.  When you have got

15   really voluminous stuff, that kind of helps us, you know, not

16   chew up a lot of server space.

17        Mr. Memory, did you have something?

18        MR. MEMORY: On the motion for instruction, if we have

19   exhausted everything that we need to do procedurally.

20        THE COURT: Okay.

21        MR. MEMORY: We filed sometime back a motion for

22   instructions which actually the date is May 1, and then there

23   is a response to that, as well.  If I had done my home work, I

24   would have brought you the ECF number but I think it is around

25   May 1st is when we filed it and Mr. Olen's response came in

1    about a week or ten days later, so you can find that.

2            What we have attempted to do, at least the Bart

3    defendants have attempted to do in this court, is to set out

4    the scenarios that we face that will be addressed at some point

5    in this proceeding.

6            You have cases that are open. You have cases that are

7    closed.   You have cases in which there has been a discharge.

8    There are cases in which there has been a one hundred percent

9    payment.    What I would try to do is address each of the

10   contingencies except one, I think, and that is - and it has

11   been briefly addressed today by Steven, and that is a situation

12   in which other cases are involved other than Phen-Fen in which

13   there has in some instances been no application for approval

14   under 327(d), I think, is the special counsel, (d) or (e), the

15   special counsel provision.

16           We have received and we are in the position to move

17   forward to get, if the bases have not been touched, and we have

18   understood the position of the plaintiffs has been a failure to

19   be employed and a failure to seek approval of a settlement and

20   to get approval of fees and expenses.    Well, what we are

21   attempting to do is even as late as it is, we are prepared to

22   go into each of those cases.   Some of them unfortunately would

23   have to be reopened, but we are prepared to go case by case to

24   remedy whatever defect there might be.   Now, we don't say that

25   that would happen in every case but we are prepared to look at

1 each of those files that are at issue, even those that are not

2 at issue, and remedy that situation. And the reason we think

3 that that is important is for these reasons:

4 You will notice, and I noticed that Mr. Olen was very

5 careful as he phrased what the relief is that he was seeking,

6 but I jotted down at least two areas in which we think that

7 this is important. First of all, they are asking for

8 sanctions. We believe that if – and we are not saying that

9 what we are doing necessarily takes that off the board, but

10 what we are saying is that if it is perceived that somehow

11 there has been money that has come or should come into the

12 estate, then we want to take steps to see that that is

13 remedied. If there is a situation when special counsel would

14 seek leave to be appointed, whether the case has been – if it

15 is Phen-Fen or some other, and there are others, we would like

16 to remedy those defects, as well.

17 I also was very careful to jot down what he said in

18 seeking injunctive relief. Well, I don't think that they can

19 have it both ways. They can't beat us around the head and

20 shoulders and say you did it wrong this way and then pull back

21 and not let us try to remedy the very wrong that they insist

22 that we have committed. I am not making an admission that that

23 has happened, but we are prepared to move forward in those

24 cases and to make efforts to remedy that situation.

25 And I might tell you that what we have got is we have

1    got another settlement going on right now.  It is very small.

2    There are about seven Rezulin files in which they have come to

3    me and said we have got some money that is coming to us, what

4    should we do.  Well, what I did is I wrote each of the debtor's

5    lawyers and I wrote the trustees and I said we have a prospect

6    of a settlement; we have  got some money; would you like to

7    administer that money or not.  Well, today I got one letter

8    back from a lawyer in Mobile that said, yes, we want to

9    administer that money, would you prepare the forms to have

10   yourselves appointed – will you prepare the forms and submit

11   them to us so they can be filed or would you like for us to do

12   it.  I mean, we are happy to do it either way.  We are happy to

13   prepare the forms, but I guess one of the situations we have

14   maintained all along is that this is not special counsel's

15   responsibility.  In fact, I have been involved in this court

16   for going on thirty years and I can't ever remember of an

17   instance in which a special counsel has filed an application to

18   be appointed as counsel.  That is customarily done by the

19   trustees or it is customarily done by the debtor or someone on

20   that end.  But whoever is responsible for it, and we are not

21   saying that that standard is right or wrong, but we are

22   prepared to go back and to remedy that situation.

23        And so what we have done is we have propounded some

24   instructions and we are just saying give us some guidance and

25   we are ready to move forward and remedy the situation.

25

1           THE COURT: Okay.  I see applications for employment

2    from you all the time.

3           MR. MEMORY: Yes, sir.

4           THE COURT: You never asked me for permission to do

5    that before.  If you wanted to file one, you just filed one,

6    and I was a little puzzled as to why you would here.

7           MR. MEMORY: In this particular case, the reason that

8    I have done that is that we are special counsel and I am not

9    the debtor's lawyer and I am not representing the debtor.

10          THE COURT: Right.  I mean strictly speaking you are

11    right.  In the Chapter 11 cases, usually we insist on the

12    debtor-in-possession doing it.  Thirteens are a little bit

13    different and I think – I don't remember if it was a Gallagher

14    brief or where it was that I saw it but I wrote a decision –

15    oh, I took Kerry Curtis to task in a Chapter 13 case where he

16    basically sat by and let his client take a twenty or thirty

17    thousand dollar settlement and not pay it over to the Chapter

18    13 trustee.  I have forgotten the name of the case.  I am sure

19    you –

20          MR. ANDERSON: The *Smock* case.

21          THE COURT: Yeah, the *Smock* case.  Anyway, in that

22    particular case, you know, I found that the lawyer handling the

23    lawsuit didn't know about the bankruptcy.  At some point Kerry

24    Curtis did know about the lawsuit and I thought he didn't do

25    things he should have done.  So I have looked at it.  At that

point I remember researching the whole question, well, what do you do about a thirteen. It is pretty clear in a seven and eleven it is the trustee or the debtor-in-possession that has to make the application. What about a thirteen, is an application even necessary in a thirteen? Depending on what district you are in, you can probably make the argument that an application for employment is not strictly speaking required by the code. There is another argument that the question may turn on whether or not the plan or the order of confirmation in the thirteen vested property of the estate back in the debtor or whether, for example, the Espy plan that they do in all of theirs is - and a lot of the other lawyers file, at least in this district, is that they say, well, the property of the estate shall not vest back in the debtor until discharge. They do that, I think, to maximize their protection under section 362.

So we have got what admittedly might seem like a fairly simple question but in a thirteen it does get a little more complicated because it is not quite so clear who has to file the application or whether even an application has to be filed. Of course, the problem is that the lawsuit proceeds are property of the estate and, if they get converted, someone is going to go looking for them and, human nature being what it is, fingers will probably get pointed in several different directions if the money doesn't get where it is supposed to go.

1    So in thirteens, for whatever reason, and I recognize

2    people could quarrel with what I have done but in thirteens I

3    have never stood on ceremony.  If a lawyer came in, special

4    counsel, debtor's counsel, anybody came in and filed an

5    application to approve employment or an application to approve

6    a fee, I didn't quarrel with who it was that filed it.  I was

7    just kind of tickled to get the lawsuit proceeds brought within

8    sort of the jurisdiction or at least the purview of the court.

9    What leaves me a little bit cold in these thirteens is

10    the fact that you may have - a debtor may or may not disclose

11    the fact that he has got a lawsuit.  The plaintiff's lawyer may

12    or may not know that his client is in bankruptcy.  The

13    plaintiff's lawyer may or may not know whether or not, for

14    example, in that Smock case, the lawsuit proceeds were not

15    disclosed.  Somehow or another, I think Sabrina sniffed it out

16    and forced Kerry Curtis to amend the plan, which he eventually

17    did.  And then when the money comes from the settlement, Kerry

18    Curtis tells the debtor, "Oh, yeah, go ahead and tell your

19    lawyer that he has got to pay the money over to the Chapter 13

20    trustee."  Well, you know that is just not going to happen in

21    a lot of cases.  It is just unrealistic and that's why I

22    sanctioned Kerry Curtis in that case.  He should have known

23    better.

24    So in a thirteen if a plaintiff's lawyer wants to come

25    forward - and there are lots of good reasons why he might file

1    an application to approve his employment even if he doesn't

2    think, strictly speaking, it is necessary, in that he gets some

3    determination whether or not he has got a conflict of interest,

4    which of course under the Eleventh Circuit case, a conflict of

5    interest can cause a lawyer to lose his fee.  And then also it

6    permits the lawyer for the debtor to disclose his fee up-front

7    so that he doesn't have a lot of argument on the back end if he

8    wants a forty percent or forty-five percent contingency or

9    whatever it is.

10           So it is a little bit of - admittedly a little bit of

11    a gray area in the law but I have never in a thirteen case, you

12    know, quarreled with who it was that actually filed the

13    application.  You know, on the other hand, until the Eleventh

14    Circuit speaks - as a matter of fact, I have not - I don't

15    think I published the Smock case, so I don't think I can hold

16    anybody to that, but I don't think there is any authority out

17    there in this neck of the woods that would answer the question

18    as to whether or not the employment strictly speaking needs to

19    be approved, but the thing is I have never denied an

20    application based on those grounds.  So I say if you want to

21    file applications and get that protection, go ahead and do it.

22           MR. MEMORY: Go ahead.

23           MR. OLEN: Are you on this subject or a different one?

24    I want to respond to what he said about the request for

25    instructions if you are moving on to a different subject.

29

1          MR. MEMORY: I am not.

2          MR. OLEN: Go ahead.

3          MR. MEMORY: One of the other issues I don't think is

4     easy either and that is, if in fact we were to do that, we are

5     faced with the proposition that some of these cases have been

6     closed and –

7          THE COURT: Let me stop you right there.  You had

8     mentioned that.  I am reluctant to lock the barn after the

9     horse is gone.  If the money is paid out, I don't know what the

10    point is in coming in after the fact and approving employment

11    or approving a fee.  You know, if the money is gone, the money

12    is gone, and then, you know, there are a number of things that

13    can happen.  The trustee, if he wants to, can try and get the

14    money back.  If there is time, the trustee can try and – if

15    there has been a discharge entered, you know, avoid the

16    discharge.

17          There is one case – I don't know if you were in court

18    – there was one case in Opelika recently where a Chapter 13

19    debtor had a small personal injury suit.  It was pledged to the

20    Chapter 13 trustee, the plan.  She settled the case.  She

21    scarfed down a couple thousand bucks.  It was small.  So the

22    trustee screamed bloody murder.  So, you know, we hauled them

23    back into court.  We decided what to do about it.  I think we

24    forced the debtor to increase her plan to a hundred percent

25    and, you know, promise never to do it again, and sure enough

30

1    she had another small lawsuit and she did the same thing again.

2    At which point, rather than crank up the federal machinery and

3    try to recover the seven hundred dollars from the second

4    settlement, I simply dismissed her with an injunction so that

5    she wasn't going to get a discharge and couldn't file

6    bankruptcy.

7           So the remedy that is available in the court is going

8    to vary depending on the circumstances but, if the money has

9    already been paid out, I don't know what the point is in

10   seeking approval of employment after, you know, that far after

11   the fact.

12          So I would say, you know, if the money is gone, you

13   know, I would say don't bother. It is just my thought. If you

14   become aware of facts that you think the trustee ought to be

15   aware of, you might write him a letter and say, by the way,

16   this client was in bankruptcy, I didn't know it and, you know,

17   he or she has taken settlement proceeds and that may be a

18   conversion of property of the estate. You know, you may want

19   to think about doing that but, after the settlement proceeds

20   are gone, I would be reluctant to take up a motion under those

21   circumstances. I mean, we have had cases two and three years

22   old that have come in two and three years late and get their

23   employment approved, you know, basically on the eve of a

24   settlement. Circumstances like that, I have taken the

25   position, well, better late than never.

31

1        So, anyway, yes, if there is some purpose that could

2    be served, I would be happy to take a look at a motion but, if

3    it is busy work that won't accomplish anything, then I would be

4    reluctant to waste everybody's time with it.

5        MR. OLEN: May I respond?

6        THE COURT: Sure.

7        MR. OLEN: As we pointed out in our brief, and I won't

8    repeat it, the request for instructions is really asking you to

9    enter an advisory opinion, and the presentation today really

10   underscores why it is asking for an advisory opinion.    You

11   mentioned about the trustee going and trying to get money back

12   when the money has already been paid out.    Well, that is

13   exactly what is part - that is part of what we are doing here.

14   The Bart defendants were sued in Tuscaloosa in December of

15   2002, going on three years.    They were sued in this case two

16   years ago, Your Honor.    Two years later they come in and they

17   ask you in a request for instructions what should they do, and

18   here is what is wrong with their request for instructions and

19   why you ought not consider it.    They need to file an

20   appropriate motion, whatever they think that is.    Maybe it is

21   a motion for summary judgment.    What they have neglected to

22   tell you is this:  This is not a question of whether they could

23   file an application for themselves or whether someone else

24   should have done it.    The record in this case is undisputed.

25   The Bart defendants never ever, zero for sixty, zero for two

32

1   hundred and twenty-five in the Northern District, they are zero

2   for two hundred and eighty-five in ever asking a Chapter 7

3   trustee to employ them.  I mean, it is correct that no Chapter

4   7 trustee has ever moved to employ them because they never told

5   a Chapter 7 trustee they were out there representing this

6   debtor, much less seeking to represent the trustee.  Now, they

7   had trustee's right to them and they blew them off and they

8   never responded and they continue to represent that Chapter 7

9   debtor.

10      They have never asked - and I am talking about the

11  Bart defendants.  Mr. Gallagher is in a different situation.

12  I want to make sure that I am clear here.  The Bart defendants,

13  based on the record in this case, have never in any of these

14  two hundred and eighty-five cases - the sixty here and the two

15  twenty-five in the Northern District - they have never asked a

16  bankruptcy attorney to get them employed.

17      So this request for instructions is very much trying

18  to lock the barn door after the horse is out.  We have caught

19  them red-handed and are trying to frankly bust their chops for

20  what they have done in abusing the system, we contend, and they

21  come along two years later.  Where was this request for

22  instruction when this first got filed?  They could have filed

23  any applications they wanted.  They have never ever asked

24  anyone.

25      The other thing that is left out - and the fact that

33

1    these kinds of things are missing from the context that you

2    have for this request for instruction shows, I mean, if they

3    want to challenge or, you know, they want to find out how this

4    ought to work in each scenario, they ought to file a motion for

5    summary judgment, do it the right way, the way Mr. Anderson has

6    done it, and say here is this debtor who is in this category

7    and here is this debtor who is in that category; and we get to

8    come back in and tell you as a factual matter, putting it on

9    the record, what I have just told you as opposed to me making

10   that presentation.

11          And let me tell you what they have left out.  You take

12   the *Edward Childs* case.  Sabrina McKinney writes the Bart

13   defendants three letters telling them what they need to do.

14   Zero response.  No letter, no phone call, zippo.  Charsky and

15   Hicks, "o" for three again.  And then some subsequent letters.

16          Ultimately they pay Mr. Hicks' portion of the money

17   into court.  They never get the settlement approved to this

18   day.  This happened in 2001.  Never approved.  They have never

19   gotten their fees or expenses approved to this day, four years

20   later, but they want to file a request for instructions.  I

21   mean, it is so out of context that it's –

22          THE COURT: Okay.  Well, I mean, I agree with your

23   point about the advisory opinion.  I don't grant advisory

24   opinions.  What I do, for whatever it is worth and, you know,

25   it is up to every lawyer, each party, to decide what it is

34

worth, is that I don't discourage parties from coming in and
discussing either a case or a recurring problem to see what we
can do to prevent a similar problem in the future or if there
is anything that can be done to resolve, you know, an existing
problem.

I mean, right, I am not going to give anybody a ruling
on a hypothetical set of facts that may or may not match the
facts of anything we have got here.  I mean I would never get
any sleep if I accepted every one of those sort of hypothetical
questions.

On the other hand, you know, realistically we have
got, you know, a case that's - I don't want to say it is a mess
but it has certainly mushroomed beyond where I thought we would
be when the case first started and, if there is any way to sort
of hem things in one way or the other, I am all in favor of
doing it.  I mean basically as a judge I look at things as sort
of an institutional - from an institutional kind of perspective
and not always just deciding things on a case by case basis.
Mr. Reding as a Chapter 13 trustee also has something of an
institutional bent.  So that to the extent that - you know, the
defendants, they are going to be around in the future.  They
are going to have this sort of problem.  To the extent that
there may be a way of resolving this problem, I am willing to
do what I can to help.  I mean otherwise, yes, I will just sit
back and wait for motions and wait for a trial and rule on

35

1    that.  There is nothing in the Federal Rules of Civil Procedure
2    or  the  Bankruptcy  Rules  that  talk  about  petitions  for
3    instruction.  You know, there is nothing that I am going to do
4    that is going to bind anybody to anything in response to a
5    petition for instructions but, on the other hand, if I can help
6    either a settlement or even just a streamlining of what we are
7    doing here, I am all in favor to do that.

8          We have got kind of a nebulous area of law.  These
9    thirteens  are  kind  of  funny  animals.   They  can  be  as
10   complicated as an eleven but, because the dollars are typically
11   so much less, a lot of these questions that recur don't get
12   litigated or at least don't get litigated at an appellate level
13   so that there is really not much binding authority out there on
14   a lot of these questions.

15         You know, whether I can help or maybe I am just
16   muddying the water and maybe I need to keep still and go on but
17   at least I am willing to listen to a proposal and an answer
18   but, yeah, my thoughts are more disclosure is better than less.
19   You know, we have got this whole issue, it has always troubled
20   me.   A friend of mine, Ray Lyons in New Jersey, wrote a
21   decision basically saying that he didn't think debtors needed
22   to get approval to hire counsel in situations such as this.
23   Peggy Mahoney went the other way in a Southern District case,
24   so there is competing authority out there, you know, on a lot
25   of these questions.  Obviously nothing I say is going to, you

1    know, bind anybody to anything but if it helps, you know, I am

2    willing to try.

3                Anything further?

4                MR. MEMORY: Thank you, sir.

5                THE COURT: Anybody?

6                MR. OLEN: We have a procedural question.  Under Rule

7    54 - federal rule.  I am sure it has been adopted by the

8    bankruptcy rules but I forgot to look, but the federal rule is

9    54(d)(2), which talks about where there are claims for

10   attorney's fees.  All we want to do is ask the following:

11   Whether the court wants to proceed under Rule 54(d)(2) which

12   would mean the plaintiffs who contend the court - if the court

13   ultimately were to rule in favor of the plaintiffs, ought to

14   shift some of the attorney's fees to the defendants.  Under

15   that rule, the plaintiffs would not take up the court and the

16   defendants' time with issues about attorney's fees at the trial

17   but we would try the principal case and wait until the court

18   rules.  Obviously if the court rules entirely in favor of the

19   defendants, then that takes away an attorney's fee issue.  But

20   we also didn't want to sit back and not deal with this issue at

21   all, get here for trial and Your Honor is looking for us to

22   present whatever evidence we want on this issue.

23               But as we understand 54 - I think it is 54(d)(2), what

24   we would normally do in a case like this is try the case and

25   then ultimately if the court entered some type of judgment in

37

1    favor of the plaintiff, the plaintiff would have a set time

2    period to come in and file some type of motion seeking

3    attorney's fees.

4              THE COURT: Okay.

5              MR. ANDERSON: Particularly since part of the

6    attorney's fees would be based on the trial time expended, I

7    think that is the most efficient way to handle it.  I am

8    agreeing with him, but I didn't mean to interrupt.

9              THE COURT: No, that is fine by me.  I am just looking

10   at the rule.  7054 says Rule 54(a)-(c) applies in adversary

11   proceedings.  So I don't know that 54(d) is even incorporated

12   in the 7054, so I am not sure what that means in the context of

13   your problem anyway.

14             MR. ANDERSON: You should have checked just like I

15   should have checked when I filed a creditor's plan in a Chapter

16   9 case and found out that that big paragraph and sections that

17   don't apply included creditors filing plans, but Judge Stilson

18   treated it as an objection anyway.

19             MR. OLEN: Well, our preference subject to what the

20   other parties think and the court's approval is that there is

21   no reason or need to take up attorney's fees at the trial until

22   we see what the outcome of the trial is.

23             THE COURT: I agree with that whether or not section

24   (d) is incorporated.

25             MR. ANDERSON: I think that does it for now, Judge.

38

1    Thank you.

2              THE COURT: All right.  Thank you, gentlemen.

3              MR. OLEN: Thank you for your time.

4              MR. MEMORY: Thank you, Judge.

5              (Off the record at 2:32 p.m.)

39

C E R T I F I C A T E

        I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

                                        _Patricia Basham_

                                        Patricia Basham, Transcriber

                                        Date: August 2, 2005