### IN THE UNITED STATES DISTRICT COURT FOR THE
### MIDDLE DISTRICT OF ALABAMA

**In Re:**

**EDWARD CHILDS,**

    **Debtor.**

---

**CURTIS C. REDING, in his capacity**
**as Chapter 13 Standing Trustee; and**
**SUSAN DePAOLA, as Trustee for the**
**Estate of Shellwanda Babers; individually**
**and on behalf of all others similarly situated,**

      **Plaintiffs,**

**vs.**                                          **CIVIL ACTION NO. 2:06mc3295-WHA**

**MORRIS BART, A.P.L.C. ; MORRIS BART;**
**GALLAGHER, LEWIS, DOWNEY & KIM;**
**and MICHAEL T. GALLAGHER; jointly**
**and severally,**

      **Defendants.**


### PLAINTIFFS' BRIEF IN OPPOSITION TO
### THE GALLAGHER DEFENDANTS'
### <u>MOTION FOR STAY OF ADVERSARY PROCEEDING</u>


_____Plaintiffs Curtis C. Reding and Susan DePaola ("Plaintiffs") file their Brief in Opposition

to the Gallagher Defendants' Motion for Stay of Adversary Proceeding as follows:

I.      **Legal Standard**

The law is clear that the burden is on the party seeking a stay to satisfy the same four criteria that must be demonstrated for the grant of a preliminary injunction: "(1) whether the movant has made a showing of likelihood of success on the merits; (2) whether the movant has made a showing of irreparable injury if the stay is not granted; (3) whether the granting of the stay would substantially harm the other parties; and (4) whether the granting of the stay would serve the public interest." *In re First Southern Savings Association*, 820 F.2d 700, 709 (5th Cir. 1987).

II.     **The Gallagher Defendants' Motion for Withdrawal of Reference Is Clearly Untimely**

   A.      **The Gallagher Defendants' Statement That Their Motion Is "Timely" Ignores <u>Years</u> Of Litigation And Proceedings Before The Bankruptcy Court**

This Court need look no further than the last 2 pages of the Gallagher Defendants' Motion for Withdrawal of Reference in order to discern the dispositive issue presented: the untimeliness of that motion. Tucked away near the very end of the motion, the Gallagher Defendants make the bald statement that "Gallagher's Motion for Mandatory and Permissive Withdrawal of Reference and Transfer of Adversary Proceeding to District Court is timely." (Gallagher's Motion, p. 32). Simply because the Gallagher Defendants say their motion is "timely" does not and cannot make it so. The Gallagher Defendants' statement is wrong, ignores the case law on "timeliness," and belies the record.

When properly viewed in the context of what has transpired over the course of this adversary proceeding in the Bankruptcy Court, the Gallagher Defendants' Motion for Withdrawal of Reference

-2-

constitutes blatant forum shopping and obstructionist litigation tactics rather than a bona fide claim of a right to jury trial. Indeed, the Gallagher Defendants' naked assertion of "timeliness" ignores extensive litigation that has occurred before Judge Sawyer in the Bankruptcy Court, proceedings in which the Gallagher Defendants chose to actively participate for **years** after asserting a jury demand in their Answer to the Amended Complaint. The Gallagher Defendants' unsupported statement at the end of their brief that their motion is "timely" is a futile attempt to downplay an insurmountable problem -- untimeliness -- that is fatal to their motion.

"A request by a party for either mandatory or permissive withdrawal [of the reference] must be 'timely.'" *Federal Trade Commission v. First Alliance Mortgage Co. (In re First Alliance Mortgage Co.)*, 282 B.R. 894, 902 n.6 (C.D. Calif. 2001) (*citing* 28 U.S.C. § 157(d)); 28 U.S.C. § 157(d). The Gallagher Defendants' motion is untimely. The record in Bankruptcy Court establishes that **the Gallagher Defendants stood completely silent before Judge Sawyer on their alleged right to jury trial for years while they actively participated in substantial discovery proceedings and disputes, attended 19 depositions, litigated -- and lost -- their summary judgment motions, filed a third party complaint, filed a counterclaim, filed another third party complaint, and attended countless scheduling and pre-trial conferences**.

**The Gallagher Defendants have known since September 29, 2005 -- almost 8 <u>months</u> before the trial and 6 months before their summary judgment motion was to be heard -- that this case would be tried on May 22, 2006. Moreover, the Gallagher Defendants knew on April 5, 2005 that this case was to be tried on December 12, 2005, the original trial date.**

The Plaintiffs and the Gallagher Defendants have filed their witness lists, trial exhibit lists and designations of deposition excerpts for trial on April 25, 2006.

If the Gallagher Defendants had truly intended to assert a right to jury trial, they would have moved to withdraw the reference years ago when the jury demand was included in their Answer. The record establishes that the Gallagher Defendants are forum shopping and stalling. It was not until **after** (1) Judge Sawyer recently denied the Gallagher Defendants' summary judgment motion; (2) the Gallagher Defendants had violated 2 separate Court orders entered by Judge Sawyer; and (3) the other Defendants had settled with the Plaintiffs, leaving the Gallagher Defendants as the only remaining defendants at trial, that the Gallagher Defendants filed their motion for withdrawal of reference on the eve of the upcoming May 22 trial. The Gallagher Defendants totally ignore their **years** of substantial litigation in the Bankruptcy Court in their discussion of the "factual and procedural" history of this case. Due to the untimeliness of the filing of the motion for withdrawal of reference and the Gallagher Defendants' waiver of any alleged right to jury trial, this Court need not even address whether a right to jury trial ever existed or whether there are any other alleged valid grounds for the Gallagher Defendants' motion.

> **B.    The Gallagher Defendants Chose To Actively Litigate in Bankruptcy Court Before Judge Sawyer for <u>Years</u> Without Moving To Withdraw The Reference Or Advising Judge Sawyer of Their Position That He Could Not Try This Case**

On July 29, 2003, the Plaintiffs filed their Amended Complaint in the adversary proceeding in Bankruptcy Court. The Amended Complaint asserts claims against Texas attorney Michael Gallagher and his law firm. On August 28, 2003, the Gallagher Defendants filed their Answer which included a demand for an alleged right to jury trial. It is clear "that the mere filing of a jury demand does not cause the Bankruptcy Court to lose 'jurisdiction' of the action(s) or mandate that the

reference be withdrawn." *City Fire Equipment, Inc. v. Ansul Fire Protection Wormald*, 125 B.R. 645, 649 (N.D. Ala. 1989). The Gallagher Defendants cite and rely upon *City Fire Equipment*. (Gallagher's Motions, p. 33).

This adversary proceeding came before Judge Sawyer for a scheduling conference on August 26, 2003. Judge Sawyer entered a scheduling order which set various deadlines concerning discovery matters. The Court's August 28, 2003 order also set the matter for further hearing on October 28, 2003 and stated that "the Court will hear any pending discovery motions, set a discovery completion date and schedule this matter for trial. Counsel should be thoroughly familiar with all aspects of this adversary proceeding." (August 28, 2003 Order, paragraph 4, p. 2).

The Gallagher Defendants filed a third party complaint against attorney Ben Martin and his law firm on September 5, 2003. On September 9, 2003, the Gallagher Defendants filed an answer to the cross-claim of the Bart Defendants and asserted their own cross-claim against the Bart Defendants. The Gallagher Defendants did not demand a jury trial on their third party complaint against the Martin Defendants and did not demand a jury trial on their cross-claim against the Bart Defendants.

On October 23, 2003, the Bankruptcy Court entered an order which set a hearing for October 28, 2003 and stated that "the Court will hear all pending discovery motions, set a discovery completion date and schedule this matter for trial . . . . Counsel should be thoroughly familiar with all aspects of this adversary proceeding." (October 23, 2003 Order, pp. 1, 2).

Judge Sawyer held another scheduling conference on January 4, 2005. The Court entered a Pre-Trial Order dated January 13, 2005 requiring the parties to confer concerning various matters, including the creation of a common exhibit list and a common set of exhibits to be used both during

-5-

discovery and at trial. The Court's January 13 order set a pre-trial conference for March 1, 2005 and stated that "Counsel for all parties shall have their calendars available so that a trial of this adversary proceeding may be scheduled. Once a trial is scheduled, continuances will be granted only under extraordinary circumstances upon a showing of cause." (January 12, 2005 Pre-Trial Order).

On January 24, 2005, the Gallagher Defendants filed a "Motion for Relief from the January 12 [sic], 2005 Pre-Trial Order; Motion for Protective Order; and, Motion to Require the Plaintiff to Comply with Due Process of Law." In that motion, the Gallagher Defendants requested that Judge Sawyer suspend all pre-trial deadlines and enter a protective order that discovery not be had on certain of the claims for various reasons set forth in the motion. Judge Sawyer held a hearing on March 29, 2005 and shortly thereafter entered a 6 page pre-trial order dated April 5, 2005. **The Bankruptcy Court's April 5, 2005 Pre-Trial Order** set a discovery completion date, dealt with matters concerning the exhibit list, set deadlines for dispositive motions, set procedures for the handling of deposition testimony at the trial, set witness list deadlines, and **set the trial for December 12, 2005**. The Bankruptcy Court's April 5, 2005 Pretrial Order also disposed of the Gallagher Defendants' motion for relief from the January 12 [sic], 2005 Order:

> On January 24, 2005, the Gallagher Defendants filed a motion for relief from the January 12, 2005 Order. (Doc. 130). Gallagher seeks to suspend all deadlines "until the debtors and their counsel have determined what to do with these claims." **This is a preposterous request as the claims in question are property of the various bankruptcy estates** and not the property of the individual debtors. The Court having carefully reviewed the motion, finds that it is not

well taken and DENIES the same.  **At the March 29, 2005 hearing,**
**the Court repeatedly inquired of Gallagher's counsel when a list**
**of exhibits would be provided and was not given any meaningful**
**response.  The Court finds that the Gallagher Defendants have**
**willfully refused to comply with the Court's January 12, 2005**
**Order.**

(Pretrial Order of April 5, 2005, p. 2) (emphasis added).

The Bankruptcy Court's April 5, 2005 Pretrial Order also set forth in detail certain
procedures to be used at trial:

### IV.    DEPOSITION TESTIMONY

The Court finds that this is an extraordinary Adversary
Proceeding in that it appears to involve more than 60 individuals who
have been debtors in bankruptcy cases filed in this District.  The
Plaintiffs allege that the Defendants, who are lawyers, have concealed
or converted property of the estate on a massive scale.  The Court
anticipates that there are potentially more than 100 witnesses in this
Adversary Proceeding.  The Court further anticipates that much of
this testimony may be offered by way of depositions.  Pursuant to
Rule 32(a)(2)(E), Fed. R. Civ. P., as made applicable pursuant to Rule
7032, Fed. R. Bankr. P., the Court finds that it may dispense with the
requirement of unavailability.

**The Court has scheduled this Adversary Proceeding for a two-week trial.** In order to meet this schedule it will be necessary for the testimony of a number of witnesses to be offered by way of deposition. The parties are advised that the Court may not permit live testimony from every witness listed. For each witness whose testimony is to be offered by way of deposition, excerpts of transcripts of each witnesses' deposition testimony should be provided at the time the lists of witnesses are filed. In other words, the party submitting deposition testimony shall offer only those pages which he intends to offer into evidence. For example, if only pages number 50 to 60 of a deposition are to be offered, the entire 100-page transcript should not be offered into evidence.

## V.    LISTS OF WITNESSES

Each party shall file a list of witnesses not later than **November 15, 2005**. The parties should bear in mind that the Court may not permit live testimony from every witness listed. The Court may exclude the testimony of witnesses who are not on the witness list. Deposition transcript excerpts shall be tendered to all other counsel at the time the lists are exchanged.

Objections to deposition testimony shall be filed, in writing, not later than **November 30, 2005**. Objections shall be stated with

specificity and be keyed to the page and line number of the question. For example, 'John Smith deposition, page 25, line 2, objection hearsay.' The failure to timely make objections may be found to be a waiver of the right to make objections.

## VI.    TRIAL SETTING

**Trial of this Adversary Proceeding will commence on December 12, 2005 at 9:00 a.m.,** at the United States Bankruptcy Court, One Church Street, Courtroom 4-D, Montgomery, Alabama, and continue from day to day until completed or adjourned. Counsel should anticipate that the Court will take one break for 15 minutes in the mid-morning, another at mid-afternoon and a one-hour break for lunch. Counsel may expect that testimony will be taken until 5:00 p.m., but to accommodate the schedules of witnesses, the Court may on occasion remain in session later. A party who runs out of witnesses may be determined to have rested its case. Trial briefs are not required but are welcome. Counsel may anticipate that the Court will request that proposed findings of fact and conclusions of law be filed within 45 days from the close of evidence.

It is the Court's intention to try this matter in two weeks. The Plaintiffs will have one week in which to offer in court testimony. The Bart and Gallagher Defendants shall have two days each and

Martin shall have one day. **Deposition testimony will be offered by**

**way of transcripts only. The Court will not engage in the exercise**

**of having counsel read from deposition transcripts during court**

**proceedings.**

(Emphasis added).

This adversary proceeding came before Judge Sawyer again on July 15, 2005 on various

matters, including a Motion for Instructions filed by the Bart Defendants and the Plaintiffs' Motion

to Dismiss the counterclaim filed by the Gallagher Defendants. At that hearing, Plaintiffs advised

the Court of the Plaintiffs' view of the Complaint and theories asserted therein. At the end of that

hearing, the issue arose as to whether the Court would hear Plaintiffs' claim for attorney fees at the

trial set in December. The Gallagher Defendants addressed this trial related issue as follows:

> MR. ANDERSON: Particularly since part of the attorneys' fees
>
> would be based on the trial time expended, I think that [setting a time
>
> frame to file a motion seeking attorney fees after entry of a judgment]
>
> is the most efficient way to handle it. I agree with him [Plaintiffs'
>
> counsel] but I didn't mean to interrupt.

(Hearing transcript, p. 37).

The Bankruptcy Court held another hearing on September 29, 2005. That same day the

**Bankruptcy Court entered a written order dated September 29, 2005 which** set a discovery

completion date, a deadline for dispositive motions, a deadline for the Plaintiffs to file a response

to the Gallagher Defendants' pending summary judgment motion, and a deadline for the Gallagher

Defendants to file a reply to the Plaintiffs' response. The Court also set March 30, 2006 as the

hearing date for motions for summary judgment and **reset the trial for May 22, 2006**. The Court reset the trial date because of the impact of Hurricane Katrina on the Bart Defendants, who are located in New Orleans. The Bankruptcy Court incorporated its previous April 5, 2005 Pretrial Order as to how the trial would proceed. **Thus, the Gallagher Defendants knew on September 29, 2005 that this case would be tried on May 22, 2006.**

In February of 2006, the Plaintiffs reached a pro tanto settlement with the Bart Defendants, and those parties filed a joint motion for the Bankruptcy Court to approve the settlement. Judge Sawyer held a hearing on that motion on February 28, 2006, during which the following colloquy occurred:

> **THE COURT:**  Good morning. All right. I just wanted to make sure I understand. I mean, basically we have got half of the case or part of the case involving Morris Bart is settled. **The part of the case involving the claim against the Gallagher defendants is going forward; is that correct?**
>
> **MR. OLEN:  Yes, sir, that is correct.**

(Hearing transcript, p. 3) (emphasis added).

On February 10, 2006, Judge Sawyer entered an Order Granting Motion For Summary Judgment of Martin Defendants. The Martin Defendants had moved for summary judgment on the third party complaint which had been filed against them by the Gallagher Defendants. **Judge Sawyer's Order found that "[r]esponses were due on January 31, 2006 " and that "[n]o party has filed a response." In short, the Gallagher Defendants failed to comply with the Court's order requiring them to file a response by January 31, 2006.**

The Bankruptcy Court held a hearing on March 30, 2006 on the Gallagher Defendants' Motion for Summary Judgment as to the Plaintiffs, which by then had been fully briefed by the Gallagher Defendants and the Plaintiffs. The Gallagher Defendants had filed their motion for summary judgment as to the Plaintiffs and supporting brief on June 27, 2005. The Plaintiffs filed their response on October 7, 2005. The Gallagher Defendants filed their reply to Plaintiffs' response on March 7, 2006. At the summary judgment hearing, Judge Sawyer heard extensive argument from the Gallagher Defendants and the Plaintiffs and then denied the motion for summary judgment in an oral ruling. At the end of that hearing, Judge Sawyer **reiterated** to the parties that this case would be tried as scheduled on May 22, 2006.

The Gallagher Defendants state at page 14 of their brief: "At the conclusion of the summary judgment argument, **on March 30, 2006, the bankruptcy court** summarily denied the motion and **announced that Gallagher would be required to prepare for** and defend 33 Estate claims at **a two week trial commencing May 22, 2006.**" (Motions, p. 14) (emphasis added). This characterization by the Gallagher Defendants creates the misimpression that the first time Gallagher knew this case would be tried on May 22, 2006 was at the conclusion of the summary judgment hearing on March 30, 2006. That is simply not true. **The Bankruptcy Court's Order dated September 29, 2005 set this case for trial on May 22. The Gallagher Defendants have known since September 29, 2005 that the case would be tried on May 22, 2006.**

In addition to the foregoing, the Gallagher Defendants attended nineteen (19) depositions in New Orleans, Houston, Montgomery, Tuscaloosa, Dothan and Mobile. The Gallagher Defendants participated in numerous other discovery matters before Judge Sawyer.

**The Gallagher Defendants never filed a motion to withdraw the reference and never advanced the issue of withdrawal of the reference until after their summary judgment was denied and less than 5 weeks before the May 22 trial date that they had known about for 8 months.** As the foregoing chronology demonstrates, the Gallagher Defendants -- who asserted an alleged right to jury trial almost 3 years ago in their Answer to the Amended Complaint -- very actively and substantially litigated this case. **The Gallagher Defendants <u>never once said anything</u> during any of the numerous court hearings and proceedings held by Judge Sawyer in this litigation about their alleged jury trial right, or that the case could not be tried by Judge Sawyer, or that they intended to move to withdraw the reference.**

**The Gallagher Defendants stood completely silent on the alleged jury trial/withdrawal of reference issues despite attending and participating in numerous hearings held by Judge Sawyer concerning discovery, scheduling and trial procedures. They never moved to withdraw the reference or even bothered to alert Judge Sawyer to their alleged right to jury trial despite several detailed Pre-Trial Orders entered by Judge Sawyer addressing many procedural and substantive trial procedures that the Bankruptcy Court intended to follow.** There is no mention of an alleged jury trial right in the Gallagher Defendants' January, 2005 motion for relief from Judge Sawyer's January 12 [sic], 2005 Pre-Trial Order. It was not until **after** the Bankruptcy Court had denied the Gallagher Defendants' Motion for Summary Judgment, **after** they had violated 2 of Judge Sawyer's Orders, and **after** the other defendants had reached a settlement with the Plaintiffs that the Gallagher Defendants filed their motion for withdrawal of reference. It is incredible that, after having litigated for many years in the Bankruptcy Court and lulling Judge Sawyer into believing that the case would be tried by the Bankruptcy Court without a jury pursuant

-13-

to the procedures set forth in the pre-trial orders, the Gallagher Defendants would now -- less than 5 weeks before a trial date they had known about 8 months in advance -- file such a motion. Clearly, the Gallagher Defendants have waived any alleged right to jury trial.

           **C.    The Gallagher Defendants' Portrayal Of The Summary Judgment Proceedings Before Judge Sawyer As Unfair To Them Is Utter Nonsense**

Plaintiffs feel compelled to correct the Gallagher Defendants' mischaracterization as to what really transpired concerning the Gallagher Defendants' motion for summary judgment. The Gallagher Defendants complain repeatedly throughout their brief that Judge Sawyer "failed to address" their "factual and legal defenses." *E.g.*, Motion, p. 1 ("the failure of the bankruptcy court to address Gallagher's factual and legal defenses and to grant summary judgment . . . the factual and legal defenses that have yet to be addressed."); Motion, p. 6 ("These defenses have yet to be addressed . . . by the bankruptcy court."). They state at page 14 that: "the bankruptcy court summarily denied the motion and announced that Gallagher would be required to prepare for and defend 33 Estate claims at a two week trial commencing May 22, 2006." (Motion, p. 14). They further state at pages 6 and 7: "The oral argument was conducted on March 30, 2006, but the motion was summarily denied by the bankruptcy court.

        THE COURT: . . . the other point that Mr. Anderson made that, like

        I said, maybe was in the reply brief and I maybe just haven't gotten

        around to reading it . . . ."

(Motion, pp. 6-7).

All of the above statements in the Gallagher Defendants' motion are aimed at persuading this Court that the summary judgment proceedings before Judge Sawyer were unfairly conducted and insinuating that those summary judgment proceedings amounted to a "kangaroo court." The reality is that when the true sequence of the proceedings is examined, it is clear that the Gallagher Defendants' contentions are groundless.

Although the deadline originally established for dispositive motions under Judge Sawyer's April 5, 2005 Pretrial Order was October 31, 2005, the Gallagher Defendants filed their motion for summary judgment as to the Plaintiffs' claims on June 27, 2005, several months before the dispositive motion deadline. The adversary proceeding came before Judge Sawyer on July 15, 2005 on various matters, including a Motion for Instructions filed by the Bart Defendants and the Plaintiffs' Motion to Dismiss a counterclaim filed by the Gallagher Defendants, and the Plaintiffs' Motion to Amend Judge Sawyer's Protective Order. At that hearing, the Bankruptcy Court acknowledged that the Gallagher Defendants' summary judgment motion had been filed, but that it was "still pending briefing." (Hearing transcript, pp. 4, 18). Plaintiffs advised the Bankruptcy Court that they anticipated the possibility of needing additional time beyond the deadline established by the Court's Pretrial Order to get Plaintiffs' response filed. (Hearing transcript, p. 19). Judge Sawyer thereafter stated in pertinent part as follows:

> THE COURT: Okay. Well, that's fine. If you need it, just put it in.
> My purpose is the motion for summary judgment - the Gallagher
> motion came in, in plenty of time. I wanted to have plenty of time to
> look at it and rule on it. I just didn't want to let things slip. Quite
> frankly, some things you kind of let slip and some you don't and this

is one that I didn't want to let slip. I wanted to get on this as quickly

as we could.

(Hearing Transcript, pp. 19-20).

The Bankruptcy Court held a hearing on September 29, 2005. The Bankruptcy Court then entered a written order dated September 29, 2005 which set a deadline for the Plaintiffs to file a response to the Gallagher Defendants' pending summary judgment motion, and a deadline for the Gallagher Defendants to file a reply to the Plaintiffs' response. Plaintiffs were given until October 7, 2005 to file their response to Gallagher's summary judgment motion. The Gallagher Defendants were given until November 11, 2005 to file their reply brief.

In its September 29, 2005 Order Setting Trial Date, the Bankruptcy Court also **specially set** March 30, 2006 as the date for oral argument on motions for summary judgment and reset the trial for May 22, 2006. The Bankruptcy Court incorporated its previous April 5, 2005 pre-trial order as to further instructions for how the trial will proceed. **The Gallagher Defendants knew on September 29, 2005 ─ well <u>before</u> the March 30, 2006 summary judgment hearing -- that the case would be tried on May 22, 2006. The summary judgment hearing was <u>not</u> the first time the Gallagher Defendants learned that this case would be tried on May 22, 2006.**

The Plaintiffs' filed their 100 page Memorandum Brief in Opposition to the Gallagher Defendants' Motion for Summary Judgment on October 7, 2005. Plaintiffs also filed voluminous evidentiary materials in opposition, which included hundreds of exhibits and many of the 19 depositions taken in this case. **Interestingly, Gallagher makes no mention of Plaintiffs' 100 page Memorandum or evidentiary submissions in its motion to withdraw the reference, and Gallagher failed to include Plaintiffs' Memorandum in its Appendix submitted to the District**

-16-

**Court.** The Gallagher Defendants filed their reply to Plaintiffs' response on March 7, 2006, but did not address any of Plaintiffs' argument, evidence, or case law concerning the Gallagher Defendants' duties.

The Bankruptcy Court held a hearing on March 30, 2006 on the Gallagher Defendants' Motion for Summary Judgment. When the case came up for hearing, the Bankruptcy Court had no regular docket that day. The Gallagher Defendants were given a special setting and hearing on their motion. Since the Gallagher Defendants' motion for summary judgment had been filed on June 27, **2005**, Judge Sawyer had the benefit of Gallagher's summary judgment brief for approximately **9 months** before the March 30, 2006 summary judgment hearing and therefore had many, many months to consider the motion. The Gallagher Defendants' Reply was filed March 7, 2006; thus, by the time of the summary judgment hearing, all of the briefs had been filed more than 3 weeks before the hearing. Judge Sawyer had ample time to read and study, and did in fact read and study, the briefs, and that was confirmed by what Judge Sawyer stated on the record when he ruled on the motion.

At the specially set summary judgment hearing which lasted 1 hour and 25 minutes, Judge Sawyer heard extensive argument from both sides. Plaintiffs submitted an exhibit notebook at the hearing which was a subset of the evidentiary materials filed in opposition to the summary judgment motion, and carefully covered with the Bankruptcy Court many of the material issues of fact that were in dispute. At the conclusion of the hearing, Judge Sawyer denied the motion for summary judgment in an oral ruling, and reminded the parties that the case would be tried as scheduled on May 22, 2006:

THE COURT: Thank you. Okay. This is before the court on a motion for summary judgment, governed by the provisions of Bankruptcy Rule 7056 of the Bankruptcy Rules, which then incorporates Rule 56 of the Federal Rule of Civil Procedure, and I won't read the whole rule. I am looking at Rule 56(c).

> "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Well, **I have been going through and listening to this for an hour and a half. I have spent a number of hours reading the briefs previously, but one thing I think it is safe to say is there is plenty of dispute as to material facts**.

For that reason, I find that the motion for summary judgment filed by the Gallagher defendants is not well taken and I am going to deny the motion.

**Gentlemen, we are set for trial May 22. We will see you then.** Thank you all.

-18-

(Hearing Transcript, pp. 52-53) (emphasis added).  The Gallagher Defendants said nothing to Judge

Sawyer after being reminded of the May 22 trial date which had been in place since September 29,

**2005**.

On April 3, 2006, four days after the summary judgment hearing, Judge Sawyer entered a

written Order Denying Motion For Summary Judgment. His Order denies Gallagher's Motion "[f]or

the reasons set forth on the record on March 30, 2006."  (Order).

As the foregoing establishes, the Gallagher Defendants' implication that Judge Sawyer did

not read the briefs or carefully examine the issues and evidence presented on summary judgment

before he ruled is totally without merit.  The simple truth is that the Gallagher Defendants were

afforded ample opportunity to fairly litigate and present their summary judgment motion, and that

Judge Sawyer carefully considered their motion.  The Gallagher Defendants' suggestion to the

contrary is utter nonsense.

The Gallagher Defendants' cries of unfairness are quite ironic given their conduct in this case

and at the summary judgment hearing.  At the very beginning of the summary judgment hearing, the

Gallagher Defendants attempted to raise an issue (the alleged "release" due to Plaintiffs' pro tanto

settlement with the Bart Defendants, which in reality is a non-issue) for the **first** time and tried to

persuade Judge Sawyer to grant summary judgment on the basis of an alleged "release," even though

that issue was not the subject of a properly filed and supported summary judgment motion.  (Hearing

Transcript, pp. 5-6).  In addition, the Gallagher Defendants, who now repeatedly protest that Judge

Sawyer "failed to address factual and legal defenses," literally argued for only a few minutes at the

opening of the specially set summary judgment hearing.  (Hearing Transcript, pp. 4-8).  Most of that

very brief presentation centered around the Gallagher Defendants' efforts to persuade Judge Sawyer

to grant summary judgment on the alleged settlement/release issue. (Hearing Transcript, pp. 4-6).

Moreover, the Gallagher Defendants would not directly answer Judge Sawyer's inquiry as

to whether the alleged "release" issue was properly before the Bankruptcy Court:

> THE COURT: Okay. Now is that argument made in any of your
>
> filings or is this something - you know, is this a position that you are
>
> taking in light of the settlement which is fairly recent?
>
> **MR. ANDERSON:** Your Honor, **that position will be ripe to be**
>
> **taken if** no objection is filed tomorrow and **the settlement is**
>
> **entered. Right now, the settlement has not been entered and I**
>
> **suppose it could be denied** and we could be back trying the case
>
> with Morris Bart in it.

(Hearing transcript, p. 6) (emphasis added). **The Gallagher Defendants again stood silent at the**

**March 30, 2006 hearing as to any alleged right to jury trial and continued to lead Judge**

**Sawyer to believe that the case would be tried non-jury in the Bankruptcy Court.**

It is puzzling to say the least that the Gallagher Defendants now complain that Judge Sawyer

erred in denying summary judgment when they made so little effort at the summary judgment

hearing to demonstrate that no genuine issues of material fact exist, and would not directly answer

Judge Sawyer's question concerning whether the "settlement/release" issue was even a part of their

motion.

> **D.** **The Gallagher Defendants' Motion Is Untimely, and They Have Waived Their Alleged Right To Jury Trial By Litigating For <u>Years</u> Before Judge Sawyer Without Filing A Motion To Withdraw the Reference**
>
> **1.** **The Law re Untimeliness and Waiver of Right to Jury Trial**

The Gallagher Defendants' primary basis for seeking withdrawal of the reference is their alleged "absolute" right to a jury trial. The Gallagher Defendants included a jury demand in their Answer to the Amended Complaint, which answer was filed almost **3 years ago** in the Bankruptcy Court on **August 28, 2003**. (Answer, p. 10). As the *City Fire Equipment* case cited by the Gallagher Defendants recognizes, however, "the mere filing of a jury demand does not cause the Bankruptcy Court to lose 'jurisdiction' of the action(s) or mandate that the reference be withdrawn." *City Fire Equipment*, 125 B.R. at 649. **In order to avoid waiving a jury demand, a party in the Gallagher Defendants' position <u>must</u> take the additional and important step of <u>timely</u> moving to withdraw the reference. The Gallagher Defendants litigated for many years in the Bankruptcy Court and allowed the case to be pre-tried and set for trial on several occasions without ever doing that.**

As the Court held in *Blackwell v. Deloitte & Touche LLP (In re Blackwell)*, 279 B.R. 818 (Bankr. W.D. Tex. 2002):

> Once a jury has been demanded, and once at least one of the parties refuses to consent to the conduct of the jury trial by the bankruptcy court, the bankruptcy court can no longer conduct the trial of the matter *unless* **neither party timely seeks to withdraw the reference**. This is so because the bankruptcy court cannot

unilaterally transfer the matter to the district court. Instead, the district court must affirmatively act to withdraw the reference. *See* 28 U.S.C. § 157(d). If, however, no one asks the district court to act, the district court is unlikely even to be aware of the existence of the matter, much less to actually withdraw the reference. **Both the statute and the rules contemplate the party who desires (and needs) withdrawal to affirmatively seek it by motion *to the district court*.** *See id.; see also* Fed. R. Bankr. P. 5011. **If neither party timely takes this additional step (the essential last step to assure that one gets the jury trial they desire before the tribunal they prefer), then that failure can only be construed as a waiver of the party's right to a jury trial.**

Rule 38 confirms that the constitutionally protected right to a jury trial is in fact waivable by inaction on the part of a litigant. *See* Fed. R. Civ. P. 38(d). **In bankruptcy cases, due to the structure of the bankruptcy court, additional steps are required to perfect the jury demand. The failure to complete these steps in the bankruptcy context ought to be construed in precisely the same fashion as the failure to file the requisite pleading contemplated by Rule 38 in an ordinary civil trial context.** Rule 9015 of the Bankruptcy Rules is unfortunately silent on this issue, but no other construction is possible. The failure to seek a withdrawal of the

-22-

reference, for example, leaves the case pending before the bankruptcy

judge.

*Blackwell*, 279 B.R. at 819-20 (emphasis added).

In *HA 2003 Liquidating Trust v. J. P. Morgan Partners (In re HA-LO Industries, Inc.)*, 326

B.R. 116 (Bankr. N.D. Ill. 2005), the Court addressed a party's waiver of its alleged right to jury trial

due to failure to timely move to withdraw the reference:

> **Waiver of right to a jury trial may result from failing to move timely
> to withdraw the reference.**
>
> **The jury demands of Defendant Carramore and Third-Party
> Defendants were filed at least 14 months ago, they** have not
> consented to jury trial before this court and except for Kelly **have
> never moved to withdraw reference even when final order was
> entered six months ago scheduling a long Adversary trial later
> this year**.
>
> **A party may waive its right to a jury trial by failing to move
> timely to withdraw the reference.** *Stainer v. Latimer (In re
> Latimer)*, 918 F.2d 136 (10th Cir.1990). If a jury demand has been
> asserted, and at least one of the parties refuses to consent to the
> conduct of the jury trial, the bankruptcy court can no longer conduct
> a trial of the matter. *Blackwell v. Deloitte & Touche, LLP (In re
> Blackwell)*, 279 B.R. 818, 820 (Bankr. W.D. Tex. 2002). A
> bankruptcy court cannot *sua sponte* transfer the matter to district

-23-

court and only the district court is empowered to withdraw the reference. As the *Blackwell* opinion concluded:

> **Both the statute and the rules contemplate the party who desires (and needs) withdrawal to affirmatively seek it by motion to the district court.** (Citations omitted). **If neither party timely takes this additional step (the essential last step to assure that one gets the jury trial they desire before the tribunal they prefer), then that failure can only be construed as a waiver of the party's right to a jury trial.**

*Blackwell*, 279 B.R. at 820. This Adversary was filed on October 22, 2002 and the Third-Party Complaint on April 28, 2003**. Jury demands have been pending over a year.** Only one party, Third-Party Defendant Kelly, even tried to withdraw the reference as to him, and the District Judge declined to allow that because the motion was deemed untimely. **The remaining Defendants explain their reticence by stating that they did not view a motion to withdraw the reference as ripe until the case is ready for trial**, relying on holdings of *ABC-NACO Inc. V. Klos Trucking Inc.*, 2004 WL 728190, at *1 (N.D. Ill. Mar. 31, 2004); and *In re Pro-Pak Svcs., Inc.*, 2002

WL 31915808, at *1 (N.D. Ill. Dec.31, 2002). (Def.'s Resp. at 5-7; Resp. Third-Party Def.'s at 7-8.)

However, those cases did not provide a bright-line standard and are factually distinguishable. The holdings therein were that motions to withdraw reference were premature because the cases were not ready for trial and a strong likelihood existed that the cases would not go to trial. *See Pro-Pak*, 2002 WL 31915808, at *3 ("[defendant] should renew her motion [to withdraw the reference] when and if the case is ready for trial.") **However, a long trial in this Adversary proceeding was scheduled six months ago to be held in November and December of this year. Several pre-trial issues have been adjudicated, discovery closed May 5, 2005 and a pretrial status conference to enter stipulations is scheduled for June 16, 2005.**

Even if those cases were not distinguished, it is inappropriate to follow their reasoning. **Acceptance of the Defendants' and Third-Party Defendants' position would give parties an incentive not to move to withdraw the reference until long after trials are scheduled, and then to wait to the eve of trial, effectively causing Adversary proceedings to languish in the bankruptcy court and preventing firm scheduling of trial dates. It would mean that after the bankruptcy judge and the other parties block out trial time, a party could thwart all scheduling by moving to withdraw**

-25-

**reference on the eve of trial.  *See also Blackwell*, 279 B.R. at 820 (explaining that rewarding a party for failing to withdraw the reference discourages parties from pursuing the very course plotted out by Congress, to impose on the parties the affirmative duty to seek withdrawal of the reference.)  Parties may not be allowed to benefit and control the litigation by their laxity, and may thereby waive their right to a jury trial.**

*In re HA-LO Industries*, 326 B.R. at 123-24 (emphasis added).  The explanation offered by the parties for their tardiness in moving to withdraw the reference in *HA-LO Industries* (the motion was not "ripe" until the case was ready for trial), which the Court rejected, is identical to the improper excuse offered by the Gallagher Defendants here.  *See* Motions, p. 33.

In *Commercial Financial Services, Inc. v. Temple (In re Commercial Financial Services)*, 2003 WL 22927208 (Bankr. N.D. Okla. 2003) (only available on Westlaw), the Court addressed whether the Defendant had waived his right to jury trial by failing to timely request withdrawal of the reference.  *Commercial Financial Services*, 2003 WL 22927208, at *1.  The "cause" asserted by the Defendant in support of his motion to withdraw reference was his Seventh Amendment right to jury trial.  *Id.* at *2.  Plaintiff contended that the Defendant's motion to withdraw reference was untimely even though it was filed 9 months after the Defendant had been summoned.  *Id.* at *2, 3.

The Court held that Defendants' motion was untimely under the Court's Local Rule B-6.  *Id.* at *3. Most importantly, the Court further held as follows:

Even if Rule B-6 were somehow inapplicable in this case, Defendant's filing of the Motion to Withdraw remains untimely. As one court has noted,

> The threshold question in evaluating a motion to withdraw the reference under § 157(d) is whether plaintiffs' motion filed five months after debtor Mahlmann filed his bankruptcy petition was made in a timely manner. *In re Stavriotis*, 111 B.R. 154, 157 (N.D.Ill.1990). **If the motion is not made in a timely manner, the parties' rights under § 157(d) are deemed waived.** *Id.* The statute provides little guidance as to what constitutes "timely." **Courts, however, have generally defined timely as "as soon as possible after the moving party is aware of grounds for withdrawal of reference" or as "at the first reasonable opportunity after the moving party is aware of grounds for withdrawal of reference."** *In re Sevko, Inc.*, 143 B.R. 114 (N.D. Ill. 1992). The two statements of the standard are considered identical, any difference being purely a matter of semantics. *Id.* **The reason for the timeliness requirement is to prevent parties from**

-27-

> **forum shopping, stalling, or otherwise engaging in**
>
> **obstructionist tactics.** *In Matter of Lissner Corp.*,
>
> 115 B.R. 604, 608-612 (N.D. Ill. 1990); *In re Giorgio*,
>
> 50 B.R. 327, 328-329 (D. Rhode Island 1985); *see*
>
> *also, In re White Motor Corp.*, 42 B.R. 693 (N.D.
>
> Ohio 1984). [FN15]
>
> FN15. *In re Mahlmann* 149 B.R. 866, 869 (N.D.
>
> Ill.1993); *see also Snider v. Commercial Financial*
>
> *Services, Inc. (In re Commercial Financial Services,*
>
> *Inc.)*, 252 B.R. 516, 520 (Bankr. N.D. Okla.2000)
>
> (motion to withdraw filed fourteen months after filing
>
> of amended complaint deemed untimely under Rule
>
> B-6 and 28 U.S.C. § 157(d)(2)).
>
> **More than nine months have passed between the time Defendant**
>
> **was summoned by this Court and the time Defendant sought**
>
> **withdrawal of the reference. It is beyond the ken of this Curt to**
>
> **understand how the Motion to Withdraw could be considered**
>
> **timely.**

*Commercial Financial Services*, 2003 WL 22927208, at **3, 4 (emphasis added).

Similarly, the Court held in *Snider v. Commercial Financial Services, Inc. (In re Commercial Financial Services, Inc.)*, 252 B.R. 516 (Bankr. N.D. Okla. 2000), that a motion to withdraw reference based upon an alleged right to jury trial which was filed 14 months after the amended

complaint was filed was untimely under both 28 U.S.C. § 157(d) and Local Rule B-6. *Snider*, 252 B.R. at 520-21.

This case presents a far more compelling case of untimeliness and waiver than were present in *HA 2003 Liquidating Trust*, *Commercial Financial Services,* and *Snider*, where waivers were found by those courts. The Gallagher Defendants have known of their alleged right to jury trial since at least August 28, 2003 when their Answer was filed wherein a jury demand was included. Thus, they knew almost 3 years ago of their alleged right to jury trial. The Gallagher Defendants did not ask for the reference to be withdrawn at the outset of the case when they knew of this alleged jury trial right. Instead, the Gallagher Defendants chose to actively participate in discovery, to litigate summary judgment motions, to attend 19 depositions, and to attend numerous status, scheduling and pre-trial conferences, which ultimately culminated in the case being set for trial non-jury on 2 separate occasions. The discovery cut-off date has long passed. Trial is set for May 22, 2006. The Gallagher Defendants' brief on "timeliness" ignores the foregoing.

In all those years of litigation before the Bankruptcy Court, **the Gallagher Defendants never once mentioned or said to Judge Sawyer that they wanted to assert their alleged jury trial right or that they would seek withdrawal of the reference**. The Gallagher Defendants have now filed a motion to withdraw the reference for the first time on April 19, 2006, almost **3 years** after making a jury demand. Clearly, the Gallagher Defendants waived any alleged right to jury trial under the foregoing case law by their utter failure to timely move to withdraw the reference. *In re HA-LO Industries*, 326 B.R. at 123-24; *Commercial Financial Services*, 2003 WL 22927208, at *3, 4; *Snider*, 252 B.R. at 520-21. A holding to the contrary would condone forum shopping, stalling and

obstructionist tactics, the ills identified in *Commercial Financial Services* as the primary reason for the requirement that such motions be asserted on a timely basis.

**III.    The Gallagher Defendants Do Not Have A Right to Jury Trial on The Plaintiff Bankruptcy Court Trustees' Claims; The Plaintiffs Seek Only the Non-Criminal Sanction Relief And Damages Available to Them Under 11 U.S.C. § 105, § 362, and the Bankruptcy Court's Inherent Powers**

**A.    Introduction**

At bottom, the Gallagher Defendants' motions are founded on an alleged claim of an "absolute right" to jury trial on the claims asserted in the Third Amended Complaint. (*E.g.*, Motions, pp. 1, 5, 25-29). It is inexplicable why the Gallagher Defendants never pursued withdrawal of the reference from the outset of this lawsuit **years** ago if they truly believed in their alleged "absolute right" to jury trial. Nor do the Gallagher Defendants offer any credible explanation for their failure to address this purported issue years ago. In any event, the Gallagher Defendants' argument concerning their alleged "absolute" right to jury trial is wrong, and they have not cited any authority which holds that they are entitled to a jury trial on the type of claims asserted by the Plaintiff Trustees in this case. Consequently, even assuming *arguendo* that the Gallagher Defendants did not waive their alleged right to jury trial by failing to timely move to withdraw the reference, there is no basis to withdraw the reference on the alleged jury trial right issue because the Gallagher Defendants do not have a right to jury trial on the Plaintiffs' claims.

**B.      The Third Amended Complaint, The Law Re Bankruptcy Code § 105
and the Bankruptcy Court's Inherent Power To Sanction**

_____The Gallagher Defendants' bold proclamation of entitlement to an "absolute right" to jury

trial ignores the nature of the Third Amended Complaint and the causes of action asserted and

relief requested therein.

**1.      The Third Amended Complaint**

The Plaintiffs in this case are Bankruptcy Court Trustees.  Plaintiff Curtis Reding is the

Standing Chapter 13 Trustee for the Middle District of Alabama, and Plaintiff Susan DePaola is

a Chapter 7 Trustee.  (Third Amended Complaint, ¶¶ 3, 4).  The Third Amended Complaint

alleges in pertinent part as follows against the Defendants:

8.      Many of the Defendants' clients, including but not

limited to the individuals identified in the Second Amended

Complaint, were in bankruptcy when they hired the Defendants to

represent them, filed bankruptcy while the Defendants were

representing them, and/or were in bankruptcy while the Defendants

were representing them.

9.      Defendants never petitioned the Bankruptcy Court for

approval of their employment as counsel for their bankruptcy debtor

clients or their estates, never sought Bankruptcy Court approval of the

settlements of the matters handled by the Defendants for their

bankruptcy debtor clients or their estates, and never petitioned the

Bankruptcy Court to approve the Defendants' attorneys fees and reimbursement of expenses received from their bankruptcy debtor clients or their estates.

10.    The Defendants disbursed money from the settlements of the matters handled for their bankruptcy debtor clients or their estates without the Bankruptcy Court's approval of the Defendants' attorneys fees and reimbursement of expenses, and without properly accounting to Plaintiffs or the other class members.

11.    Accordingly, **the Defendants have taken possession of and kept bankruptcy estate property, and have committed acts constituting the exercise of control over estate property, in bankruptcy cases** throughout the Middle District of Alabama **in violation of the applicable provisions of the Bankruptcy Code and Rules**.

(Third Amended Complaint, ¶¶ 8-11) (emphasis added).

_____The Third Amended Complaint alleges four Causes of Action; and in each Cause of Action, Plaintiffs "invoke the Court's powers under § 105." (Third Amended Complaint, ¶¶ 28, 30, 32, 34). The Third Amended Complaint also alleges in pertinent part that "[t]he Defendants have repeatedly violated the applicable provisions of the Bankruptcy Code and Rules dealing with professional employment, including but not limited to § 327 and Rule 2014, and the Defendants' conduct constitutes an abuse of the bankruptcy process." (*Id.* at ¶ 28). Proceedings concerning approval of professional employment and settlement of bankruptcy estate claims are undoubtedly

core proceedings as they are "matters concerning the administration of the estate" under 28 U.S.C. § 157(b)(2)(A).  The Third Cause of Action alleges that the Gallagher Defendants have violated the automatic stay of Bankruptcy Code § 362.  (Third Amended Complaint, ¶¶ 31-32).[1]

At the summary judgment stage, the Gallagher Defendants erroneously characterized the Plaintiffs' Third Amended Complaint in their brief as asserting claims or causes of action **solely** under § 327 and/or Bankruptcy Rules 2014 and/or 9019.  (*See, e.g.*, Brief, pp. 34, 39, 50-51, 70). The Defendants then argued that § 327 and/or Bankruptcy Rules 2014 and/or 9019 do not "create causes of action."  *See id.*

The Gallagher Defendants' summary judgment argument that §327 or Rules 2014 and/or 9019 do not "create a cause of action" and their new §542 argument -- both of which mischaracterize the allegations in the Third Amended Complaint -- are disingenuous because the Gallagher Defendants have largely ignored the fact that the Complaint is brought pursuant to § 105, § 362, and the Bankruptcy Court's inherent powers.  Moreover, the Gallagher Defendants have failed to acknowledge the substantial body of case law under § 105 which recognizes the very broad grant of powers bestowed on the bankruptcy court by § 105(a) and which authorizes the use of those powers in fashioning a remedy for conduct that contravenes the Bankruptcy Code.  Stated

---

[1] Section 362(h) states that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."  *11 U.S.C. § 362(h)*.  "Motions to terminate, annul, or modify the automatic stay" are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(G).

differently, the Defendants ignore the statutory provision that § 105 allows the Court to "issue any order . . . necessary or appropriate to carry out the provisions of this title."[2]

_____    **2.    Bankruptcy Trustee Standing Under Bankruptcy Code § 105**

"[A] trustee can recover damages in the form of costs and attorney's fees under section 105(a) as a sanction for ordinary civil contempt."  *In re Pace*, 67 F.3d 187, 193 (9th Cir. 1995) (citation omitted)[3]; *see also In re Suncoast Towers South Associates (Feltman v. Menada, Inc.)*, 1999 WL 549678, at *15 (Bankr. S.D. Fla. 1999) (only available on Westlaw) (court finding that § 105(a) was available to the trustee, but exercising its discretion to not award damages under that section since "the damages incurred by the estate are recoverable in the awards made in favor of the Trustee under other Counts.").  And, an award of damages under § 105(a) is within the discretion of the court.  *Pace*, 67 F.3d at 193.

The Gallagher Defendants conceded in their summary judgment brief that "[w]here a claim under § 362(h) expressly cannot be asserted by a Trustee, a Court, in the appropriate circumstances, can use § 105 to award compensatory . . . damages to a Trustee for an intentional violation of the automatic stay."  (Brief, pp. 53-54).  Thus, the Gallagher Defendants previously

_____

[2]  The Gallagher Defendants conceded in their summary judgment brief that the "provisions" of the Bankruptcy Code to be "carried out" here under § 105 are § 327 and Bankruptcy Rules 2014 and 9019.  (Brief, p. 70).

[3]  The Eleventh Circuit cited the *Pace* decision with approval in *Jove Engineering v. Internal Revenue Service.  Jove Engineering v. Internal Revenue Service*, 92 F.3d 1539, 1552, 1554 (11th Cir. 1996).

conceded that the Plaintiff Trustees have standing to assert claims for relief pursuant to § 105. *Id.*

3.    **Law Under Bankruptcy Code § 105, Including Eleventh Circuit Decisions**

Contrary to the Gallagher Defendants' belief, this case is not brought under § 105 of the Bankruptcy Code as a "roving commission to do equity." (Motion, p. 20). It is brought pursuant to the plain language of Bankruptcy Code Section 105, which states in pertinent part that:

(a)    **The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.** No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, **or to prevent an abuse of process**.

*11 U.S.C. § 105(a)* (emphasis added).

The Eleventh Circuit has held as follows concerning section 105:

Section 105(a) states "[t]he court may issue *any* order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a) (emphasis added). Sovereign immunity aside, § 105 uses the broad term "any" which encompasses all forms of orders including those that award

-35-

monetary relief.  The term "any" should be given this broad

construction under the "settled ruled that a statute must, if possible,

be construed in such fashion that every word has some operative

effect."  *United States v. Nordic Village*, 503 U.S. 30, 36, 112 S.

Ct. 1011, 1015, 117 L. Ed. 2d 181 (1992).  The broad term "any"

is only limited to those orders that are "necessary or appropriate"

to carry out the Bankruptcy Code.  Therefore, the plain meaning of

§ 105(a) encompasses *any* type of order, whether injunctive,

compensatory or punitive, as long as it is "necessary or appropriate

to carry out the provisions of" the Bankruptcy Code.

*Jove Engineering, Inc. v. I.R.S.*, 92 F.3d 1539, 1554 (11th Cir. 1996).

The Eleventh Circuit has also held as follows:

Section 105 creates a statutory contempt power, distinct from

the court's inherent contempt powers in bankruptcy proceedings, for

which Congress unequivocally waives sovereign immunity.  *Jove*,

92 F.3d at 1553.  The language of § 105 encompasses 'any type of

order, whether injunctive, compensatory or punitive, as long as it is

'necessary or appropriate to carry out the provisions of' the

Bankruptcy Code.'  *Id.* at 1553-54.  Therefore, '§ 105(a) grants

courts independent statutory powers to award monetary and other

forms of relief for automatic stay violations to the extent such

awards are "necessary and appropriate" to carry out the provisions

of the Bankruptcy Code.' *Id.*

*In re Hardy*, 97 F.3d 1384, 1389-90 (11th Cir. 1996).[4]

"11 U.S.C. § 105 'is an omnibus provision phrased in such general terms as to be the basis

for a broad exercise of power in the administration of a bankruptcy case.  The basic purpose of

section 105 is to assure the bankruptcy courts power to take whatever action is appropriate or

necessary in aid of the exercise of their jurisdiction . . . .  Bankruptcy courts, both through their

inherent powers as courts, and through the general grant of power in section 105, are able to police

their dockets and afford appropriate relief.'"  *In re Casse (Casse v. Key Bank National Assoc.)*,

198 F.3d 327, 336 (2nd Cir. 1999) (quoting 2 *Collier on Bankruptcy* (15th ed. 1999) at 105-5 to -

7)).

In *Hardy*, the Eleventh Circuit recognized the broad grant of powers conferred by § 105(a),

and authorized the use of those powers in fashioning a remedy for conduct that contravened the

Bankruptcy Code.  *Hardy*, 97 F.3d at 1389-91.  Judge Mahoney has noted that "courts have

authority to sanction abusive actions pursuant to 11 U.S.C. § 105."  *Corner v. First USA Bank*,

Adversary No. 03-01034, Order Partially Granting and Partially Denying Defendant's Motion To

Dismiss, p. 6 (Bankr. S.D. Ala. July 3, 2003).  "Bankruptcy Courts have ruled that sanctions are

warranted under § 105 against parties who willfully abuse the judicial process."  May 25, 2004

Order Denying Defendant's Motion To Dismiss And Denying Any Further Stay of Discovery in

*Thigpen v. Matrix Financial Services*, p. 7 (citations omitted).  "Section 105 does not give

---

[4] Note that the Gallagher Defendants relied upon *Jove* and *Hardy* at summary judgment. (Brief, p. 53).

bankruptcy judges expanded powers; but it does give them all necessary power to insure that no provision of the Bankruptcy Code can be ignored because violation of it is without penalty." Order Denying Defendant's Summary Judgment Motion, *In re Sheffield (Sheffield v. Homeside Lending, Inc.)*, Adv. No. 99-1124 (Bankr. S.D. Ala. Dec. 29, 2000). In *Corner v. First USA Bank*, Judge Mahoney held that "[a]s stated in *In re Sims*, courts have authority to sanction abusive actions pursuant to 11 U.S.C. § 105." July 3, 2003 Order at p. 6.

This is a **civil contempt** proceeding for sanctions brought by bankruptcy court trustees for the Gallagher Defendants' abuse of the bankruptcy process under § 105 of the Bankruptcy Code. Because this is an action premised only on the Bankruptcy Court's power to "sanction parties for improper conduct" that seeks only the **non-criminal** contempt sanction remedies available to litigants "wronged" by the improper conduct, this matter is an action lying exclusively within the Bankruptcy Court's equitable jurisdiction. And, as demonstrated in the authorities cited, there is no right to a jury trial in civil contempt proceedings. The plaintiff bankruptcy trustees are **not** asserting or relying on the concept that there is a purely private cause of action created by § 105. Further, the Plaintiffs are **not** asserting state law tort causes of action as stand alone bases for an award of damages. (Third Amended Complaint).

The Plaintiffs' assertion has been and remains that Bankruptcy Code § 105 and the above Eleventh Circuit decisions furnish a mechanism for the award of compensatory (*e.g.*, disgorgement) and injunctive civil sanction relief to the Plaintiff Trustees who have been or will be "wronged" by the Gallagher Defendants' abuse of the bankruptcy system.

### 4.     The Bankruptcy Court's Inherent Powers To Sanction

In addition to the Bankruptcy Court's statutory powers pursuant to § 105, a Bankruptcy Court has the inherent power to impose sanctions where warranted. *See In re Hardy*, 97 F.3d at 1389; *In re Mroz (Glatter v. Mroz)*, 65 F.3d 1567, 1574-76 (11th Cir. 1995); *Thomas v. Tenneco Packaging Co., Inc.*, 293 F.3d 1306, 1320 (11th Cir. 2002); *Carona v. Falcon Services Company*, 72 F. Supp. 2d 731, 733 (S.D. Tex. 1999) (citing *Chambers v. NASCO*, 501 U.S. 32, 46, 111 S. Ct. 2123, 2134, 115 L. Ed. 2d 27 (1991)). The Bankruptcy Court has, for example, "the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers*, 501 U.S. at 44-45. As Judge Margaret Mahoney has held, "[b]ankruptcy courts have also been held to have the authority to sanction for litigation abuse under the inherent power of the court." May 25, 2004 Order Denying Defendant's Motion To Dismiss And Denying Any Further Stay of Discovery in *Thigpen v. Matrix Financial Services*, p. 8 (citations and footnote omitted). And, "the inherent power extends to a full range of litigation abuses." *Chambers*, 501 U.S. at 46. "The choice of an appropriate sanction is within the Court's sound discretion." *Ortiz-Rivera v. Municipal Gov't of Toa Alta*, 214 F.R.D. 51, 56 (D. P.R. 2003) (citing *Chambers*, 501 U.S. at 45).

The Court's inherent power to sanction may be invoked and utilized even if there are procedural rules which sanction the same conduct. *Mroz*, 65 F.3d at 1575; *Thomas*, 293 F.3d at 1320. As the Eleventh Circuit held in *Mroz*, "there is nothing preventing a federal court from exercising its inherent power to sanction an attorney, a party, or a law firm for their subjective bad faith." *Mroz*, 65 F.3d at 1576 (citation omitted). The Eleventh Circuit has held, for example, that

a Federal court has the inherent power to sanction errant lawyers who practice before the court. *See Thomas*, 293 F.3d at 1320.

### 5. Sanctions for a Professional's Violation of the Bankruptcy Code

"A bankruptcy court confronted with a professional's violation of the Code and/or Rules is afforded a 'great deal of latitude in fashioning an appropriate sanction.'" *In re McCrary & Dunlap Construction Co. (Vergos v. Mendes & Gonzales PLLC)*, 79 Fed. Appx. 770, 779, 2003 WL 22442943, at *9 (6th Cir. 2003) (quoting *Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472, 478 (6th Cir. 1996)). Intentional noncompliance with the Bankruptcy Code and Rules that govern employment and compensation of professionals "may warrant complete disgorgement of fees." *Id.* As the Court recognized in *McCrary & Dunlap Construction*, "[c]aselaw establishes that the benchmark for determining the severity of the sanction to be imposed is willfulness." *Id.* The Court, for example, has the inherent authority to "'deny all compensation to an attorney who exhibits willful disregard of his fiduciary obligations to fully disclose the nature and circumstances of his fee arrangement under § 329 and Rule 2016.'" *Id.* (quoting *In re Downs*, 103 F.3d at 479). The Court's inherent authority to deny compensation "'in the face of such infractions should be wielded forcefully.'" *Id.*

### C. There Is No Right To Jury Trial Where No Element Of Relief Sought Is In The Nature Of A Criminal Contempt Sanction

The Third Amended Complaint does **not** seek criminal contempt sanctions. This proceeding was **not** initiated by motion for an order of criminal contempt under Bankruptcy Rule 9020 and does

**not** seek the imposition of criminal contempt sanctions.  The Third Amended Complaint makes **no**

reference whatsoever to criminal contempt.  The law is well established that if there is no element of

relief sought that is in the nature of a criminal contempt sanction, the defendant has no claim to a

right to jury trial.

> Civil contempt proceedings arising out of core matters are themselves
>
> core matters.  *See Better Homes of Va., Inc.*, 804 F.2d at 292*; Haile v.*
>
> *New York State Higher Educ. Servs. Corp.*, 90 B.R. 51, 54 (W.D.N.Y.
>
> 1988); *Kellogg v. Chester*, 71 B.R. at 38*; In re Stephen W. Grosse,*
>
> *P.C.*, 84 B.R. at 386; In re Miller, 81 B.R. at 677*; but see In re*
>
> *Sequoia Auto Brokers, Ltd.*, 827 F.2d at 1289; *Omega Equip. Corp. v.*
>
> *John C. Louis Co. (In re Omega Equip. Corp.)*, 51 B.R. 569, 574
>
> (D.D.C. 1985).  Civil contempt proceedings not involving punishment
>
> with imprisonment have been referred to the bankruptcy courts in the
>
> District of Utah in accordance with 28 U.S.C. § 157.  Therefore, the
>
> bankruptcy court below had the power to enter monetary sanctions
>
> against appellant for civil contempt.

*In re Skinner*, 917 F.2d 444, 448 (10th Cir. 1990).  *Accord, e.g. In re Krypton Broadcasting of Ft.*

*Pierce, Inc.*, 181 B.R. 657, 663 (Bankr. S.D. Fla. 1995) ("Civil contempt proceedings arising out of

core matters are themselves core matters."); *In re Spanish River Plaza Realty Co., Ltd.*, 155 B.R. 249,

251 (Bankr. S.D. Fla. 1993) ("Civil contempt proceedings arising out of core matters are themselves

core matters.").

In *Bartel v. Eastern Airlines*, 133 F.3d 906 (1998 WL 2405) (2nd Cir.), *cert denied*, 525 U.S. 867 (1998), the bankruptcy court held a shareholder in civil contempt for filing proofs of claims in the name of the debtor in other pending airline bankruptcies and awarded the trustee damages. The shareholder had filed responses contesting the authority of the bankruptcy court to hold him in contempt and seeking withdrawal of the reference, which was denied by the district court. After the district court affirmed the bankruptcy court's contempt order, appeal was taken to the Court of Appeals for the Second Circuit. The Second Circuit affirmed that "bankruptcy courts have the power to impose civil contempt sanctions" and further affirmed that neither withdrawal of the reference nor the granting of a jury trial was appropriate:

> Furthermore, the district court did not err in refusing to withdraw the
> reference or to grant Bartel a jury trial on the contempt sanctions. The
> contempt sanctions related to a core bankruptcy issue, and thus were
> themselves core issues. *See, e.g., In re Skinner*, 917 F.2d 444 (10th
> Cir. 1990). Under the circumstances, it was appropriate for the district
> court to refuse to withdraw the reference. *See In re Orion Pictures
> Corp.*, 4 F.3d 1095, 1011 (2nd Cir. 1993). And no right to jury trial
> applied. *See, e.g., In re Kitchen*, 706 F.2d 1266, 1271 (2nd Cir. 1983)
> (no right to a jury trial for civil contempt).

1998 WL 2405, at *2.

The remedial civil contempt relief accorded a "wronged" litigant (e.g., disgorgement) is "equitable relief" even if monetary in character; unless sanctions that are criminal in nature are to be imposed, no right to jury trial exists. The Gallagher Defendants ignore that.

-42-

**D.    Punitive Damages Are Included In the Third Amended Complaint Only As A Component Of Civil Sanctions Relief Under Bankruptcy Code § 105 and § 362**

The traditional analysis of the distinction between criminal contempt and civil contempt focuses on an examination of the relief or sanction imposed and the rationale for its imposition:

> The Supreme Court has instructed that 'conclusions about the civil or criminal nature of a contempt sanction are properly drawn, not from the subjective intent of [the court imposing the sanction], but from an examination of the character of the relief itself.' *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, _____, 114 S. Ct. 2552, 2557, 129 L. Ed. 2d 642 (1994) (citation and internal quotation marks omitted). **If the relief is designed to compensate a complainant for losses or to coerce a party into complying with a court order, the contempt sanction is civil in nature.** *See id.*, 512 U.S. at _____, 114 S. Ct. at 2558; *Martin v. Guillot*, 875 F.2d 839, 845 (11th Cir. 1989). **By contrast, "if a court seeks to vindicate its authority by punishing a contemnor, then [the] contempt is criminal in nature."** *Martin*, 875 F.2d at 845 (citations omitted). Thus, we must determine whether the specific sanctions ordered by the district court were compensatory and coercive in nature, or instead were punitive in nature.

*In re E.I. DuPont De NeMours & Company-Benlate Litigation*, 99 F.3d 363, 368 (11th Cir. 1996) (emphasis added).

Punitive damages were included as part of the sanction relief demanded in the Third Amended Complaint in the belief that under *Hardy* and *Jove* such can be an appropriate component of **civil sanction relief to the plaintiffs** under § 105(a). The purpose of the inclusion of punitive damages was **not** for the purpose of vindicating the authority of the Court **in the context of a criminal contempt proceeding**. This is by no means to say that this proceeding as a civil contempt proceeding does not involve "both the private parties and the court" or is not a proceeding to vindicate the authority of the Court. The purpose of § 105 is to allow the Court to deal with abuses of the bankruptcy system. Any sanction under § 105 necessarily is an action by the Court to vindicate both the bankruptcy system and the Court. Section 105 plainly contemplates the vindication of "public rights" by the Court's imposition of sanctions compensating and protecting the private parties "wronged" by the abusive conduct.

For the foregoing reasons, this matter is a core proceeding for civil contempt arising out systematic and knowing abuse of the bankruptcy process. The plaintiffs do **not** intend to seek any relief beyond that afforded by § 105 or § 362 of the Bankruptcy Code or the inherent powers of the court. The relief sought is in the nature of civil contempt sanctions within the contemplation of the special statutory contempt power conferred on the Court under 11 U.S.C. § 105(a) of the Bankruptcy Code. No right to jury trial attaches. Consequently, the Gallagher Defendants' motion to withdraw reference is due to be denied.

-44-

IV.    **The Gallagher Defendants' Argument That Judge Sawyer Erred in Denying Their Motion for Summary Judgment Does <u>Not</u> Furnish a Valid Basis upon Which To Withdraw The Reference**

The Gallagher Defendants devote a great majority of their motion to an appellate argument that Judge Sawyer erred in denying their motion for summary judgment. (E.g., Motions, pp. 1, 6-24, 31-32). None of these arguments -- most of which are sprinkled with tidbits of overly dramatic hyperbole and downright misleading characterizations of what happened in the Bankruptcy Court proceedings -- furnish any valid basis upon which to withdraw the reference or transfer this case to the District Court. A motion to withdraw the reference **cannot** be used as a vehicle to secure appellate review of Judge Sawyer's interlocutory oral ruling on March 30, 2006 denying the Gallagher Defendants' motion for summary judgment. *See Federal Trade Commission v. First Alliance Mortgage Co. (In re First Alliance Mortgage Co.)*, 282 B.R. 894, 903 (C.D. Calif. 2001) ("A motion to withdraw the reference is not a substitute for an appeal.").

V.    **The Gallagher Defendants' Argument That Judge Sawyer Erred In Denying Their Motion For Summary Judgment Is Wrong**

Even if the Gallagher Defendants' argument that Judge Sawyer erred in denying their motion for summary judgment could be considered as a potential basis to withdraw the reference, which it cannot, the motion for withdrawal of reference is still due to be denied because Judge Sawyer did not err in denying summary judgment.

A.    **Contrary to the Gallagher Defendants' Assertion, The Gallagher Defendants Had a Legal Duty To File Timely Employment and Settlement Approval Applications**

1.    **Introduction**

The Gallagher Defendants conceded at the summary judgment stage before Judge Sawyer that "**[p]ursuant to § 103(a), § 327 applies in Chapters 7 and 13 cases** as well as in Chapter 11 cases." (Brief, p. 36) (emphasis added).  Thus, **when Judge Sawyer decided the Gallagher Defendants' summary judgment motion, it was undisputed that as a matter of law, § 327 applies to Chapter 7 and 13 cases**. *Id.*

The Gallagher Defendants argued, however, that they had no duty under § 327 to seek bankruptcy court approval of their employment by their clients who were in bankruptcy.  (Brief, pp. 33-45, 50-51).  The Gallagher Defendants' view of the Bankruptcy Code is succinctly stated at page 34 of their summary judgment Brief as follows: "Pursuant to the express language of 11 U.S.C. § 327(e), and Bankruptcy Rules 2014 and 9019, only the "Trustee" (including debtor) is authorized to hire counsel to "represent" the debtor or trustee as the representative of the bankruptcy estate in connection with a personal injury claim or the approval of a settlement thereof under Rule 9019.  Since this power is limited by statute to the fiduciaries for the estates (Trustees and Chapter 13 debtors), then the failure to exercise that power, to the extent there can be a "duty" to exercise a "power," can only be asserted against the fiduciaries and their bankruptcy counsel who undertook to perform the bankruptcy services necessary to exercise those powers."  The Gallagher Defendants' erroneous view that only trustees, bankruptcy debtors, and/or debtors' counsel can file applications

to employ and/or motions to approve settlements is repeated in their motion for withdrawal of reference. (*E.g.* Motions, pp. 21-22).

The Gallagher Defendants also argue that "11 U.S.C. § 327 Imposes No Duty On Gallagher To Accept Employment By Any Estate Or To Act As General Bankruptcy Counsel." (Motion, p. 21). This argument is a misstatement of Plaintiffs' position and is an attempt to obfuscate the issues. Plaintiffs contend that Gallagher had a duty to obtain the necessary employment and settlement approvals, not a duty to involuntarily accept employment as to a debtor's or trustee's litigation claim.

Recently, Defendant Michael Gallagher has filed Applications For Employment in certain Middle District of Alabama bankruptcy cases. *E.g.*, Application For Employment of Professional Person For Specific Purpose filed February 21, 2006 in *In re Gloria Calhoun*, case no. 03-32920-DHW-13. Moreover, the Gallagher Defendants told Judge Sawyer at the end of the March 30, 2006 summary judgment hearing that they were going to file more employment applications in bankruptcy court. (Hearing transcript, pp. 52-52). If the Gallagher Defendants had no duty as they argue, why are they now filing these applications?

The Gallagher Defendants' "no duty" argument is wrong for three (3) important reasons. First, under Judge Sawyer's own prior decision, the Gallagher Defendants had a **nondelegable duty** to comply with the pertinent provisions of the Bankruptcy Code and Rules concerning bankruptcy court employment and settlement approval. Second, there is substantial case law in the *nunc pro tunc* employment application context that strongly supports imposition of a legal duty upon the Gallagher Defendants (an attorney and his law firm), who knew, or in some instances should have known, that their clients were in bankruptcy. The Gallagher Defendants refuse to acknowledge these authorities. Third, there is substantial evidence in the record which by itself made summary judgment

inappropriate, particularly when considering the summary judgment standards. There is testimony that Gallagher and Gallagher's law firm, who were the Bart Defendants' co-counsel and "partner" on the Fen-Phen and other mass tort claims, were responsible for taking care of obtaining and handling all necessary bankruptcy court approvals, and there is evidence that the Bart Defendants relied on the Gallagher Defendants to obtain such approvals. (*See, e.g.*, Bart depo, pp. 22, 30, 114, 179-80, 197-98, 209-213, 224-27, 244-48; Cazaubon depo, pp. 179-80, 186-87, 196-98, 208-09, 228-29, 277-79, 284-85, 291-92, 294-95, 305). The Gallagher Defendants conveniently ignore all of that evidence, and refuse to accept the fact that the foregoing evidence was before Judge Sawyer at the summary judgment stage.

|      | 2. | ***Tri-State Plant Food* and Its Progeny: A Professional's Nondelegable Duty To Comply with the Pertinent Provisions of the Bankruptcy Code and Rules** |

In *In re Tri-State Plant Food, Inc.*, 273 B.R. 250 (Bankr. M.D. Ala. 2002), Judge Sawyer in a chapter 11 case set forth and analyzed the applicable Bankruptcy Code and Rules concerning retention and compensation of professionals. *Tri-State Plant Food*, 273 B.R. at 255-61; Memorandum Decision, *In re H.H. Rosinsky & Co. Inc.*, Case. No. 00-668 (Bankr. M.D. Ala. December 10, 2002), p. 17. In *Tri-State Plant Food*, Judge Sawyer held, among other things, that "retention of a professional must be approved by the Court." *Tri-State Plant Food*, 273 B.R. at 257; *accord* Memorandum Decision, *In re H.H. Rosinsky & Co. Inc.*, Case. No. 00-668 (Bankr. M.D. Ala. December 10, 2002), pp. 17-18. And, Rule 2014 "requires that an application for employment of a professional be made in writing." *Tri-State Plant Food*, 273 B.R. at 257. "[T]he rules regarding retention of professionals apply to both attorneys and non-attorneys."

Memorandum Decision, *In re H.H. Rosinsky & Co. Inc.*, Case. No. 00-668 (Bankr. M.D. Ala. December 10, 2002), pp. 16-17. **Judge Sawyer has held <u>in this case</u> that his opinion in *Tri-State Plant Food* holds "that each professional ha[s] a nondelegable duty to comply with the pertinent rules" concerning retention and compensation.** Memorandum Decision, *In re Childs (Reding v. Morris Bart)*, Adv. No. 03-1071 (Bankr. M.D. Ala. August 5, 2004), p. 5 (emphasis added).

Thus, under *Tri-State Plant Food* and its progeny, the Gallagher Defendants had a nondelegable duty to obtain the necessary bankruptcy court approvals. The Gallagher Defendants fail to acknowledge that in their motion for withdrawal of reference, and they failed to address that point in their summary judgment briefs filed before Judge Sawyer.

> **3.** **The Case Law That Has Addressed a Professional Such As Gallagher's Duty To Comply with the Pertinent Provisions of the Bankruptcy Code and Rule**

In addition to the foregoing, there is a substantial body of case law in the context of *nunc pro tunc* employment applications that clearly supports the proposition of law that the Gallagher Defendants, who knew, or in some cases should have known, of their clients' bankruptcies, had a duty pursuant to Code § 327 and/or Bankruptcy Rule 2014 to seek bankruptcy court approval of their employment to represent their clients who were in bankruptcy, and had a duty to get the settlements approved. The Gallagher Defendants' myopic view of the Code wholly ignores that case law, and the Gallagher Defendants never even addressed this body of case law in the reply brief that it filed before Judge Sawyer or in its submission to this Court.

_____In *In re F/S Airlease II, Inc.*, 844 F.2d 99 (3rd Cir. 1988), *cert. denied*, 488 U.S. 852

(1988), a case involving *nunc pro tunc* approval of a professional's employment, the Third Circuit

held as follows:

> The two factors enumerated in *Arkansas* of particular relevance here
> are **who bore the responsibility for compliance with the statutory**
> **mandate that prior approval be sought from the court for**
> **employment of a professional** and whether the applicant was under
> such time pressure to begin services that prior approval could not
> reasonably be sought. **Simon [i.e., the professional] argues that**
> **under the Bankruptcy Code and Rules AirLease [i.e., the Debtor]**
> **bore the responsibility for seeking court approval of the**
> **appointment of professional persons, and that it was only**
> **through AirLease's oversight that the petition for approval was**
> **never filed. Although Bankruptcy Rule 2014(a) states, in**
> **relevant part, that "[a]n order approving the employment of**
> **attorneys, accountants, appraisers, auctioneers, agents, or other**
> **professional persons pursuant to § 327 or § 1103 of the Code**
> **shall be made only on application of the trustee or committee,"**
> **this requirement cannot relieve the professional person who seeks**
> **appointment from responsibility to know that such approval is**
> **necessary and to insure that it has in fact been sought. *See In re***
> ***Carolina Sales Corp.*, 45 B.R. 750, 755 (Bankr. E.D. N.C. 1985).**

**Otherwise, the prior approval requirement of the Code could be avoided for all non-attorney professional persons merely by citing the debtor's oversight, with the attendant difficulty of determining whether it was inadvertent or not.  To the extent that the bankruptcy court held that Simon, as a non-attorney, "cannot be held to be charged with the knowledge of this requirement,"** *AirLease***, 59 B.R. at 775, it committed legal error.**

Simon is a sophisticated businessman who was represented by attorneys throughout the course of his dealings with AirLease.  This is not a case in which a person, completely ignorant of the requirements of the Bankruptcy Code and without legal representation, justifiably relied on the superior expertise of another.  The evidence here suggests that Simon's attorney was familiar with the requirements of the Bankruptcy Code, including the requirements of section 327(a).  In the November 28, 1984 letter written by his attorney to AirLease, Simon agreed to limit the request for court approval to the lease only, reserving questions "regarding the distribution or allocation of the proceeds from the Aloha Airlines lease."  App. at 792.  **Even if Simon believed that AirLease had the responsibility for filing the application, we see no basis to relieve Simon from his obligation under section 327(a) to insure that the application was timely filed."**

*AirLease*, 844 F.2d at 106-07 (citation omitted) (emphasis added).

In *In re Marion Carefree Limited Partnership*, 171 B.R. 584 (Bankr. N.D. Ohio 1994), the Court held that "a professional person serving in a bankruptcy case has the 'responsibility to know that such approval [i.e., under § 327] is necessary and to insure that it has in fact been sought.'" *In re Marion Carefree Limited Partnership*, 171 B.R. at 592 (quoting *F/S Airlease II, Inc.*, 844 F.2d at 107).

Moreover, in *In re Fleming Companies, Inc.*, 305 B.R. 389 (Bankr. D. Del. 2004), the bankruptcy court **sustained** the United States Trustee's objection to a Chapter 11 debtors' application to approve retention of a turnaround advisor *nunc pro tunc* and **denied** the debtors' application, holding in pertinent part as follows:

> Bain [i.e., the professional] asserts, however, that extraordinary circumstances did exist preventing the timely filing of its Retention Application. **Bain also contends that it should not be punished for the Debtors' failure to file the Retention Application sooner. Although sections 327 and 1103 provide that the Debtors are to file the Retention Application, the requirements of these sections cannot relieve the professional from insuring that its retention has in fact been sought.** *F/S Airlease*, **844 F.2d at 107 (citing** *In re Carolina Sales Corp.*, **45 B.R. 750, 755 (Bankr. E.D. N.C. 1985)). Neglect by Debtors' counsel in failing to file a timely application does not amount to extraordinary circumstances permitting nunc pro tunc retention.** *Arkansas*, **798**

**F.2d at 650. Otherwise, the Code's prior approval requirement could be avoided for all non-attorney professionals merely by arguing that the debtor's attorney was responsible.** *Id.* **Accordingly, Bain is not entitled to nunc pro tunc retention simply because of the failure of Debtors' counsel to timely file the Retention Application.**

**Bain also contends that nunc pro tunc retention is appropriate because it lacked bankruptcy experience and was not familiar with the formal retention procedures. We find that this is not sufficient. In fact, the Third Circuit has specifically rejected this argument.** *F/S Airlease***, 844 F.2d at 106-07;** *United Companies***, 241 B.R. at 527. While Bain attempts to distinguish these cases by asserting that it is not sophisticated, the requirements of the Bankruptcy Code cannot relieve professionals from knowing that approval is necessary.**

*In re Fleming Companies, Inc.*, 305 B.R. at 394-95 (emphasis added).

In *In re Metropolitan Hospital*, 119 B.R. 910 (Bankr. E.D. Pa. 1990), the court held as follows in considering a professional's *nunc pro tunc* approval employment request:

**As HHL [i.e., the professional] provided services, as a professional, within the scope of section 327(a), it had a duty to seek court prior approval.** The question now becomes whether it is entitled to relief **from that duty**.

-53-

\*   \*   \*

> **It is quite true that HHL expected the debtor's counsel to file the necessary application, and indeed continually requested that the debtor do so. But as the Third Circuit has instructed, the fact that a professional relies upon another, typically the debtor's counsel, to file the application needed under section 327(a) is not sufficient in all instances to justify retroactive relief. At some point, once the professional knows of its obligation to seek court approval for its engagement, and knows that it has not been done, the responsibility falls upon it to have the application filed.**
>
> *F/S Airlease* 844 F.2d at 107. If the debtor's attorney does not act expeditiously, the professional can prepare the necessary documents for the debtor's review and filing. Otherwise, it should cease providing services.

*In re Metropolitan Hospital*, 119 B.R. at 919-20 (footnotes and citations omitted) (emphasis added).

In *In re Carolina Sales Corporation*, 45 B.R. 750 (Bankr. E.D. N.C. 1985), the Bankruptcy Court considered a trustee's objection to a professional's (Strategic Options') § 503(b)(2) administrative expense claim. *Carolina Sales*, 45 B.R. at 750-51. The trustee objected to the claim because "no party ever sought or received an order from the court approving the debtor's employment of Strategic Options, a professional person, as required by 11 U.S.C. § 327." *Id.* at 751. The Court held that "[i]f a professional's employment is not accomplished pursuant

to the requirements of 11 U.S.C. § 327 and Bankruptcy Rule 2014, there is no right to compensation or reimbursement of expenses." *Id.* The Court also held that "[t]he language of section 327 and Bankruptcy Rule 2014 make it abundantly clear that only those professionals whose employment is authorized by the court may be compensated under 11 U.S.C. § 330." *Id.* at 752 (citation omitted).

The professional in *Carolina Sales* argued that extraordinary circumstances warranted *nunc pro tunc* approval for several reasons, including (1) "its own ignorance of the requirement that the court preapprove its employment," and (2) "that it was never advised by the debtor, the debtor's counsel, or the court that it was necessary to obtain a court order approving its employment." *Id.* at 754-55.[5] The bankruptcy court **rejected** the professional's arguments, holding as follows:

> **Strategic Options' ignorance of the requirements of the Bankruptcy Code is not sufficient reason to excuse its failure to obtain a prior order. The fact that it knew it was dealing with a chapter 11 debtor placed Strategic Options on notice that its rights and duties in relation to its business relationship with Carolina Sales would be altered. However harsh the consequences, Strategic Options is charged with knowledge of the prior approval requirement. *BSJ*, 35 B.R. 131, at 134. It is also clear that the court's knowledge that the claimant may have performed some post-petition services for the debtor 'does not**

_____

[5] "Strategic Options was unaware of the 11 U.S.C. § 327(a) requirement that professional persons may only be employed with court approval." *Carolina Sales*, 45 B.R. at 751.

> **magically cure the original defect of [the debtor] having failed to**
>
> **apply to the [c]ourt for authorization to obtain and compensate**
>
> **[a professional person].'** ***BSJ,*** **35 B.R., at 134.  Any oversight of**
>
> **the debtor's counsel in failing to obtain such approval is not a**
>
> **sufficient extraordinary circumstance to warrant entry of a** ***nunc***
>
> ***pro tunc*** **order.**

*Carolina Sales Corp.*, 45 B.R. at 755 (emphasis added).

In *In re Sound Radio, Inc.*, 145 B.R. 193 (Bankr. D. N.J. 1992), an attorney professional who represented a group of the debtor's shareholders in state court litigation argued that his alleged "lack of sophistication" led him to believe that his employment approval would be arranged by another.  *Sound Radio*, 145 B.R. at 204.  Specifically, the attorney's explanation for his failure to apply for court approval "focused on the failure of the debtor-in-possession, or its counsel, to organize an equity security holders' committee."  *Id.*; *see also* p. 198.  The court rejected the attorneys's argument, holding that "it is disingenuous to argue that a lack of sophistication caused him to expect approval to be arranged by another," especially since the attorney practiced in the bankruptcy area.  *Id.* at 204.  Moreover, the court noted that the attorney's explanation "indicates a recognition that the firm was proceeding without court approval, thereby establishing beyond any doubt that it was familiar with the mandates of the Code regarding compensation of professionals." *Id.*

In *In re Mumm*, 1994 WL 1887496 (Bankr. D. N.D. 1994) (only available on Westlaw), the bankruptcy court disallowed an application for allowance of compensation and expenses filed by the debtor's attorney on behalf of an accounting firm, Beninato & Hess, and a law firm, the law

firm of Christian Anderson.  *Mumm*, 1994 WL 1887496, at \*1-\*6.  In addressing whether the accounting firm professional was entitled to *nunc pro tunc* relief, the bankruptcy court held as follows:

> As a general proposition, this court aligns itself with the majority of courts that have addressed the matter which have held that mere neglect, oversight, or inadvertence generally will not suffice.  *See*, *e.g.*, *F/S Airlease II, Inc. v. Simon*, 844 F.2d 99, 105-06 (3rd Cir. 1988); *DeRonde v. Shirley (In re Shirley)*, 134 B.R. 940, 944 n. 4 (9th Cir. B.A.P. 1992); *In re Arkansas Co., Inc.*, 55 B.R. 384, 385, 386 (D. N.J. 1985); *In re Sound Radio, Inc.*, 145 B.R. 193, 204-05 (Bankr. D. N.J. 1992); *In re T & D Tool, Inc.*, 132 B.R. 525, 527 (Bankr. E.D. Pa. 1991); *Frank v. Pica Sys., Inc. (In re Pica Sys., Inc.)*, 124 B.R. 30, 33-34 (Bankr. E.D. Mich. 1991); *In re Brown*, 40 B.R. 728, 732 (Bankr. Conn. 1984).  To hold otherwise, would essentially encourage a general nonobservance of the requirement of pre-employment approval as the framers of the Code clearly contemplated.
>
> **The accounting firm of Beninato & Hess has *never* sought court approval to perform services on behalf of the debtors or the bankruptcy estate.  It is clear that Beninato & Hess have wholly failed to comply with the notice and application requirements of the Bankruptcy Code and Rules.**  Notwithstanding the discretion

conferred upon a bankruptcy court to issue retroactive orders of employment, this court is of the view that such discretion can appropriately be exercised only *after* an order has been entered that authorizes the employment of a professional consistent with the requirements of the Code and Rules in the first instance. **Beninato & Hess do not move this court for a *nunc pro tunc* order approving their employment** but, in a rather perfunctory fashion, interweave their request into attorney Klausen's Application. Moreover, there is nothing before the court which permits the slightest inference that "exceptional" or "extraordinary" circumstances existed which would justify a departure from the clear and express pre-approval requirements as set forth in the Code and Rules.

*Mumm* 1994 WL 1887496, at *4 (italics supplied in original) (emphasis added).[6]

In *In re Albert*, 206 B.R. 636 (Bankr. D. Mass. 1997), **a case which Gallagher cited and relied upon**, the Court held that an attorney had standing to file an employment application seeking post facto employment (the Trustee had objected to the attorney's application asserting **the same argument that Gallagher asserts here**, namely that § 327 only allows a trustee to file an employment application). *In re Albert*, 206 B.R. at 642.

---

[6] Other courts have also held that "'simple oversight,' without more, can never be a satisfactory explanation for failure to comply with section 327." *In re Aultman Enterprises*, 264 B.R. 485, 493 (E.D. Tenn. 2001).

Other courts have recognized, without explicitly addressing the issue, that the professional has an obligation to obtain bankruptcy court approval of its employment. *See In re DOLA International Corp. (DOLA International Corp. v. Bordlemay)*, 88 B.R. 950, 955 (Bankr. D. Minn. 1988) ("They also assert that because Bordlemay and Tuller were officers of DOLA, Barros is somehow shielded **from its obligation to obtain court approval** for management consulting services provided to the debtor after the date of the filing of the petition.") (emphasis added); *see also In re Clark*, 274 B.R. 127, 131-33 & n. 3 (Bankr. W.D. Pa. 2002) ("Cherry [i.e., the debtor's state court litigation attorney] **never sought** nor obtained Bankruptcy Court approval to represent either the Debtors or the estate in the PI Case . . . . Cherry was notified of the bankruptcy and of the Trustee's interest in the PI Case. Cherry never made any effort to contact the Trustee **or to seek appointment as counsel to pursue the PI Case**."; "Another 9 months have passed and Cherry still has made no effort to seek appointment.") (emphasis added); *In re Cooper*, 263 B.R. 835, 836-38 (Bankr. S.D. Ohio 2001) ("Attorneys, such as defendant Irwin, are simply not free to continue to take actions involving claims which belong to the bankruptcy estate without the authority granted by an appointment as special counsel."; bankruptcy court held attorney liable for full value of settlement proceeds in a turnover action by the Chapter 7 trustee where attorney knew about the bankruptcy but never obtained employment or settlement approval) (citation omitted).

It bears mentioning that courts repeatedly have rejected arguments that a timely employment application was not required because the court knew that post-petition services were being performed for the debtor and/or that the court was aware of the applicant's activities on behalf of the debtor. *Carolina Sales Corp.*, 45 B.R. at 755 ("It is also clear that the court's knowledge that

the claimant may have performed some post-petition services for the debtor 'does not magically cure the original defect of [the debtor] having failed to apply to the [c]ourt for authorization to obtain and compensate [a professional person].'") (citation omitted); *see also Hercules Service Corp.*, 116 B.R. at 53 ("Movants point to three (3) Court documents which refer to Movants as attorneys for the Debtor.  Movants claim that these documents may have led them to believe that the Court had granted approval of Movants' employment.  However, in *F/S AirLease* the Court was well aware of the applicant's activity on behalf of the Debtor ad still there, as here, the application for employment *nunc pro tunc* was rejected.").  Moreover, "[t]he fact that the services rendered may have benefitted the estate is not grounds to ignore the [employment approval] requirements of the Bankruptcy Code."  *In re Welch*, 244 B.R. 802, 804 (Bankr. W.D. Ark. 2000).  As the court noted in *Welch*, "[n]umerous cases support the conclusion that legal work performed without the required court approval will usually not be compensated."  *Id.*

The law is clear that sophisticated non-attorney professionals are charged with knowledge of the Bankruptcy Code's professional employment approval requirements.  *See*, *e.g.*, Memorandum Decision, *In re H.H. Rosinsky & Co. Inc*, Case. No. 00-668 (Bankr. M.D. Ala. December 10, 2002), p. 16; *AirLease*, 844 F.2d at 106-07; *Fleming Companies*, 305 B.R. at 394-95; *Carolina Sales Corp.*, 45 B.R. at 755.  In addition, one court has held that even if unsophisticated, a professional would not be excused from seeking court approval of its retention. *See Fleming*, 305 B.R. at 395.

The Gallagher Defendants are an attorney and law firm who are in an even more compelling circumstance to be held to knowledge of the Bankruptcy Code and Rules concerning employment and settlement approval, particularly since they knew, or in some instances should

have known, that their clients were in or had filed bankruptcy. "Generally, courts should try to hold parties to strict compliance with section 327, especially in the case of attorneys who may be properly charged with knowledge of the law." *In re Aultman Enterprises*, 264 B.R. at 492 (citation omitted). As this Court stated in *In re Smock*, "[a]ny attorney is a professional who is expected to exercise independent professional judgment." Memorandum Decision, *In re Lisa Smock*, Case No. 01-5533 (Bankr. M.D. Ala. July 17, 2003), p. 5. And, "[a]n attorney must know the law." *In re Hercules Service Corp.*, 116 B.R. 50, 53 (Bankr. W.D. Pa. 1990). Consequently, courts have had little difficulty holding that attorneys are equally as chargeable as non-lawyer professionals with knowledge of the Code's employment approval requirements. *See In re Labrum & Doak, LLP*, 1998 WL 341933, at *2 (Bankr. E.D. Pa. 1998) (only available on Westlaw) ("While R & F may have placed the responsibility for filing the Application for appointment upon the Debtor's general counsel, we find that R & F, a law firm, was equally as sophisticated as the non-attorney applicant in *F/S Airlease* . . . . It appears that R & F was advised of the bankruptcy at an early stage and, whether through inexcusable ignorance or inadvertence, simply failed to file, or request the Debtor's general counsel to file, the necessary application for its appointment in timely fashion."); *Hercules Service Corp.*, 116 B.R. at 53 ("Movants claim that Movant Mansori's inexperience at the time of filing the petition was a prominent factor in his failure to file an application for employment as required. The Court is not persuaded by this argument. An attorney must know the law. In fact, the *F/S AirLease* Court charged a *non-attorney* with knowledge of the prior approval requirement. *F/S AirLease*, 844 F.2d at 106-07 . . . . In this case, Movants bore the responsibility for filing the application for employment.") (emphasis supplied in original); *In re PICA Systems, Inc.*, *(Frank v. PICA Systems)*, 124 B.R. 30,

33 (E.D. Mich. 1991) ("[B]oth Frank and Ellis bore the responsibility for applying for approval. As a bankruptcy professional of counsel to Shapack, Frank must have been familiar with the requirements of § 327(a) and § 101(13)(A).").

In *In re PICA Systems*, the Court held as follows concerning an attorney's obligation to obtain prior employment approval from the bankruptcy court:

> When experienced legal professionals continue legal services without
> approval of the bankruptcy court, they run the risk of disapproval of
> their final application for retroactive appointment and fees.  If they
> are allowed to make up the deficiency in their applications without
> showing circumstances that are exceptional and something more than
> simple neglect, which is the case here, the deterrent purposes of §
> 327(a), *see Arkansas Co.*, 789 F.2d at 648, would be eviscerated
> and professionals would be encouraged to emulate the laxity
> displayed by Frank and Ellis in the hope of being saved by equity.
> This asks too much.  Courts, like the Deity, are more inclined to
> help those who help themselves.  *In re Roco*, 64 B.R. 499, 505
> (D.R.I. 1986).

*In re PICA Systems*, 124 B.R. at 34.

That the Gallagher Defendants had a duty under the foregoing case law is underscored by the ease with which a party can perform a PACER search.  In *In re Maxford Oliver*, Case No. 05-80198 (Bankr. M.D. Ala. May 2, 2005), Judge Sawyer held as follows: "The Court finds that a lawyer who files a petition in bankruptcy, in violation of an injunction against refiling, violates

Rule 9011 if she does not make a PACER search of the Court's records, notwithstanding that fact that the Debtor has misrepresented facts concerning prior bankruptcy filings.  As PACER searches are simple, inexpensive and take only a minimal amount of time, the failure to conduct such a search is not reasonable under almost any circumstances."  *In re Maxford Oliver*, p. 10.  In so holding, Judge Sawyer recognized that "**[l]awyers should not be permitted to gain a competitive advantage in the marketplace by lowering their ethical standards**."  *Id.* at 7 (emphasis added). The record here establishes that by using PACER, it is very easy to determine whether someone is in bankruptcy.  (Vogel depo, pp. 171-72).

Moreover, in *In re Barber*, 223 B.R. 830 (Bankr. N.D. Ga. 1998), a case which the Gallagher Defendants cited and relied upon, (e.g., Brief, p. 67), the Court noted that personal injury attorneys should take action to discover whether the debtor has filed a bankruptcy case.  *See Barber*, 223 B.R. at 833 ("Although Ms. Phillips [i.e., the litigation attorney] failed to take action to discover whether Debtor had filed a bankruptcy case, it does not appear such action is standard among personal injury lawyers (**although it should be**) . . . ."  (Emphasis added).

_____            **4.____The Gallagher Defendants Have Totally Ignored The Substantial Evidence of Their Duty To Obtain the Necessary Bankruptcy Court Approvals**

In addition to the foregoing, there was very substantial evidence in the record before Judge Sawyer which **alone** makes out questions of fact on the Gallagher Defendants' duties to obtain all necessary bankruptcy court approvals.

Morris Bart's law firm "referred" the Fen-Phen diet drug cases to Gallagher and his law firm "for handling."  (Bart depo, pp. 53, 170, 207, 212-13, 244-45, 249-52; see also, e.g., Bart depo, pp.

70 -- wherein Bart testified that debtor Finestra Truss "was a joint client of myself and Mike Gallagher's firm."; Crory depo, p. 121). Morris Bart testified that the Fen-Phen products liability cases were "handled as a team" and were a "team effort" between the Bart law firm and Gallagher. (Bart depo, pp. 9-11, 13-16, 22, 30, 37, 66, 97, 106, 114, 124, 162-64, 170, 179-80, 193, 199-200, 207, 211, 243, 253-54). Morris Bart testified that he and Gallagher are a "team" as to the Fen-Phen cases. (Bart depo, pp. 16, 212). As Bart testified, "we handled this [i.e., the Fen-Phen settlements] in conjunction with Mike Gallagher's office;" "[t]his was a venture that we all handled as a team, and it was handled as a team." (Bart depo, pp. 13, 16; see also pp. 22, 30, 37, 66, 97, 106, 114, 124, 162-64, 170, 179-80, 193, 199-200, 207, 211, 243, 253-54). Morris Bart referred to the members of the Fen-Phen cases "team" as "partners." (Bart depo, pp. 10-12; see also pp. 25, 27, 30, 32, 112, 165-66, 169) (emphasis added).

There is a written "Co-counsel Agreement" concerning the Fen-Phen cases between Bart and the Gallagher firm. (Ex 24; Bart depo, pp. 148-49, 294-95). Michael Gallagher also has "co-counsel" agreements with the Bart firm on Rezulin, Propulsid, and Lotronex cases. (Bart depo, pp. 143-46, 246-48; Cazaubon depo, pp. 355; Crory depo, pp. 99-100, 123). The February 2000 Attorney Co-Counsel Agreement concerning the Fen-Phen cases signed by Morris Bart and Michael Gallagher states in pertinent part that: "Gallagher shall take all steps necessary to protect the Client's interest" and "**Gallagher will assume full responsibility for all aspects of litigation** and all costs." (Ex 24) (emphasis added). **The Gallagher Defendants conveniently ignore that language in their discussion of the Co-Counsel Agreement.** (Motions, p. 4). Ultimately, Gallagher successfully negotiated a global settlement of the Fen-Phen cases that totaled in the

hundreds of millions of dollars.  (Bart depo, pp. 152-54; Ex 2775; Cazaubon depo, pp. 77-78; Ex 2566).

Lisa Cazaubon remembers communicating with Gallagher "about resolving some of these issues [i.e., bankruptcy approval issues]." (Cazaubon depo, p. 175).  Gallagher's office assured Cazaubon not to worry about the bankruptcy approval issues because the Gallagher firm would handle them. (Cazaubon depo, p. 198).  Morris Bart testified that Gallagher was contacted by Bart's office whenever Bart's office learned that one of their joint clients was in bankruptcy.  (E.g., Bart depo, p. 97; see also Bart depo, pp. 113, 160, 162-63, 209-10, 214-15; Cazaubon depo, pp. 120, 123-24). Chance Vogel testified that he was told by Cazaubon throughout the time that he worked at the Bart firm to mail copies of any and all bankruptcy information to their co-counsel.  (Vogel depo, pp. 180-82).

Cazaubon believes that the Bart firm was not "responsible for any litigation matters at all," which she believes included the necessary bankruptcy court approvals. (Cazaubon depo, pp. 179-180, 186-88, 208-210, 228-231, 284-85, 419).  Cazaubon testified that she directed members of the Bart firm class action department, and it was the Bart firm's stated procedure, to forward any correspondence that it received on bankruptcy to Mike Gallagher, Tim Goss, or other Bart firm co-counsel.  (See Cazaubon depo, pp. 276-77, 291-92, 297, 352, 381-82, 384-85, 419).  "The way it worked was I was to forward materials to Gallagher's people to let them handle it." (Cazaubon depo, pp. 292, 297).  "[W]e forwarded them [i.e. correspondence concerning a bankruptcy debtor] to Gallagher and didn't do anything else." (Cazaubon depo, p. 295; see also pp. 297, 352).  "Gallagher's office and/or his people were to handle the bankruptcy." (Cazaubon depo, p. 419).  Wendy Davies similarly testified that "I know that at some point Lisa, Morris Bart, they had someone to take care

of our bankruptcy clients. And take care of them, not quite sure, except information was to go to -- I was informed that information would go to such individuals." (Davies depo, p. 104).

Bart relied on Gallagher for the necessary bankruptcy court approvals; Bart testified that "[w]hat we did on these cases is once we determined that a client was in bankruptcy, we then contacted the members of our team, who would be Mike Gallagher, Ben Martin, Tim Goss. Oftentimes we were referred to Butch Cothren, and based on their advice or instructions we acted on it." (Bart depo, pp. 97, 243-44, 252-54; see also pp. 105-06, 108-112, 120, 160, 162-63, 165-68, 179-80, 184, 192-94, 199, 203-207, 209, 214-15, 217, 232, 267, 269, 273-75, 292-93). Bart testified that Gallagher "would have" been "contacted" by the Bart law firm when the Bart firm received debtor Gloria Fort's Release and Acknowledgment form (i.e., on which "yes" was checked indicating that Gloria Fort was in bankruptcy); so Gallagher knew in 2001 that Gloria Fort was in bankruptcy. (Bart depo, pp. 10-11). Similarly, Gallagher knew in 2001 that client Richard Purvis had filed bankruptcy. (Bart depo, pp. 83-88, 111-12, Ex 3144, 3145, 3147, 3152, 3153; Cazaubon depo, pp. 375-78).

According to Morris Bart, his law firm was not responsible for obtaining the necessary bankruptcy court approvals for his clients who were in bankruptcy: "[t]he members of the team, Mike Gallagher's office, and the other lawyers associated with him, were responsible for all aspects of litigation and handling of the case." (Bart depo, p. 22; see also Bart depo, pp. 30, 114 -- "Gallagher's office took care of the litigation in the handling of the cases." and pp. 163-64, 170, 245; see also Cazaubon depo, pp. 179-180, 185-186, 196-198, 208-09, 228-29, 277-79). As Cazaubon similarly explained, the Bart law firm did not believe that it was "responsible for any litigation matters at all;" it was her understanding "that any sort of pleadings, litigation, anything was to be done by our co-counsel [i.e., Gallagher in the Fen-Phen cases]." (Cazaubon depo, pp. 179-180, 186-87, 196-98, 208-

09, 228-29, 277-79, 284-85, 291-92, 294-95). She "assumed that someone in Gallagher's end was handling" bankruptcy matters. (See Cazaubon depo, p. 279; see also p. 292). Cazaubon contends, for example, that the employment application in the Donna Martin case should have been filed by Gallagher. (See Cazaubon depo, pp. 179-180,186-87, 196-98, 208-210, 228-231, 277-79, 284-85, 294-95). It was her "understanding that it was Gallagher's responsibility to do it, and their doing it covered us." (Cazaubon depo, pp. 196-97).

Perhaps most importantly, Morris Bart testified point blank that "as part of this team effort," it was Gallagher's "responsibility" to obtain any necessary bankruptcy court employment approvals. (See Bart depo, pp. 179-80, 197-98; see also pp. 209-213, 224-25, 244-46, 247-48; Cazaubon depo, p. 305) (emphasis added). As Bart testified:

> Q.    (BY MR. OLEN): Is it fair to say that in every kind of litigation you are in with Gallagher that his law firm, as you understand it, has the responsibility of taking care of bankruptcy court requirement issues? That's what you are telling us?
>
> A.    Yes, because I looked to him to lead the way. He is the lead counsel. The cases have been referred to him for litigation. If his firm was not going to handle bankruptcy matters, then I would expect him to retain some sort of bankruptcy counsel to help work out these issues.

(Bart depo, p. 245; see also p. 248) (emphasis added).

The Gallagher Defendants now cry that Bart's testimony is "incompetent, " (Motion, p. 12), yet after the Gallagher Defendants sat through a full day of Morris Bart's deposition -- the written transcript is 310 pages long -- and listened to Mr. Bart repeatedly testify that he relied upon Gallagher to obtain the necessary bankruptcy court approvals, the Gallagher Defendants' only cross-examination of Mr. Bart was a single, totally irrelevant question:

> EXAMINATION BY MR. ANDERSON [counsel for the Gallagher Defendants]:
>
> Q.    Mr. Bart, how old are you?
>
> A.    52.
>
> Q.    You don't look it. Do you have any?
>
> MR. TOPAZI:  No.
>
> MR. SCHILLECI:  No.
>
> MR. TOPAZI:  We don't have anything.
>
> MR. MEMORY:  We have nothing.

(Bart depo, p.310).

Thus, when given the opportunity to cross-examine Mr. Bart concerning his lengthy testimony about the Gallagher Defendants' role and responsibility for handling the bankruptcy issues, the Gallagher Defendants chose to ask Mr. Bart a single question: how old he was? *Id.* The Gallagher Defendants never requested that Mr. Bart's alleged "incompetent" testimony be stricken and not considered on summary judgment. If Mr. Bart's testimony that the Gallagher Defendants were responsible for obtaining the necessary bankruptcy court approvals is somehow flawed or inaccurate, why would the Gallagher Defendants only ask Mr. Bart how old he was? It is ridiculous, given the

total absence of any real cross-examination of Mr. Bart, that the Gallagher Defendants would now portray Mr. Bart's testimony as "incompetent" and something that Judge Sawyer could not consider along with the other substantial record evidence at the summary judgment stage.

To summarize just some of the evidence that the Plaintiffs presented in opposition to the Gallagher Defendants' motion for summary judgment: (1) Fen-Phen, Rezulin, Propulsid, and Lotronex cases were referred by Morris Bart to Michael Gallagher; (2) the Fen-Phen Co-counsel Agreement between Bart and Gallagher states that "Gallagher will assume full responsibility for all aspects of litigation"; (3) Gallagher's firm assured Lisa Cazaubon not to worry about the bankruptcy approval issues; that Gallagher's firm would handle them; (4) Michael Gallagher, an attorney, knew, or in some instances should have known, of their joint clients' bankruptcies; (5) the Bart firm routinely forwarded copies of correspondence and notices dealing with bankruptcy to Gallagher; (6) in 2003, Gallagher began to use the Pacer system to identify bankruptcy cases and potential bankruptcy issues; (7) according to Bart, the Gallagher Defendants were responsible for obtaining the necessary bankruptcy court approvals for their joint clients who were in bankruptcy; (8) Bart relied on Gallagher for the necessary bankruptcy court approvals; (9) Bart testified point blank that "as part of this team effort," it was Gallagher's "responsibility" to obtain any necessary bankruptcy court employment approvals; and, (10) Bart referred to Gallagher as his "partner" in the Fen-Phen cases.

This evidence by itself necessitated that Judge Sawyer deny Gallagher's summary judgment motion.

B.    **The Gallagher Defendants' *In re Smock* Argument Is Misleading and Flawed And Ignores The State of the Summary Judgment Record Before Judge Sawyer**

The Gallagher Defendants rely very heavily upon Judge Sawyer's previous unpublished Memorandum Decision in *In re Lisa Smock*. (Motions, pp. 3-4, 14-15; see also pp. 31-32; Appendix item three). Their assertion is that they occupy the very same position that the debtor's litigation attorney Richard Chancey occupied in *Smock* and, consequently, that summary judgment should have been granted by Judge Sawyer in this case: "Based upon the **same circumstances in another case,** the bankruptcy court previously stated that a sanction would violate due process of law, and yet, this trial is proceeding." (Motion, pp. 14-15). The Gallagher Defendants quote carefully selected portions of Judge Sawyer's *Smock* opinion, which are cited out of context. (Motions, pp. 4, 15). Scattered around the Gallagher Defendants' incomplete citations to *Smock* are exaggerated references to only portions of the record and/or unsupported argument concerning the Gallagher Defendants' view of their duties in this case. (E.g., Motions, pp. 3-15).

The Gallagher Defendants state at page 3 of their brief that "[t]he bankruptcy court has previously said these duties do not apply to a special counsel in Gallagher's position." (Motion, p. 3). Similarly, at page 31, they state that "[t]he bankruptcy court has said that the duties of trustees and debtors do not apply to Gallagher." (Motion, p. 31). These statements are designed to convey the erroneous impression that Judge Sawyer has concluded that the Gallagher Defendants occupy the same position as the litigation attorney in *Smock*. At the end of their brief, the Gallagher Defendants state as follows: "Gallagher is entitled to have the undisputed facts and legal defenses addressed before a trial that the bankruptcy court says could violate due process." (Motion, p. 32). That

incredible statement and the Gallagher Defendants' frequent references to lack of "due process"--which are reminiscent of the story book character Henny Penny's exclamation that "the sky is falling, the sky is falling" -- are similarly designed to create the misimpression that Judge Sawyer has held that proceeding to trial in this case against the Gallagher Defendants would violate due process. Nothing could be farther from the truth. Judge Sawyer has never held that *Smock* is dispositive of this case. The Gallagher Defendants had a full and fair opportunity to litigate their summary judgment motion, which Judge Sawyer properly denied. Judge Sawyer has never held or stated that proceeding to trial against the Gallagher Defendants would violate due process, nor has Judge Sawyer ever held that the Gallagher Defendants occupy the same position as the litigation attorney in *Smock*. The Gallagher Defendants refuse to accept the fact that this case is far different from *Smock* as it relates to the litigation attorneys, and that Judge Sawyer, who was the author of the *Smock* opinion, is in the best position to determine that.

In effect, the Gallagher Defendants contend that under *Smock*, the duty to seek any necessary bankruptcy court approvals does not fall upon lawyers in the Gallagher Defendants' position; according to the Gallagher Defendants, that duty **always** falls either on the trustee, debtor, and/or bankruptcy attorney. The Gallagher Defendants never come out and say point blank that after *Smock* an attorney in the Gallagher Defendants' position can **never** have a duty to obtain the necessary bankruptcy court approvals, but that is what their clever portrayal of *Smock* is designed to convey. The Gallagher Defendants' position on *Smock*, however, is fatally flawed for several important reasons.

First, the Gallagher Defendants have horribly overstated *Smock*, which was not even a § 105 disgorgement and sanctions action and did not involve a claim for damages under § 362. The

Gallagher Defendants assert that after Judge Sawyer's *Smock* decision, a litigation attorney can never be liable in a § 105 action and can never have a duty to seek employment to represent his or her clients who are in bankruptcy no matter what the facts are. Stated differently, the Gallagher Defendants argue that *Smock* somehow stands for the sweeping and all encompassing proposition of law that the duty to obtain necessary bankruptcy court approvals **always** falls **solely** upon the bankruptcy Trustees, the debtors, and/or upon the debtors' bankruptcy counsel. The Gallagher Defendants are wrong. *Smock* does not hold that a litigation attorney can never have a duty to seek bankruptcy court approval of its employment. Memorandum Decision, *In re Lisa Smock*, Case No. 01-5533 (Bankr. M.D. Ala. July 17, 2003), pp. 5-6. To the contrary, Judge Sawyer's opinion in *Tri-State Plant Food* and its progeny make clear that the Gallagher Defendants had a nondelegable duty to seek bankruptcy court approval of their employment and of the settlements. **Moreover, Judge Sawyer has held earlier in this case that his opinion in *Tri-State Plant Food* holds "that each professional ha[s] a nondelegable duty to comply with the pertinent rules" concerning retention and compensation.** Memorandum Decision, *In re Childs (Reding v. Morris Bart)*, Adv. No. 03-1071 (Bankr. M.D. Ala. August 5, 2004), p. 5 (emphasis added). The Gallagher Defendants totally disregard that.

Second, the Gallagher Defendants' discussion of *Smock* wholly ignores the very substantial record evidence which was before Judge Sawyer at the summary judgment stage in this case which places the Gallagher Defendants in a far, far different position than the litigation attorney occupied in the *Smock* case. In *Smock*, Judge Sawyer found that the litigation attorney **did not know** of the bankruptcy, and Judge Sawyer made that clear at the July 15, 2005 hearing held in this case. *In re Lisa Smock*, Case No. 01-5533 (Bankr. M.D. Ala. July 17, 2003), pp. 2, 4 n.2, 5-6; Transcript

of July 15, 2005 hearing held in *Reding v. Morris Bart et al.*, Adv. No. 03-01071, p. 25: "Yeah, the *Smock* case. Anyway, in that particular case, you know, **I found that the lawyer handling the lawsuit didn't know about the bankruptcy**." (Hearing Transcript, p. 25) (emphasis added). Thus, at the time of the March 30, 2006 summary judgment hearing, the Gallagher Defendants had known for many months that Judge Sawyer's view of *Smock* was different from their interpretation, yet they never even attempted to persuade Judge Sawyer at the summary judgment hearing why *Smock*, in their view, was dispositive. (Hearing Transcript). **In fact, the Gallagher Defendants never even mentioned *Smock*.** *Id.*

In *Smock*, Judge Sawyer noted several times in his Opinion that the litigation attorney did not know of Smock's bankruptcy. *In re Lisa Smock*, Case No. 01-5533 (Bankr. M.D. Ala. July 17, 2003), pp. 2, 4 n. 2, 5-6 ("In light of Chancey's claim of innocence and the fact that **there is no evidence to the contrary**, the Court cannot hold him responsible for the default."; " . . . it would certainly strain notions of due process to sanction a lawyer for violations of the bankruptcy laws **when he had no reason to know that a bankruptcy case has been filed.**"; "**Had Chancey known of the bankruptcy proceeding**."; "The difficulty in this case is exacerbated due to the fact that **it appears that Chancey was not told of the bankruptcy filing.**"; "It is not possible to fault Chancey for his part in the Debtor's defalcation as **it does not appear that he knew of the bankruptcy proceeding.**"). And, at the July 15, 2005 hearing held in this case, Judge Sawyer commented that in *Smock*, he "found that the lawyer handling the lawsuit didn't know about the bankruptcy." Transcript of July 15, 2005 hearing held in *Reding v. Morris Bart*, *et al.*, Adv. No. 03-01071, p. 25.

-73-

Here, in sharp contrast to the litigation attorney's lack of knowledge in *Smock*, there is substantial evidence that the Gallagher Defendants knew, or in some instances should have known, of their clients' bankruptcies, and also substantial evidence that the Gallagher Defendants became fully aware of the bankruptcy court approval issues that must be dealt with properly by litigation counsel when their clients file bankruptcy.

In addition, the Gallagher Defendants conceded in their summary judgment brief that "in 2003 Gallagher began to use the Pacer system to identify bankruptcy cases and potential bankruptcy issues." (Brief, p. 47). The Gallagher Defendants further conceded that "[i]n 2003 Gallagher performed a Pacer search on all referred Lotronex claimants and created a list that noted bankruptcy cases," and that "with respect to the Rezulin settlement, a Pacer search was conducted by Gallagher in October 2003 and it revealed several referred Rezulin claimants who possibly did not own their claims because of bankruptcy cases." (Brief, pp. 30, 47). Similarly, the Gallagher Defendants concede in the motion to withdraw reference that "Gallagher has performed Pacer searches." (Motion, p. 22).

Moreover, in sharp contrast to the evidence before Judge Sawyer in *Smock* concerning litigation attorney Richard Chancey, there is very substantial evidence (as more particularly detailed in the "duty" section of this Brief) that the Gallagher Defendants were responsible for obtaining and handling all necessary bankruptcy court approvals, and substantial evidence that Bart relied on the Gallagher Defendants to obtain those approvals. (*See*, *e.g.*, Bart depo, pp. 22, 30, 114, 179-80, 197-98, 209-213, 224-27, 244-48; Cazaubon depo, pp. 179-80, 186-87, 196-98, 208-09, 228-29, 277-79, 284-85, 291-92, 294-95, 305). The Gallagher Defendants' Brief on *Smock* ignores that evidence.

-74-

For these reasons, a finding that the Gallagher Defendants had a duty to obtain the necessary bankruptcy court approvals would not conflict with, and indeed would be entirely consistent with, Judge Sawyer's earlier decision in *Smock*.

## VI.     Conclusion

The Gallagher Defendants, as the parties seeking a stay, bear the burden of "showing a likelihood of success on the merits." The Gallagher Defendants have not, and cannot, meet that burden. The Gallagher Defendants, as the moving parties, also bear the burden of proving that withdrawal of the reference is appropriate. *First Alliance Mortgage* Co., 282 B.R. at 902; *Pension Benefit Guaranty Corp. v. Continental Airlines, Inc. (In re Continental Airlines, Inc.)*, 138 B.R. 442, 445, 448 (D. Del. 1992). The Gallagher Defendants cannot meet that burden either. Accordingly, the Gallagher Defendants' Motion For Stay of Adversary Proceeding is due to be denied.

OLEN, NICHOLAS & COPELAND P.C.
Post Office Box 1826
Mobile, Alabama  36633
251-438-6957
Attorneys for Plaintiffs


/s/  Steve Olen
STEVE OLEN  (OLENS7621)


/s/  Royce A. Ray, III
ROYCE A. RAY, III

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that I did on the 4th day of May, 2006 serve a copy of the foregoing pleading on all parties listed below by mail, properly addressed, and first class postage prepaid.

Frank L. Parker, Jr.
Alford, Clausen & McDonald, L.L.C.
One St. Louis Centre, Suite 500
Mobile, Alabama  36602

David B. Anderson
Waller, Lansden, Dortch & Davis, PLLC
AmSouth Harbert Plaza
1901 Sixth Avenue North, Suite 1900
Birmingham, Alabama  35203

Von G. Memory
Memory, Day & Azar
Post Office Box 4054
Montgomery, Alabama  36101-4054

/s/  Steve Olen
STEVE OLEN