**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

```
IN RE:                          )
                                )
EDWARD CHILDS,                  )
                                )
      Debtor.                   )
_____

CURTIS C. REDING, etc. et al.,  )
                                )
        Plaintiffs,             )
                                )     CIVIL ACTION NO.
v.                              )
                                )     2:06mc3295-WHA
MORRIS BART, P.L.C., et al.,    )
                                )
        Defendants.             )
```

## BRIEF IN SUPPORT OF MOTION FOR STAY OF ADVERSARY PROCEEDING

Gallagher, Lewis, Downey & Kim and Michael T. Gallagher (collectively "Gallagher"), third party defendants herein, for his Brief in Support of Motion for Stay of Adversary Proceeding submits the following.

### FACTUAL BACKGROUND

In November of 1999, American Home Products ("AHP") entered into a National Class Settlement of multi-district litigation in the Eastern District of Pennsylvania in which AHP agreed to make payments to various categories of persons who had ingested certain drugs referred to herein as Fen-Phen ("National Class"). Gallagher is a trial lawyer from Houston, Texas with

over 30 years trial experience.  In December of 1999, Gallagher obtained a large verdict against AHP in Mississippi state court for five persons who had opted out of the National Class.  AHP settled these claims, and approximately 1500 others; and, AHP expressed an interest in negotiating a second group settlement with Gallagher of Fen-Phen claimants who had opted out of the National Class (the "Mississippi Settlement").

Numerous lawyers from several states referred approximately 5,000 opt-out claims to Gallagher for purposes of participating in the group settlement with AHP in Mississippi. On February 3, 2000, Bart, a lawyer from New Orleans, and Gallagher entered into a Co-counsel Agreement, drafted by Bart, pursuant to which Bart was one of several lawyers who referred to Gallagher existing and future clients who desired to opt out of the National Class and join the Mississippi Settlement that was being negotiated by Gallagher.  Bart advertised in Alabama and entered into retainer agreements with approximately 30 of the 33 people in the Middle District whose bankruptcy estates have asserted claims against Gallagher.  Bart referred these individuals to Gallagher for inclusion in the Mississippi Settlement.

Morris Bart desired to communicate with his clients; and, Gallagher relied upon Bart's representatives to communicate with all Bart clients with respect to the Mississippi

Settlement.  Pursuant to the Co-Counsel Agreement Bart agreed to insure that all information necessary to file and process a client's claim was sent out timely to Gallagher.

Gallagher, together with other counsel, completed the negotiation of the Mississippi Settlement with AHP in the fall of 2000; and, the settlement was documented by letter agreement on December 17, 2000.  Pursuant to the settlement, AHP paid the settlement funds into court to be distributed by a Special Master.

In order to approve and consummate the Mississippi Settlement, in December 2000, Sue Martin commenced *In re The Disbursement of Funds in the Fen-Phen Litigation,* Cause No. G2000-2279 in the Chancery Court of Hinds County, Mississippi.  On December 21, 2000, the Chancery Court entered an Order establishing a "Qualified Settlement Fund."  The Order provided and found:

> a.   A Qualified Settlement Fund was established.

> b.   James P. Cothren was appointed as Special Master.

> c.   The Special Master was instructed to develop a claims administration system to determine the amount of claims and to distribute the claims to participating individuals.

On March 8, 2001, the Chancery Court approved a Compensation Matrix, which was developed by the Special Master and approved by Claimant's counsel and which provided what the parties believed was a fair method for allocating the settlement fund among the claimants based upon various objective criteria. The Special Master had possession of and administered the Qualified settlement Fund.    Consistent with the Co-Counsel Agreement, Bart coordinated with his clients and he obtained Releases and the information necessary to submit claims to the Special Master.    Bart's clients represented that they owned their claims in the Releases.

The Special Master administered the settlement, determined claims and sent settlement checks and Receipts to Bart who delivered the checks to his clients who were required to certify on the Receipts that they were not in bankruptcy. Many of the individuals whose bankruptcy estates are plaintiffs in this Adversary Proceeding certified they were not in bankruptcy and Bart delivered their checks.    A few people disclosed their bankruptcy cases and their checks were returned to the Special Master.    Bart and a Texas lawyer, Ben Martin, contacted Trustees and Debtors to resolve any bankruptcy issues. Gallagher was advised that these issues had been resolved.

Apparently Bart did a poor job of communicating with Reding, Chapter 13 Trustee for Edward Childs, and Reding sued

Bart. Bart subsequently joined Gallagher as a third party defendant claiming that Gallagher had undertaken to communicate with Bart's clients, a position contradictory to the language of the Co-Counsel Agreement. Reding then asserted the same claims directly against Gallagher.

Chapter 7 Trustee, DePaola, joined as a plaintiff and these Trustees claimed to have standing to sue Bart for 60 separate bankruptcy estates, most of which have different Trustees. Then 33 of these 60 Estates asserted claims against Gallagher. Gallagher was not in possession of the Qualified Settlement Fund and had no knowledge that any of Bart's clients were in bankruptcy when the Special Master disbursed their settlement funds. As such, Gallagher would have an absolute defense under 11 U.S.C. § 542(c) to any claim that he controlled any property of these Estates. Rather than assert a claim under § 542, these Estates have invented four causes of action in which they seek compensatory and punitive damages and monetary sanctions. These claims are contained in the Third Amended Complaint and are outlined below:

**Count I** – Use of 11 U.S.C. § 105 to punish special counsel for violation of the duty of the Trustee or the Debtor to hire counsel under 11 U.S.C. § 327.

In Count I the Estates seek the following relief:

A.    An Order requiring the Defendants to disgorge any attorneys fees and reimbursement of expenses, plus interest, that they received on account of

the illegal and improper conduct described herein;

As set forth below, upon the consummation of the recent Bart/Trustee settlement, this claim will be paid in full.

B. An order awarding actual damages, interest, attorneys fees, costs and punitive damages and imposing appropriate sanctions.

This claim is triable to a jury.

**Count II** – Use of 11 U.S.C. § 105 to punish special counsel for alleged violation of duty of trustee and/or the debtor to have settlements approved under Bankruptcy Rule 9019.

In Count II the Estates seek the following relief:

A. An Order requiring the Defendants to disgorge any attorneys fees and reimbursement of expenses, plus interest, that they received on account of the illegal and improper conduct described herein;

As set forth below, upon the consummation of the recent Bart/Trustee settlement, this claim will be paid in full.

B. An order awarding actual damages, interest, attorneys fees, costs and punitive damages and imposing appropriate sanctions.

This claim is triable to a jury.

**Count III** – Use of 11 U.S.C. § 105 to punish special counsel under § 362(h) for alleged willful violation of the automatic stay.

In Count III the Estates seek the following relief:

A. An Order requiring the Defendants to disgorge any attorneys fees and reimbursement of expenses, plus interest, that they received on account of the illegal and improper conduct described herein;

As set forth below, upon the consummation of the recent Bart/Trustee settlement, this claim will be paid in full.

> B.   An order awarding actual damages, interest, attorneys fees, costs and punitive damages and imposing appropriate sanctions.

This claim is triable to a jury.

> C.   An Order awarding appropriate damages pursuant to § 362(h).

This claim is triable to a jury.

> **Count IV** – Use of 11 U.S.C. § 105 to enjoin special counsel from representing debtors in bankruptcy without complying with the Bankruptcy Code.

> In Count IV the Estates seek the following relief:

> A.   An Order requiring the Defendants to disgorge any attorneys fees and reimbursement of expenses, plus interest, that they received on account of the illegal and improper conduct described herein;

As set forth below, upon the consummation of the recent Bart/Trustee settlement, this claim will be paid in full.

> B.   An Order awarding actual damages, attorneys fees, costs and punitive damages and imposing appropriate sanctions;

This claim is triable to a jury.

> C.   An Order permanently enjoining the Defendants from engaging in said improper and unlawful acts, practices and procedures with respect to their clients who are bankruptcy debtors.

This claim is moot because Gallagher has engaged in no such conduct.

Gallagher filed a defensive Counterclaim seeking to establish his entitlement to an attorney's lien on the settlement funds and seeking to recoup his costs. Gallagher also joined the 33 individuals who had concealed their claims from the Estates and who had concealed their bankruptcy cases from the Special Master. The Bankruptcy Court issued a show cause order after which the Court dismissed the debtors who had committed bankruptcy fraud and left Gallagher, a victim of the fraud, to defend claims that are not based upon fact or law.

In June of 2005 Gallagher filed a Motion for Summary Judgment in which he addressed each of the 33 Estates claims. Each of the Estates must be individually analyzed to determine if the claims were scheduled, administered, are property of the estate, exempted, involve 100% plans, dismissed cases, whether the Trustees have standing, and whether the Debtors lied to Gallagher in an effort to conceal the claim from the Special Master and the Bankruptcy Court. There never has been a pretrial conference at which the subjects identified under Bankruptcy Rule 7016(c) were addressed, including the formulation and simplification of the issues or the entry of a pretrial order. All the Court has done is enter Scheduling Orders under Bankruptcy Rule 7016(b). In September of 2005 the Bankruptcy Court set Gallagher's Motion for Summary Judgment for argument on March 30, 2006, nine months after it was filed.

In February of 2006, Bart and the 113 Estates asserting claims against Bart in this Adversary Proceeding and in related cases pending in Tuscaloosa reached a settlement in which:

1.    $189,000 was allocated to 19 Estates, including 5 of the Estates which purport to have claims against Gallagher in this Adversary Proceeding, thereby paying each of these Estates 100% of compensatory damages.

2.    Nothing was allocated to the other 94 Estates, 28 of which have filed claims against Gallagher in this Adversary Proceeding. Since Gallagher's alleged knowledge is based solely upon Bart's knowledge, these Estates can have no claim against Gallagher if they have no claim against Bart. If they had a claim against Bart, it would be a breach of fiduciary duty for a trustee to pay money belonging to one estate to another estate's creditors.

3.    $998,000 of the gross amount was allocated to the Estates' attorneys' fees and costs. There was no contract and there is no statute that provides for the recovery of attorneys' fees from Bart, and therefore, Bart's voluntary agreement to pay $998,000 directly to counsel for the Estates can only be an admission of

misconduct justifying the award of attorney's fees as a sanction.

By structuring the "settlement" as an "agreed" direct payment to counsel for the Estates, the Bankruptcy Court reasoned that it had no subject matter jurisdiction over $998,000 of the gross recovery. Notice of the proposed settlement was not sent to any creditor (a requirement of Bankruptcy Rule 2002(a)(3)) and there were no objections filed. Although it could have been entered the first week in April, 2006, for some reason the Bankruptcy Court has delayed entering any order approving the Bart/Trustee settlement. The legal effect of this Agreement between the Estates and Bart in this Adversary Proceeding is that: (1) the 5 Estates that were paid in full can have no claim against Gallagher to be paid a second time; and, (2) the 28 Estates that the parties agreed have no claim against Bart, cannot have any claim against Gallagher.

At the oral argument on Gallagher's summary judgment the Court announced it had not read Gallagher's reply brief and failed to address many important issues, including:

1. The fact that only 8 of 33 Estates even attempted to submit evidence, thereby necessitating the dismissal of 25 claims under the summary judgment standards announced by the U. S. Supreme Court.

2.    The fact that 5 of the cases were dismissed and there are no estates to bring suit.

3.    The fact that one claim was abandoned as a matter of law.

4.    The fact that 5 estates have had 100% Chapter 13 plans paid in full.

The bankruptcy court scheduled a status conference to occur on April 6, 2006, (Docket Entry 302). This status conference was cancelled and, instead, on April 12, 2006, the Court entered the Order to Show Cause why after the Court exercised subject matter jurisdiction over the Bart/Gallagher claims for two years and eight months, these claims should not be dismissed on the theory that the outcome of a claim would have no effect upon the estate.

### ARGUMENT

This Adversary Proceeding, which is not a core proceeding under 28 U.S.C. § 157(b)(2)(A-O), is due to be stayed pending the District Court's determination of Gallagher's Motion to Withdraw the Reference because Gallagher can establish the required elements for a stay which are: (1) the likelihood that the Motion to Withdraw the Reference will be granted on the merits; (2) whether or not Gallagher will suffer irreparable harm if the stay is denied; (3) whether or not the Trustees will be substantially harmed by the stay; and (4) whether or not the

public interest will be served by granting the stay.  See, e.g.
In re Eagle Enterprises, Inc., 259 B.R. 83, 86-87 (Bankr. E.D.
Penn. 2001).

**I.   THE DISTRICT COURT SHOULD WITHDRAW THE REFERENCE OF THIS
MATTER**

      In In re Eagle Enterprises, Inc., the court held that
the defendant was entitled to stay the bankruptcy proceedings
pending the District Court's ruling on the defendant's motion to
withdraw the reference.  295 B.R. at 89.  The court determined
that the District court would likely withdraw the reference at
that time, because the defendant was entitled to a jury trial
and absent the defendant's consent, the contract and tort claims
would ultimately have to be tried by the District Court.  Id. at
88.

      Similarly, Gallagher has timely demanded a jury trial
of all claims and Gallagher has supported his demand with
caselaw establishing his absolute right to a jury trial.
(Gallagher's Motion to Withdraw the Reference at pp. 24-29.)
Since Gallagher does not consent to a jury trial in bankruptcy
court, the trial, if any, must occur in the District Court. Id.
Gallagher can find no case law under which his right to a jury
trial can be denied, so Gallagher is likely to succeed on the
merits.  Dairy Queen, Inc. v. Wood, 369 U.S. 469, 473 (1989)
(holding that the right to a jury trial cannot be lost by a

judge determining equitable claims that include common issues of law and fact with the legal claims.) Gallagher has also asserted numerous grounds for permissive withdrawal of the reference because the Bankruptcy Court has failed to address Gallagher's legal arguments and ignored binding precedent without explanation. These are important legal issues that need to be addressed.

## II. **GALLAGHER WILL SUFFER IRREPARABLE HARM IF THE STAY IS DENIED.**

The Bankruptcy Court denied Gallagher's Summary Judgment Motion on April 3, 2006; and, the trial of this Adversary Proceeding is scheduled for May 22, 2006. The Bankruptcy Court refused to stay the action claiming that the compensatory and punitive damage claims in the Adversary Proceeding were equitable in nature, when a review of the Complaint reveals that only claims for punitive damages will remain after the Bart/Trustee settlement is consummated.

Gallagher has denied that the Adversary Proceeding is a core proceeding and he has alleged diversity jurisdiction. Therefore, if the Bankruptcy Court were to sever the Bart/Gallagher claims (in violation of Bankruptcy Rule 7042), it cannot dismiss those claims because the District Court has diversity jurisdiction and the Bankruptcy Court does not have

the power to dismiss a case that is before the District Court on diversity jurisdiction as well as bankruptcy jurisdiction.

In order for a federal court to dismiss a case for lack of subject matter jurisdiction, the court must analyze whether it has jurisdiction based on either federal question or diversity.  See Smith v. GTE Corporation, 236 F.2d 1292 (11th Cir. 1002)(analyzing whether the court had either federal question jurisdiction or diversity jurisdiction before ordering the case remanded to the district court with directions that the case be dismissed for lack of jurisdiction); Robinson v. The University of Texas Houston Health Science Center, 74 Fed. App. 400 (5th Cir. 2003)("because neither a federal question or diversity of citizenship exists, the district court lacked subject matter jurisdiction."); Boca Ciega Hotel, Inc. v. Bouchard Transportation Co., Inc., 844 F. Supp. 1512, 1515 (M.D. Fla. 1994) ("Because this court lacks federal question jurisdiction under 28 U.S.C. § 1331, the supplemental state claims must be dismissed unless the plaintiffs can satisfy the requirements of diversity jurisdiction under 28 U.S.C. § 1332.").

The district court in Morshet Israel, Inc. v. Audrey and Sydney Irmas Charitable Foundation (In Re Morshet Israel, Inc.), 1999 WL 165699 (S.D.N.Y. March 24, 1999) dealt with a third party claim that the bankruptcy court retained

jurisdiction over until determining that the third-party claims should be tried in a different forum. In that case Morshet Israel initiated an adversary proceeding asserting that the Foundation's security interest in collateral securing a loan had not been properly perfected. See id. at *1. Thereafter, the Foundation filed a third party complaint against the lawyers who had drafted the loan documents on the grounds that they were liable to the Foundation to the extent the Foundation's lines on the debtor's assets were found to be invalid. See id. The bankruptcy court granted Morshet Israel's motion for summary judgment finding that the Foundation did not have a perfected lien. See id. In response, the lawyers sought to have the third party complaint against them dismissed by the bankruptcy court for lack of subject matter jurisdiction. See id.

The Foundation moved to withdraw the reference alleging that the district court had diversity jurisdiction over the action. See id. at #2 (listing four reasons why the reference should be withdrawn). The lawyers argued that the district court should not rule on the motion to withdraw the reference until the bankruptcy court ruled on their motion to dismiss.

The district court held that the Foundation's third party claims were non-core and that the action was best suited to be tried in another forum. See id. at 3. The district court

noted that the bankruptcy court had retained jurisdiction over the third-party claims pending its determination of Morshet Israel's claims which tied it to the administration of the estate.  See id.  By ruling in Morshet Israel's favor the bankruptcy court disposed of the issue that tied the third-party claims to the estate.  See id.

The district court granted the motion to withdraw the reference stating that: (1) the bankruptcy judge has determined that the claims should be tried in another forum; (2) judicial economy is best served by avoiding wasteful motion practice regarding a statute of limitations defense that would rise if the third-party action was dismissed and the Foundation was forced to file its claims anew; (3) the court found no evidence of forum shopping because the bankruptcy court first retained jurisdiction over the action and was only then recommending dismissal; and (4) the withdrawal of the reference would not upset the uniform administration of bankruptcy laws.  See id. at 3.

Separately, Gallagher has demanded that the Trustees try their claims to a jury.  The reference is due to be withdrawn on the Trustee's claims and on the Bart/Gallagher claims.  If either claim is withdrawn, they are due to be tried together and the Court should stay the Adversary Proceeding

pending a resolution of Gallagher's motion to withdraw the reference.

The claims set for trial on May 22, 2006 are 33 separate estate's claims for compensatory and punitive damages for which Gallagher has an absolute right to a jury trial. In order for Gallagher to defend these claims it will be necessary to subpoena debtors, trustees and debtor's counsel. These witnesses total in excess of 70 persons. Gallagher will suffer irreparable harm if he is required to subpoena 70 people and otherwise prepare for a jury trial that, as a matter of law, cannot occur on May 22, 2006 in the Bankruptcy Court. In addition to duplication of preparation, without a stay this Adversary Proceeding would need to be tried a second time.

## III. **THE TRUSTEES WILL NOT BE HARMED BY A STAY OF THE ADVERSARY PROCEEDING PENDING THE DISTRICT COURT'S DECISION ON THE MOTION TO WITHDRAW REFERENCE.**

This Adversary Proceeding was filed in 2003. It is not ready for trial. There never has been a meaningful pretrial conference at which claims and defenses are identified. The Bankruptcy Court and the Trustees do not agree on what claims are in the case. The Bart/Trustee settlement has not yet been approved. When the Bart/Trustee settlement is approved, it will result in 100% recovery by the only estates with claims and the payment of 100% of counsel's fees. Since all claims will have been paid, this Adversary Proceeding will be subject to

dismissal.    There  is  no  urgency  to  try  this  case  on  May  22, 2006.

**IV.    THE PUBLIC'S INTEREST IN UPHOLDING THE CONSTITUTION, JUDICIAL ECONOMY AND UNIFORMITY REQUIRE A STAY OF THIS ADVERSARY PROCEEDING.**

The  public  interest  in  upholding  the  Constitution  and Gallagher's  Seventh  Amendment  right  to  a  jury  trial  is  great  in this case.

The  public  interest  in  judicial  economy  and  uniformity is  also  great  in  this  case.    The  Adversary  Proceeding  is actually  not  ready  for  trial.    First,  Bart  is  still  a  defendant and  a  third  party  plaintiff,  and  there  are  issues  to  be determined  with  respect  to  Bart's  settlement  and  subject  matter jurisdiction  over  claims  between  Bart  and  Gallagher.

<u>**CONCLUSION**</u>

Gallagher  is  entitled  to  a  stay  of  all  proceedings  and the  continuance  of  the  trial  of  this  Adversary  Proceeding  until the  District  Court  has  ruled  on  the  Motion  to  Withdraw Reference.

Respectfully  submitted,

/s/ David B. Anderson_____
David B. Anderson (AND006)
Ryan K. Cochran  (COC020)
Deanna L. Weidner (WEI038)
Attorneys for Defendants
Gallagher, Lewis, Downey & Kim and
Michael T. Gallagher

3328.3                                    18

OF COUNSEL:

WALLER, LANSDEN, DORTCH & DAVIS, LLP
AmSouth-Harbert Plaza, Suite 1400
1901 6th Avenue North
Birmingham, AL 35203
Phone: 205-214-6380
Fax: 205-214-8787

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing Brief in Support of Motion to Stay of Adversary Proceeding; and Request for Expedite Relief has been duly served upon counsel of record electronically and/or by mailing same by United States mail, properly addressed and postage prepaid, to the following:

Mr. Steve Olen
Mr. Royce A. Ray, III
Olen, Nicholas & Copeland, P.C.
P. O. Box 1826
Mobile, AL 36633

Mr. Frank L. Parker, Jr.
Ms. Christina May Bolin
Alford Clausen and McDonald, LLC
One St. Louis Centre, Suite 5000
Mobile, AL 36602

Mr. Joseph P. Schilleci, Jr.
Mr. David D. Schoel
Mr. Gerald S. Topazi
Natter & Fulmer, P.C.
3800 Collonade Parkway, Suite 450
Birmingham, AL 35243

Mr. Curtis C. Reding
Standing Chapter 13 Trustee
P. O. Box 173
Montgomery, AL 36101-0173

Mr. Barry E. Teague
P. O. Box 586
Montgomery, AL 36101

Mr. Von G. Memory
Memory & Day
P. O. Box 4054
Montgomery, AL  36101

This the 4th day of May, 2006.

                    s/s David B. Anderson_____
                    Of Counsel