IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

IN RE:                          )
                                )
EDWARD CHILDS,                  )
                                )
      Debtor.                   )
_____

CURTIS C. REDING, etc. et al.,  )
                                )
        Plaintiffs,             )
                                )       CIVIL ACTION NO.
v.                              )
                                )       2:06mc3295-WHA
MORRIS BART, P.L.C., et al.,    )
                                )
        Defendants.             )

## GALLAGHER'S SUPPLEMENT TO MOTION FOR MANDATORY AND PERMISSIVE WITHDRAWAL OF REFERENCE AND TRANSFER OF ADVERSARY PROCEEDING TO DISTRICT COURT

Comes Now, Michael T. Gallagher and the law firm of Gallagher, Lewis, Downey & Kim n/k/a The Gallagher Firm (collectively "Gallagher"), hereby supplements it Motion for Mandatory and Permissive Withdrawal of Reference and Transfer Adversary Proceeding to District Court by asserting the following.

### INTRODUCTION

This Adversary Proceeding was filed by Reding, as Trustee of the Childs estate, against Bart in 2003. Gallagher was joined by Bart under a claim of indemnity. On March 30,

2005, Reding, as Chapter 13 Trustee, and Susan DePaola, as a Chapter 7 Trustee, claimed to have the authority to represent 32 other Estates and commenced 60 new cases against Bart and 32 new "cases" against Gallagher.   On June 25, 2005, Gallagher filed a summary judgment motion in which he raised, in addition to other defenses, Rooker-Feldman issues, because the alleged property of the 33 Estates was in the possession of and controlled by a Special Master appointed by a Mississippi Chancery Court. Gallagher also claimed that the Trustees have not yet articulated their damage claims and that the recently approved Bart/Trustee settlement resolves all claims.   The Bankruptcy Court addressed this issue for the first time in May of 2006, when it denied Gallagher's request for a stay.

A jury demand was timely made by Gallagher.   The Bankruptcy Court has never conducted a meaningful pretrial conference at which the causes of action and remedies have been analyzed in terms of their validity and the right to a jury trial.   See Fed. R. Bankr. 7016.   The Trustees argue a waiver of the right to a jury trial by Gallagher's filing of compulsory counterclaims in the nature of recoupment.   In May of 2006, the Bankruptcy Court changed its prior position that this was a turnover action to it is the nature of an accounting.   The Bankruptcy Court concluded that Gallagher was not entitled to a jury trial.   The Bankruptcy Court failed to analyze the remedies

sought as required by Granfinanciera, thereby raising serious constitutional issues concerning the Seventh Amendment, the power of the Bankruptcy Court and the Rooker-Feldman doctrine. The Adversary Proceeding should not be tried before the effect of the Bart/Trustee settlement is determined.

Unless the parties consent, where there is the right to a jury trial, a district court must withdraw adversary proceedings referred to the bankruptcy court pursuant to 28 U.S.C. § 157(a). See 28 U.S.C. § 157(e) which provides:

> If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise jurisdiction by the district court and with the express consent of all the parties.
>
> See Northern Pipeline Const. Co. v. Marathon Pipeline Co., 458 U.S. 50 (1982); Malone v. Norwest Financial California, Inc., 245 B.R. 389, 400-01 (E.D. Cal. 2000); 28 U.S.C. § 157(e).

Gallagher has alleged diversity jurisdiction on his counterclaims and he does not consent to a jury trial in bankruptcy court. (Case No. 03-1071, ECF Doc. No. 189). Gallagher requests that any jury trial be conducted in the District Court. Because Gallagher is entitled to a jury trial on all claims in this case, and because there is diversity jurisdiction, withdrawal of the reference is mandatory.

Gallagher initially filed his jury demand on August 28, 2003 in his answer to the Plaintiff's original complaint for the Childs estate. (Case No. 03-1071, ECF Doc. No. 29). On March 30, 2005, two years later, the Plaintiffs amended their complaint to add 32 new lawsuits. (Case No. 03-1071, ECF Doc. No. 39). Gallagher answered in April of 2005 and timely demanded a jury trial. (Case No. 03-1071, ECF Doc. No. 188). In June of 2005 Gallagher filed his Motion for Summary Judgment and Memorandum in Support Thereof (Case No. 03-1071, ECF Doc. Nos. 241 and/or 242).

The Bankruptcy Court gave the Estates several months to file their response and set oral argument on Gallagher's Motion for Summary Judgment on March 30, 2006, nine months later. The Court denied Gallagher's Motion for Summary Judgment on April 3, 2006. Gallagher filed his Motion to Withdraw the Reference on April 19, 2006, approximately two weeks later. In May of 2006 the Bankruptcy Court dismissed Gallagher's Third Party Claims against Bart and Bart's cross-claims against Gallagher. The same day, the Bankruptcy Court approved Bart's Settlement Agreement with the Estates. It is still unclear whether the Estates are merely requesting an accounting as stated by the Bankruptcy Court, or if they are demanding a turn-over, actual damages, punitive damages and sanctions as requested in their complaint. To date, the Bankruptcy Court has not determined

whether Gallagher must try claims of dismissed cases, 100% plans and an abandoned case.    The Bankruptcy Court does not have jurisdiction over these claims.

## I.    GALLAGHER'S MOTION TO WITHDRAW REFERENCE WAS TIMELY

If a party has rightfully demanded a jury trial and does not consent to the jury trial in bankruptcy court, the District Court is required to withdraw its previous, automatic referral of the case to the bankruptcy court either on its own or upon a party's "timely" motion.    11 U.S.C. § 157(d). Congress did not define when a motion is timely.    Supreme Court precedent and lower federal court cases, however, indicate the timeliness requirement in § 157 is referring to ripeness, not waiver.

### A.    Waiver of the Fundamental Right to a Jury Trial Cannot be Inferred by Inaction or Acquiescence Absent Actual Participation in a Bench Trial Without Objection

The right to a jury trial is fundamental and waiver is not lightly to be inferred. Gargiulo v. Delsole, 769 F.2d 77 (2nd Cir. 1985); Pradier v. Elespuru, 641 F.2d 808 (9th Cir. 1981); Kershenbaum v. Wool, 13 F.R.D. 333 (D.D.C 1952).    Congress may not abridge the right to a jury trial where private rights are involved.

> Congress may devise novel causes of action involving public rights free from the strictures of the Seventh Amendment if it assigns their adjudication to tribunals without statutory authority to employ juries as factfinders.    But

it lacks the power to strip parties contesting matters of private right of their constitutional right to a trial by jury.

> *Granfinanciera*, 492 U.S. at 51-52.

Any attempt by Congress to limit a party's right to a jury trial through ill defined timeliness requirements would infringe upon a party's Seventh Amendment rights.

Over a century ago, the Supreme Court determined the limits of a waiver to the fundamental right to a jury trial due to timeliness. This precedent is binding today.

> "[T]he right to have a jury when a party demands it is so universally known and respected, we think that it is almost a necessary inference, where a party is present by counsel and goes to trial before the court without objection or exception, he has voluntarily waived his right to a jury, and must be held in this court to the legal consequences of such a waiver. But, we are not prepared to go further."

> *Kearney v. Case*, 79 U.S. 275, 284 (1870)(emphasis added).

The Trustees allege that Gallagher has waived his right to a jury trial because his motion to withdraw the reference is untimely. "Any waiver of right to jury trial must be knowingly and intelligently effected, even though under certain circumstances participating in bench trial without objection may constitute waiver. *Kelley v. Pence*, 962 F.Supp 90 (E.D. Tex. 1997). The Estates base much of their argument on Gallagher's alleged failure to remind the Bankruptcy Court of its demand for a jury trial. Gallagher's fundamental right to a

jury trial cannot be waived by failing to remind the Court of his proper demand.

In _Winters_, the plaintiff timely demanded a jury trial but when the defendant expressly requested that the court act as the trier of fact, the plaintiff did not object. The defendant claimed that the plaintiff had waived its right to a jury trial.

> "the [defendant] cites this circuit's precedent for the proposition that a party may waive its right to a trial by jury through inaction and inadvertence; however, the cases allowing such a waiver are not applicable to [the plaintiff]. Only when a party does not reassert the right to a jury trial prior to a _bench trial_ or _factual hearing_, requests a _bench trial_, or knowingly participates in a _bench trial_, does that party waive his right to trial by jury through inaction or inadvertence."

> _Winter v. Minnesota Life Ins. Co._, 199 F. 3d 399, 408 (7th Cir. 1999)(emphasis in original).

When this Adversary Proceeding was filed the District Court referred it to the Bankruptcy Court. 11 U.S.C § 157 does not prescribe when a motion to withdraw the reference is timely. No bankruptcy rule sets forth a time limit for filing a motion to withdraw the reference. The Middle District does not have a local rule and no 11th Circuit case holds that the right to a jury trial is waived if a motion to withdraw is not filed within a certain time after demanding a jury. The Middle District of Alabama has not prescribed the appropriate time to file a motion to withdraw the reference. The Northern District of Alabama has

loudly declared that the proper time is after all discovery, motions and pretrial conferences are completed. <u>City Fire Equipment Co., Inc. v. Ansul Fire Protection Wormald U.S., Inc.</u>, 125 B.R. 645 (N.D. Ala. 1999). By following existing caselaw and local practices, Gallagher has not knowingly, intelligently and voluntarily relinquished his right to a jury trial.

**B.    <u>The Timeliness Requirement in 11 U.S.C § 157 Requires the District Court to Refuse to Withdraw the Reference until the Case is Ready for Trial.</u>**

Congress can delegate pre-trial functions to the Bankruptcy Courts without infringing upon a party's right to a jury trial. <u>City Fire Equipment Co., Inc. v. Ansul Fire Protection Wormald U.S., Inc.</u>, 125 B.R. 645 (N.D. Ala. 1999).

> Congress' conclusion that the proper functioning of the bankruptcy system requires that expert judges handle these claims, and that the claims be given higher priority than they would receive on a crowded district court's civil jury docket (see Senate Report, at 3; House Report, at 7-8, is entitled to our respect.

> <u>Granfinanciera</u>, 492 U.S. at 94.

Congress' timeliness requirement in 11 U.S.C. § 157 refers to ripeness, not waiver. "The appropriateness of removal of the case to a district court for trial by jury, on asserted Seventh Amendment grounds, will become a question ripe for determination if and when the case becomes trial ready." <u>Michaelesco v. Shefts</u>, 303 B.R. 249, 253 (D. Conn. 2004) (citing

In re Adelphi Institute, Inc., 112 B.R. 534, 538 (S.D.N.Y. 1990)).

Similarly, in In re Wedtech Corp. v. Banco Popular de Puerto Rico, the court denied the motion to withdraw the reference where a jury demand was made because the case was still at the pretrial state. 94 B.R. 293, 297 (S.D. N.Y. 1988); see also In re Adelphia Institute, Inc., 112 B.R. at 539; In re Enron Corp., 2003 WL22171695 (S.D.N.Y. 2003); In re Kenai Corp. v. National Union Fire Insurance Company, 137 B.R. 59 (S.D.N.Y. 1992) (denying motion to withdraw reference in which a jury demand was made because it was not clear the case was ready to proceed to trial).

> "Although the bankruptcy judge cannot preside over Plaintiffs' jury trial, he is empowered to dispose of all issues of law. Issues of law, by their very nature, are within the exclusive purview of the court. See McFarland v. Leyh, 40 F. 3d 763, 772-73 (5th Cir. 1994) (in bankruptcy proceeding no right to jury trial arises until a jury issue is before the court) and King v. Fidelity Nat. Bank of Baton Rouge, 712 F. 2d 188, 192-93 (5th Cir. 1983) (bankruptcy judge ruling on summary judgment motion does not raise Seventh Amendment issues since motion disposed of as a matter of law and review by Article III judges is de novo ). Accordingly, this court will not grant a motion to withdraw until it is readily apparent that Plaintiffs' case will require a trial by jury. "If and when the threat to their Seventh Amendment rights becomes concrete, ··· [Plaintiffs'] may seek appropriate remedies at that time."
>
> Matter of Lieb, 915 F. 2d 180, 185 (5th Cir. 1990) (Fifth Circuit

refusing to grant mandamus in
bankruptcy proceeding because
petitioner's Seventh Amendment
rights not yet jeopardized).

In <u>City Fire</u>, the bankruptcy court recommended that
the district court withdraw its automatic reference of two cases
because there was a jury demand. 125 B.R. 645, 646 (N.D. Ala.
1989). There is no indication that any party filed a motion to
withdraw the reference. Sitting en banc[1], the District Court for
the Northern District of Alabama held that the proper time for
filing a motion to withdraw the reference is after all pretrial
issues have been resolved.

> "[T]he court concludes that the references should
> not be generally withdrawn until the cases are
> ready for jury trial. After discovery is
> complete, all motions have been ruled upon and
> pretrial orders filed, <u>the Bankruptcy Court
> should recommend</u> withdrawal of the references and
> this court will schedule the cases for jury
> trial.

<u>Id.</u> at 650 (emphasis added).

The *en banc* court explained that "the Bankruptcy Court
is uniquely qualified and has authority, even in actions such as
this in which a jury trial right has been demanded, to supervise
discovery and conduct pre-trial conferences and rule on
motions." <u>Id.</u> at 649.

---

[1] "The issue being of concern to the whole court, it will be addressed by all
judges of the District Court for the Northern District of Alabama, *en banc*,
except Judge Hancock who has recused himself" <u>Id.</u> at n. 1.

Similarly, in <u>ABC-NACO, Inc. v. Klos Trucking, Inc.,</u> the court held that it is inappropriate to withdraw the reference pursuant to a right to a jury trial until all pre-trial issues have been adjudicated by the bankruptcy court.

> [B]ecause of considerations of judicial efficiency, it would be imprudent to withdraw the reference at this early stage in the litigation. First, it is not clear at this point that the case will even proceed to trial, and withdrawal of the reference will only become mandatory if a trial is ultimately held. Second, as has been stated before by courts in this district, the bankruptcy court is in a better position to monitor the progress of this litigation because it has its finger on the pulse of all the proceedings related to the [underlying] bankruptcy."

2004 WL 728190 (N.D. Ill. 2004).

The Estates have a heavy burden to establish that Gallagher voluntarily waived his Constitutional right to a jury trial. All presumptions must be granted in favor of Gallagher's retained Constitutional right. <u>Gargiulo v. Delsole</u>, 769 F.2d 77 (2nd Cir. 1985); <u>Pradier v. Elespuru</u>, 641 F.2d 808 (9th Cir. 1981); <u>Kershenbaum v. Wool</u>, 13 F.R.D. 333 (D.D.C. 1952). Each of the cases cited by the Plaintiff in support of their contention that Gallagher waived his right to jury trial are inapposite.

For instance, in <u>Blackwell v. Deloitte & Touche, LLP</u>, 279 B.R. 818 (Bankr. W.D. Tex. 2002) the defendant filed its jury demand but never filed its motion to withdraw the

11

reference.   The issue in <u>Blackwell</u> was whether the court had the judicial power to decide dispositive motions before the defendant moved to withdraw the reference.   The court held:

> "So long as the matter is pending before the bankruptcy court then, that court may rule on dispositive motions presented to it without contravening any party's jury entitlements—and without contravening any party's right to have a jury trial before the district court as provided in 28 U.S.C. § 157 (e)."

<u>Id.</u>

In the Matter of HA-LO Industries involved a chapter 11 debtor that brought an adversary proceeding to recover stock and cash from recipients with regard to the purchase of a corporation for which the debtor alleged it did not receive reasonably equivalent value.   326 B.R. 116 (Bankr. N.D. Ill. 2005).   The <u>HA-LO</u> court, in its recommendation to the district court, distinguished the cases cited by Gallagher, which hold that a motion to withdraw the reference is premature before all pre-trial matters are concluded, by explaining that those cases were not ready for trial and there was a strong possibility of settlement or summary judgment.   <u>Id.</u> at 124.   Unlike here, in <u>HA-LO</u>, the pre-trial issues had been previously adjudicated and only trial issues remained.   <u>Id.</u>

In <u>In re Stravriotis,</u> a limited partnership sought to withdraw securities fraud and RICO claims against a general partner Chapter 11 debtor.   111 B.R. 154 (N.D. Ill. 1990).   The

Motion for withdrawal was not based upon the right to a jury trial, but upon the mandatory withdrawal provision of 11 U.S.C. § 157. Id. at 156. That provision holds that the district court must withdraw a case if the case could not be resolved without other federal laws that have a significant effect on interstate commerce. Id. Whereas the right to jury trial does not arise unless and until the case is ripe for trial, the right to have an Article III court adjudicate legal issues pertaining to non-bankruptcy federal laws arise at the commencement of the case. Thus, this case is not persuasive.

C.   **The Estates Will Not be Prejudiced if this Court Withdraws its Previous Reference of these Cases to the Bankruptcy Court**

Whether Gallagher filed his Motion to Withdraw the Reference in April, 2005 or April, 2006 has no substantial prejudicial effect upon the Estates. Withdrawal of this Court's previous, automatic reference is not appropriate until the case is ready for trial thus the reference of these cases would not be withdrawn prior to this time regardless.

> "[A] court may wait until the case is ready to go to trial before withdrawing the reference…. Because 'allowing the bankruptcy court to resolve pretrial issues and enter findings of fact and recommendations of law on dispositive issues is consistent with Congress' intent to let bankruptcy judges determine bankruptcy matters to the greatest extent possible. Accordingly, [the defendant's] jury demand is a legitimate reason to withdraw the reference, but the request to

withdraw the reference at this point in the
proceedings is premature."

> Pro-Pak Services, Inc. v. Carl
> Edward Avallon Trust, 2002 WL
> 31915808 (N.D. Ill. 2002)(quoting
> In re Dreis & Krump Mfg. Co., No.
> 94 C 4281, 1995 WL 41416 *3 (N.D.
> Ill. Jan. 31, 1995).

Any trial preparation that the Estates have commenced
is applicable in a jury trial in the District Court.  Preparing
in advance is not sufficiently burdensome to abridge Gallagher's
constitutional right to a jury.

**D.  The Plaintiffs Failed to Move to Strike Gallagher's
Jury Demand**

Gallagher's jury demand in the 32 new cases filed in
March of 2005 was properly made.  The Trustees failed to move to
strike Gallagher's jury demand.  Pursuant to R. Civ. P. 12(f),
incorporated into the bankruptcy code through Bankr. R. 7012(f)
a motion to strike must be made before responding to a pleading
or within twenty days after service of a pleading to which no
responsive pleading is permitted.  The Estates failed to file a
timely motion to strike and therefore should be precluded from
seeking to strike Gallagher's jury demand at this time.

The bankruptcy court has summarily denied summary
judgment, has attempted to sever claims in violation of the
rules of civil procedure, and has set 33 Estates' "claims" for
what appear to be nonjury trials on May 22, 2006.  Bart's

agreement with the Estates, which mandates a total dismissal of all claims against Gallagher, has been approved by the Bankruptcy Court within the last week. The Trustees recently claimed they are no longer requesting punitive damages. Accordingly, if the withdrawal is ripe, now is the appropriate time for Gallagher to file his motion to withdraw the reference. See City Fire Equipment Company v. Ansil Fire Protection Wormald U.S., Inc., 125 B.R. 645 (N.D. Ala. 1989) (the bankruptcy court can handle all proceedings including ruling on dispositive motions, at which point the reference would be withdrawn).

The Estates misconstrue § 157's timeliness requirement, which pertains to ripeness, not tardiness. Gallagher was required to wait until all pre-trial proceedings concluded to withdraw the reference. Gallagher's motion to withdraw the reference is timely.

## II.  GALLAGHER HAS NOT VOLUNTARILY RELINQUISHED A KNOWN RIGHT TO A JURY TRIAL.

The Estates allege that Gallagher has magically converted his legal claims into equitable claims by filing a compulsory counterclaim against the Estates in Bankruptcy Court and thereby consented to a trial without a jury.

> "[L]egal claims are not magically converted into equitable issues by their presentation to a court of equity," Ross v. Bernhard, 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970), nor can Congress conjure away the Seventh Amendment by mandating that traditional legal claims be

3405.1

> brought there or taken to an administrative
> tribunal.

Granfinanciera, 492 U.S. at 52.

Congress may only deny a party its constitutional right to a jury trial if the legal cause of action involves public rights. Id. at p. 2796. "If the right to a jury trial depends upon the forum which Congress has chosen, Congress could utterly destroy the right by always providing for administrative resolution." Beard v. Braunstein, 914 F. 2d 434, 440 (3rd Cir. 1990).

Gallagher's counter-claim is not equivalent to a proof of claim. One's voluntary assertion of a proof of claim against the Estates is a voluntary submission to the bankruptcy court's jurisdiction. Langenkamp v. Culp, 498 U.S. 1042, 44 (1990). A proof of claim is voluntary, but a compulsory counter-claim is not. A waiver of constitutional rights must be both knowing and voluntary. See e.g., Parke v. Raley, 506 U.S. 20, 28-29 (1992); In re NDEP Corp., 203 B.R. 905 (D.Del. 1996); In re Data Compass Corp., 92 B.R. 575, 578 (Bankr. E.D.N.Y. 1988).

Moreover, Gallagher's counter-claim did not trigger the process of allowance and disallowance of claims to be triggered.

> "[W]hen a proof of claim is filed, the process of
> allowance and disallowance of claims is
> triggered. On the contrary, when the trustee or
> debtor files an action and there is a timely jury

demand along with the assertion of counterclaims, then those counterclaims are part of the "the jury process" rather than the process of allowance and disallowance of claims.

In re NDEP Corp., 203 B.R. 905.

The filing of a proof of claim is a necessary condition for the claims allowance process to begin. In re NDEP Corp., 203 B.R. 905, 912 (citing Germain v. Connecticut Nat'l Bank 988 F.2d 1323, 1327 (2d Cir. 1993). Congress created the claims allowance process for the purpose of efficient and expedient processing of claims. A party that enjoys the benefit of having a more efficient and expedient adjudication of their claims against an estate has voluntarily and knowingly submitted to bankruptcy jurisdiction and waived its right to a jury trial. See Id. Congress did not create Gallagher's counterclaims. Gallagher's adjudication of his compulsory counterclaims (which are defensive in nature) have not been efficient or expedient.

Nearly all of the estates are closed. Eleven Estates no longer exist because the bankruptcy cases have been dismissed, the creditors have been paid in full or the Trustee abandoned the claim. The claims against Gallagher for these non-existent Estates certainly do not trigger the process of allowance and disallowance of claims against the Estate.

A.  **Gallagher's Counter-claim was compulsory and therefore was not a voluntary relinquishment of his right to a jury trial.**

The Estate's claim that Gallagher submitted to the jurisdiction of the bankruptcy court by filing a compulsory counter-claim against the Estates, thereby waiving his Seventh Amendment right to a jury trial.  Congress may not force a party to choose between waiving a valid claim or defense or waiving its right to a jury trial.  Beard v. Braunstein, 914 F. 2d 434, 440 (3rd Cir. 1990).  "The better rule… is that defendant does not waive objections to jurisdiction and venue by asserting a compulsory counterclaim."  Id. (citing 6 Wright, Miller & Kane, Federal Practice and Procedure Civil 2d § 1416 at 125 (1990)); In re Kaiser Steel Corp. v. Frates, 911 F.2d 380 (10th Cir. 1990).  "A finding that a defendant has waived his objections to jurisdiction and venue by interposing a compulsory counterclaim "is something less than fair play."  Id. (citing Dragor Shipping Corp. v. Union Tank Car Corp., 378 F. 2d 241, 244 n. 4 (9th Cir. 1967).

Fed. R. Bankr. 7013 provides that F. R. Civ. P. 13 regarding compulsory counter-claims applies in adversary proceedings when a party is sued by a trustee and the claim arose post-petition.  The Trustees have sued Gallagher for post-petition actions and Gallagher's counter-claims arose out of the same transaction and occurrence as the Trustees' claims.

Gallagher's actions against the Estates did not arise until the Estates came into existence. Gallagher's counter-claims are compulsory. If the "conversion theory" is applicable, Congress abridged Gallagher's Seventh Amendment right by forcing Gallagher to choose between a valid claim for which he utilized as a defense and his right to a jury trial.

The right to a jury trial is not waived unless it is voluntary. The 11th Circuit has not decided whether the filing of a counterclaim impliedly waives the fundamental right to a jury trial. The lower courts' decisions are in a state of flux, thus the filing of a counterclaim cannot be a knowing and intelligent relinquishment of a constitutional right.

**III.** **GALLAGHER POSSESSES THE ABSOLUTE RIGHT TO A JURY TRIAL**

Two questions resolve the issue of whether a particular claim entails a right to trial by jury: first, whether the action or its analog was historically tried to juries at the time the Seventh Amendment was adopted in 1791; and then, second, whether the relief sought is legal or equitable in nature." Malone, 245 B.R. at 399 (citing Tull v. United States, 481 U.S. 412 (1987)).

> In Granfinanciera, the Supreme Court articulated a two part test for journaling such distinction: "First, we compare the statutory action to eighteenth century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy

sought and determine whether it is legal or equitable in nature."

> RDM Sports Group, Inc. v. Equitex, Inc., 260 B.R. 915, 919 (N.D. Ga. 2001) (citing Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 42 (1989) (quoting Tull v. United States, 481 U.S. 412, 417-18 (1987)).

The Supreme Court also noted that the "second stage of this analysis the relief sought is more important than the first." Granfinanciera, 492 U.S. at 42.

## A.    This Adversary Proceeding Is Not a Core Proceeding

The Trustees have asserted the following claims and relief against Gallagher.

Count I – Use of 11 U.S.C. § 105 to punish special counsel for violation of the duty of the Trustee or the Debtor to hire counsel under 11 U.S.C. § 327.

In Count I the Estates seek the following relief:

A.    An Order requiring the Defendants to disgorge any attorneys fees and reimbursement of expenses, plus interest, that they received on account of the illegal and improper conduct described herein;

B.    An order awarding actual damages, interest, attorneys fees, costs and punitive damages and imposing appropriate sanctions.

Count II – Use of 11 U.S.C. § 105 to punish special counsel for alleged violation of the trustee and/or the debtor's duty to have settlements approved under Bankruptcy Rule 9019.

In Count II the Estates seek the following relief:

A.    An Order requiring the Defendants to disgorge any attorneys fees and reimbursement of expenses, plus interest, that they received on account of the illegal and improper conduct described herein;

B.    An order awarding actual damages, interest, attorneys fees, costs and punitive damages and imposing appropriate sanctions.

Count III – Use of 11 U.S.C. § 105 to punish special counsel under § 362(h) for alleged willful violation of the automatic stay.

In Count III the Estates seek the following relief:

A.    An Order requiring the Defendants to disgorge any attorneys fees and reimbursement of expenses, plus interest, that they received on account of the illegal and improper conduct described herein;

B.    An order awarding actual damages, interest, attorneys fees, costs and punitive damages and imposing appropriate sanctions.

C.    An Order awarding appropriate damages pursuant to § 362(h).

Count IV – Use of 11 U.S.C. § 105 to enjoin special counsel from representing debtors in bankruptcy without complying with the Bankruptcy Code.

In Count IV the Estates seek the following relief:

A.    An Order requiring the Defendants to disgorge any attorneys fees and reimbursement of expenses, plus interest, that they received on account of the illegal and improper conduct described herein;

3405.1

21

      B.    An order awarding actual damages, interest, attorneys fees, costs and punitive damages and imposing appropriate sanctions.

      C.    An Order permanently enjoining the Defendants from engaging in said improper and unlawful acts, practices and procedures with respect to their clients who are bankruptcy debtors.

The Bankruptcy Court claims that this Adversary Proceeding is a core proceeding under:

      1.    § 157(b)(2)(A):  Matters concerning the administration of the estates; and

      2.    § 157(b)(2)(E):  Orders to turnover property of the estate.

**1.    <u>This Adversary Proceeding Has Nothing To Do With the Administration of the 33 Estates</u>**

Many of the bankruptcy cases have been closed, dismissed, the asset abandoned or the Chapter 13 plan paid in full.  There are no estates to administer in these cases.  In fact, the Trustees are not even trustees for several of the Estates they purport to represent.

Also, the Trustees have determined that 28 of the 33 estates have no claims against Bart, and therefore, no claims to be administered.  The Trustees cannot administer something that does not exist.

In five of the 33 cases, Bart will pay 100% of the value of the estate property and $988,000 to Trustee's counsel as a sanction.  There is nothing to administer in these cases.  Also, it is not administration of an estate to assert an

impermissible attack upon the Mississippi state court judgment in order to argue that the Special master did not control the disbursement of a Qualified Settlement Fund.

> ### 2. **This Adversary Proceeding Is Not a Turnover Action Because All Property or Its Value Will be Turned Over by Bart**

Bart has turned over 100% of the value of the property of the estates to the five estates that possibly possess claims. Since there is nothing left to turnover, this Adversary Proceeding cannot be a turnover action. Instead, this Adversary Proceeding actually only involves the Bart/Gallagher indemnity claims over which the Bankruptcy Court does not believe it has subject matter jurisdiction.

> ### B. **The Estates Claims for Damages Must be Tried to a Jury**

The Estates seek compensatory and punitive damages under each count.

> [T]he amount of punitive damages was an issue committed to the jury on both sides of the Atlantic in the late 18th century.
>
> > Hartford Fire Ins. Co. v. First Nat'l Bank of Atmore, 198 F.Supp 2d 1308, 1311 (S.D. Ala. 2002)

Unless summary judgment is granted, each count must be tried to a jury. See Curtis v. Loether, 415 U.S. 189, 195 (1974) ("More important, the relief sought here - - actual and punitive

damages - - is the traditional form of relief offered in the courts of law.").

> It is established that suits for money damages, including punitive damages, are legal in nature entailing the right to a jury trial, and that this right cannot be abridged even if the damages are considered incidental to the equitable claims.

Malone, 245 B.R. at 399.

"Where an action is simply for the recovery … of a money judgment, the action is one at law." RDM Sports Group, Inc., 260 B.R. at 920 (citing Pernell v. Southall Relaty, 416 U.S. 363, 370 (1974) (quoting Whitehead v. Shattuck, 138 U.S. 146, 151 (1891))); see also Beesley v. Hartford Ins. Corp.,723 F.Supp 635, 650 (S.D. Ala. 1989) (holding that a demand for even nominal damages renders the right to jury trial inviolate: "this court cannot avoid pointing out the obvious, namely, that "nominal damages" do constitute a *legal* and not an *equitable* remedy)(emphasis in original).

> "As for the remedies sought by the trustee, he seeks money damages.  He contends that the defendant's acts of commission or culpable omissions damaged the Debtors.  All of the injuries complained of are compensable by a money judgment … Accordingly, since the remedies sought and most of the claims sound in law, as opposed to equity, the Seventh Amendment applies to this case."
>
> RDM Holdings, Inc. v. Equitex, Inc. (In re RDM Sports Group, Inc.), 260 B.R. 915, 920 (N.D. Ga. 2001); see also Ward v. Assoc. Industries of Alabama Group Health

> Benefits Trust, 448 So. 2d 349,
> 352 (Ala. 1984).

[T]his court finds that debtors are entitled to a
jury trial on these causes of action under the
Seventh Amendment, and thus, this proceeding must
be transferred to the United States District
Court.

> Walton v. AG Credit, ACA (In re
> Walton), 158 B.R. 939, 942 (Bankr.
> N.D. Ohio 1993)

The Bankruptcy Court recently classified the Plaintiff's suit as a demand for an "accounting" of the settlement amounts that Gallagher allegedly distributed to the Estates and for Gallagher's attorney's fees, which allegedly belong to the Estates. The Bankruptcy Court defined an accounting as:

> "a rendition of an account, either voluntarily or
> by court order. The term frequently refers to
> the report of all items of property, income, and
> expenses prepared by a personal representative,
> trustee, or guardian and given to heirs,
> beneficiaries, or the probate court."

> (Case No. 03-1071, Doc. No. 335,
> May 4, 2006 Memorandum Opinion at
> p. 12-13.)

As further support for its classification of the claims against Gallagher as an accounting, the Bankruptcy Court states:

> "At trial, Gallagher will be called upon to give
> an account of his actions with respect to these
> 33 bankruptcy estates."

> Id. at p. 13.

Under this theory, every cause of action is an accounting where the defendant is required to "account" for his or her behavior, including, for instance, wrongful death. Nonetheless, the Bankruptcy Court failed to follow binding Supreme Court precedent which holds that the second step, the remedy sought, is more important than the first step, the comparison of the cause of action with those in existence in the 18th century. See Granfinanciera, 492 U.S. at 42.

The Seventh Amendment preserves to litigants the right to jury trial in suits at common law:

> not merely suits, which the common law recognized among its old and settled proceedings, but suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered.
>
> Ross v. Bernard, 396 U.S. 531, 90 S.Ct. 733 at p. 533.

The existence of an equitable claim in addition to legal claims is of no consequence to Gallagher's right to a jury trial of the common issues of law and fact.

> Absent the express consent of all parties to a particular count, the bankruptcy court may not conduct a jury trial as to that count. Here, the plaintiff clearly is entitled to a jury trial as to at least one count of its complaint, a count for breach of contract, and therefore the adversary proceeding must be tried to a jury. (citations omitted)
>
> Wilson v. ENC Mortgage Corp. (In re Wilson), Bankruptcy No. 0016925, Adversary No. 04-1276,

2005 WL 3320594, at *1 (October 17, 2005 Bankr. D. Mass.)

In a case similar to this case, <u>Rogers v. Nations Credit Financial Services</u>, 2000 WL 1499354 No. C-98-2680 (N.D. Cal. August 7, 2000), the debtor filed an action against the defendants for § 362(h) violations of the automatic stay and § 524 violations of the discharge injunction. The court held that the "Plaintiff has the right to a jury trial on her claims for violation of the Bankruptcy Code, for which she seeks punitive damages." <u>Id.</u> at *8.

The Estates seek equitable and legal relief from Gallagher. If the Estates merely alleged restitution of amounts wrongfully gained by Gallagher, the claim would be equitable. The Estates, however, also seek actual and punitive damages, which are legal claims. If the legal claims for damages remain, Gallagher's right to a jury trial is inviolate of all common issues of law and fact. <u>Dairy Queen, Inc. v. Wood</u>, 369 U.S. 469, 473 (1989) (holding that the right to a jury trial cannot be lost by a judge determining equitable claims that include common issues of law and fact with the legal claims.)

**C.    <u>Gallagher is Entitled to a Jury Trial of the Breach of Contract and Fraud Claims.</u>**

In addition to the right to a jury trial on the Estates' claims, Gallagher is entitled to a jury trial of the breach of contract claims contained in Gallagher's counter

claims; and affirmative defenses which include release, waiver, accord and satisfaction, failure of consideration and payment:

> In the present case, there existed a contract between [counter-plaintiff] and [counter-defendant]. [Counter-Plaintiff] claims that there was a breach of that contract and has brought an action based on that breach. Whether or not such a breach occurred is a factual determination accompanied by the right to a jury trial if so demanded.
>
> > Ex parte Ward, 448 So. 2d 349, 352 (Ala. 1984); see also, Cadle Co. v. Castle, 913 S.W. 2d 627, 631 (Tex. App. 1995); Ferguson v. Dresser Industries, Inc., 438 So. 2d 732, 734 (Ala. 1983) ("That would be a matter of affirmative defense for resolution by a jury.").

Whether or not the fraud claims occurred is also a factual determination which a jury must decide. See In re Roberts, 126 B.R. 678, 681 (Bankr. W.D. Pa. 1991) (holding that withdrawal of the reference was appropriate due to the right to a jury trial of the fraud claim).

**D.**   **The Bankruptcy Court's Civil Contempt Powers to Sanction Gallagher for Violation of the Bankruptcy Code and Rules under 11 U.S.C. § 105 are Limited to Compensatory Damages and Petty Coercive Sanctions.**

The Estates have requested the bankruptcy court to award punitive damages and to impose appropriate sanctions against Gallagher for allegedly violating various provisions of the Bankruptcy Code, including the an automatic stay in § 362. For the first time, in May of 2006, the Plaintiffs clarified

that they are not requesting that the court impose punitive damages (criminal sanctions) against Gallagher, but merely civil sanctions.

"Civil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and opportunity to be heard."  <u>International United Mine Workers of America v. Bagwell</u>, 512 U.S. 821, 827 (1994).  Civil contempt is remedial and limited to compensatory damages.  <u>Id.</u>  To be coercive, sanctions must provide the offender the ability to purge or avoid the civil sanction through obedience.  <u>Id.</u>

If sanctions are imposed for a completed wrong where, absent a time machine, the offender has no ability to adapt his behavior to avoid the sanction, the sanction is punitive, and thus is imposed under the court's criminal contempt powers.  If the sanction is criminal, the Defendant is entitled to all constitutional rights afforded to criminal Defendants.

> Where a fine is not compensatory, it is civil only if the contemnor is afforded an opportunity to purge.  Thus, a flat, unconditional fine totaling even as little as $50 announced after a finding of contempt is criminal if the contemnor has no opportunity to reduce or avoid the fine through compliance.
>
> United Miner Workers, 512 U.S. at 829.

The bankruptcy court may not impose punitive sanctions under § 105.  In re Hardy, 97 F.3d 1384 (11th Cir. 1996).

The Bankruptcy Court cited the Estate's request to the court to punish Gallagher for alleged past violations of the bankruptcy code through sanctions as one of four factors which allegedly support the finding that the Estate's causes of action are most analogous to an accounting,.  (Case No. 03-1071, Doc. No. 335, May 4, 2006 Memorandum Opinion at p. 14-15.) Even if $50 of punitive sanctions were imposed by the Bankruptcy Court, Gallagher's constitutional rights would be violated.  United Mine Workers, 512 U.S. at 829.  Other than compensatory damages, for which Gallagher has a right to a jury trial, the Bankruptcy Court may not impose $1 of punitive sanctions for past violations of the Bankruptcy Code.  The Bankruptcy Court may only order Gallagher to choose to either obey the Court's Order in the future or face petty sanctions until he complies. "[B]ecause civil contempt sanctions are viewed a non-punitive and avoidable, fewer procedural protections for such sanctions have been required."  Id.  Gallagher's fate must be in his own hands.  If the sanctions cannot be avoided by future compliance, they are punitive and are entitled to all constitutional protections afforded criminal defendants.  Id. at 831.

Bart's settlement has fully compensated the Estates, thus the only civil sanctions remaining are coercive sanctions

of which Gallagher can avoid by compliance.  Bart has agreed to pay approximately $1,200,000 for settlement of the claims asserted against Bart and Gallagher in all three judicial districts.  The Trustees allocated roughly 16% ($189,000) of the $1,200,000 to the Estates.  Only 19 of 220 Estates for which claims were pending were allocated compensatory damages.  Funds from Bart's settlement were donated to the Trustee's Education Network because they were "excess," establishing that the remainder of the Estates did not have any compensatory damages.  Although the Bankruptcy Court would not have the power to seriously sanction Bart without a jury trial, approximately $1,000,000 (84%) was paid to the Trustees' lawyers as a punitive sanction against Bart.  Bart's settlement proceeds will fully satisfy all compensatory claims, thus under its civil contempt power, the Bankruptcy Court may only coerce Gallagher to comply with the Bankruptcy Code and Rules through petty sanctions that Gallagher can avoid through future compliance.

**E.** **Gallagher has a Right to a Jury Trial of the Trustees' claims which in substance seek a turnover of property allegedly held in violation of the Bankruptcy Code.**

The Estates claim that Gallagher exercised control over property in violation of Bankruptcy Code §327(e), § 362(h) and Bankruptcy Rule 9019.  There is no private right of action for any of the Counts, except Count III where the Trustee utilizes § 105 to sue under § 362(h) for a violation of the

automatic stay. Count III and the remaining claims (if there were private rights of action) are analogous to a claim in assumpsit for money had and received, an 18th century action at law. Malone v. Norwest Financial California, Inc., 245 B.R. 389, 399 (E.D. Cal. 2000) (holding that a trustee's claim for the return of funds that a creditor obtained in violation of § 524 was equivalent to the legal claim of money had and received.); Rogers, 2000 WL 1499354 at *8.

> "Whether the trustees' suit should be at law or equity is to be judged by the same standards that are applied to any other owner of property which is wrongfully withheld…. If the [subject matter] was of cash, the trustee's action would be for money had and received. Such actions at law are as available to the trustee today as they were in the English Courts long ago."

> Granfinanciera, 492 U.S. at 44.

The Estates allege that Gallagher is wrongfully withholding cash (attorney's fees) which belongs to the Estates. The Trustees' actions are for money had and received. See Granfinanciera, 492 U.S. at 44. Moreover, the Estates have sued Gallagher for actual and punitive damages and sanctions.

The Bankruptcy Court determined that the Estates' causes of action against Gallagher are analogous to an accounting. (Case No. 03-1071, ECF Doc. No. 335, May 4, 2006 Memorandum Opinion at pp. 12-13.) It is unknown which cause of action the Plaintiffs analogize their claims.

> [A]ny distinction that might exist between "damages" and monetary relief under a different label is purely semantic, with no relevance to the adjudication of petitioners' Seventh Amendment claim.

> <u>Granfinanciera</u>, 492 U.S. at 49, n. 7.

In <u>Granfinanciera</u>, the trustee argued that he was merely seeking an avoidance of a transfer or restitution of funds, which are equitable actions, rather than a fraudulent transfer, which is an action at law. The court held that the Trustee's argument was merely based upon semantics and the proper issue was whether money was to be received. <u>Id.</u> The Bankruptcy Court's determination that the Estates' claims are for an accounting, and therefore are equitable actions, thus summarily disposing of Gallagher's fundamental right, is contrary to binding precedent.

Other courts have followed the Supreme Court's precedent. In <u>Rogers</u>, the debtor sued a creditor for violations of §362(h) and for the return of money paid to the creditor in violation of §524. The Court held that the claim under § 524 for the return of money was analogous to legal claim of money had and received and upheld the right to a jury trial. <u>Rogers</u>, 2000 WL 1499354 at *8.

A jury trial has been demanded by Gallagher on all claims and issues in this Adversary Proceeding. As such, withdrawal of the reference is mandatory.

### CONCLUSION

This Court referred the Adversary Proceeding to the Bankruptcy Court. The Bankruptcy Court did not address summary judgment for nine months (and then did not address several important legal issues); and, the Bankruptcy Court did not address the jury trial issue until May of 2006. The Bankruptcy Court has yet to address Rooker-Feldman. The Trustees and the Bankruptcy Court apparently now claim that the remedies sought do not include punitive damages, and yet, no order has been entered dismissing these claims. If anything, Gallagher's motion is premature, but required because the Bankruptcy Court set a trial date of May 22, 2006.

Gallagher's Motion is timely and the reference should be withdrawn.

                              Respectfully submitted,

                              /s/ David B. Anderson_____
                              David B. Anderson (AND006)
                              Ryan K. Cochran  (COC020)
                              Deanna L. Weidner (WEI038)
                              Attorneys for Defendants
                              Gallagher, Lewis, Downey & Kim and
                              Michael T. Gallagher

OF COUNSEL:

WALLER, LANSDEN, DORTCH  & DAVIS, LLP
AmSouth-Harbert Plaza, Suite 1400
1901 6th Avenue North
Birmingham, AL  35203
Phone:  205-214-6380
Fax:  205-214-8787

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the above and foregoing Supplement to Motion for Mandatory and Permissive Withdrawal of Reference and Transfer Adversary Proceeding to District Court has been duly served upon counsel of record electronically and/or by mailing same by United States mail, properly addressed and postage prepaid, to the following:

      Mr. Steve Olen
      Mr. Royce A. Ray, III
      Olen, Nicholas & Copeland, P.C.
      P. O. Box 1826
      Mobile, AL  36633

      Mr. Frank L. Parker, Jr.
      Ms. Christina May Bolin
      Alford Clausen and McDonald, LLC
      One St. Louis Centre, Suite 5000
      Mobile, AL  36602

      Mr. Joseph P. Schilleci, Jr.
      Mr. David D. Schoel
      Mr. Gerald S. Topazi
      Natter & Fulmer, P.C.
      3800 Collonade Parkway, Suite 450
      Birmingham, AL  35243

      Mr. Curtis C. Reding
      Standing Chapter 13 Trustee
      P. O. Box 173
      Montgomery, AL  36101-0173

      Mr. Barry E. Teague
      P. O. Box 586
      Montgomery, AL  36101

Mr. Von G. Memory
Memory & Day
P. O. Box 4054
Montgomery, AL  36101

This the 10th day of May, 2006.

/s/ David B. Anderson_____
Of Counsel